# Exhibit 1

**(Summons and Complaint with Exhibits thereto)**

IN THE COURT OF COMMON PLEAS
PROBATE DIVISION
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **Egidijus Marcinkevicius,** as: Trustee of the <br> F. Margaret Campbell 2011 Trust, the <br> F. Margaret Campbell Family 2011 <br> Descendants Trust and the F. Margaret <br> Campbell Family 2011 Trust, Fiduciary of <br> the Estate of F. Margaret Campbell, deceased, <br> and as Trustee of the F. Margaret Campbell <br> Campbell 2011 Trust   a General and Limited <br> Partner of the Campbell Family Limited <br> Partnership <br> 880 E. 185th Street <br> Cleveland OH 44116-1014; <br>                 Plaintiff, <br><br>    vs. <br><br> **Allen F. Campbell** <br> 322 Cumberland Road <br> Fairhope AL 36532-3441; and, <br><br> **Jessie Garcia** <br> 16520 Simonds Road <br> Kenmore WA 98028-4439; and, <br><br> **Ava Havel**, Individually, and as a Co-Trustee <br> of the Donald A. Campbell 2001 Trust and the <br> Donald A. Campbell 2001 Descendants' Trust, <br> and as said Co-Trustee   a General and <br> Limited Partner of the Campbell Family <br> Limited Partnership <br> 35515 County Road 41 <br> Eaton CO 80615-8910; and, | Case No.  2020 ADV _____ <br><br> JUDGE: Laura J. Gallagher <br><br><br> **COMPLAINT FOR <br> DECLARATORY JUDGMENT, <br> ATTORNEYS' FEES, COSTS, <br> AND OTHER EQUITABLE <br> RELIEF, WITH EXHIBITS <br> ATTACHED.** |

**Manuela Caridad Hernandez,** Individually, )
and as a Co-Trustee of the Donald A. )
Campbell 2001 Trust and the Donald A. )
Campbell 2001 Descendants' Trust, and as )
said Co-Trustee a General and Limited )
Partner of the Campbell Family Limited )
Partnership )
3326 Idell Street )
Los Angeles CA 90065-1513; and, )
                                               )
**Heather Campbell Bradford Wallace,** )
Individually, and as a Co-Trustee of the )
Donald A. Campbell 2001 Trust and the )
Donald A. Campbell 2001 Descendants' Trust, )
and as said Co-Trustee a General and )
Limited Partner of the Campbell Family )
Limited Partnership, )
c/o Kyle B. Gee, Esq. )
Baker Hostetler )
127 Public Square STE 2000 )
Cleveland OH 44114-1214; and, )
                                               )
**Melissa McGee** )
12119 Fairfax Hunt Road )
Fairfax VA 22030-5947; and, )
                                               )
**Jane Doe,** as Executrix of the Estate of )
Frederick M. Campbell, deceased, )
                        Defendants. )

Now comes the plaintiff, Egidijus Marcinkevicius, as: Trustee of the F. Margaret Campbell 2011 Trust, Trustee of the F. Margaret Campbell Family 2011 Descendants Trust and the F. Margaret Campbell Family 2011 Trust, Administrator With Will Annexed of the Estate of F. Margaret Campbell, deceased, and as Trustee of the F. Margaret Campbell 2011 Trust a General and Limited Partner of the Campbell Family Limited Partnership; (hereinafter referred to as **"Gid"**), by and through counsel, and for his Complaint (Petition) in said capacities pursuant to ORC §2721.03, ORC §2721.04, and ORC §2721.05, *et seq.,* for Declaratory Judgment, seeking declaratory relief, attorneys' fees and costs pursuant to ORC §2721.16 *et seq.* as authorized by ORC §2323.51, and ORC

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

§2721.11, and otherwise, and other equitable relief, and says and alleges, as follows:

## The Parties:
### Plaintiff,

1. The probate Estate of F. Margaret Campbell, deceased, is being administered in the Probate Court of Cuyahoga County, Ohio, in Case No. 2016 EST 216495;

2. By Amended Judgment Entry dated November 14, 2017 in Case No. 2017 ADV 224571, Gid was appointed by the Cuyahoga County Probate Court as:

   a. Administrator With Will Annexed of the Estate of F. Margaret Campbell, deceased (Case No. 2016 EST 216495); and,

   b. As Successor Trustee of the:
      I. F. Margaret Campbell 2011 Trust,
      ii. F. Margaret Campbell Family 2011 Descendants' Trust, and,
      iii. The F. Margaret Campbell Family 2011 Trust;

### Defendants,

3. Defendant Allen F. Campbell is the son of Donald A. Campbell and F. Margaret Campbell;

4. Defendant Allen F. Campbell is also an attorney-at-law, currently licensed to practice and active in the States of Alabama and Louisiana, and admitted to bars of Florida and Texas   but currently inactive in these two states;

5. Defendant Jessie Garcia,
   a. is the surviving spouse of Frederick M. Campbell, deceased, and,
   b. to the best of plaintiff's knowledge, may be the person entitled to

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

administer the Estate of Frederick M. Campbell, deceased;

6. Defendant Ava Havel,
   a. Individually, is the daughter of Frederick M. Campbell, deceased; and,
   b. Is further a Co-Trustee of the Donald A. Campbell 2001 Trust and the Donald A. Campbell 2001 Descendants Trust, and,
   c. As said Co-Trustee a General and Limited Partner of the Campbell Family Limited Partnership, and,
   d. Is a beneficiary of the Campbell Family 2001 Descendants Trust;
   e. Is a beneficiary of the F. Margaret Campbell 2011 Descendants Trust; and,
   f. May be entitled to an additional $50,000 legacy under the Last Will of F. Margaret Campbell;

7. Defendant Manuela Caridad Hernandez,
   a. Individually, is the daughter of Jessie Garcia, and,
   b. Step-daughter of Frederick M. Campbell, deceased; and,
   c. Is further a Co-Trustee of the Donald A. Campbell 2001 Trust and the Donald A. Campbell 2001 Descendants Trust, and,
   d. As said Co-Trustee a General and Limited Partner of the Campbell Family Limited Partnership,
   e. Is a beneficiary of the Campbell Family 2001 Descendants Trust; and,
   f. Is a beneficiary of the F. Margaret Campbell 2011 Descendants Trust; and,
   g. May be entitled to an additional $50,000 legacy under the Last Will of F. Margaret Campbell;

8. Defendant Heather Campbell Bradford Wallace,
   a. Individually, is the biological daughter of Allen F. Campbell; and,
   b. Is further a Co-Trustee of the Donald A. Campbell 2001 Trust and the Donald A. Campbell 2001 Descendants' Trust, and,
   c. as said Co-Trustee a General and Limited Partner of the Campbell Family

Limited Partnership; and,

    **d.**    Is a beneficiary of the Campbell Family 2001 Descendants Trust; and,

    **e.**    May be entitled to a $50,000 legacy under the Last Will of F. Margaret Campbell;

**9.**    Defendant Melissa McGee,

    **a.**    Is the step-daughter of Allen F. Campbell, and,

    **b.**    May be entitled to a $50,000.00 legacy under the Last Will of F. Margaret Campbell;

**10.**    Defendant Jane Doe,

    **a.**    Is the yet unnamed fiduciary of the Estate of Frederick Campbell,

    **b.**    which Estate to the best of plaintiff's knowledge was never probated, but which can be opened for purposes of administration of the amounts that may become due to said Estate by reason of the instant litigation; and,

    **c.**    which Estate is the owner of a share of the Campbell Family Limited Partnership;

## Undisputed Facts:

**11.**    Donald A. Campbell and F. Margaret Campbell (o.w. Freda Margaret Campbell) were married for over 50 years;

**12.**    Donald A. Campbell and F. Margaret Campbell had two children born to them, namely: Frederick M. Campbell and Allen F. Campbell;

**13.**    Donald A. Campbell died on February 22, 2010, domiciled in Cleveland, Ohio, with F. Margaret Campbell as his surviving spouse;

**14.**    Frederick M. Campbell died on November 4, 2013, survived by his spouse, Jessie Garcia;

15.  F. Margaret Campbell died on April 6, 2015, as the widow of Donald A. Campbell, and F. Margaret Campbell did not remarry after the death of Donald A. Campbell;

16.  Donald A. Campbell's decedent's Estate appears on the docket of the Probate Court of Cuyahoga County, Ohio, as Case No. 2011 EST 0171104;

17.  The only entries on the docket of the Cuyahoga County Probate Court regarding Donald A. Campbell's Estate, are in connection with information filings concerned with the filing of an Ohio Estate Tax Return;

## The Controversies

18.  The cruxes of this case arise from, and can be decided upon the following main issues:

The Life Insurance Policies

19.  Donald A. Campbell purchased two variable life insurance policies (set forth in detail hereinafter), which were ultimately owned by the Campbell Family Limited Partnership (CFLP), with the Donald A. Campbell Trust named as beneficiary of both policies;

20.  Upon Donald's death, the insurance company on both said policies paid the death benefits of both policies to the Donald A. Campbell Trust;

21.  Allen Campbell asserts that:
     a.  Both policies should have been 'cashed-out' (the 'net cash surrender value' being secured at the cost of foregoing the death benefit otherwise payable on the policies) prior to Donald's death,
     b.  With the proceeds of both 'cash-out's' being held in the Campbell Family Limited Partnership;

c.    With Allen Campbell's desired outcome being essentially, a mandatory or forced change in beneficiary from the Donald A. Campbell Trust, to the CFLP, from which Allen Campbell could gain a portion of the 'net cash surrender value';

22.   Allen Campbell continues to make this assertion, despite the fact F. Margaret Campbell as the General Partner of the CFLP, was the person who chose to have the Donald A. Campbell Trust remain the beneficiary of both policies; and,

23.   Allen Campbell asserts that F. Margaret Campbell was competent (perhaps except very shortly prior to her death) at all times relevant to the controversies he has created regarding the death benefits paid from the aforesaid policies;

Payment for Care of F. Margaret Campbell

24.   During her final years, F. Margaret Campbell:
      a.    lived at Judson Park, part of the Judson Senior Living Community located in Cleveland, Ohio, and,
      b.    paid for her care from her personal funds, and,
      c.    from funds in the Campbell Family Limited Partnership account(s);

25.   Allen Campbell asserts that *all* costs of care for F. Margaret Campbell (at least after the death of Donald A. Campbell), should have been paid from funds in the Donald A. Campbell 2001 Trust;

26.   Allen Campbell continues to make the aforesaid assertion, despite the fact F. Margaret Campbell was:
      a.    the person in control of all Trusts of Donald A. Campbell and F. Margaret Campbell, and,
      b.    the General and Managing Partner of the Campbell Family Limited Partnership, and,

c.     the sole person who had the power to choose which funds to utilize for her own care; and,

d.     The Donald A. Campbell 2001 Trust (of which F. Margaret Campbell was the primary beneficiary after Donald A. Campbell's death), did not require said Trust to pay all expenses of F. Margaret Campbell;

27.     Concerning sums spent by F. Margaret for her own care, Allen Campbell asserts that F. Margaret Campbell was competent (perhaps except very shortly prior to her death) at all times relevant to the controversies he has created;

28.     Beneficiaries of the Donald A. Campbell 2001 Trust and/or the Campbell Family 2001 Descendants Trust, have asserted that not less than $181,430.00 of CFLP funds spent by F. Margaret for her own care, should:

a.     be offset by making a distribution to the Donald A. Campbell 2001 Trust in the same amount of funds paid by F. Margaret for her own use from CFLP funds, or,

b.     as is plaintiff's understanding, potentially be reflected in a reduction in F. Margaret's Capital Account of the CFLP;

29.     Beneficiaries of the Donald A. Campbell 2001 Trust and/or the Campbell Family 2001 Descendants Trust, have further asserted that the Donald A. Campbell 2001 Trust and/or the Campbell Family 2001 Descendants Trust, be granted $220,034.00 as the total credit to the CFLP share for the Donald A. Campbell 2001 Trust and/or the Campbell Family 2001 Descendants Trust, as an offset for the CFLP funds paid by F. Margaret for her own care;

30.     Defendant Allen Campbell has asserted that not less than $181,430.00 of CFLP funds spent by F. Margaret on her own care, should be instead deducted from any

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

share the Donald A. Campbell 2001 Trust would otherwise take;

31.   Allen Campbell has further asserted that not less than $378,476.00 spent by F. Margaret on her own care, from her own funds, should be instead deducted from any share the Donald A. Campbell 2001 Trust would otherwise take;

<u>Status of Claims Involving Solely F. Margaret Campbell's Estate and/or Trust(s)</u>

32.   No claims were timely filed against the Estate of F. Margaret Campbell, deceased, therefore, any and all claims which could have been properly asserted against F. Margaret Campbell, are barred as a matter of law;

33.   By reason of no claims being timely filed against the Estate of F. Margaret Campbell, deceased:

a.   No claims can now be asserted alleging that F. Margaret Campbell failed to 'do her job' as Trustee, or as General Partner of CFLP, (and in either case, whether by reason of misfeasance or non-feasance in her fiduciary capacity or if malfeasance, potentially in an individual capacity) because:

(1)   if for any alleged 'malfeasance', the ultimate blame would track back to F. Margaret Campbell, individually, and,

(2)   the period to raise those claims is closed; and, further,

(3)   if for any alleged 'misfeasance' or 'non-feasance' in a fiduciary capacity, F. Margaret was exonerated from any loss to her Trust(s) by reason of Article IX, §I, "Exoneration of Trustees Acting in Good Faith, of the F. Margaret Campbell 2011 Trust, **Exhibit E**, Page 17, (numbered page 12 of the trust document):

b.   Subsequent Trustees are not responsible for the alleged 'failures' of the preceding trustee(s)   Article IX, §J, "Exoneration of Trustees for Acts of

Page -9-

Others, of the F. Margaret Campbell 2011 Trust, **Exhibit E**, Page 17, (numbered page 12 of the trust document); therefore,

c.   Any purported claim against the F. Margaret Campbell Trust(s) with F. Margaret Campbell as a Trustee, or F. Margaret Campbell individually, or F. Margaret Campbell as a General Partner of the CFLP with potential individual liability for her alleged actions and/or failure to act in such a capacity, could only be brought against the Estate of F. Margaret Campbell, deceased, which claims are all time-barred as a matter of law;

Status of Claims Involving Solely Donald A. Campbell's Estate and/or Trust(s)

34.   No claims were timely filed against the Estate of Donald A. Campbell, deceased, therefore, any and all claims which could have been properly asserted against Donald A. Campbell, are barred as a matter of law; and,

35.   By reason of no claims being timely filed against the Estate of Donald A. Campbell, deceased:

a.   No claims can now be asserted alleging that Donald A. Campbell failed to 'do his job' as Trustee, or as General Partner of CFLP, or as General Partner of CFLP, (and in either case, whether by reason of misfeasance or non-feasance in his fiduciary capacity   or if malfeasance, potentially in an individual capacity), because:

(1)   if for any alleged 'malfeasance', the ultimate blame would track back to Donald, individually, and

(2)   the period to raise those claims is closed; and, further,

(3)   if for any alleged 'misfeasance' or 'non-feasance' in a fiduciary capacity, Donald A. Campbell was exonerated from any loss to his Trust(s) by reason of Article XII, §I, "Exoneration of Trustees Acting

in Good Faith, of the Donald A. Campbell 2001 Trust, **Exhibit B**, Page 21, (numbered page 16 of the trust document):

b.     Subsequent Trustees are not responsible for the alleged 'failures' of the preceding trustee(s)    Article XII, §J, "Exoneration of Trustees for Acts of Others, of the Donald A. Campbell 2001 Trust, **Exhibit B**, Page 21, (numbered page 16 of the trust document); therefore,

c.     Any purported claim against the Donald A. Campbell Trust(s) with Donald A. Campbell as a Trustee, or Donald A. Campbell individually, or Donald A. Campbell as a General Partner of the CFLP with potential individual liability for his alleged actions and/or failure to act in such a capacity, could only be brought against the Estate of Donald A. Campbell, deceased, which claims are all time-barred as a matter of law;

<u>Status of Claims Involving F. Margaret Campbell's Estate and/or Trust(s), and Others</u>

36.     The probate Estate of F. Margaret Campbell (2016 EST 216495) cannot be fully administered unless, and until, the issues set forth in this action for declaratory judgment are decided by the Court;

37.     All controversies which are set forth in this Complaint, arose after the death of F. Margaret Campbell;

38.     The multitude of claims asserted by the several parties hereto, in various capacities against various other parties hereto, and varying degrees of involvement of such parties and such claims being necessarily dependent upon one another, with outcomes potentially variant depending on the determination of the claims all set forth comprehensively herein, which in the instant case plaintiff seeks to obtain the Court's declaration of the core issues common to all the multiple cases

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

set forth hereinafter, which plaintiff reasonably believes and does believe, will resolve all core issues, and if not all - the majority of controlling issues that are common to the claims and parties herein and in the several other suits;

39. The common claims involved in multiple cases currently pending (or recently dismissed) in this Court, which claims plaintiff believes can be resolved through the declarations sought in the instant case, which cases include:

a. **Case No. 2018 ADV 233517**  *Allen F. Campbell v. Donald A. Campbell Trust, et al.*, which sought a determination of, among the several claims:

(1) The 'true beneficiary' of the single-premium variable life insurance policies at issue in the instant case,

(2) validity expenditures of funds from the Campbell Family Limited Partnership and the F. Margaret Campbell Trust(s), at issue in the instant case;

(3) Sums due to parties by reason of Allen F. Campbell's numerous claims set forth therein, at issue in the instant case;

(4) with parties to such action being:

(a) Allen F. Campbell, plaintiff,

(b) Donald A. Campbell 2001 Trust, defendant,

(c) Campbell Family 2001 Descendants Trust, defendant,

(d) Ava Havel, defendant,

(e) Manuela Hernandez, defendant,

(f) The Campbell Family Limited Partnership, defendant,

(g) Jessie Garcia, defendant,

(h) F. Margaret Campbell 2011 Trust, as one of the "Interested Parties",

(i) F. Margaret Campbell 2011 Descendants Trust, as one of the "Interested Parties",

(j) John and Jane Doe, defendants,

Page -12-

    **(k)**    Heather Campbell Bradford Wallace, "Other";

**(5)**    Although the Court recently granted defendants' motion to dismiss Allen Campbell's complaint in **Case No. 2018 ADV 233517**, Allen Campbell has already again attempted to file an almost identical attempt at a 'complaint', asserted all the same claims - with two additional claims, which the Court has denied a leave to plead to Allen Campbell regarding his latest (3rd) attempt to assert his 'claims';

**(6)**    By reason of the now amply displayed litigious nature of Allen Campbell, plaintiff believes it is critical for the Court to decide the matters set forth in this action for declaratory judgment and other equitable relief, to end the repeated attempts by Allen Campbell to assert claims which are without any basis in fact, or law;

**b.**    **Case No. 2016 EST 216495**   *the Estate of F. Margaret Campbell, deceased,* the complete administration of which involves the following parties hereto:

    **(1)**    Egidijus Marcinkevicius, Administrator WWA, fiduciary,

    **(2)**    Egidijus Marcinkevicius, Successor Trustee of the F. Margaret Campbell 2011 Trust, residual beneficiary of the Estate of F. Margaret Campbell, deceased,

    **(3)**    Ava Havel, a potential beneficiary of a pecuniary bequest,

    **(4)**    Heather Campbell Bradford Wallace, a potential beneficiary of a pecuniary bequest,

    **(5)**    Manuela Hernandez, a potential beneficiary of a pecuniary bequest,

(6)   Meliss McGee, a potential beneficiary of a pecuniary bequest; and,

(7)   to the extent the Court declares the effect of F. Margaret Campbell's 'specific bequests' to Ava Havel, Heather Campbell Bradford Wallace, Manuela Hernandez, and Melissa McGee, the ultimate sums that could be available for potential distribution to Allen Campbell will be affected;

c.   **Case No. 2017 ADV 224571** *Ava Havel and Manuela Hernandez v. Allen F. Campbell*, which seeks the determination of, among its several claims:

(1)   Damages allegedly suffered by plaintiffs therein, by reason of the alleged breach(es) of fiduciary duties of Allen F. Campbell, during the time Allen F. Campbell was acting as the Trustee of the F. Margaret Campbell 2011 Trust, and as Executor of the Estate of F. Margaret Campbell, deceased;

(2)   Recoupment of funds taken and/or expended by Allen F. Campbell during the period in which he acted as the Trustee of the F. Margaret Campbell 2011 Trust, and as Executor of the Estate of F. Margaret Campbell, deceased;

(3)   Amounts to be disbursed to Ava Havel and Manuela Hernandez, from the Estate of F. Margaret Campbell, and the F. Margaret Campbell 2011 Trust and/or the F. Margaret Campbell 2011 Descendants Trust;

(4)   with parties to such action being:

(a)   Ava Havel, plaintiff,

(b)   Manuela Hernandez, plaintiff,

( c)   Allen F. Campbell, defendant, and, with the Court showing on its docket for said case the additional parties of:

(d)   Egidijus Marcinkevicius as Successor Trustee (of the F. Margaret Campbell 2011 Trust), and,

(e)     Heather Campbell Bradford Wallace, and,

(f)     Merrill Lynch, Pierce. Fenner & Smith, Inc. (successor in interest of Monarch Life Insurance Company    issuers of the two Variable Life Insurance Policies subject to the instant case);

Litigation/Assertion of Claims by Allen F. Campbell

40.     Within a few weeks after F. Margaret's death, Allen Campbell began his pursuit of litigation in connection with funds controlled by F. Margaret prior to her death;

41.     Commencing on or about May 1, 2015, Allen Campbell engaged forensic accountants in Louisiana (Legier & Company), to dissect financial statements involving F. Margaret Campbell, and the Campbell Family Limited Partnership;

42.     Allen Campbell took funds from the F. Margaret Campebell 2011 Trust, in excess of $135,000.00, to pay for his pursuit of litigation, as depicting in the documents supplied by Allen Campbell, to-wit:

a.      Attached hereto and marked **Exhibit I**, pages 1 through 6 (which pages 1 through 6 are from Exhibit 2 attached to Allen Campbell May 5, 2017 filed Brief in Opposition to Ava Havel, et al.'s motion to remove Allen Campbell in Case No. 2017 ADV 224571); and,

b.      **Exhibit J**, pages 1 through 12, (which pages 1 through 12 are copies of bills from Legier & Company to Allen F. Campbell, for "Litigation Support Services", which bills were attached as Exhibit 1 to Ava Havel et al.'s Reply in Support of their Motion to Remove Allen Campbell, etc., as filed with this Court on May 22, 2017 in Case No. 2017 ADV 224571); all more than 1 year *prior* to Allen Campbell probating F. Margaret Campbell's Will on May 20, 2016;

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

43. As Allen Campbell's litigation strategy relates to the F. Margaret Trusts and the CFLP, the majority of his focus has been on forcing the payment of the proceeds of the two life insurance policies to the CFLP, rather than to the contractual beneficiary named by Donald A. Campbell in 1993 — the Donald A. Campbell Trust; and,

44. The balance of Allen Campbell's litigation strategy appears to focus on:

   a. Re-allocating expenses paid by F. Margaret Campbell from her own funds and funds from the CFLP, to the Donald A. Campbell 2001 Trust; and,

   b. Attempting to impute to his benefit, in what he asserts is income that should have been derived from funds that should not have been spent on F. Margaret's care from F. Margaret's own funds, and which instead Allen Campbell further claims should have been earning income which would have ultimately flowed to his benefit;

45. After plaintiff's extensive review of the numerous documents in this case, plaintiff reasonably believes and does believe:

   a. As Allen Campbell's claims relate to the issues presented in this suit, Allen Campbell has not proved, and cannot prove, any set of facts and/or theory which would in any way be supported by the actual documents actually executed by Donald A. Campbell and F. Margaret Campbell; and,

   b. All funds spent and/or taken by Allen Campbell in pursuit of his desire to 'reclaim' the insurance policy death benefits, should be disallowed, and either be repaid by Allen Campbell to the F. Margaret 2011 Trust, or be deducted from any legacy which would otherwise be payable to Allen Campbell from the F. Margaret 2011 Trust, or the F. Margaret 2011 Descendants Trust - in the absence of the unsupportable expenditures by,

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

and sums of the F. Margaret Campbell 2011 Trust taken by, Allen F. Campbell;

Resolution of Outstanding Issues through Application of the Relevant Documents

46. During Donald A. Campbell's life, Allen F. Campbell was not included in any part of the Donald A. Campbell or F. Margaret Campbell estate plans;

47. After Donald A. Campbell died, whether by F. Margaret Campbell's free choice or after being prevailed upon by Allen Campbell, F. Margaret included Allen in certain portions of her estate plan, including putting Allen in a fiduciary position;

48. Multiple lawsuits have been filed by Allen Campbell, with countersuits in response to some of Allen Campbell's actions;

49. The instant suit puts before the Court the actual documents that resolve if not all, at least most of all the controversies created by Allen F. Campbell;

50. Plaintiff reasonably believes and does believe that declaration by the Court of it's resolution of the matters set forth in the instant suit will also resolve if not all, then most of the matters set forth in the above cases which are pending before this Court;

## The Documents:

## The Campbell Family Limited Partnership

51. Attached hereto and marked "Exhibit A CFLP Records" including pages numbered 1 through 114, are copies of the documents received by plaintiff from various of the defendants, both directly and through copies attached to pleadings with this Court, comprising what plaintiff reasonable believes and does believe, to be a

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

comprehensive set of documents comprising the,

   **a.**    Campbell Family Limited Partnership (**CFLP**)Agreement, **Exhibit A**, pages 2 through 70,

   **b.**    Executed by Donald A. Campbell as General Partner, and as Limited Partner, on April 9, 1997, (**Exhibit A**, pages 54 and 55), and,

   **c.**    Executed by F. Margaret Campbell as General Partner, and as Limited Partner, on April 9, 1997, (**Exhibit A**, pages 54 and 55);

## General Partners

**52.**    At the date of execution of the CFLP, Donald A. Campbell owned a 1% interest in the CFLP as General Partner, (**Exhibit A**, page 57);

**53.**    At the date of execution of the CFLP, F. Margaret Campbell owned a 1% interest in the CFLP as General Partner, (**Exhibit A**, page 57);

## Limited Partners

**54.**    At the date of execution of the CFLP, Donald A. Campbell owned a 49% interest in the CFLP as Limited Partner, (**Exhibit A**, page 57);

**55.**    At the date of execution of the CFLP, F. Margaret Campbell owned a 49% interest in the CFLP as Limited Partner, (**Exhibit A**, page 57);

**56.**    During the 13 years of the CFLP from its date of creation through Donald A. Campbell's date of death, Donald A. Campbell and F. Margaret Campbell combined, gifted 10.82% of their interests in the CFLP, to Frederick Campbell;

**57.**    Throughout the 13 years of the CFLP from creation through Donald A. Campbell's

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

date of death, neither Donald nor F. Margaret ever gifted or transferred any interest in the CFLP to Allen Campbell;

Status of Ownership at Don date of death

58.   At Donald A. Campbell's date of death, the ownership interests in the CFLP were:

a.   Donald A. Campbell as General Partner owned a 1% interest, (**Exhibit A**, Page 71);

b.   F. Margaret Campbell as General Partner owned a 1% interest, (**Exhibit A**, Page 72);

c.   Donald A. Campbell as Limited Partner owned a 43.59% interest, (**Exhibit A**, Pages 105 - 106);

d.   F. Margaret Campbell as Limited Partner owned a 43.59% interest, (**Exhibit A**, Pages 107 - 108);

e.   Frederick M. Campbell as Limited Partner owned a 10.82% interest, (**Exhibit A**, Pages 109 - 110);

59.   Shortly after Donald A. Campbell's death, F. Margaret Campbell, as Trustee of the Donald A. Campbell 2001 Trust, and as Trustee of the F. Margaret Campbell 2001 Trust, and in both capacities acting as General Partner of the CFLP, on February 22, 2010:

a.   Adopted the First Amendment to the CFLP, which identified the ownership percentages in the CFLP as immediately aforesaid herein, and,

b.   Further identified the ownership percentages formerly attributed to Donald A. Campbell, to be owned by the Donald A. Campbell 2001 Trust, and the ownership of F. Margaret Campbell to be owned by the F. Margaret Campbell 2001 Trust, all as set forth in attached **Exhibit A**, pages 111 through 114;

60.   To the best of plaintiff's knowledge and belief, at Donald A. Campbell's date of

Page -19-

death, defendant Allen Campbell had no interest in:

a.     the CFLP,

b.     The Donald A. Campbell 2001 Trust (**Exhibit B**),

c.     The Campbell Family 2001 Descendants Trust (**Exhibit C**),

d.     The Last Will & Testament of Donald A. Campbell (**Exhibit K**),

e.     The F. Margaret Campbell 2001 Trust; and,

61.     By reason whereof, Allen Campbell did not have, and could not have had, and cannot now have, any reasonable expectation of inheritance in the CFLP, the Estate of Donald A. Campbell, deceased, the Donald A. Campbell 2001 Trust, the Campbell Family 2001 Descendants Trust, or the F. Margaret Campbell Trust(s) for the period on or before Donald A. Campbell's death; and,

62.     By reason of Donald A. Campbell's explicit and express exclusion of Allen Campbell from any interest in the Donald A. Campbell 2001 Trust and the Campbell Family 2001 Descendants Trust, Allen Campbell never had, and cannot now have, any interest in any thing of value, or any income, that flowed, or could in any way have flowed, through ownership in the Donald A. Campbell 2001 Trust or the Campbell Family 2001 Descendants Trust;

63.     To the best of plaintiff's knowledge and belief, F. Margaret Campbell only included Allen Campbell as a beneficiary of the 'F. Margaret Campbell Trust', after she restated her 2001 Trust(s) to be the F. Margaret Campbell 2011 Trust (**Exhibit E**) and F. Margaret Campbell 2011 Descendants Trust (**Exhibit F**);

64.     That prior to F. Margaret Campbell's death, Allen F. Campbell had no control over the F. Margaret Campbell 2011 Trust, and after F. Margaret Campbell's death, Allen Campbell had no power to undo the decisions made by Donald A. Campbell

Page -20-

or F. Margaret Campbell while either or both of them were General Partners of the CFLP, or as Trustees of their respective Trusts, or F. Margaret as Trustee of said Trusts after Donald's death;

## Purposes of the Campbell Family Limited Partnership

65. The purposes of the Campbell Family Limited Partnership were expressly stated by Donald and F. Margaret as being:

    a.    "***Article 2. §2.5 Purposes of Partnership,

        §2.5(a) Manage Partnership Assets and Promote Harmony Among the Partners. The Partnership will be managed so as to: ***

        (I)    resolve any disputes that may arise among the Family to preserve family harmony and avoid litigation expense and problems; ***

        (ix)    provide flexibility in business planning not available through trusts, corporations, or other business entities***;

        (x)    facilitate the administration and reduce the cost associated with a family member's disability or probating a family member's estate; ***"

        (all as attached in **Exhibit A**, pages 9 and 10).

## Powers of the General Partners

66. Pursuant to the Campbell Family Limited Partnership Agreement, the General Partners were empowered as follows:

    "*** **ARTICLE 5.** **GENERAL PARTNERS; RIGHTS AND POWERS OF GENERAL PARTNERS**

    §5.1    General Partners. The General Partners shall full, exclusive and complete authority and control in the management of the Partnership business***",
    **Exhibit A**, page 15 (page "-9-" of CFLP numbered pages);

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

67. The General Partner(s) of the CFLP were authorized to accept into and retain any asset in the CFLP, with no duty to change the nature of such asset, as expressly set forth the CFLP Agreement, as follows:

> "***§5.2 <u>Rights and Powers</u>. The General Partners may take any action permitted by this Agreement and the Act to accomplish the Partnership Purposes, including, by way of illustration by not by way of limitation, the following: ***
> ( c ) Retaining, without liability, any property in the form it is received without regard to its productivity or the proportion that any one asset or class of assets may bear to the whole***";
> **Exhibit A**, page 16 (CFLP document numbered page "-10-"), subparagraph ( c );

## CFLP Capital Account Management

68. The Capital Accounts of the partners of the CFLP were specifically referred to in:

    a.    "***<u>ARTICLE 3</u>. CAPITAL ACCOUNTS; DISTRIBUTIONS TO PARTNERS.

        §3.1    Capital Contributions; refers specifically to Schedule B thereto as setting forth the initial allocation of General Partner and Limited Partner Units.***", **Exhibit A**, page 7; and,

    b.    Specifically set forth in Schedule B, **Exhibit A**, page 57 (underlying document page "-51-");

    c.    Said Schedule B is the official recitation of the Capital Accounts of the General and Limited Partners, according to the terms of the CFLP Agreement;

69. According the CFLP Agreement, upon dissolution of the Partnership, Limited Partners are not required to 'make-up' any deficit balance that may be in their respective Capital Account of the CFLP, which provides as follows:

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

"No Limited Partner shall be required to contribute any amount to the Partnership solely because of a deficit balance in that Limited Partner's capital account and any such deficit shall not for any purpose be considered an asset of the Partnership.", CFLP, §9.2(b), line 7, (**Exhibit A**, page 39);

70. Under the CFLP Agreement, under **Article 12. Protection of the Parties**, the Agreement specifically exempts the Limited Partners from any requirement to repay any debts, or make-up any negative Capital Account amounts, as follows:

> CFLP §12.3(b), "Negative Capital Accounts. The Limited Partners shall not be required to pay to the Partnership or to any other Partner any deficit or negative balance which may exist from time to time in their respective Capital Accounts as a result of the provisions of this Agreement."
> CFLP Agreement, (**Exhibit A**, pages 44-45);

71. The General Partners of the CFLP were given wide discretion in making decisions for the CFLP regarding Capital Account Adjustments or Tax Allocations, with the CFLP Agreement stating in part, as follows,

> "Any elections or other decisions relating to such allocations shall be made by the General Partner, in any manner that reasonably reflects the purpose and intention of this Agreement."
> Exhibit 2 of the CFLP, under Section B, 7.,
> **Exhibit A**, page 70, (underlying CFLP Agreement numbered page "-64-");

72. The 'liability' of the General Partners to the CFLP and the other Partners, was strictly limited by the terms of the CFLP Agreement, which states in part, as follows:

> "***§12.2    Liability of the General Partners. So long as the General Partners shall act in good faith with respect to the conduct of the business

and affairs of the Partnership, no General Partner (including the Managing General Partner) shall be liable or accountable to the Partnership or to any of the Partners, in damages or otherwise, for any error of judgment, for any mistake of law, or for any other act or thing which he may do or refrain from doing in connection with the business and affairs of the Partnership except for intentional misconduct, breach of the General Partner's duties created pursuant to Section 5.3 hereof, knowing violation of law, or any transaction for which the General Partner received a personal benefit in violation or breach of any provision of this Agreement.***"
CFLP Agreement, (**Exhibit A**, page 44)

<u>CFLP Distributions to F. Margaret for Her Care</u>

73.  After the death of Donald A. Campbell, F. Margaret Campbell distributed from the CFLP, the sum of approximately $181,430.00, paid Judson Healthcare, for her care;

74.  F. Margaret Campbell was authorized by the CFLP Agreement to make distributions to partners;

75.  Allen Campbell has alleged this sum was required to be paid from the Donald A. Campbell 2001 Trust;

76.  The Donald A. Campbell 2001 Trust has stated such CFLP sums paid to or for the benefit of F. Margaret Campbell, should be matched by the CFLP by making a similar distribution to the Donald A. Campbell 2001 Trust;

<u>CFLP Income Allen Campbell Claims as Due to F. Margaret Campbell</u>

77.  From and after the death of Donald A. Campbell, income from the CFLP was distributed to the CFLP Partners according to the percentages of the CFLP owned by the respective Partners;

78.  Allen Campbell has asserted that $165,399.00 of CFLP income during the period of 2010 - 2016 that was distributed to the Donald A. Campbell 2001 Trust

according to the share of the CFLP owned by the Donald A. Campbell 2001 Trust, was instead required to be paid to F. Margaret Campbell or the F. Margaret Campbell 2011 Trust;

Dispute

79.    Throughout the pleadings of the several parties since the death of F. Margaret Campbell, there have been various allegations regarding the percentages owned by the partners of the CFLP;

80.    There has been a dispute regarding whether F. Margaret Campbell as General Partner of the CFLP, was authorized to distribute CFLP funds to F. Margaret for her own use;

81.    There is a further question regarding whether F. Margaret Campbell as General Partner of the CFLP, was required to make distributions to the other partners of the CFLP, to equalize the distributions she made to herself from CFLP funds;

82.    There also remains the question of, if F. Margaret Campbell was required to equalize distributions between all partners of the CFLP, how much, if any, funds of the F. Margaret Campbell 2011 Trust must be paid to the CFLP, according to the terms of the CFLP;

83.    Allen Campbell has challenged whether as Managing General Partner of the CFLP, F. Margaret Campbell was authorized to allow the two insurance policies owned by the CFLP, to continue to have the Donald A. Campbell Trust as the beneficiary of both such policies. Separate sections below in this complaint set forth the specific details regarding such policies and ownership of the same by the CFLP;

84.    Allen Campbell has challenged whether $165,399.00 in income received by CFLP

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

and distributed to the Donald A. Campbell 2001 Trust as its share of CFLP income, was required to be transferred to the F. Margaret Campbell 2011 Trust;

85. Allen Campbell has further asserted that income he imputes to the CFLP from what would have been the net cash surrender value of the two Monarch Life Insurance policies, should be 'repaid' into the CFLP by the Donald A. Campbell 2001 Trust;

The Parties' Attempt at Alternate Dispute Resolution

86. The CFLP requires that the partners attempt to resolve any disputes through Alternate Dispute Resolution, before proceeding to litigation,

    Exhibit A, page 45, Article 13. Alternate Dispute Resolution ("ADR");

87. After extended negotiation regarding the commencement of mediation, the parties submitted to mutually agreed mediation, in person in Cleveland, Ohio, on March 12th and 13th, 2019, which was attended by all parties hereto or their freely chosen representative   or were present or available by telephone for personal contact, at their choice;

88. The Partners, including beneficiaries under the documents appointing the Partners, undertook all the CFLP procedures set forth in CFLP §§13.1, 13.2, 13.3, 13.4, 13.5, 13.6, 13.7, 13.8, and 13.9, which procedures are set forth in:

    Exhibit A, CFLP Records pages 45 - 48;

89. The two day in-person mediation did not result in an agreement by the parties, but the mediation was continued by several of the parties via other communication methods, through September 2019;

90. The Partners, and the other parties involved in the mediation, were unable to reach an agreement on the continuing outstanding disputes, and the mediator called an impasse on September 10, 2019;

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

91. Pursuant to CFLP, §13.11, after the unsuccessful attempt at the required ADR, plaintiff gave notice to the other CFLP Partners of the Additional Proceedings that would be initiated, more than 10 days prior to the date of plaintiff filed the instant suit, **Exhibit A**, CFLP Records page 49;

92. By reason of the compliance with CFLP §§13.1 through 13.11, plaintiff is authorized by the CFLP Agreement to file the instant complaint;

Gid's Take on the Dispute

93. Donald and F. Margaret Campbell created their respective Trusts, for their own benefits, and management of funds supplied by Donald and F. Margaret Campbell;

94. Donald and F. Margaret Campbell created the CFLP for their own benefit, and management of funds supplied to the CFLP by Donald and F. Margaret;

95. Only Donald and/or F. Margaret deposited, or earned, any of the funds which are now at issue   whether in connection with the CFLP, or any Trusts created by Donald A. or F. Margaret Campbell;

96. The documents Donald A. and F. Margaret Campbell created and executed, control the disposition of all funds owned and/or controlled under the CFLP and their respective Trusts   not some attempt to re-write the documents a decade after the death of Donald, and half a decade after the death of F. Margaret;

97. The Donald A. Campbell 2001 Trust should be determined to be the holder of the CFLP interests formerly held by Donald A. Campbell as an individual;

98. As General Partner of the CFLP, F. Margaret Campbell was expressly authorized to hold assets in the form in which the CFLP received them, including the Monarch Life Insurance Policies numbered LD0033874 and LD0048212;

Page -27-

99. As set forth in more detail below, the CFLP owned Monarch Life Insurance Policies numbered LD0033874 and LD0048212 prior to and at the date of death of Donald A. Campbell, with the Donald A. Campbell Trust named as the beneficiary of both such policies on the date the CFLP accepted ownership of such policies;

100. Upon the death benefits being paid by the insurer of Insurance Policies numbered LD0033874 and LD0048212 to the named beneficiary, the CFLP Agreement and normal principals of accounting:

   a. Did not require any allocation of 'negative amounts' to any capital account(s) of the CFLP, regarding any net cash surrender value of either Monarch Variable Life Insurance Policy prior to Donald A. Campbell's death, or,

   b. Require the CFLP to allocate any death benefit payable according to the contract terms of both policies, as paid to the Donald A. Campbell 2001 Trust;

101. After thorough review of all the documents attached hereto, plaintiff reasonably believes and does believe that F. Margaret Campbell was empowered by the F. Margaret Campbell 2001 Trust, the F. Margaret Campbell 2011 Trust, the F. Margaret Campbell 2011 Descendants Trust, the Donald A. Campbell 2001 Trust, the Campbell Family 2001 Descendants Trust, and the Campbell Family Limited Partnership:

   a. To spend for her care from whatever source of funds she chose;

   b. To distribute $181,430.00 in funds from the CFLP for her own benefit;

102. Allen Campbell's allegations regarding the share of CFLP income paid to the Donald A. Campbell 2001 Trust, after the death of Donald A. Campbell, and in

Page -28-

part *after* the death of F. Margaret Campbell, in the sum of $165,399.00, allegedly being due to F. Margaret Campbell, have no basis in reality, by reason that:

a.   The CFLP Agreement provides that distributions shall be made to the Partners, as determined by the General Partner(s), and,

b.   The $165,399.00 share of CFLP income cited by Allen Campbell as being 'wrongfully' distributed to the Donald A. Campbell 2001 Trust, is simply the amount of income attributable to the Donald A. Campbell 2001 Trust, according to the percentage of the CFLP owned by the Donald A. Campbell 2001 Trust; and,

c.   Allen Campbell's attempt to conflate his view of the requirements of the Donald A. Campbell 2001 Trust (allegedly being required to pay all F. Margaret's expenses, of every kind and nature) with the distributions to be made from the CFLP, have no basis in the actual documents executed by Donald A. Campbell, and F. Margaret Campbell, and therefore,

d.   The F. Margaret Campbell 2011 Trust is not entitled to receive, and the CFLP is not required to make, a $165,399.00 distribution to the F. Margaret Campbell 2011 Trust to satisfy what Allen Campbell believes is 'more just'; and, the Donald A. Campbell 2001 Trust is not required to 'disgorge' $165,399.00 in its share of CFLP income it rightfully received according to its percentage of ownership in the CFLP;

103.   As set forth hereinafter in extensive detail, the Monarch Life Insurance policies numbered LD0033874 and LD0048212, formerly owned by the CFLP with the Donald A. Campbell Trust as the named insured, were held by the CFLP in the form in which the CFLP received such policies, that being:

     **a.**    Monarch Life Insurance Company as the insurer,

     **b.**    Donald A. Campbell as the insured,

     **c.**    The Donald A. Campbell Trust as the beneficiary of both policies;

**104.** The Donald A. Campbell Trust was the beneficiary on both policies from 1993, through Donald A. Campbell's death in 2010;

**105.** Donald A. Campbell, and later F. Margaret Campbell, as Managing General Partners of the CFLP, were duly authorized to keep the policies in the form in which the CFLP received the policies;

**106.** The beneficiary of each policy was designated by Donald A. Campbell as the Donald A. Campbell Trust, in 1993;

**107.** Through two ownership changes in both policies in 1997, the beneficiary on the policies was never changed;

**108.** All documents executed by Donald A. Campbell and/or F. Margaret Campbell authorized either or both of them to allow any asset to remain in the form in which they received such asset, and therefore, neither had any duty to change any asset to conform to the desires of a person who was expressly excluded from the Campbell estate plan until after Donald A. Campbell's death in February 2010;

**109.** There can be no 'imputation' of 'income' from an asset that never existed in the form in which Allen Campbell wishes such 'asset' may have existed, and therefore, there is no sum due to any person or entity in connection with the net cash surrender value of the Monarch Life Insurance policies numbered LD0033874 and LD0048212, which may have existed prior to the death of Donald A. Campbell on February 22, 2010;

<u>Gid's Request to the Court Regarding this Dispute</u>

110. Gid requests the Court declare the ownership percentages, which are reflected in the CFLP records in **Exhibit A**, page 114 (underlying document page "4"), in Schedule B, which at the death of F. Margaret Campbell, were as follows:

    a.      Donald A. Campbell 2001 Trust as General Partner, 1%,

    b.      F. Margaret Campbell 2011 Trust as General Partner, 1%,

    c.      Donald A. Campbell 2001 Trust as Limited Partner, 43.59%,

    d.      F. Margaret Campbell 2011 Trust as Limited Partner, 43.59%,

    e.      The Estate of Frederick M. Campbell, deceased, 10.82%;

    f.      Which percentages are graphically depicted in attached **Exhibit L** for purposes of clarity only    such chart is not included as part of any estate planning document prepared or executed by Donald A. Campbell or F. Margaret Campbell;

111. Regarding the Monarch Life Insurance policies numbered LD0033874 and LD0048212, Gid requests the Court declare the detailed relief sought under the section of this complaint titled **"The Single-Premium Variable Life Insurance Policies:"**, set forth below;

112. Gid further requests the Court declare that the General Partners were authorized to expend CFLP funds as they saw fit for the use of Donald A. Campbell and/or F. Margaret Campbell;

113. Gid requests the Court declare whether any negative capital accounts of the limited partners had to be 'made up', pursuant to the terms of the CFLP Agreement;

114. Gid requests the Court declare whether any limited partner has to contribute any

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

funds to the CFLP to 'make-up' any deficit balance in any limited partner's capital account;

**115.** Gid further requests the Court's declaration of whether the $181,430.00 of CFLP funds F. Margaret chose to spend for her care, after Donald A. Campbell's date of death:

    **a.** Were authorized to be spent by F. Margaret Campbell from the source of her choice; and,

    **b.** Whether the CFLP document relieves the F. Margaret Campbell 2011 Trust from being required to restore to the CFLP, the CFLP funds F. Margaret paid for her own care; and if not, then,

    **c.** As paid from the CFLP:

        **(1)** Must the F. Margaret Campbell 2011 Trust restore to the CFLP the CFLP funds F. Margaret paid for her own care, and,

        **(2)** If so, how much of the $181,430.00 must the F. Margaret Campbell 2011 Trust restore to the CFLP;

**116.** Gid further requests the Court declare:

    **a.** The F. Margaret Campbell 2011 Trust is not entitled to receive, and the CFLP is not required to make, a $165,399.00 distribution to the F. Margaret Campbell 2011 Trust, for what was the Donald A. Campbell 2011 Trust's share of CFLP income during the period of 2010 - 2016; and,

    **b.** That the Donald A. Campbell 2001 Trust is not required to 'disgorge' $165,399.00 in its share of CFLP income it rightfully received according to its percentage of ownership in the CFLP;

117. Gid further requests the Court declare:

    a.    F. Margaret Campbell as General Partner of the CFLP, was authorized by the CFLP Agreement, to allow the Monarch Life Insurance policies numbered LD0033874 and LD0048212, to remain in the form in which the CFLP received such policies, including allowing the Donald A. Campbell Trust to remain the beneficiary of both said policies; and,

    b.    There can be no 'imputation' of 'income' from what would have been the 'net cash surrender value' of life insurance policies which were never 'cashed-out' during the lifetime of the insured, and therefore,

    c.    There is no sum due to any person or entity in connection with the net cash surrender value of the Monarch Life Insurance policies numbered LD0033874 and LD0048212, which may have existed prior to the death of Donald A. Campbell on February 22, 2010;

118. Gid further requests the Court declare what amount(s), if any, must be allocated:

    a.    To the respective capital accounts of the General Partners of the CFLP;

    b.    To the respective capital accounts of the Limited Partners of the CFLP; and,

    c.    What amounts, if any, are required to be paid by the Estate of F. Margaret Campbell, deceased, or the F. Margaret Campbell 2011 Trust, or the F. Margaret Campbell 2011 Descendants Trust, in connection with any other declaration of the Court regarding the Campbell Family Limited Partnership;

## Expenses for F. Margaret, Paid by F. Margaret From Her Own Funds

119. After the death of Donald A. Campbell, F. Margaret Campbell spent approximately $343,137.96 of her own funds, in payment of expenses incurred for her daily care;

120. The Donald A. Campbell 2001 Trust states that the Trustee of such Trust has complete discretion regarding expenditure of principal for the care of F. Margaret, which the Trustee considers desirable, as set forth in part, as follows:

> "***B. *Discretionary Principal for Margaret*. The Trustee shall distribute to Margaret, or for her benefit, so much or all of the principal of Marital Trust I as the Trustee considers desirable to provide for Margaret's support, health, education and best interests.***"
>
> **Exhibit B,** page 10, Article V., Administration of Marital Trust I, (underlying document "-Page 5-");

## The Dispute

121. Allen Campbell has maintained that F. Margaret Campbell, as Successor Trustee of the Donald A. Campbell 2001 Trust, was *required* to spend such $343,137.96 from the principal of the Donald A. Campbell 2001 Trust, in payment of F. Margaret Campbell's expenses;

122. The Donald A. Campbell 2001 Trust maintains that as Successor Trustee of said Trust, F. Margaret Campbell had complete discretion regarding whether she took principal from the Donald A. Campbell 2001 Trust, to pay for her care;

## Gid's Take on the Dispute

123. After thorough review of all the documents attached hereto, plaintiff reasonably believes and does believe that F. Margaret Campbell was empowered by the F. Margaret Campbell 2001 Trust, the F. Margaret Campbell 2011 Trust, the F. Margaret Campbell 2011 Descendants Trust, the Donald A. Campbell 2001 Trust, the Campbell Family 2001 Descendants Trust, and the Campbell Family Limited Partnership:

    a. To spend for her care from whatever source of funds she chose;

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

b. Not *required* to utilize funds from the Donald A. Campbell 2001 Trust, or the Campbell Family 2001 Descendants Trust, to pay for her care; and,

c. That any claim positing that F. Margaret was required to expend principal funds from the Donald A. Campbell 2001 Trust for her care, are contrary to the actual words executed by Donald A. Campbell in the Donald A. Campbell 2001 Trust;

Gid's Request to the Court Regarding this Dispute

124. Gid requests the Court's declaration of whether certain funds F. Margaret chose to spend for her care, after Donald A. Campbell's date of death:

a. Were required to have been paid from the Donald A. Campbell 2001 Trust, or,

b. Were required to have been paid from the Campbell Family 2001 Descendants Trust, or,

c. Were authorized to be spent by F. Margaret Campbell from the source of her choice; and,

125. *If* the Court determines that if F. Margaret Campbell as Successor Trustee of the Donald A. Campbell 2001 Trust was required to expend funds from the Donald A. Campbell 2001 Trust, for F. Margaret's own care, Gid requests the Court declare:

a. What dollar amount was F. Margaret as Successor Trustee of the Donald A. Campbell 2001 Trust required to pay from said Trust's funds; and,

b. How the Donald A. Campbell 2001 Trust was required to allocate such disbursements from the Donald A. Campbell 2001 Trust;

**The Last Will and Testament of Donald A. Campbell**

126. Attached hereto and marked **Exhibit K**, containing 14 pages, is a true, complete and accurate copy of the Last Will & Testament of Donald A. Campbell;

127. Donald A. Campbell executed his said Last Will and Testament on July 2, 2001, **Exhibit K**, page 13;

128. In his Last Will and Testament, as attached hereto in **Exhibit K**, Donald A. Campbell made no provision for Allen F. Campbell;

129. In the residuary clause of the Last Will and Testament of Donald A. Campbell as attached hereto in **Exhibit K**, at page 5, Article III, ¶A, Donald A. Campbell devised and bequeathed:

   a.  "***all my remaining property, including lapsed legacies and devises, (my "Residuary Estate") to the trustee ("the Trustee") of the Donald A. Campbell 2001 Trust dated July 2, 2001***";

130. By reason of Donald A. Campbell's death on February 22, 2010 in Cuyahoga County and the State of Ohio, all claims that could have been brought against his Estate, are now precluded, as a matter of law;

131. As of the filing of the instant complaint for declaratory judgment, the Last Will & Testament of Donald A. Campbell as attached in **Exhibit K**, has not been presented for or admitted to probate;

132. In the event the attached **Exhibit K** presents the actual Last Will of Donald A. Campbell, said Will evinces a clear intent by Donald A. Campbell, when read *in pari materia* with the Donald A. Campbell 2001 Trust (in **Exhibit B**), the Campbell Family 2001 Descendants Trust (in **Exhibit C**), that Donald Campbell desired that

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

Allen Campbell not take any part in any legacy derived from the assets of Donald A. Campbell;

**The Donald A. Campbell 2001 Trust**

133.    Attached hereto and marked **Exhibit B**, pages numbered Page 1 through Page 39, is a copy of the Donald A. Campbell 2001 Trust;

134.    The Donald A. Campbell 2001 Trust was executed by Donald A. Campbell on or about July 2, 2001, **Exhibit B**, Page 36, (numbered "-Page 36-" of the trust document);

135.    The Donald A. Campbell 2001 Trust states it was created for the primary benefit of:

a.    Donald A. Campbell,

b.    then Freda Margaret Campbell,

c.    then Frederick M. Campbell,

(As set forth in **Exhibit B**, page 6 (numbered "-Page 1-" of the trust document) under Article I. Name and Beneficiaries of Trust); and,

d.    Specifically excludes Allen F. Campbell, **Exhibit B**, page 6, Article I, ¶2, "*I make no provision herein for my son, *Allen F. Campbell*", (emphases in original);

136.    The Donald A. Campbell 2001 Trust was amended by Donald A. Campbell on or about February 1, 2004, and which amendment identified defendant Heather Campbell, for purposes of the Donald A. Campbell 2001 Trust, to be the daughter of Frederick Campbell, (**Exhibit B**, pages 38 and 39);

137.    At Donald A. Campbell's date of death, F. Margaret Campbell became the

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

Successor Trustee of the Donald A. Campbell 2001 Trust, **Exhibit B**, page 19 (underlying document numbered "-Page 14-"), Article XII, ¶A(I);

138. By reason of the death of Donald A. Campbell, F. Margaret Campbell, and Frederick M. Campbell, the current trustees appointed pursuant to the Donald A. Campbell 2001 Trust, **Exhibit B**, page 19, Article XII, as the majority of income beneficiaries of said Trust, are:

    a.    Ava Havel; and,

    b.    Manuela Hernandez; and,

    c.    Heather Wallace   as set forth in **Exhibit B**, Pages 19-20, Article XII, §A, subparagraph 5;

The Dispute

139. The Donald A. Campbell 2001 Trust states that as Successor Trustee of the Donald A. Campbell 2001 Trust, F. Margaret Campbell,

    a.    after distributing all net income to F. Margaret Campbell, **Exhibit B**, page 10, Article V., §A,

    b.    was empowered to make distributions of principal as she solely chose, **Exhibit B**, page 10 (document numbered -Page 5-) Article V., §B.;

140. While she was the sole Successor Trustee of the Donald A. Campbell 2001 Trust, F. Margaret Campbell chose to expend her own funds and funds from the CFLP, for her care and living expenses, rather that expending funds of the Donald A. Campbell 2001 Trust, which discretion was expressly granted to F. Margaret as such Successor Trustee   **Exhibit B**, page 10 (document numbered -Page 5-) Article V., §B.;

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

141. Allen Campbell asserts that F. Margaret Campbell as Successor Trustee of the Donald A. Campbell 2001 Trust:

   a. did not have the authority *not* to expend funds from the Donald A. Campbell 2001 Trust, and,

   b. therefore had no discretion whether to expend such funds for her use, up to and including complete expenditure of all funds held in the Donald A. Campbell 2001 Trust, and,

   c. therefore, all expenses for F. Margaret's living and care expenses were *required* to be paid by the Donald A. Campbell 2001 Trust and,

   d. therefor, all of F. Margaret's expenses which Allen F. Campbell claims were required to be paid for by the Donald A. Campbell 2001 Trust, must now be disgorged by the Donald A. Campbell 2001 Trust, and paid to the F. Margaret Campbell 2011 Trust, which happens to have Allen Campbell as a 50% beneficiary;

Gid's Take on the Dispute

142. The Donald A. Campbell 2001 Trust gives complete discretion to F. Margaret Campbell as Successor Trustee thereof, to spend such Trust's funds solely according to F. Margaret Campbell's own discretion, as cited above;

143. F. Margaret Campbell was fully competent (until very shortly prior to her death in 2015) to manage the Donald A. Campbell 2001 Trust;

144. Allen Campbell has repeatedly asserted that F. Margaret Campbell was fully competent (until very shortly prior to her death in 2015) to manage her affairs;

145. Allen Campbell must continue to assert such competence by F. Margaret Campbell

Page -39-

after the death of Donald A. Campbell, because it was only after Donald A. Campbell's death that F. Margaret Campbell added Allen Campbell to be part of F. Margaret's estate plan, and if not competent to manage the CFLP, create and manage the F. Margaret Campbell 2011 Trust, and manage the Donald A. Campbell 2001 Trust then F. Margaret Campbell was not competent to add Allen Campbell to any part of F. Margaret Campbell's estate plan;

146. By reason that Allen Campbell was specifically and expressly excluded by Donald A. Campbell from any portion of Donald A. Campbell's estate plan, including the Donald A. Campbell 2001 Trust, Allen Campbell has no standing to assert any claim against the Donald A. Campbell Trust, for the discretion exercised by the fully competent F. Margaret Campbell as the duly appointed Successor Trustee thereof;

147. F. Margaret was expressly authorized by the Donald A. Campbell 2001 Trust, to exercise her sole discretion in deciding whether to expend fund from said Trust for her purposes;

Gid's Request to the Court Regarding this Dispute

148. Gid requests the Court declare whether F. Margaret Campbell was:

a. After the death of Donald A. Campbell, duly appointed as the Successor Trustee of the Donald A. Campbell 2001 Trust;

b. Empowered by the Donald A. Campbell 2001 Trust with complete discretion as Successor Trustee thereof, to spend such Trust's funds solely according to F. Margaret Campbell's own discretion;

c. Acting within her discretion as Successor Trustee of the Donald A. Campbell 2001 Trust, in not expended funds from such Trust for her own care and living expenses; and,

Page -40-

149. Gid requests the Court further declare:

    a.    Whether the Donald A. Campbell 2001 Trust was required to pay any sum of money (other than Trust income) to the F. Margaret Campbell 2011 Trust by reason of any sums F. Margaret Campbell spent from her own funds, for her own care, rather than spending funds from the Donald A. Campbell 2001 Trust, and,

    b.    If yes to question a. immediately above, to further declare what amount is now to be paid from the Donald A. Campbell 2001 Trust for such purpose;

### Campbell Family 2001 Descendants Trust

150. Attached hereto and marked **Exhibit C**, pages numbered Page 1 through Page 31, is a copy of the Campbell Family 2001 Descendants Trust;

151. The Campbell Family 2001 Descendants Trust was executed by Donald A. Campbell on or about July 2, 2001,

    **Exhibit C**, page 30, ("-Page 25" of the underlying Trust document);

152. Donald A. Campbell appointed F. Margaret Campbell as the initial Trustee of the Campbell Family 2001 Descendants Trust,

    **Exhibit C**, page 6, ¶1, ("-Page 1" of the underlying Trust document);

153. Donald A. Campbell appointed himself as the first Successor Trustee, then Frederick M. Campbell as the second Successor Trustee of the Campbell Family 2001 Descendants Trust,

    **Exhibit C**, page 14, Article IX., Trustees, §A. Appointment of Successor Trustees, ¶1 ("-Page 9" of the underlying Trust document);

154. By reason of the deaths of Donald A. Campbell, Frederick M. Campbell, and F. Margaret Campbell, a majority of the income beneficiaries of the Campbell Family

2001 Descendants Trust were authorized to appoint a successor trustee,

> **Exhibit C,** page 14, Article IX., <u>Trustees</u>, §A. Appointment of Successor Trustees, ¶2, ("-Page 9" of the underlying Trust document);

155. The majority of income beneficiaries of the Campbell Family 2001 Descendants Trust voted to appoint: Ava Havel, Manuela Hernandez, and Heather Wallace, as Co-Successor Trustees;

156. As Co-Successor Trustees, Ava Havel, Manuela Hernandez, and Heather Wallace are authorized to make decisions by majority rule, as provided in the Campbell Family 2001 Descendants Trust,

> **Exhibit C,** page 24 **Article X.** <u>Trustee's Rights and Discretions.</u>, §E. <u>Multiple Trustees</u>, subsection **2.** <u>Majority Rule.</u>, ("-Page 19" of the underlying Trust document);

157. The Campbell Family 2001 Descendants Trust was created for the primary benefit of Freda Margaret Campbell, and then Frederick M. Campbell,

> **Exhibit C,** page 6 (numbered "-Page 1-" of the trust document) under **Article I.  Name and Beneficiaries of Trust**; and,

158. By reason of the death of F. Margaret Campbell and Frederick M. Campbell, the beneficiaries of the Campbell Family 2001 Descendants Trust are:

a.    Ava Havel, 1/3 interest,

b.    Manuela Hernandez, 1/3 interest,

c.    Heather Wallace, 1/3 interest,

> **Exhibit C,** page 10, **Article IV. Establishment of Separate Trusts**, ¶2, (numbered "-Page 5-" of the trust document);

159. Donald A. Campbell specifically excluded Allen F. Campbell from any provision in The Campbell Family 2001 Descendants Trust,

> (**Exhibit C,** page 7,  ¶1, (numbered page 2,, of the trust document);

Page -42-

The Dispute

**160.** According to assertions and allegations made by Allen Campbell in his multitude of pleadings, and 'directives' aimed at many of the parties herein, the Donald A. Campbell 2001 Trust 'owes' sums of money to at least, the CFLP and the F. Margaret Campbell 2011 Trust;

**161.** Depending on certain rulings the Court may make in response to this filing, the Campbell Family 2001 Descendants Trust could be in a position of being alleged to be liable for payment of funds to at least, the CFLP and the F. Margaret Campbell 2011 Trust;

**162.** The parties to the various entities to the instant suit will need to be apprised of any duty of the Campbell Family 2001 Descendants Trust to 'repay' any sum of money to the CFLP and/or the F. Margaret Campbell 2011 Trust;

**163.** In order to carry out the administrative duties commensurate with his appointment by the Court as fiduciary, Gid requires a declaration by the Court of any duty of the Campbell Family 2001 Descendants Trust to pay any sum of money to:
   **a.** The Campbell Family Limited Partnership;
   **b.** the F. Margaret Campbell 2011 Trust;
   **c.** The F. Margaret Campbell 2011 Descendants Trust
   **d.** The Estate of F. Margaret Campbell, deceased;

Gid's Take on the Dispute

**164.** There is no sum of money due from the Campbell Family 2001 Descendants Trust, to:
   **a.** The Campbell Family Limited Partnership; or,

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS; TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

**b.**   the F. Margaret Campbell 2011 Trust; or,

**c.**   The F. Margaret Campbell 2011 Descendants Trust; or,

**d.**   The Estate of F. Margaret Campbell, deceased;

<u>Gid's Request to the Court Regarding this Dispute</u>

**165.**   Gid requests the Court declare whether there is any sum of money due from the Campbell Family 2001 Descendants Trust, to:

**a.**   The Campbell Family Limited Partnership; or,

**b.**   the F. Margaret Campbell 2011 Trust; or,

**c.**   The F. Margaret Campbell 2011 Descendants Trust; or,

**d.**   The Estate of F. Margaret Campbell, deceased;

## F. Margaret Campbell Will

**166.**   Attached hereto and marked **Exhibit D**, pages numbered Page 1 through Page 13, is a copy of the Last Will and Testament of F. Margaret Campbell;

**167.**   Last Will and Testament of F. Margaret Campbell was executed on April 19, 2011 by F. Margaret Campbell as the Testatrix, (**Exhibit D**, page 13);

**168.**   Gid is the duly appointed Administrator with Will Annexed, of the Estate of F. Margaret Campbell, deceased, as set forth in ¶2 hereinabove;

Page -44-

169. In F. Margaret Campbell's Last Will (as probated with this Court on May 20, 2016 in Case No. 2016 EST 216495), F. Margaret Campbell bequeathed $50,000.00 each to:

    a.    Ava Havel (**Exhibit D**, page 4, in Article II, ¶D),

    b.    Heather Campbell Bradford Wallace, fka Heather Campbell Reedy, (**Exhibit D**, page 5, Article II, ¶E),

    c.    Manuela Hernandez (**Exhibit D**, page 5, Article II, ¶F), and

    d.    Melissa McGee (**Exhibit D**, page 5, Article II, ¶G);

170. The payment of these legacies is authorized by F. Margaret Campbell's 2011 Trust, (**Exhibit E** page 8, Article III, ¶B, underlying document "-Page 3-").

171. As written by F. Margaret Campbell in her Will, these bequests are:

    a.    set forth in the aforesaid Article II, titled: "Tangible Personal Property and Specific Bequests", however,

    b.    As actually written, such bequests are in the form of general pecuniary bequests.

172. The residuary estate of F. Margaret Campbell is to be paid to the F. Margaret Campbell 2011 Trust, (**Exhibit D**, page 5, Article III, §A;

<u>The Matter to be Resolved</u>

173. Plaintiff must obtain the Court's declaration determining whether F. Margaret's $50,000.00 bequests each to Ava Havel, Heather Campbell Bradford Wallace, Manuela Hernandez, and Melissa McGee, are general pecuniary bequests, or 'specific bequests' to be paid before payment of any residuary legacy;

<u>Gid's Take on the Matter</u>

174. It appears to plaintiff that the scrivener of F. Margaret's Last Will, may not have been aware of the need to more accurately characterize 'specific' monetary gifts, therefore leaving a question of the intent of F. Margaret Campbell regarding these $50,000.00 bequests;

175. To the best of plaintiff's knowledge, no beneficiary under the Last Will of F. Margaret Campbell, or under the F. Margaret Campbell 2011 Trust or the F. Margaret Campbell 2011 Descendants Trust, have raised any objection to these 'bequests' being treated as 'specific bequests', to the extent funds are available to satisfy such bequests;

<u>Gid's Request to the Court Regarding this Matter</u>

176. Plaintiff seeks the Court's declaration of whether the $50,000 'bequests' each to Ava Havel, Heather Campbell Bradford Wallace, Manuela Hernandez, and Melissa McGee:

   a. Are to be administered as "specific bequests" or as "general pecuniary bequests; and,

   b. If such 'bequests' may be paid from the F. Margaret Campbell 2011 Trust as set forth in **Exhibit E** page 8, Article III, ¶B, (underlying document "-Page 3-") "Disposition of Personal Effects and Specific Bequests";

## F. Margaret Campbell 2011 Trust

177. Attached hereto and marked **Exhibit E**, pages numbered Page 1 through Page 35, is a copy of the F. Margaret Campbell 2011 Trust;

178. F. Margaret Campbell executed her F. Margaret Campbell 2011 Trust on or about April 19, 2011, **Exhibit E**, page 6;

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

179. F. Margaret Campbell created her F. Margaret Campbell 2011 Trust primarily for her own benefit (**Exhibit E**, page 6), and after her death, for her children;

180. F. Margaret Campbell expressly reserved to herself her right to deal with her Trust Estate as she saw fit, including all income, principal, and other assets of her Trust, (**Exhibit E**, Page 7, Article II, ¶A);

181. Gid is the duly appointed Successor Trustee of the F. Margaret Campbell 2011 Trust, as set forth in ¶2 hereinabove;

182. The total sum of value passing by reason of the death of F. Margaret Campbell is less than the 2015 Generation-Skipping Tax exemption of $5,430,000.00;

<u>Beneficiaries</u>

183. The F. Margaret Campbell 2011 Trust provides that personal effects are to be distributed as if part of F. Margaret's probate estate, **Exhibit E**, page 8 (underlying document "-Page 3-"), Article III. Administration After My Death, ¶B; with,

184. The remainder to be distributed according to **Exhibit E**, pages 8-9 (underlying document "-Page 3-"), Article III. Administration After My Death, ¶C, subparagraphs 1 and 2:

   a. To the F. Margaret Campbell 2011 Descendants Trust, to the extent of the Generation-Skipping Tax exemption (GST) which is allocated by Gid as Executor of the Estate of F. Margaret Campbell, deceased, to the Trust Estate; with,

   b. The greater of the numerator, or the aggregate value of the Divisible Estate as finally determined for federal estate tax purposes for the F. Margaret Campbell estate; and,

c.     Any balance remaining after such allocation to the F. Margaret Campbell
2011 Descendants Trust, to be allocated to the F. Margaret Campbell 2011
Family Trust;

Regarding the 'Specific Bequests"

**185.**     The 'specific bequests' contained in the Last Will of F. Margaret Campbell, may be
payable from the F. Margaret Campbell 2011 Trust, or the F. Margaret Campbell
2011 Descendants Trust, depending upon the ruling of the Court in this case;

**186.**     The payment of any 'specific bequests' contained in the Last Will of F. Margaret
Campbell, from either the F. Margaret Campbell 2011 Trust, or the F. Margaret
Campbell 2011 Descendants Trust, will necessarily affect the sums available to be
distributed to the beneficiaries of the F. Margaret Campbell 2011 Trust and/or the
F. Margaret Campbell 2011 Descendants Trust;

Funds taken by Allen F. Campbell from the F. Margaret Campbell Trust(s),

**187.**     Within a few weeks of F. Margaret's death, Allen Campbell began pursuit of his
litigation strategy which has ultimately caused the need for the instant suit by
plaintiff;

**188.**     As part of his litigation strategy, Allen Campbell engaged forensic accountants and
attorneys in Allen's attempt to support his theory that:

a.     The death benefits from the Monarch Life Insurance policies should have
been pre-empted by 'cashing-out' their net cash surrender value prior to
Donald A. Campbell's death; and,

b.     All expenses for which F. Margaret chose to pay from her own funds,

should have been paid exclusively from funds in the Donald A. Campbell 2001 Trust, or the Campbell Family 2001 Descendants Trust;

189. In pursuit of his personal theories, Allen paid to himself or others from the funds of the F. Margaret Campbell 2011 Trust, the sum of not less than $135,502.76, for his own use, and alleged "reimbursement" for expenditures he made in pursuit of his litigation strategy, as set forth in **Exhibit I** and **Exhibit J**, attached hereto;

The Dispute
Regarding the 'Specific Bequests"

190. As set forth hereinabove, a declaration by the Court is necessary before Gid can make distributions from the F. Margaret Campbell 2011 Trust, to satisfy the 'specific bequests' recited in F. Margaret Campbell's Last Will, if declared to be such by the Court, as set forth above;

Regarding Sums Taken by Allen Campbell for Litigation

191. After Gid's extensive review of the Monarch Life Insurance policies and their related documents referred to herein, and the Campbell Family Limited Partnership Agreement, there appears no basis in law, or fact, to support any claim that the CFLP was in any way *required* to secure the net cash surrender value of the Monarch Life Insurance policies, prior to Donald A. Campbell's death;

192. Allen Campbell maintains, and continues to pursue suits claiming that the CFLP had an affirmative duty to secure the net cash surrender value of the Monarch Life Insurance policies, prior to Donald A. Campbell's death;

193. Based upon Gid's extensive review of all the documents attached as Exhibits hereto, the quest upon which Allen Campbell embarked in his attempt to 'prove' that the Monarch Life Insurance policies should have been 'cashed-out', and that

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

all F. Margaret's expenses were *required* to be paid by the Donald A. Campbell 2001 Trust, did not, and could not have, and cannot now have, any benefit the F. Margaret 2011 Trust, or decedent's Estate;

194.     Allen Campbell took the sum of not less than $135,502.76 from the F. Margaret Campbell 2011 Trust, to pay for his pursuit of his claim(s) alleging that the CFLP had an affirmative duty to secure the net cash surrender value of the Monarch Life Insurance policies, prior to Donald A. Campbell's death which claims are contrary to the terms of the actual controlling documents;

195.     The F. Margaret Campbell 2011 Trust appears to be entitled to a recoupment of not less than $135,502.76 for the Trust funds taken and/or expended by Allen Campbell in his pursuit of:

   a.     Allen Campbell's litigation regarding the two life insurance policies set forth herein, and,

   b.     Allen Campbell's pursuit of payment from the Donald A. Campbell 2001 Trust for sums he claims should have been paid for the care of F. Margaret, while F. Margaret was the Successor Trustee of the Donald A. Campbell 2001 Trust;

196.     There must be a determination of whether any sums remaining in the F. Margaret Campbell 2011 Trust, must be paid to the F. Margaret Campbell 2011 Descendants Trust, and administered according to the terms of the F. Margaret Campbell 2011 Descendants Trust;

197.     Depending on the declarations of the Court in this case, there may remain the additional matter of the proper allocation of any funds from the F. Margaret Campbell 2011 Trust to the F. Margaret Campbell 2011 Descendants Trust, and, if any other funds, ultimately to the F. Margaret Campbell 2011 Family Trust;

Gid's Take on the Dispute

Regarding the 'Specific Bequests"

198. Regarding the 'specific bequests' to to Ava Havel, Heather Campbell Bradford Wallace, Manuela Hernandez, and Melissa McGee as set forth in the Last Will of F. Margaret Campbell:

  a. To the best of plaintiff's knowledge, no beneficiary under the F. Margaret Campbell 2011 Trust or the F. Margaret Campbell 2011 Descendants Trust, has raised any objection to these 'bequests' being treated as 'specific bequests', to the extent funds are available to satisfy such bequests;

  b. Gid will, to the extent permitted by funds held by the F. Margaret Campbell Trust(s), carry out whatever action the Court rules to be done in connection with the 'specific bequests'; and,

  c. If the Court declares the 'specific bequests' are to be made, that Gid needs the Court to further declare whether such payments be made after payment of the expenses of administration of the Estate of F. Margaret Campbell, deceased, and the F. Margaret Campbell 2011 Trust and F. Margaret Campbell 2011 Descendants Trust;

199. By reason that the total sum of value passing by reason of the death of F. Margaret Campbell is less than the 2015 GST exemption of $5,430,000.00, that all allocations of funds attributable to the passing of F. Margaret Campbell which are not otherwise passing by contract to any other specifically named beneficiary, should be allocated to the F. Margaret Campbell 2011 Descendants Trust, after the administration of the F. Margaret Campbell 2011 Trust is completed;

<u>Regarding Sums Taken by Allen Campbell for Litigation</u>

200.  The F. Margaret Campbell 2011 Trust and the F. Margaret Campbell 2011 Descendants Trust, in no way benefitted, and could not have benefitted, and cannot now benefit, from Allen Campbell's expenditure of the sum of not less than $135,502.76 in pursuit of Allen Campbell's litigation strategy regarding the Monarch Life Insurance policies, and F. Margaret Campbell's expenditures of funds for her own care;

201.  Plaintiff seeks to recoup from Allen F. Campbell, which plaintiff reasonably believes to be in the sum of not less than $135,502.76, through either repayment in cash or deduction from sums which would otherwise be payable to Allen F. Campbell as a beneficiary of F. Margaret's Will or Trust(s) or some combination thereof   as recovery of 'expenses' Allen Campbell created, and then paid himself, in his pursuit of his baseless claims;

202.  Regarding any sums that may be declared by the Court to be 'recouped' from Allen F. Campbell, or deducted from any sum which would (or could) otherwise be distributable to Allen F. Campbell under the terms of the F. Margaret Campbell 2011 Trust:

   a.  Gid needs the Court to declare if any sums are to be 'recouped' from or repaid by Allen Campbell, in connection with the funds Allen Campbell took from the F. Margaret Campbell 2011 Trust, and the amount of such sums;

   b.  Gid needs the Court to declare if Gid as Trustee of the F. Margaret Campbell 2011 Trust:

      (1)  Must pursue Allen Campbell for repayment of sums he took from the F. Margaret Campbell 2011 Trust; or,

(2)     May deduct (or offset) any sum that would otherwise be payable to Allen Campbell under the terms of the F. Margaret Campbell 2011 Trust, with the sums the Court may declare were wrongfully taken by, and owed by Allen Campbell to the F. Margaret Campbell 2011 Trust;

## Gid's Request to the Court Regarding this Dispute

### Regarding the 'Specific Bequests"

203.    Gid requests the Court declare whether the 'specific bequests' are to be made from the F. Margaret Campbell 2011 Trust to: Ava Havel, Heather Campbell Bradford Wallace, Manuela Hernandez, and Melissa McGee;

204.    Gid further requests the Court declare whether such payments of 'specific bequests' be made after payment of the expenses of administration of the Estate of F. Margaret Campbell, deceased, and the F. Margaret Campbell 2011 Trust and F. Margaret Campbell 2011 Descendants Trust; and,

205.    That the F. Margaret Campbell 2011 Descendants Trust is the beneficiary of the F. Margaret Campbell 2011 Trust;

### Regarding Sums Taken by Allen Campbell for Litigation

206.    Gid requests the Court declare:

a.      The sum of not less than $135,502.76, and such other sum(s) as the Court may further declare, should be deducted from any sum Allen Campbell would otherwise receive as any potential benefit from the F. Margaret Campbell 2011 Trust and the F. Margaret Campbell 2011 Descendants Trust, by reason that Allen Campbell's expenditures of such funds:

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

**(1)** Were not in the best interests of the F. Margaret Campbell 2011 Trust and the F. Margaret Campbell 2011 Descendants Trust;

**(2)** Did not benefit, and could not have benefitted, and cannot now benefit, the F. Margaret Campbell 2011 Trust and the F. Margaret Campbell 2011 Descendants Trust; and,

**(3)** Were not supported by any clear reading of the documents executed by F. Margaret Campbell and Donald A. Campbell; and,

**b.** That if the sum owed by Allen Campbell to the F. Margaret Campbell 2011 Trust exceeds the amount that would otherwise be distributable to Allen Campbell in the absence of his pursuit of his baseless claims as set forth in this complaint, such balance owed by Allen Campbell to the F. Margaret Campbell 2011 Trust:

**(1)** Gid may deduct (or offset) any sum that would otherwise be payable to Allen Campbell under the terms of the F. Margaret Campbell 2011 Trust, with the sums the Court may declare were wrongfully taken by, and owed by Allen Campbell to the F. Margaret Campbell 2011 Trust; and,

**(2)** Gid may pursue Allen Campbell for repayment of sums he took from the F. Margaret Campbell 2011 Trust; or,

**(3)** Gid may assign any right of the F. Margaret Campbell 2011 Trust or the F. Margaret Campbell 2011 Descendants Trust, to recovery of sums from Allen Campbell, to any person or entity of Gid's choosing, which may be in the best interests of the F. Margaret Campbell 2011 Trust or the F. Margaret Campbell 2011 Descendants Trust, subject to approval of the Court;

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

**F. Margaret Campbell 2011 Descendants Trust**

207. Attached hereto and marked **Exhibit F**, pages number Page 1 through Page 34, is a copy of the F. Margaret Campbell 2011 Descendants Trust;

208. F. Margaret Campbell executed her F. Margaret Campbell 2011 Descendants Trust on or about April 19, 2011, **Exhibit F**, page 6;

209. F. Margaret Campbell created her F. Margaret Campbell 2011 Descendants Trust primarily for her own benefit (**Exhibit F**, page 6, Article I, ¶5 on said page 6), and after her death, for her children;

210. F. Margaret Campbell expressly reserved to herself her right to deal with her F. Margaret Campbell 2011 Descendants Trust estate as she saw fit, including all income, principal, and other assets of her said Trust, (**Exhibit F**, Page 7, Article II, ¶A;

Beneficiaries

211. F. Margaret Campbell declared that upon her death, the beneficiaries of the F. Margaret Campbell 2011 Descendants Trust to be:

   a. Allen Campbell   50%,
      (**Exhibit F**, page 6, Article I. Name and Beneficiaries of Trust; and, (**Exhibit F**, page 9, Article IV. Establishment of Separate Trusts, ¶1, and subparagraphs 1 and 2); and,

   b. By reason of the death of Frederick M. Campbell prior to the death of F. Margaret Campbell, (**Exhibit F**, page 6, Article I. Name and Beneficiaries of Trust; and, (**Exhibit F**, page 9, Article IV. Establishment of Separate Trusts,

Page -55-

¶1 and subparagraphs 1 and 2, and page 10, ¶2 and subparagraphs 1 and 2 thereunder):

**(1)**      Ava Havel    25% (as the daughter of Frederick M. Campbell);

**(2)**      Manuela Hernandez    25% (as declared by F. Margaret Campbell as the daughter of Frederick M. Campbell);

## The Dispute

**212.**   By reason of the extensive litigation that has been encountered in attempting to administer the probate Estate, and Trust(s) of F. Margaret Campbell, in order to avoid further litigation, plaintiff requires direction from the Court in the form of a declaration of:

**a.**      The identities of the beneficiaries of the   F. Margaret Campbell 2011 Descendants Trust; and,

**b.**      The percentages of the F. Margaret Campbell 2011 Descendants Trust to which each of the beneficiaries thereof, is entitled to receive;

## Gid's Take on the Dispute

**213.**   By reason of the continuous litigation that has ensued since the death of F. Margaret Campbell in 2015, Gid reasonably believes and does believe, that in order to prevent further litigation, or to at a minimum lessen the likelihood of further litigation or the length of any further litigation, that a declaration by the Court of the identity of the beneficiaries of the F. Margaret Campbell 2011 Descendants Trust and the percentages of such Trust attributable to such beneficiaries, is necessary to enable Gid to competently administer his duties as appointed by the Court;

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

214. In the absence of a declaration by the Court of the identity of the beneficiaries of the F. Margaret Campbell 2011 Descendants Trust, and the percentages of said Trust to be taken by the declared beneficiaries thereof, that additional litigation is likely to undertaken by one or more of the defendants herein regarding the Estate of F. Margaret Campbell, deceased, and/or the F. Margaret Campbell 2011 Trust and/or the F. Margaret Campbell 2011 Descendants Trust;

<u>Gid's Request to the Court Regarding this Dispute</u>

215. Gid requests that the Court declare the F. Margaret Campbell 2011 Descendants Trust to be the beneficiary of the F. Margaret Campbell 2011 Trust; and,

216. That the beneficiaries of the F. Margaret Campbell 2011 Descendants Trust are, with corresponding percentage of the residual distributable Trust assets attributable to each such beneficiary, as follows:

    a.    Allen Campbell   50%,

    b.    Ava Havel   25%,

    c.    Manuela Hernandez   25%;

## The Single-Premium Variable Life Insurance Policies:

### Policy No. LD0033874,

217. On or about November 6, 1985, Donald A. Campbell executed an Application for Single Premium Variable Life Insurance, with Monarch Life Insurance Company of Springfield, Massachusetts, a copy of which is attached hereto as **Exhibit G - Part 1, pages 1 - 11**, (containing pages labeled LD0033874 Policy File Redacted, pages numbered Page 1 through Page 11), with said Policy being identified therein as **LD0033874**;

218. Monarch Life Insurance Company (later Merrill Lynch Life Insurance Company,

as later administered by Transamerica) Policy No. **LD0033874**, was always identified by Policy No. LD0033874, even if reported for convenience of the policy owner(s) and/or those with a beneficial interest in the value of the policy, on various monthly, quarterly, or annual statements, along with other holdings of the owner(s) and/or those with beneficial interests in the value of the policy;

219.  From the application date of insurance Policy No. LD0033874, through May 2010, the insurer reported information regarding said Policy in monthly statements, correspondence, and other documents, variously with 'account numbers' associated with Donald A. Campbell, Donald A. and F. Margaret Campbell, and the Campbell Family Limited Partnership, such 'account numbers' being: 650-60737, 612-24915, 612-32800, 612-24917, 612-07A83, which 'account numbers' appear variously in attached **Exhibit G, Parts 1 through 9**, while always identifying **Policy No. LD0033874** specifically;

220.  The quarterly or monthly statements, correspondence, and other documents reporting asset values and the insurer-assigned 'account numbers', provided variously to Donald A. Campbell, Donald A. Campbell and F. Margaret Campbell, and the Campbell Family Limited Partnership, did not affect the contractual rights and obligations of the insurer, owner, insured, or beneficiary of Monarch Life Insurance Company (later Merrill Lynch Life Insurance Company, as later administered by Transamerica) Policy No. LD0033874, and did not change the insured, the owner, or the beneficiary of said Policy LD0033874;

221.  Said Policy No. LD0033874 was issued on or about January 28, 1986 by Monarch Life Insurance Company, with the following criteria;

a.  Single Premium Variable Life Insurance,

b.  Policy identified as Policy No. LD0033874,

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

    c.      Donald A. Campbell as the Owner of Policy LD0033874,

    d.      Donald A. Campbell as the Insured of Policy LD0033874,

    e.      F. Margaret Campbell as the Beneficiary of Policy LD0033874,

    f.      Single Premium of $250,000.00 paid for Policy No. LD0033874,

    g.      Initial death benefit payable on Policy No. LD0033874 of $358,604.00,

all as depicted in attached **Exhibit G - Part 9, pages 32 - 34**, (containing pages labeled LD0033874 Policy File Redacted, pages numbered Page 31 through 33);

222.    On or about July 25, 1993, Donald A. Campbell as the owner of Policy LD0033874 executed a Change of Beneficiary form, witnessed by F. Margaret Campbell on or about July 25, 1993, changing the Beneficiary of Policy No. LD0033874 to the Donald A. Campbell Trust, as depicted in attached **Exhibit G - Part 2, page 13**, (containing pages labeled LD0033874 Policy File Redacted, page numbered Page 84);

223.    On or about October 14, 1993, Merrill Lynch Insurance Group Services, Inc., Variable Life Service Center, acknowledged by letter of said date, addressed to Donald A. Campbell, the change of beneficiary regarding Policy No. LD0033874, as depicted in attached **Exhibit G - Part 2, page 12**, (containing pages labeled LD0033874 Policy File Redacted, page numbered Page 83)

224.    On or about July 16, 1997, Donald A. Campbell as the owner of Policy LD0033874 executed a Change or Transfer of Ownership form, with new owners Donald A. Campbell and F. Margaret Campbell signing said form on or about July 16, 1997, changing the Owner of Policy No. LD0033874 to Donald A. Campbell and F. Margaret Campbell, as depicted in attached **Exhibit G - Part 3, pages 15 - 16**, (containing pages labeled LD0033874 Policy File Redacted, pages numbered Page

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

101 through Page 103);

225. On or about July 31, 1997, Merrill Lynch Insurance Group Services, Inc., Variable Life Service Center, acknowledged by letter of said date, addressed to Donald A. & F. Margaret Campbell, the change of owner from Donald A. Campbell to Donald A. Campbell & F. Margaret Campbell regarding Policy No. LD0033874, as depicted in attached **Exhibit G - Part 3, page 14**, (containing page labeled LD0033874 Policy File Redacted, page numbered Page 101);

226. On or about September 30, 1997, Donald A. Campbell and F. Margaret Campbell as the owners of Policy LD0033874 executed a Change or Transfer of Ownership form, with Donald A. Campbell and F. Margaret Campbell as general partners of the new owner the Campbell Family Limited Partnership signing said form on or about September 30, 1997, changing the Owner of Policy No. LD0033874 to the Campbell Family Limited Partnership, as depicted in attached **Exhibit G - Part 4, pages 19 - 22**, (containing pages labeled LD0033874 Policy File Redacted, pages numbered Page 109 through Page 112);

227. On or about November 26, 1997, Merrill Lynch Insurance Group Services, Inc., Variable Life Service Center, acknowledged by letter of said date, addressed to the Campbell Family Limited Partnership, the change of owner from Donald A. Campbell & F. Margaret Campbell to the Campbell Family Limited Partnership regarding Policy No. LD0033874, as depicted in attached **Exhibit G - Part 4, pages 17 - 18**, (containing pages labeled LD0033874 Policy File Redacted, pages numbered Page 107 and Page 108);

228. From not later than November 26, 1997, until Donald A. Campbell's date of death on February 22, 2010:

   a. The ownership of Policy No. LD0033874 remained in the Campbell Family

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

Limited Partnership;

**b.** The Donald A. Campbell Trust, through various amendment(s) and/or restatements (ultimately resulting in the Donald A. Campbell 2001 Trust), at all times remained the sole beneficiary of Policy No. LD0033874;

**c.** The General Partner(s) of the Campbell Family Limited Partnership was/were able to change the ownership and beneficiary of Policy No. LD0033874, but never changed the ownership or beneficiary of Policy No. LD0033874 after the Campbell Family Limited Partnership became the owner of Policy No. LD0033874;

**d.** The Campbell Family Limited Partnership was under no duty or obligation to any person or entity, to have cashed-out or otherwise obtained the Net Cash Surrender Value of Policy No. LD0033874, prior to Donald A. Campbell's date of death;

**e.** The General Partner(s) of the CFLP were authorized to accept into and retain any asset in the CFLP, with no duty to change the nature of such asset, as expressly set forth the CFLP Agreement, as follows:

"***§5.2 <u>Rights and Powers</u>. The General Partners may take any action permitted by this Agreement and the Act to accomplish the Partnership Purposes, including, by way of illustration by not by way of limitation, the following: ***
( c) Retaining, without liability, any property in the form it is received without regard to its productivity or the proportion that any one asset or class of assets may bear to the whole***";
**Exhibit A**, page 16 (CFLP document numbered page "-10-"), subparagraph ( c);

229. By reason that Policy No. LD0033874 was in effect at the moment of Donald A. Campbell's death, and the sole beneficiary of Policy LD0033874 was the Donald A. Campbell Trust, the only person or entity contractually or legally entitled to the death benefit(s) due on Policy No. LD0033874, was the Donald A. Campbell 2001 Trust;

230. The only entity to which Monarch Life Insurance Company/Merrill Lynch Life Insurance Company/Transamerica could contractually and legally pay the death benefits due on Policy No. LD0033874, was the Donald A. Campbell 2001 Trust, and no other person or entity;

231. On February 22, 2010, Donald A. Campbell died, and a death certificate was issued reflecting this fact, a copy of which was transmitted to Merrill Lynch Life Insurance Company, a copy of which is attached hereto and marked **Exhibit G - Part 5, page 23**, (containing a page labeled LD0033874 Policy File Redacted, page numbered Page 144);

232. On or about March 18, 2010:
   a. F. Margaret Campbell executed a Merrill Lynch Life Insurance Company "Life Claimant Statement for Trusts/Estates",

   b. Claiming death benefits payable on Policy No. LD0033874,

   c. To be paid in a lump-sum to the named beneficiary, namely the Donald A. Campbell Trust u/a/d 3/25/93, which Trust,

      (1) As of July 2, 2001, had been amended and restated to be referred to as the Donald A. Campbell 2001 Trust,

   d. Said claim form being so executed by F. Margaret Campbell and submitted

Page -62-

to Merrill Lynch Life Insurance Company on or about March 18, 2010, as depicted in attached **Exhibit G - Part 6, Policy LD0033874 pages 24 - 26**, (containing pages labeled LD0033874 Policy File Redacted, pages numbered Page 139 through Page 141);

233. On or about April 28, 2010, Merrill Lynch Insurance Company calculated the total death benefit and post-mortem insurance payable under Policy No. LD0033874 to the Donald A. Campbell Trust   the named beneficiary of said Policy No. LD0033874, to be $759,727.88, as depicted in attached **Exhibit G, Part 7, Policy LD0033874 pages 27 - 29**, (containing pages labeled LD0033874 Policy File Redacted, pages numbered Page 156 through Page 158);

234. On or about April 29, 2010, Merrill Lynch Life Insurance Company properly made payment of the $759,727.88 death benefit and post-mortem interest due on Merrill Lynch Life Insurance Company (formerly Monarch Life Insurance Company) Single Premium Variable Life Insurance Policy No. LD0033874, to the Donald A. Campbell Trust, as depicted in attached **Exhibit G - Part 8, Policy LD0033874, pages 30 - 31**, (containing pages labeled LD0033874 Policy File Redacted, pages numbered Page 159 and Page 171);

235. Merrill Lynch Life Insurance Company properly paid the $759,727.88 death benefit and post-mortem interest due as the death benefit required by Policy No. LD0033874, to the Donald A. Campbell Trust, and the Donald A. Campbell Trust was the only entity contractually and legally entitled to receive such death benefits upon the death of Donald A. Campbell on February 22, 2010;

**Policy No. LD0048212:**

236. On or about July 22, 1986, Donald A. Campbell executed an Application for Modified Single Premium Variable Life Insurance, with Monarch Life Insurance

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

Company of Springfield, Massachusetts, as depicted in attached **Exhibit H - Part 1, pages 1 -7**, (containing pages labeled LD0048212 Policy File Redacted, pages numbered Page 1 through Page 7), with said Policy being identified therein as **LD0048212**;

237. Monarch Life Insurance Company (later Merrill Lynch Life Insurance Company, as later administered by Transamerica) Policy No. LD0048212 was always identified by Policy No. LD0048212, even if reported for convenience of the policy owner(s) and/or those with a beneficial interest in the value of the policy, on various monthly, quarterly, or annual statements, along with other holdings of the owner(s) and/or those with beneficial interests in the value of the policy;

238. From the application date of insurance Policy No. LD0048212, through May 2010, the insurer reported information regarding said Policy in monthly statements, correspondence, and other documents, variously with 'account numbers' associated with Donald A. Campbell, Donald A. and F. Margaret Campbell, and the Campbell Family Limited Partnership, such 'account numbers' being: 650-60737, 612-24915, 612-32800, 612-24917, 612-07A83, which 'account numbers' appear variously in attached **Exhibit H**, Parts 1 through 9, while always identifying Policy No. LD0048212 specifically;

239. The quarterly or monthly statements, correspondence, and other documents reporting asset values and the insurer-assigned 'account numbers', provided variously to Donald A. Campbell, Donald A. Campbell and F. Margaret Campbell, and the Campbell Family Limited Partnership, did not affect the contractual rights and obligations of the insurer, owner, insured, or beneficiary of Monarch Life Insurance Company (later Merrill Lynch Life Insurance Company, as later administered by Transamerica) Policy No. LD0048212, and did not change the insured, the owner, or the beneficiary of said Policy LD0048212.

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

240. The initial death benefit payable on Policy No. LD0048212 was $212,175.00, as depicted in attached **Exhibit H - Part 1, pages 6 -7,** (containing pages labeled LD0048212 Policy File Redacted, pages numbered Page 6 and Page 7),

241. Said Policy No. LD0048212 was issued on or about July 23, 1986 by Monarch Life Insurance Company, with the following criteria as set forth in the Monarch Life Insurance Policy Issue Summary:

    **a.**    Single Premium Variable Life Insurance,

    **b.**    Policy identified as Policy No. LD0048212,

    **c.**    Donald A. Campbell as the Owner of Policy LD0048212,

    **d.**    Donald A. Campbell as the Insured of Policy LD0048212,

    **e.**    F. Margaret Campbell as the Beneficiary of Policy LD0048212,

    **f.**    Single Premium of $150,000.00 paid for Policy No. LD0048212,

All as depicted in attached **Exhibit H - Part 2, page 8,** (containing page labeled LD0048212 Policy File Redacted, page numbered Page 11);

242. On or about July 25, 1993, Donald A. Campbell as the owner of Policy LD0048212 executed a Change of Beneficiary form, witnessed by F. Margaret Campbell on or about July 25, 1993, changing the Beneficiary of Policy No. LD0048212 to the Donald A. Campbell Trust, as depicted in attached **Exhibit H - Part 3, page 10,** (said Part 3 containing pages labeled LD0048212 Policy File Redacted, pages numbered Page 57 and Page 58);

243. On or about October 14, 1993, Merrill Lynch Insurance Group Services, Inc., Variable Life Service Center, acknowledged by letter of said date, addressed to Donald A. Campbell, the change of beneficiary regarding Policy No. LD0048212, as depicted in attached **Exhibit H - Part 3, page 9,** (said Part 3 containing pages

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

labeled LD0048212 Policy File Redacted, pages numbered Page 57 and Page 58);

244.    On or about July 16, 1997, Donald A. Campbell as the owner of Policy LD0048212 executed a Change or Transfer of Ownership form, with new owners Donald A. Campbell and F. Margaret Campbell signing said form on or about July 16, 1997, changing the Owner of Policy No. LD0048212 to Donald A. Campbell and F. Margaret Campbell, as depicted in attached **Exhibit H - Part 4, page 12**, (containing pages labeled LD0048212 Policy File Redacted, pages numbered Page 70 through Page 72);

245.    On or about July 31, 1997, Merrill Lynch Insurance Group Services, Inc., Variable Life Service Center, acknowledged by letter of said date, addressed to Donald A. & F. Margaret Campbell, the change of owner from Donald A. Campbell to Donald A. Campbell & F. Margaret Campbell regarding Policy No. LD0048212, as depicted in attached **Exhibit H - Part 4 page 11**, (containing pages labeled LD0048212 Policy File Redacted, pages numbered Page 70 through Page 72);

246.    On or about July 30, 1997, Donald A. Campbell and F. Margaret Campbell as the owners of Policy LD0048212 executed a Change or Transfer of Ownership form, with Donald A. Campbell and F. Margaret Campbell as general partners of the new owner the Campbell Family Limited Partnership signing said form on or about July 30, 1997, changing the Owner of Policy No. LD0048212 to the Campbell Family Limited Partnership, as depicted in attached **Exhibit H - Part 5 pages 16 - 19**, (containing pages labeled LD0048212 Policy File Redacted, pages numbered Page 85 through Page 90);

247.    On or about November 26, 1997, Merrill Lynch Insurance Group Services, Inc., Variable Life Service Center, acknowledged by letter of said date, addressed to the Campbell Family Limited Partnership, the change of owner from Donald A. Campbell & F. Margaret Campbell to the Campbell Family Limited Partnership

Page -66-

regarding Policy No. LD0048212, as depicted in attached **Exhibit H - Part 5, pages 14 - 15**, (containing pages labeled LD0048212 Policy File Redacted, pages numbered Page 85 through Page 90);

248. From not later than November 26, 1997, until Donald A. Campbell's date of death on February 22, 2010:

    a.    The ownership of Policy No. LD0048212 remained in the Campbell Family Limited Partnership;

    b.    The Donald A. Campbell Trust, through various amendment(s) and/or restatement(s) (ultimately resulting in the Donald A. Campbell 2001 Trust), at all times remained the sole beneficiary of Policy No. LD0048212;

    c.    The Campbell Family Limited Partnership was able to change the ownership and beneficiary of Policy No. LD0048212, but never did change the ownership or beneficiary of Policy No. LD0048212;

    d.    The Campbell Family Limited Partnership was under no duty or obligation to any person or entity, to have cashed-out or otherwise obtained the Net Cash Surrender Value of Policy No. LD0048212, prior to Donald A. Campbell's date of death;

    e.    The General Partner(s) of the CFLP were authorized to accept into and retain any asset in the CFLP, with no duty to change the nature of such asset, as expressly set forth the CFLP Agreement, as follows:

"***§5.2 Rights and Powers.  The General Partners may take any action permitted by this Agreement and the Act to accomplish the Partnership Purposes, including, by way of illustration by not by way of limitation, the following: ***

( c)    Retaining, without liability, any property in the form it is received without regard to its productivity or the proportion that any one asset or class of assets may bear to the whole***";

**Exhibit A**, page 16 (CFLP document numbered page "-10-"), subparagraph ( c);

249.    By reason that Policy No. LD0048212 was in effect at the moment of Donald A. Campbell's death, and the sole beneficiary of Policy LD0048212 was the Donald A. Campbell Trust, the only person or entity contractually and legally entitled to the death benefit due on Policy No. LD0048212, was the Donald A. Campbell 2001 Trust;

250.    The only entity to which Monarch Life Insurance Company/Merrill Lynch Life Insurance Company/Transamerica could contractually and legally pay the death benefits due on Policy LD 0048212, was the Donald A. Campbell 2001 Trust, and no other person or entity;

251.    On February 22, 2010, Donald A. Campbell died, and a death certificate was issued reflecting this fact, a copy of which was transmitted to Merrill Lynch Life Insurance Company, a copy of which is attached hereto and marked **Exhibit H - Part 6, page 20,** (containing a page labeled LD0048212 Policy File Redacted, page numbered Page 124);

252.    On or about March 18, 2010:

a.      F. Margaret Campbell executed a Merrill Lynch Life Insurance Company "Life Claimant Statement for Trusts/Estates",

b.      Claiming death benefits payable on Policy No. LD0048212,

c.      To be paid in a lump-sum to the named beneficiary, namely the Donald A. Campbell Trust u/a/d 3/25/93, which Trust,

Page -68-

> (1) As of July 2, 2001, had been amended and restated to be referred to as the Donald A. Campbell 2001 Trust,

> **d.** Said claim form being so executed by F. Margaret Campbell and submitted to Merrill Lynch Life Insurance Company on or about March 18, 2010, as depicted in attached **Exhibit H - Part 7, pages 21 - 23**, (containing pages labeled LD0048212 Policy File Redacted, pages numbered Page 140 through Page 142);

253. On or about April 28, 2010, Merrill Lynch Insurance Company calculated the total death benefit and post-mortem insurance payable under Policy No. LD0048212 to the Donald A. Campbell Trust    the named beneficiary of said Policy No. LD0048212, to be $332,188.30, as depicted in attached **Exhibit H - Part 8, pages 24 and 25**, (containing pages labeled LD0048212 Policy File Redacted, pages numbered Page 137 and Page 138);

254. On or about April 29, 2010, Merrill Lynch Life Insurance Company properly made payment of the $332,188.30 death benefit and post-mortem interest due on Merrill Lynch Life Insurance Company (formerly Monarch Life Insurance Company) Modified Single Premium Variable Life Insurance Policy No. LD0048212, to the Donald A. Campbell Trust, as depicted in attached **Exhibit H - Part 9, pages 26 and 27**, (containing pages labeled LD0048212 Policy File Redacted, pages numbered Page 139 and Page 143);

255. Merrill Lynch Life Insurance Company properly paid the $332,188.30 death benefit and post-mortem interest due as the death benefit required by Policy No. LD0048212, to the Donald A. Campbell Trust, and the Donald A. Campbell Trust was the only entity contractually and legally entitled to receive such death benefits upon the death of Donald A. Campbell on February 22, 2010;

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

The Dispute

256. Allen Campbell asserts that F. Margaret Campbell as General Partner of the CFLP, had an affirmative duty, prior to Donald A. Campbell's date of death, to 'cash-out' the net cash surrender value of:

a. Policy No. LD0033874, and,

b. Policy No. LD0048212; and,

c. Deposit the 'cashed-out' funds from Policy No. LD0033874 and Policy No. LD0048212 to the CFLP;

Gid's Take on the Dispute

257. F. Margaret Campbell as the General Partner of the CFLP, had no affirmative duty to 'cash-out' the net cash surrender value of:

a. Policy No. LD0033874, and,

b. Policy No. LD0048212; and,

c. Deposit the 'cashed-out' funds from Policy No. LD0033874 and Policy No. LD0048212 to the CFLP; and,

d. As General Partner of the CFLP, was specifically authorized by the CFLP Agreement hold assets (in this case both insurance policies) in the form as received by the CFLP,

> **Exhibit A**, page 16 (CFLP document numbered page "-10-"), §5.2 Rights and Powers., subparagraph ( c);

258. Merrill Lynch Life Insurance Company properly paid the $759,727.88 death benefit and post-mortem interest due as the death benefit required by Policy No. LD0033874, to the Donald A. Campbell Trust, and the Donald A. Campbell Trust was the only entity contractually and legally entitled to receive such death benefits upon the death of Donald A. Campbell on February 22, 2010;

259. Merrill Lynch Life Insurance Company properly paid the $332,188.30 death

benefit and post-mortem interest due as the death benefit required by Policy No. LD0048212, to the Donald A. Campbell Trust, and the Donald A. Campbell Trust was the only entity contractually and legally entitled to receive such death benefits upon the death of Donald A. Campbell on February 22, 2010;

260.   Upon Merrill Lynch Life Insurance Company's payment of the death benefits due on both Policy No. LD0033874 and Policy No. LD0048212, F. Margaret Campbell as the General Partner of the CFLP, had no affirmative duty to increase or decrease the CFLP Capital Account percentages owned by:

a.   The Donald A. Campbell 2001 Trust (or Donald A. Campbell, individually) as General Partner;

b.   The Donald A. Campbell 2001 Trust (or Donald A. Campbell, individually) as Limited Partner;

c.   The F. Margaret Campbell 2001 Trust (or F. Margaret Campbell, individually) as General Partner;

d.   The F. Margaret Campbell 2001 Trust (or F. Margaret Campbell, individually) as Limited Partner;

e.   (now) The Estate of Frederick M. Campbell, deceased (or Frederick M. Campbell, individually, at Donald A. Campbell's date of death) as Limited Partner;

Gid's Request to the Court Regarding this Dispute

261.   Gid requests that the Court declare:

a.   Regarding **Policy No. LD0033874**:

(1)   Merrill Lynch Life Insurance Company properly paid the $759,727.88 death benefit and post-mortem interest due as the death

Page -71-

benefit required by Policy No. LD0033874, to the Donald A. Campbell Trust, and,

    **(2)**    The Donald A. Campbell Trust was the only entity contractually and legally entitled to receive such death benefits upon the death of Donald A. Campbell on February 22, 2010;

**b.**    Regarding **Policy No. LD0048212**:

    **(1)**    Merrill Lynch Life Insurance Company properly paid the $332,188.30 death benefit and post-mortem interest due as the death benefit required by Policy No. LD0048212, to the Donald A. Campbell Trust, and,

    **(2)**    the Donald A. Campbell Trust was the only entity contractually and legally entitled to receive such death benefits upon the death of Donald A. Campbell on February 22, 2010, and,

**c.**    That F. Margaret Campbell as General Partner of the CFLP, was authorized by the CFLP to hold assets that came into ownership of the CFLP from whatever source, including both Policy No. LD0033874 and Policy No. LD0048212; and,

**d.**    Regarding Both **Policy No. LD0033874** and **Policy No. LD0048212**:

    **(1)**    That F. Margaret Campbell as the General Partner of the CFLP, had no affirmative duty to 'cash-out' the net cash surrender value of:

        **(a)**    Policy No. LD0033874, and,

        **(b)**    Policy No. LD0048212; and,

        **( c)**    Had no duty to deposit any funds that could have resulted from the 'cashed-out' funds from Policy No. LD0033874 and Policy No. LD0048212, to the CFLP; and,

(2)     Regarding the CFLP Capital Accounts:

    (a)     That the CFLP Capital Account percentage owned by the Donald A. Campbell 2001 Trust (or Donald A. Campbell, individually) as General Partner, did not need to be increased, or decreased, by reason of the death benefits paid to the Donald A. Campbell Trust;

    (b)     That the CFLP Capital Account percentage owned by the Donald A. Campbell 2001 Trust (or Donald A. Campbell, individually) as Limited Partner, did not need to be increased, or decreased, by reason of the death benefits paid to the Donald A. Campbell Trust;

    ( c)     That the CFLP Capital Account percentage owned by the F. Margaret Campbell 2001 Trust (or F. Margaret Campbell, individually) as General Partner, did not need to be increased, or decreased, by reason of the death benefits paid to the Donald A. Campbell Trust;

    (d)     That the CFLP Capital Account percentage owned by the F. Margaret Campbell 2001 Trust (or F. Margaret Campbell, individually) as Limited Partner, did not need to be increased, or decreased, by reason of the death benefits paid to the Donald A. Campbell Trust;

    (e)     That the CFLP Capital Account percentage (now) owned by the Estate of Frederick M. Campbell, deceased (or Frederick M. Campbell, individually) as Limited Partner, did not need to be increased, or decreased, by reason of the death benefits paid to the Donald A. Campbell Trust;

Page -73-

**Frivolous Action by Allen F. Campbell**

262. After Gid was appointed by the Court as Trustee and Administrator, he began extensive review of the documents which are the basis of the instant complaint, and which are, in part, attached hereto;

263. Through Gid's review of the aforesaid documents, preparing and responding to various court filings made by Allen Campbell, and review of numerous written 'demands' received from Allen Campbell, Gid reasonably believes and does believe the statements set forth in the following paragraphs to be supported by the actual documents executed by Donald A. Campbell, F. Margaret Campbell, and Allen F. Campbell:

264. The express terms of the Donald A. Campbell 2001 Trust:

   a. Appointed F. Margaret Campbell as its successor trustee after Donald A. Campbell's death,

   b. Gave F. Margaret Campbell complete discretion on the expenditure of principal for her own use, and,

   c. Did not require F. Margaret to spend its capital;

265. The Campbell Family Limited Partnership Agreement:

   a. Expressly authorized Donald A. Campbell, and later F. Margaret Campbell, as the Managing General Partner, to retain both Monarch Life Insurance policies in the form the CFLP received them   which included the Donald A. Campbell Trust as the named beneficiary on both policies, and,

   b. Did not require the General Partner(s) to 'cash-out' the net cash surrender value of either or both policies prior to Donald A. Campbell's death;

266. Donald A. Campbell named the Donald A. Campbell Trust as the beneficiary of both Monarch Life Insurance policies, *in 1993*, prior to the date he transferred ownership of the policies to himself and F. Margaret, and later from himself and F. Margaret to the Campbell Family Limited Partnership, and in which form the CFLP accepted such policies;

267. Donald A. Campbell expressly excluded Allen Campbell from taking any interest in:

   a.   The Donald A. Campbell 2001 Trust,

   b.   The Campbell Family 2001 Descendants Trust,

   c.   The Last Will of Donald A. Campbell, and,

   d.   By naming the Donald A. Campbell Trust as the beneficiary of both Monarch Life Insurance policies, Donald A. Campbell implicitly excluded Allen Campbell from taking any benefit from such policies;

268. Prior to December 2017, Allen Campbell had in his possession and/or the possession of his attorney(s), all documents relevant to the disputes set forth in the instant complaint, and all documents attached hereto - except **Exhibit L**;

269. A clear reading of the aforesaid documents by a person of average ability, proves that all claims made by Allen Campbell as referred to herein in connection with the CFLP, the Monarch Life Insurance Policies, the F. Margaret Trust(s) and the Donald A. Campbell Trust(s), have no basis in fact;

270. Allen Campbell is a person of above-average ability, and a lawyer licensed to practice in multiple states;

271. Despite Allen Campbell's knowledge of the clear terms of the documents he has been attempting to 're-write' for almost 5 years, Allen Campbell continues to pursue, and sue, to attempt to reach a result that is:

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

a.    Contrary to the documents actually executed by Donald and F. Margaret Campbell, and,

b.    That seeks to enrich himself, at the cost of every other beneficiary of the documents cited in this complaint;

272.  A neutral review of the multiple lawsuits, and motion practice within such lawsuits engaged in by Allen Campbell in connection with the matters set forth herein, amply reveals that Allen Campbell's actions are not the result of any 'mistake' on his part, but rather, conscious and purposeful conduct intended to result in the maximum amount of funds distributable to himself, despite all the documents executed by his parents containing instructions expressly contrary to the result(s) sought by Allen Campbell;

273.  In direct contravention of the express purposes set forth by Donald and F. Margaret Campbell in creating their Campbell Family Limited Partnership, since the death of F. Margaret Campbell:

a.    Allen Campbell has created family disputes, with no basis in fact or law;

b.    Allen Campbell has created family disharmony, with no basis in fact, or law;

c.    Allen Campbell has created, and continues to create, litigation and problems which have no basis in fact, or law; and,

d.    By reason of Allen Campbell's baseless actions in connection with the assets formerly owned by the CFLP, the F. Margaret Campbell 2011 Trust, or the Donald A. Campbell 2001 Trust, Allen Campbell has greatly, needlessly, and purposefully, increased the cost involved in administering the estate plans of Donald A. Campbell and F. Margaret Campbell;

274. In taking affirmative action against the express terms of the documents cited herein, and continuing to pursue such actions in multiple courts after his causes of actions have been terminated, overruled, transferred or dismissed by such courts, Allen Campbell proves it is his conscious object to defy the terms of the documents executed by his parents in connection with their assets;

275. By reason of all the foregoing, Allen Campbell's actions and behavior attempting to thwart the estate plans of his parents:

   a. Obviously serves or served merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation; and/or,

   b. Is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law; and/or,

   c. Is conduct consisting of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and/or,

   d. Is conduct that consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief;

## Gid's Request to the Court Regarding Allen Campbell's Frivolous Actions

276. Gid requests that the Court declare that Allen Campbell be required to restore to the Estate of F. Margaret Campbell, deceased, and to the F. Margaret Campbell

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

2011 Trust and/or the F. Margaret Campbell 2011 Descendants Trust, all costs, expenses, experts' fees, reasonable attorneys' fees, extra-ordinary fiduciary fees, and all other costs incurred by said entities in being required to respond to the statements and/or allegations and/or claims and/or conduct of defendant Allen Campbell, including the necessity of preparing and prosecuting the instant action for declaratory judgment and other equitable relief, any of which are found to be the result of, arisen by, or a necessary response to, Allen Campbell's conduct which:

a.  Obviously serves or served merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation; and/or,

b.  Is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law; and/or,

c.  Is conduct consisting of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and/or,

d.  Is conduct that consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief; and,

277.  That any such restoration ordered by the Court as prayed for herein to: the Estate of F. Margaret Campbell, deceased, the F. Margaret Campbell 2011 Trust and/or the F. Margaret Campbell 2011 Descendants Trust, be in the manner of:

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

a.   A judgment entry ordering Allen Campbell to make payment of a sum of money to said Estate and/or Trust(s), and/or,

b.   A judgment entry ordering that any sums to which defendant Allen Campbell may be entitled through the Estate of F. Margaret Campbell, deceased, and/or through the F. Margaret Campbell 2011 Trust or the F. Margaret Campbell 2011 Descendants Trust, be first offset by the sums ordered to be restored to such Estate and/or Trust by defendant Allen Campbell, and/or,

c.   An Order authorizing Gid or any successor fiduciary to choose to pursue Allen Campbell for repayment of sums Allen Campbell took from the F. Margaret Campbell 2011 Trust; and/or,

d.   An Order authorizing Gid to assign any right of the F. Margaret Campbell 2011 Trust or the F. Margaret Campbell 2011 Descendants Trust, to recovery of sums from Allen Campbell, to any person or entity of Gid's choosing, which may be in the best interests of the F. Margaret Campbell 2011 Trust or the F. Margaret Campbell 2011 Descendants Trust, subject to approval of the Court; and,

e.   Such other Order, as the Court deems is fair and equitable in the premises.

278.   Gid further requests that to the extent the Court may rule on any sums to be due from Allen Campbell by reason of his frivolous actions in connection with the matters set forth in this complaint, that the Court issue a specific ruling regarding the allocation of any such sums to the several parties hereto; and,

279.   In order to lessen the continued serious adverse impact to the parties hereto (other

than Allen Campbell) being suffered, or which in the future may be suffered by reason of Allen Campbell's continuing frivolous conduct in connection with the CFLP, the Estate of F. Margaret Campbell, deceased, the F. Margaret Campbell 2011 Trust, the F. Margaret Campbell 2001 Descendants Trust, and any of the beneficiaries of such entities, Gid requests the Court order that prior to Allen Campbell filing any additional action related to any of the foregoing, he must present the same to the Cuyahoga County Probate Court - prior to filing and commencing any action in any way relating to these parties, and in any way connected to the assets, trust(s) or estate(s) of Donald A. Campbell and/or F. Margaret Campbell, with any such action(s) requiring approval of the Court before being allowed to be filed, or in any way prosecuted.

*Wherefore*, As a person interested as an executor, administrator, trustee, or other fiduciary, in the administration of a trust, or of the estate of a decedent, who may have a declaration of rights or legal relations in respect thereto in any of the following cases:

(A) To ascertain any class of creditors, devisees, legatees, heirs, next of kin, or others;

(B) To direct the executors, administrators, trustees, or other fiduciaries to do or abstain from doing any particular act in their fiduciary capacity;

( C) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings;

plaintiff prays that the Court declare the rights or legal relations of the parties hereto, and direct plaintiff in connection with the matters set forth hereinabove, and as more particularly set forth, as follows:

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

A.   **Regarding the Campbell Family Limited Partnership**

<u>Gid's Request to the Court Regarding this Dispute</u>

1.   Gid requests the Court declare the ownership percentages which are reflected in the CFLP records in **Exhibit A**, page 114 (underlying document page "4"), in Schedule B, to be as so reported at the death of F. Margaret Campbell, as follows:

   a.   Donald A. Campbell 2001 Trust as General Partner, 1%

   b.   F. Margaret Campbell 2011 Trust as General Partner, 1%

   c.   Donald A. Campbell 2001 Trust as Limited Partner, 43.59%

   d.   F. Margaret Campbell 2011 Trust as Limited Partner, 43.59%

   e.   The Estate of Frederick M. Campbell, deceased, 10.82%

2.   Regarding the Monarch Life Insurance policies numbered LD0033874 and LD0048212, Gid requests the Court declare the detailed relief sought under the section of this complaint titled **"The Single-Premium Variable Life Insurance Policies:"**, set forth below;

3.   Gid further requests the Court declare that the General Partners were authorized to expend CFLP funds as they saw fit for the use of Donald A. Campbell and/or F. Margaret Campbell;

4.   Gid requests the Court declare whether any negative capital accounts of the limited partners had to be 'made up', pursuant to the terms of the CFLP Agreement;

5.   Gid requests the Court declare whether any limited partner has to contribute any funds to the CFLP to 'make-up' any deficit balance in any

Page -81-

limited partner's capital account;

6. Gid further requests the Court's declaration of whether the $181,430.00 of CFLP funds F. Margaret chose to spend for her care, after Donald A. Campbell's date of death:

    a. Were authorized to be spent by F. Margaret Campbell from the source of her choice; and,

    b. Whether the CFLP document relieves the F. Margaret Campbell 2011 Trust from being required to restore to the CFLP, the CFLP funds F. Margaret paid for her own care; and if not, then,

    c. As paid from the CFLP:

        (1) Must the F. Margaret Campbell 2011 Trust restore to the CFLP the CFLP funds F. Margaret paid for her own care, and,

        (2) If so, how much of the $181,430.00 must the F. Margaret Campbell 2011 Trust restore to the CFLP;

7. Gid further requests the Court declare:

    a. The F. Margaret Campbell 2011 Trust is not entitled to receive, and the CFLP is not required to make, a $165,399.00 distribution to the F. Margaret Campbell 2011 Trust, for what was the Donald A. Campbell 2001 Trust's share of CFLP income during the period of 2010 - 2016; and,

    b. That the Donald A. Campbell 2001 Trust is not required to 'disgorge' $165,399.00 of its share of CFLP income it rightfully received according to its percentage of ownership in the CFLP;

8.  Gid further requests the Court declare:

    a.  F. Margaret Campbell as General Partner of the CFLP, was authorized by the CFLP Agreement, to allow the Monarch Life Insurance policies numbered LD0033874 and LD0048212, to remain in the form in which the CFLP received such policies, including allowing the Donald A. Campbell Trust to remain the beneficiary of both said policies; and,

    b.  There can be no 'imputation' of 'income' from what would have been the 'net cash surrender value' of life insurance policies which were never 'cashed-out' during the lifetime of the insured, and therefore,

    c.  There is no sum due to any person or entity in connection with the net cash surrender value of the Monarch Life Insurance policies numbered LD0033874 and LD0048212, which may have existed prior to the death of Donald A. Campbell on February 22, 2010;

9.  Gid further requests the Court declare what amount(s), if any, must be allocated:

    a.  To the respective capital accounts of the General Partners of the CFLP;

    b.  To the respective capital accounts of the Limited Partners of the CFLP; and,

    c.  What amounts, if any, are required to be paid by the Estate of F. Margaret Campbell, deceased, or the F. Margaret Campbell 2011 Trust, or the F. Margaret Campbell 2011 Descendants Trust, in connection with any other declaration of the Court regarding the Campbell Family Limited Partnership;

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

**B.**    **Regarding Expenses for F. Margaret, Paid by F. Margaret From Her Own Funds**

<u>Gid's Request to the Court Regarding this Dispute</u>

1.    Gid requests the Court's declaration of whether certain funds F. Margaret chose to spend for her care, after Donald A. Campbell's date of death:

    a.    Were required to have been paid from the Donald A. Campbell 2001 Trust, or,

    b.    Were required to have been paid from the Campbell Family 2001 Descendants Trust, or,

    c.    Were authorized to be spent by F. Margaret Campbell from the source of her choice; and,

2.    *If* the Court determines that if F. Margaret Campbell as Successor Trustee of the Donald A. Campbell 2001 Trust was required to expend funds from the Donald A. Campbell 2001 Trust, for F. Margaret's own care, Gid requests the Court declare:

    a.    What dollar amount was F. Margaret as Successor Trustee of the Donald A. Campbell 2001 Trust required to pay from said Trust's funds; and,

    b.    How the Donald A. Campbell 2001 Trust was/is required to allocate such disbursements from the Donald A. Campbell 2001 Trust;

**C.**    **Regarding the Estate of Donald A. Campbell, deceased:**

<u>Gid's Request for the Court to Declare:</u>

1.    No claims were timely presented against the Estate of Donald A. Campbell,

Page -84-

deceased, therefore all claims that could have been presented against the Estate of Donald A. Campbell, deceased, are barred as a matter of law;

2. Any purported claim against the Donald A. Campbell Trust(s) with Donald A. Campbell as a Trustee, or Donald A. Campbell individually, or Donald A. Campbell as a General Partner of the CFLP with potential individual liability for his alleged actions and/or failure to act in such a capacity, could only be brought against the Estate of Donald A. Campbell, deceased, which claims are all time-barred as a matter of law;

3. By reason of Donald A. Campbell's explicit and express exclusion of Allen Campbell from any interest in the Donald A. Campbell 2001 Trust and the Campbell Family 2001 Descendants Trust, Allen Campbell never had, and cannot now have, any interest in any thing of value, or any income, that flowed, or could in any way have flowed, through ownership in the Donald A. Campbell 2001 Trust or the Campbell Family 2001 Descendants Trust;

**D.** **Regarding The Donald A. Campbell 2001 Trust**

Gid's Request to the Court Regarding this Dispute

1. Gid requests the Court declare whether F. Margaret Campbell was:
   a. After the death of Donald A. Campbell, duly appointed as the Successor Trustee of the Donald A. Campbell 2001 Trust;

   b. Empowered by the Donald A. Campbell 2001 Trust with complete discretion as Successor Trustee thereof, to spend such Trust's funds solely according to F. Margaret Campbell's own discretion;

   c. Acting within her discretion as Successor Trustee of the Donald A. Campbell 2001 Trust, in not expended funds from such Trust for her own care and living expenses; and,

2.    Gid requests the Court further declare:

    a.    Whether the Donald A. Campbell 2001 Trust was, or is, required to pay any sum of money (other than Trust income) to the F. Margaret Campbell 2011 Trust by reason of any sums F. Margaret Campbell spent from her own funds, for her own care, rather than spending funds from the Donald A. Campbell 2001 Trust, and,

    b.    If yes to question **a.** immediately above, to further declare what amount is to be paid from the Donald A. Campbell 2001 Trust for such purpose;

## E.    Regarding The Campbell Family 2001 Descendants Trust

<u>Gid's Request to the Court Regarding this Dispute</u>

1.    Gid requests the Court declare whether there is any sum of money due from the Campbell Family 2001 Descendants Trust, to:

    a.    The Campbell Family Limited Partnership; or,

    b.    the F. Margaret Campbell 2011 Trust; or,

    c.    The F. Margaret Campbell 2011 Descendants Trust; or,

    d.    The Estate of F. Margaret Campbell, deceased;

## F.    Regarding the Last Will of F. Margaret Campbell

<u>Gid's Request to the Court Regarding this Matter</u>

1.    Plaintiff seeks the Court's declaration of whether the $50,000 'bequests' each to Ava Havel, Heather Campbell Bradford Wallace, Manuela

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

Hernandez, and Melissa McGee:

a.   Are to be administered as "specific bequests" or as "general pecuniary bequests; and,

b.   If such 'bequests' may be paid from the F. Margaret Campbell 2011 Trust as set forth in **Exhibit E** page 8, Article III, ¶B, (underlying document "-Page 3-") "Disposition of Personal Effects and Specific Bequests";

G.   **Regarding the Estate of F. Margaret Campbell, deceased:**

Plaintiff further prays the Court declare that:

1.   No claims were timely presented against the Estate of F. Margaret Campbell, deceased, therefore all claims that could have been presented against the Estate of F. Margaret Campbell, deceased, are barred as a matter of law;

2.   Any purported claim against the F. Margaret Campbell Trust(s) with F. Margaret Campbell as a Trustee, or F. Margaret Campbell individually, or F. Margaret Campbell as a General Partner of the CFLP with potential individual liability for her alleged actions and/or failure to act in such a capacity, or F. Margaret Campbell as Successor Trustee of the Donald A. Campbell 2001 Trust or the Campbell Family 2001 Descendants Trust with potential individual liability for her alleged actions and/or failure to act in such capacity(ies), could only be brought against the Estate of F. Margaret Campbell, deceased, which claims are all time-barred as a matter of law;

### H. Regarding The F. Margaret Campbell 2011 Trust

Gid's Request to the Court Regarding this Dispute

Regarding the 'Specific Bequests"

1. Gid requests the Court declare whether the 'specific bequests' are to be made from the F. Margaret Campbell 2011 Trust to: Ava Havel, Heather Campbell Bradford Wallace, Manuela Hernandez, and Melissa McGee; and,

2. Gid further requests the Court declare whether such payments of 'specific bequests' be made after payment of the expenses of administration of the Estate of F. Margaret Campbell, deceased, and the F. Margaret Campbell 2011 Trust and F. Margaret Campbell 2011 Descendants Trust; and,

3. Gid further requests the Court declare whether the F. Margaret Campbell 2011 Descendants Trust is the beneficiary of the F. Margaret Campbell 2011 Trust;

Regarding Sums Taken by Allen Campbell for Litigation

4. Gid requests the Court declare:

   a. The sum of not less than $135,502.76, and such other sum(s) as the Court may order, should be deducted from any sum Allen Campbell would otherwise receive as any potential benefit from the F. Margaret Campbell 2011 Trust and the F. Margaret Campbell 2011 Descendants Trust, by reason that Allen Campbell's expenditures of such funds:

      (1) Were not in the best interests of the F. Margaret Campbell 2011 Trust and the F. Margaret Campbell 2011 Descendants Trust;

(2) Did not benefit, and could not have benefitted, and cannot now benefit, the F. Margaret Campbell 2011 Trust and the F. Margaret Campbell 2011 Descendants Trust; and,

(3) Were not supported by any clear reading of the documents executed by F. Margaret Campbell and Donald A. Campbell; and,

b. That if the sum owed by Allen Campbell to the F. Margaret Campbell 2011 Trust exceeds the amount that would otherwise be distributable to Allen Campbell in the absence of his pursuit of his baseless claims as set forth in this complaint, such balance owed by Allen Campbell to the F. Margaret Campbell 2011 Trust, then:

(1) Gid may deduct (or offset) any sum that would otherwise be payable to Allen Campbell under the terms of the F. Margaret Campbell 2011 Trust, with the sums the Court may declare were wrongfully taken by, and owed by Allen Campbell to the F. Margaret Campbell 2011 Trust; and,

(2) Gid may pursue Allen Campbell for repayment of sums Allen Campbell took from the F. Margaret Campbell 2011 Trust which the Court determines are owed by Allen Campbell to such Trust; or,

(3) Gid may assign any right of the F. Margaret Campbell 2011 Trust or the F. Margaret Campbell 2011 Descendants Trust to recovery of sums from Allen Campbell, to any person or entity of Gid's choosing, which may be in the best interests of the F. Margaret Campbell 2011 Trust or the F. Margaret Campbell 2011 Descendants Trust, subject to approval of the

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

Court;

**I.** **Regarding The F. Margaret Campbell 2011 Descendants Trust**

Gid's Request to the Court Regarding this Dispute

1. Gid requests that the Court declare the F. Margaret Campbell 2011 Descendants Trust to be the beneficiary of the F. Margaret Campbell 2011 Trust; and,

2. That the beneficiaries of the F. Margaret Campbell 2011 Trust are, with corresponding percentage of the distributable residual Trust assets attributable to each such beneficiary to be, as follows:

    a. Allen Campbell   50%,

    b. Ava Havel   25%,

    c. Manuela Hernandez   25%;

**Regarding The Single-Premium Variable Life Insurance Policies:**

**J.** **RE:** **Policy LD0033874** - plaintiff prays the Court **declare:**

1. On February 22, 2010, the date of death of Donald A. Campbell:

    a. The Campbell Family Limited Partnership was the owner of Merrill Lynch Life Insurance Company (formerly Monarch Life Insurance Company) Single Premium Variable Life Insurance **Policy No. LD0033874;**

    b. Donald Campbell was the Insured of Merrill Lynch Life Insurance Company (formerly Monarch Life Insurance Company) Single Premium Variable Life Insurance Policy No. LD0033874;

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

c.   The Donald A. Campbell 2001 Trust was the beneficiary of Merrill Lynch Life Insurance Company (formerly Monarch Life Insurance Company) Single Premium Variable Life Insurance Policy No. LD0033874;

2.   Merrill Lynch Life Insurance Company properly made payment of the $759,727.88 death benefit and post-mortem interest due on Merrill Lynch Life Insurance Company (formerly Monarch Life Insurance Company) Single Premium Variable Life Insurance Policy No. LD0033874, to the Donald A. Campbell 2001 Trust;

3.   The Campbell Family Limited Partnership had no duty to 'cash out' or otherwise demand the Net Cash Surrender Value of Merrill Lynch Life Insurance Company (formerly Monarch Life Insurance Company) Single Premium Variable Life Insurance Policy No. LD0033874, prior to Donald A. Campbell's death, by canceling the Net Life Insurance Benefit payable under the life insurance contract to the named beneficiary, and instead taking the Net Cash Surrender Value and depositing it to the Campbell Family Limited Partnership;

4.   Upon Donald A. Campbell's death:

a.   The Campbell Family Limited Partnership had no interest in, or claim upon or through Merrill Lynch Life Insurance Company (formerly Monarch Life Insurance Company) Single Premium Variable Life Insurance Policy No. LD0033874; and,

b.   The Campbell Family Limited Partnership has no interest in said policy, or the death benefits paid thereon to the named beneficiary the Donald A. Campbell Trust;

5.   There is no "repayment" to be made to the Campbell Family Limited

Page -91-

Partnership for the Net Cash Surrender Value of the Policy, as it was reported for accounting and tax purposes on the books of the CFLP during Donald Campbell's lifetime, and prior to payment of the death benefit on Policy No. LD0033874 to the Donald A. Campbell 2001 Trust, and that:

a.  All claims asserting that Policy No. LD0033874 should have been paid to anyone or any entity other than the Don A. Campbell 2001Trust, are without basis in fact or law;

b.  All claims asserting that any sums are due to the CFLP by reason of the payment of the death benefit under Policy No. LD0033874 to the Donald A. Campbell 2001 Trust, are without any basis in fact or law;

c.  The Campbell Family Limited Partnership did not benefit, and could not have benefitted, and cannot now benefit, from Allen Campbell's pursuits in attempting to force payment of the death benefit of Policy No. LD0033874 paid to the Donald A. Campbell 2001 Trust under the Policy, to the CFLP;

d.  The Estate of F. Margaret Campbell did not benefit, and could not have benefitted, and cannot now benefit, from Allen Campbell's pursuits in attempting to force payment of the death benefit of Policy LD0033874 paid to the Donald A. Campbell Trust under the Policy, to the CFLP;

e.  The F. Margaret Campbell 2011 Trust did not benefit, and could not have benefitted, and cannot now benefit, from Allen Campbell's pursuits in attempting to force payment of the death benefit of Policy LD0033874 paid to the Donald A. Campbell Trust under the Policy, to the CFLP;

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

f.  The F. Margaret Campbell Family 2011 Descendants Trust did not benefit, and could not have benefitted, and cannot now benefit, from Allen Campbell's pursuits in attempting to force payment of the death benefit of Policy LD0033874 paid to the Donald A. Campbell 2001 Trust under Policy No. LD0033874, to the CFLP; and,

g.  Any reasonable person standing in the shoes of Allen Campbell (who is also a licensed, currently active attorney-at-law in Alabama and Louisiana) would have realized that there was no "claim" of the Campbell Family Limited Partnership to any sum paid under the Merrill Lynch Life Insurance Company (formerly Monarch Life Insurance Company) Single Premium Variable Life Insurance Policy No. LD0033874, to the Donald A. Campbell 2001 Trust upon Donald A. Campbell's death;

K.  **Regarding Policy LD0048212:**

Plaintiff prays the Court declare:

1.  On February 22, 2010, the date of death of Donald A. Campbell:

a.  The Campbell Family Limited Partnership was the owner of Merrill Lynch Life Insurance Company (formerly Monarch Life Insurance Company) Single Premium Variable Life Insurance **Policy No. LD0048212**;

b.  Donald Campbell was the Insured of Merrill Lynch Life Insurance Company (formerly Monarch Life Insurance Company) Single Premium Variable Life Insurance Policy No. LD0048212;

c.  The Donald A. Campbell 2001 Trust was the beneficiary of Merrill Lynch Life Insurance Company (formerly Monarch Life Insurance

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

Company) Single Premium Variable Life Insurance Policy No. LD0048212;

2. Merrill Lynch Life Insurance Company properly made payment of the $332,188.30 death benefit and post-mortem interest due on Merrill Lynch Life Insurance Company (formerly Monarch Life Insurance Company) Single Premium Variable Life Insurance Policy No. LD0048212, to the Donald A. Campbell 2001 Trust;

3. The Campbell Family Limited Partnership had no duty to 'cash out' or otherwise demand the Net Cash Surrender Value of Merrill Lynch Life Insurance Company (formerly Monarch Life Insurance Company) Single Premium Variable Life Insurance Policy No. LD0048212, prior to Donald A. Campbell's death, by canceling the Net Life Insurance Benefit payable under the life insurance contract to the named beneficiary, and instead taking the Net Cash Surrender Value and depositing it to the Campbell Family Limited Partnership;

4. Upon Donald A. Campbell's death:
    a. The Campbell Family Limited Partnership had no interest in, or claim upon or through Merrill Lynch Life Insurance Company (formerly Monarch Life Insurance Company) Single Premium Variable Life Insurance Policy No. LD0048212; and,

    b. The Campbell Family Limited Partnership has no interest in said policy, or the death benefits paid thereon to the named beneficiary the Donald A. Campbell Trust;

5. There is no 'repayment' or 'capital account adjustment' to be made to the Campbell Family Limited Partnership in connection with the Net Cash Surrender Value of Policy No. LD0048212, as it was reported for accounting

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

and tax purposes on the books of the Campbell Family Limited Partnership during Donald A. Campbell's lifetime, and prior to payment of the death benefit on Policy No. LD0033874 to the Donald A. Campbell 2001 Trust, and that:

a.  All claims asserting that Policy No. LD0048212 should have been paid to anyone or any entity other than the Donald A. Campbell 2001 Trust, are without basis in fact or law;

b.  All claims asserting that any sums are due to the CFLP by reason of the payment of the death benefit under Policy No. LD0048212 to the Donald A. Campbell 2001 Trust, are without any basis in fact or law;

c.  The Campbell Family Limited Partnership did not benefit, and could not have benefitted, and cannot now benefit, from Allen Campbell's pursuits in attempting to force payment of the death benefit of Policy No. LD0048212 paid to the Donald A. Campbell 2001 Trust under the Policy, to the CFLP;

d.  The Estate of F. Margaret Campbell did not benefit, and could not have benefitted, and cannot now benefit, from Allen Campbell's pursuits in attempting to force payment of the death benefit of Policy No. LD0048212 paid to the Donald A. Campbell Trust under the Policy, to the CFLP;

e.  The F. Margaret Campbell 2011 Trust did not benefit, and could not have benefitted, and cannot now benefit, from Allen Campbell's pursuits in attempting to force payment of the death benefit of Policy No. LD0048212 paid to the Donald A. Campbell Trust under the Policy, to the CFLP;

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

f.    The F. Margaret Campbell Family 2011 Descendants' Trust did not benefit, and could not have benefitted, and cannot now benefit, from Allen Campbell's pursuits in attempting to force payment of the death benefit of Policy No. LD0048212 paid to the Donald A. Campbell 2001 Trust under Policy No. LD0048212, to the CFLP; and,

g.    Any reasonable person standing in the shoes of Allen Campbell (who is also a licensed, and currently active attorney-at-law in Alabama and Louisiana) would have realized that there was no "claim" of the CFLP to any sum paid under the Merrill Lynch Life Insurance Company (formerly Monarch Life Insurance Company) Single Premium Variable Life Insurance Policy No. LD0048212 to the Donald A. Campbell 2001 Trust upon Donald A. Campbell's death;

## L.    Regarding the Frivolous Conduct of Allen Campbell

Gid's Request for the Court to Declare:

1.    Gid requests that the Court declare that Allen Campbell be required to restore to the Estate of F. Margaret Campbell, deceased, and to the F. Margaret Campbell 2011 Trust and/or the F. Margaret Campbell 2011 Descendants Trust, all costs, expenses, experts' fees, reasonable attorneys' fees, extra-ordinary fiduciary fees, and all other costs incurred by said entities in being required to respond to the statements and/or allegations and/or claims and/or conduct of defendant Allen Campbell, including the necessity of preparing and prosecuting the instant action for declaratory judgment and other equitable relief, any of which are found to be that Allen Campbell's conduct:

a.    Obviously serves or served merely to harass or maliciously injure another party to the civil action or appeal or is for another improper

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation; and/or,

**b.** Is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law; and/or,

**c.** Is conduct consisting of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and/or,

**d.** Is conduct that consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief; and,

**2.** That any such restoration ordered by the Court as prayed for herein to: the Estate of F. Margaret Campbell, deceased, the F. Margaret Campbell 2011 Trust and/or the F. Margaret Campbell 2011 Descendants Trust, be in the manner of:

**a.** A judgment entry ordering Allen Campbell to make payment of a sum of money to said Estate and/or Trust(s), and/or,

**b.** A judgment entry ordering that any sums to which defendant Allen Campbell may be entitled through the Estate of F. Margaret Campbell, deceased, and/or through the F. Margaret Campbell 2011 Trust or the F. Margaret Campbell 2011 Descendants Trust, be first offset by the sums ordered to be restored to such Estate and/or Trust by defendant Allen Campbell, and/or,

Page -97-

c.     An Order authorizing Gid or any successor fiduciary to choose to pursue Allen Campbell for repayment of sums Allen Campbell took from the F. Margaret Campbell 2011 Trust; and/or,

d.     An Order authorizing Gid to assign any right of the F. Margaret Campbell 2011 Trust or the F. Margaret Campbell 2011 Descendants Trust, to recovery of sums from Allen Campbell, to any person or entity of Gid's choosing which may be in the best interests of the F. Margaret Campbell 2011 Trust or the F. Margaret Campbell 2011 Descendants Trust, subject to approval of the Court; and,

e.     Such other Order, as the Court deems is fair and equitable in the premises.

3.     Gid further requests that to the extent the Court may rule on any sums to be due from Allen Campbell by reason of his frivolous actions in connection with the matters set forth in this complaint, that the Court issue a specific ruling regarding the allocation of any such sums to the several parties hereto; and,

4.     In order to lessen the continued serious adverse impact to the parties hereto (other than Allen Campbell) being suffered, or which in the future may be suffered by reason of Allen Campbell's continuing frivolous conduct in connection with the CFLP, the Estate of F. Margaret Campbell, deceased, the F. Margaret Campbell 2011 Trust, the F. Margaret Campbell 2001 Descendants Trust, and any of the beneficiaries of such entities, Gid requests the Court order that prior to Allen Campbell filing any additional action related to any of the foregoing, he must present the same to the Cuyahoga County Probate Court - prior to filing and commencing any action in any way relating to these parties, and in any way connected to the

Page -98-

assets, trust(s) or estate(s) of Donald A. Campbell and/or F. Margaret Campbell, with any such action(s) requiring leave of and approval of the Court before any such action may be allowed to be filed, or in any way prosecuted.

claim for all of which is hereby made by plaintiff Egidijus Marcinkevicius as: Executor of the Estate of F. Margaret Campbell, deceased, Successor Trustee of the F. Margaret Campbell Family 2011 Trust and the F. Margaret Campbell Family 2011 Descendants Trust, and as a General and Limited Partner of the Campbell Family Limited Partnership; and for such further relief which the Court may deem fair and equitable in the premises.

/s/ Joseph M. Patton
Joseph M. Patton, Esq. (0043836)
25125 Detroit Road STE 120
Westlake OH 44145-2500
440-899-1900; 440-899-9199 fax
jpatton@jpattonlaw.com

Attorney for Egidijus Marcinkevicius, as: the Court-Appointed Fiduciary of the Estate of F. Margaret Campbell, deceased, Successor Trustee of the F. Margaret Campbell Family 2011 Trust and the F. Margaret Campbell Family 2011 Descendants Trust; and, in said capacities, as a General and Limited Partner of the Campbell Family Limited Partnership and as a General and Limited Partner of the Campbell Family Limited Partnership

# List of Exhibits

**Exhibit A,**   Campbell Family Limited Partnership Documents, dated variously April 9, 1997 through February 22, 2010, containing pages numbered 1 through 114, and further labeled "CFLP Records";

**Exhibit B,**   Donald A. Campbell 2001 Trust, dated July 2, 2001, containing pages numbered 1 through 39, and further labeled Donald A. Campbell 2001 Trust,

**Exhibit C,**   Campbell Family 2001 Descendants Trust, dated July 2, 2001, containing pages numbered 1 through 31, and further labeled "Campbell Family 2001 Descendants Trust";

**Exhibit D,**   F. Margaret Campbell Will, dated April 19, 2011, containing pages numbered 1 through 13, and further labeled "Last Will of F. Margaret Campbell";

**Exhibit E,**   F. Margaret Campbell 2011 Trust, dated April 19, 2011, containing pages numbered 1through 35, and further labeled "F. Margaret Campbell 2011 Trust";

**Exhibit F,**   F. Margaret Campbell 2011 Descendants Trust, dated April 19, 2011, containing pages numbered 1 through 34, and further labeled "F. Margaret Campbell 2011 Descendants Trust;

**Exhibit G,**   Monarch Life Insurance Company, Single Premium Variable Life Insurance Policy **LD0033874** selected documents, containing pages numbered 1 through 31 for all parts below, and further labeled "Policy LD0033874", containing all the following documents, to-wit:

   **Part 1**, pages 1 - 11,    Application dated January 28, 1986,
LD0033874 Policy File Redacted pages 1-11,

   **Part 2**, pages 12 - 13,    Change of beneficiary to the Donald A. Campbell Trust, dated 10/14/1993,
LD0033874 Policy File Redacted pages 83 - 84

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

**Exhibit G**, continued

| | |
|---|---|
| **Part 3**, pages 14 - 16 | Change of ownership to Donald A. Campbell & F. Margaret Campbell, dated 07/31/1997, LD0033874 Policy File Redacted pages 101 - 103 |
| **Part 4**, pages 17 - 22 | Change of ownership to the Campbell Family Limited Partnership, dated 11/26/1997, (executed 09/30/1997), LD0033874 Policy File Redacted pages 107 - 112 |
| **Part 5**, page 23 | Don death certificate, dated 02/22/2010, LD0033874 Policy File Redacted page 144 |
| **Part 6**, pages 24 - 26 | Life Claimant Statement - claiming death benefit in behalf of the named beneficiary - the Donald A. Campbell Trust, March 18, 2010, LD0033874 Policy File Redacted pages 139 - 141; |
| **Part 7**, pages 27 - 29 | Insurer calculation of Death Benefit for Policy LD0033874 for check date of 04/30/2010, LD0033874 Policy File Redacted pages 156 - 158; |
| **Part 8**, pages 30 - 31 | Insurer transmission of death benefit and post-mortem interest to the Donald A. Campbell Trust, dated April 29, 2010, LD0033874 Policy File Redacted Page 159 and Page 171; |

**Exhibit H,** Monarch Life Insurance Company, Modified Single Premium Variable Life Insurance Policy **LD0048212** selected documents, containing pages numbered 1 through 27 for all parts below, and further labeled "Policy LD0048212", containing all the following document, to-wit:

| | |
|---|---|
| **Part 1**, pages 1 - 7 | Application dated 07/22/1986, LD0048212 Policy File Redacted pages 1 - 10; |
| **Part 2**, page 8 | Policy Issue Summary dated July 23, 1986, LD0048212 Policy File Redacted page 11; |

**Exhibit H**, continued

| | |
|---|---|
| **Part 3**, pages 9 - 10 | Change of Beneficiary form dated July 25, 1993, with confirmation letter dated October 14, 1993 LD0048212 Policy File Redacted pages 57 - 58; |
| **Part 4**, pages 11 - 13 | Change of Ownership form, signed July 16, 1997, LD0048212 Policy File Redacted pages 70 - 72; |
| **Part 5**, pages 14 - 19 | Change of Ownership acknowledgment, etc., LD0048212 Policy File Redacted pages 85 - 90; |
| **Part 6**, page 20 | Don death certificate, dated 02/22/2010, LD0048212 Policy File Redacted page 124; |
| **Part 7**, pages 21 - 23 | Life Claimant Statement - claiming death benefit in behalf of the named beneficiary - the Donald A. Campbell Trust, March 18, 2010, LD0048212 Policy File Redacted pages 140 - 142; |
| **Part 8**, pages 24 - 25 | Insurer  calculation of Death Benefit for Policy LD0048212 for check date of 04/30/2010, LD0048212 Policy File Redacted pages 137 - 138; |
| **Part 9**, pages 26 - 27 | Insurer transmission of death benefit and post-mortem interest to the Donald A. Campbell Trust, dated April 29, 2010, LD0048212 Policy File Redacted pages 139 & 143; |

**Exhibit I**,  Accounting prepared by Allen F. Campbell regarding the F. Margaret Campbell 2011 Trust: Pages 1 through 6,
(which pages 1 through 6 are from Exhibit 2 attached to Allen Campbell May 5, 2017 filed Brief in Opposition to Ava Havel, et al.'s motion to remove Allen Campbell in Case No. 2017 ADV 224571);

**Exhibit J**,  Legier & Company bills, Pages 1 through 12,
(which pages 1 through 12 were addressed from Legier & Company to Allen F. Campbell, for "Litigation Support Services", which bills were attached as Exhibit 1 to Ava Havel et al.'s Reply in Support of their Motion to Remove Allen Campbell, etc., as filed with this Court on May 22, 2017 in Case No. 2017 ADV 224571);

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

**Exhibit K**     Last Will & Testament of Donald A. Campbell, dated July 2, 2001, containing pages numbered 1 through 14; and,

**Exhibit L**     Chart of the Campbell Estate Plan, single page.

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:33:21\CONF#: 10957\WORKFLOW ID: 1238716

# Exhibit A

## Campbell Family Limited Partnership Records

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

# LIMITED PARTNERSHIP AGREEMENT

## OF

## THE CAMPBELL FAMILY LIMITED PARTNERSHIP

THE PARTNERSHIP UNITS HAVE NOT BEEN REGISTERED AND HAVE BEEN ISSUED OR SOLD IN RELIANCE ON SECTION 1707.03(Q) OF THE OHIO REVISED CODE, AND MAY NOT BE SOLD OR TRANSFERRED EXCEPT IN A TRANSACTION WHICH IS EXEMPT UNDER SUCH ACT OR PURSUANT TO AN EFFECTIVE REGISTRATION UNDER SUCH ACT.

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

ARTICLE 1.    DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

ARTICLE 2.    FORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-
    2.1    Formation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-
    2.2    Office; Place of Business; Agent; Trade Names . . . . . . . . . . . . . . . . -2-
    2.3    Intent to Supersede Statute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-
    2.4    Commencement and Duration . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-
    2.5    Purposes of Partnership . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
        (a)    Manage Partnership Assets and Promote Harmony Among the
            Partners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
        (b)    Purposes Allowed by The Act . . . . . . . . . . . . . . . . . . . . . . . . -4-
        (c)    Partnership's Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

ARTICLE 3.    CAPITAL ACCOUNTS; DISTRIBUTIONS TO PARTNERS . . . . . . . . . . . . -7-
    3.1    Capital Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-
    3.2    Capital Accounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-
    3.3    Distributions to Partners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-
        (a)    Distributions of Cash . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-
        (b)    Estimated Taxes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

ARTICLE 4.    ALLOCATION OF PROFITS AND LOSSES . . . . . . . . . . . . . . . . . . . . . -9-
    4.1    Allocation of Net Profits and Net Losses . . . . . . . . . . . . . . . . . . . -9-
    4.2    Special Allocations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-
    4.3    Timing of Allocation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

ARTICLE 5.    GENERAL PARTNERS; RIGHTS AND POWERS OF GENERAL
    PARTNERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-
    5.1    General Partners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-
    5.2    Rights and Powers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-
    5.3    Duties of General Partners; Not Required to Devote Full Time . . . -13-
    5.4    Limitations on Actions of General Partners . . . . . . . . . . . . . . . . -15-
    5.5    Reliance of Third Parties on Authority of General Partners . . . . . . -16-
    5.6    Tax Elections; Tax Matters Partner . . . . . . . . . . . . . . . . . . . . . . -16-
    5.7    General Partners May Compete . . . . . . . . . . . . . . . . . . . . . . . . -17-
    5.8    Compensation of General Partner or Affiliate; Reimbursement of
        Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
    5.9    Appointment of Managing General Partner . . . . . . . . . . . . . . . . -17-
    5.10   Successor Managing General Partner . . . . . . . . . . . . . . . . . . . . -18-
    5.11   Conflict of Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-
    5.12   Meetings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-
    5.13   Removal of General Partner . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

ARTICLE 6.    LIMITED PARTNERS; RIGHTS OF AND LIMITATIONS ON LIMITED
    PARTNERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

(i)

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

6.1     Limited Partners  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-
6.2     Additional Limited Partners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-
6.3     Limited Partners May Compete  . . . . . . . . . . . . . . . . . . . . . . . . . . -20-
6.4     Limitations on Limited Partners; Liability for Breach of
        Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-
6.5     Meetings  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-
6.6     Liabilities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-
6.7     Conflict of Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

ARTICLE 7.     TRANSFER OF PARTNERSHIP INTERESTS . . . . . . . . . . . . . . . . . . . -22-
7.1     No Transfer of Partnership Interest  . . . . . . . . . . . . . . . . . . . . . . -22-
7.2     Compliance with Securities Act of 1933  . . . . . . . . . . . . . . . . . . -23-
7.3     Permitted Transfers of Partnership Interests . . . . . . . . . . . . . . . . -23-
        (a)   In General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-
        (b)   Transfers from Custodianships . . . . . . . . . . . . . . . . . . . . . -23-
7.4     Transfers of Limited Partnership Interests . . . . . . . . . . . . . . . . . -24-
7.5     Transfers of General Partnership Interests  . . . . . . . . . . . . . . . . . -24-
        (a)   In General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -24-
        (b)   Sole Remaining General Partner . . . . . . . . . . . . . . . . . . . . -25-
7.6     Admission of Transferee as Partner - Transfer of Limited
        Partnership Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-
7.7     Admission of Transferee as Partner - Transfer of General
        Partnership Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-
7.8     Allocations and Distributions With Respect to Transferred
        Partnership Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -27-
7.9     Effect of Transfers and Admissions in Violation of this Article . . . . -27-

ARTICLE 8.     WITHDRAWAL, DEATH, INCOMPETENCY OR DISSOLUTION OF A
               GENERAL PARTNER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -28-
8.1     Withdrawal of a General Partner  . . . . . . . . . . . . . . . . . . . . . . . . -28-
        (a)   In General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -28-
        (b)   Sole Remaining General Partner . . . . . . . . . . . . . . . . . . . . -28-
        (c)   Death, Bankruptcy, Liquidation, Etc. of a General Partner . . . . -28-
        (d)   Treatment of a General Partner Who Withdraws . . . . . . . . . . . -28-
        (e)   No Other Withdrawal Permitted . . . . . . . . . . . . . . . . . . . . . -30-
        (f)   Withdrawal in Violation of Agreement . . . . . . . . . . . . . . . . . -30-
8.2     Dissolution of Partnership Upon a Withdrawal of a General
        Partner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-
        (a)   In General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-
        (b)   Withdrawal of Sole Remaining General Partner . . . . . . . . . . . -31-
        (c)   General Partner's Withdrawal Constitutes a Breach of this
              Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -31-
        (d)   Appointing Successor General Partners . . . . . . . . . . . . . . . . -31-
        (e)   Continuing the Partnership . . . . . . . . . . . . . . . . . . . . . . . . . -32-

ARTICLE 9.     TERMINATION, DISSOLUTION AND LIQUIDATION OF THE
               PARTNERSHIP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-

(ii)

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

9.1     Events of Dissolution . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-
9.2     Liquidation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -33-
9.3     Election of Liquidating Trustee . . . . . . . . . . . . . . . . . . . . -34-
9.4     Statements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -34-

ARTICLE 10.   AMENDMENT OF THE AGREEMENT . . . . . . . . . . . . . . . . . . . . -35-
10.1    Amendments by General Partners . . . . . . . . . . . . . . . . . . -35-
10.2    Other Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . -36-

ARTICLE 11.   POWER OF ATTORNEY . . . . . . . . . . . . . . . . . . . . . . . . . . . . -36-
11.1    Grant of Power . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -36-
11.2    Irrevocability of Power . . . . . . . . . . . . . . . . . . . . . . . . . . -37-

ARTICLE 12.   PROTECTION OF PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . -37-
12.1    General Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . -37-
12.2    Liability of the General Partners . . . . . . . . . . . . . . . . . . . -38-
12.3    Limited Liability of Limited Partners . . . . . . . . . . . . . . . . -38-
        (a)   Partnership Losses and Debts . . . . . . . . . . . . . . . . -38-
        (b)   Negative Capital Accounts . . . . . . . . . . . . . . . . . . . -39-

ARTICLE 13.   ALTERNATIVE DISPUTE RESOLUTION ("ADR") . . . . . . . . . . . . -39-
13.1    Agreement to Use Procedure . . . . . . . . . . . . . . . . . . . . . -39-
13.2    Initiation of Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . -39-
13.3    Direct Negotiations . . . . . . . . . . . . . . . . . . . . . . . . . . . . -40-
13.4    Mediator Selection . . . . . . . . . . . . . . . . . . . . . . . . . . . . -40-
13.5    Mediation Time and Place . . . . . . . . . . . . . . . . . . . . . . . -41-
13.6    Information Exchange . . . . . . . . . . . . . . . . . . . . . . . . . . -41-
13.7    Summary of Views . . . . . . . . . . . . . . . . . . . . . . . . . . . . -41-
13.8    Parties to be Represented . . . . . . . . . . . . . . . . . . . . . . . -41-
13.9    Conduct of Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . -42-
        (a)   Mediation Format . . . . . . . . . . . . . . . . . . . . . . . . . -42-
        (b)   Commitment to Participate in Mediation in Good Faith . . . . . -42-
13.10   Termination of Procedure . . . . . . . . . . . . . . . . . . . . . . . . -42-
        (a)   Procedure to Terminate Mediation . . . . . . . . . . . . . . -42-
        (b)   If Dispute is Not Resolved . . . . . . . . . . . . . . . . . . . -43-
13.11   Additional Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . -43-
13.12   Mediation Fees; Disqualification . . . . . . . . . . . . . . . . . . . -43-
13.13   Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -43-

ARTICLE 14.   MISCELLANEOUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -44-
14.1    Successors in Interest . . . . . . . . . . . . . . . . . . . . . . . . . . -44-
14.2    Entire Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -44-
14.3    Provisions Severable . . . . . . . . . . . . . . . . . . . . . . . . . . . -44-
14.4    Counterparts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -44-
14.5    Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -45-
14.6    Gender; Captions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -45-
14.7    No Partition of Partnership Property . . . . . . . . . . . . . . . . -45-

(iii)

**Exhibit A**                    **CFLP Records**                    **Page 5**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

| | | | |
|---|---|---|---|
| 14.8 | Notices | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -45- |
| 14.9 | Investment Representations | . . . . . . . . . . . . . . . . . . . . . . . . | -46- |
| 14.10 | Binding Agreement | . . . . . . . . . . . . . . . . . . . . . . . . . . . | -47- |
| 14.11 | Confidential Information | . . . . . . . . . . . . . . . . . . . . . . . . | -47- |
| | (a) Partnership Information | . . . . . . . . . . . . . . . . . . . . . . . | -47- |
| | (b) Agreement to Keep Information Confidential | . . . . . . . . . . . . . | -47- |

SCHEDULE A

THE CAMPBELL FAMILY LIMITED PARTNERSHIP  . . . . . . . . -50-

SCHEDULE B

THE CAMPBELL FAMILY LIMITED PARTNERSHIP  . . . . . . . . -51-

EXHIBIT 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -52-

EXHIBIT 2

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -60-

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

# LIMITED PARTNERSHIP AGREEMENT

## OF

## THE CAMPBELL FAMILY LIMITED PARTNERSHIP

THIS LIMITED PARTNERSHIP AGREEMENT (this "Agreement") is made and entered into this _9th_ day of _APRIL_, 1997, by and among Donald A. Campbell and F. Margaret Campbell, as the initial general partners (the "General Partners"), and Donald A. Campbell and F. Margaret Campbell as the initial limited partners (the "Limited Partners").

**ARTICLE 1.  DEFINITIONS**

Those capitalized words and phrases used in this Agreement as to which definitions are contained in Exhibit 1 hereto shall have the meanings set forth in Exhibit 1, attached hereto and made a part hereof, and those capitalized words and phrases used in this Agreement as to which definitions are not contained in Exhibit 1 hereto shall have the meanings set forth near such words and phrases the first time they are used in this Agreement in capitalized form, and such meanings shall be equally applicable to both the singular and plural forms of such words and phrases.

**ARTICLE 2.  FORMATION**

2.1  Formation.  The parties hereby form a limited partnership under the Act and any successor statute governing the operation of a limited partnership in Ohio.  Promptly upon the execution of this Agreement, the Managing General Partner shall do or cause to be done all such filing, recording or other acts as may be necessary or appropriate from time to time to comply with the requirements of law for the formation and operation of a limited partnership in the State of Ohio and any such requirements in any other jurisdiction in

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

which the Partnership may do business.  All costs incurred by the Managing General Partner or by the General Partners in connection with the foregoing, including, without limitation, legal fees in connection therewith, shall be expenses of the Partnership and shall be reimbursed promptly by the Partnership upon the completion of such action.

2.2  _Office; Place of Business; Agent; Trade Names_.  The location of the registered office of the Partnership ("Office") shall be as indicated on Schedule A attached hereto, which Office may but need not be located in Ohio.  The Managing General Partner may change the location of the Office, establish additional offices or places of business of the Partnership or enter into such contracts or hire such agents in such other locations, inside and outside of the State of Ohio, as the Managing General Partner may deem necessary or desirable in the conduct of the business of the Partnership.  The registered agent of the Partnership for service of process shall be as indicated on Schedule A, and the address of the business office of the registered agent shall be the same as that of the Office.  The Partnership may adopt such trade or business name(s) as the Managing General Partner shall consider appropriate.

2.3  _Intent to Supersede Statute_.  The parties hereby form the Partnership under the Act; provided however it is the intention of the Partners that the terms of this Agreement control all the activities of the Partnership.  To the extent the Act permits this Agreement to supersede the Act, this Agreement shall control.

2.4  _Commencement and Duration_.  The Partnership shall commence upon this Agreement being executed and the Certificate of Limited Partnership (the "Certificate") being filed (the "Commencement Date"), and shall continue until December 31 of the year which is forty (40) years following the year in which the Commencement Date occurs, unless earlier terminated by operation of law or by the provisions of this Agreement (the

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

"Partnership Term").  The Partnership will not conduct any business prior to the Commencement Date.

2.5  Purposes of Partnership.

The purposes of the Partnership (the "Partnership Purposes") are to make a net profit, increase wealth, and provide a means for the Family to become knowledgeable of, manage, and preserve Family Assets.  To accomplish the Partnership Purposes the Partnership will be managed with a view toward accomplishing the following and with the following authority:

(a)  Manage Partnership Assets and Promote Harmony Among the Partners.  The Partnership will be managed so as to:

(i)  resolve any disputes that may arise among the Family to preserve family harmony and avoid litigation expense and problems;

(ii)  control Family Assets;

(iii)  consolidate fractional interests in Family Assets;

(iv)  increase Family wealth;

(v)  establish a method by which annual gifts may be made without fractionalizing Family Assets;

(vi)  continue the ownership of Family Assets and restrict the right of any non-Family person to acquire interests in Family Assets;

(vii)  provide protection to Family Assets from future creditor claims against Family members;

(viii)  prevent a Family member's interest in the Partnership being transferred because of a failed marriage;

(ix)  provide flexibility in business planning not available through trusts, corporations, or other business entities;

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

(x)    facilitate the administration and reduce the cost associated with a family member's disability or probating a family member's estate; and

(xi)    promote the Family's knowledge of and communication about Family Assets.

(b)    <u>Purposes Allowed by The Act</u>.  The Partnership is authorized to engage in all business permitted by the Act.  If the Partnership qualifies to do business in a foreign jurisdiction, it may transact all business permitted in that jurisdiction.  There is no jurisdictional restriction upon the Partnership's property or activity.

(c)    <u>Partnership's Authority</u>.  To accomplish the Partnership Purposes, the Partnership's authority throughout the Partnership Term includes but is not limited to the following:

(i)    <u>Real Estate</u>.

(A)    Engaging in the real estate business;

(B)    Acquiring, owning, holding, developing, and operating real estate properties, either as operator, managing agent, principal, agent, partner, stockholder, syndicate member, associate, joint venturer, participant, or otherwise;

(C)    Investing in and raising funds for real estate development and operation;

(D)    Purchasing, constructing, acquiring, owning, developing, operating, leasing, mortgaging, pledging, selling, or otherwise disposing of buildings, fixtures, and improvements; and

(E)    Doing anything necessary or incident to the real estate business.

(ii)    <u>Stocks and Bonds</u>.  Purchasing, selling, investing, and dealing in the following: stocks, common or preferred, bonds, evidences of indebtedness of any Person, domestic or foreign, bills of exchange and commercial paper, notes, debentures, loans, mortgages, common trust funds, or other securities (including,

-4-

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

without limitation, short sales and on margin, and for such purposes the Partnership may maintain and operate margin accounts with brokers and may pledge any securities held or purchased by the Partnership with such brokers as security for loans and advances made to the Partnership) or property, real or personal, including gold, silver, grain, cotton, and other commodities and provisions usually dealt on exchanges or over-the-counter markets.

(iii) <u>Business Entities</u>.

(A)    Investing Partnership Property or carrying on a trade or business and form all types of business entities or trusts; or

(B)    Acquiring general or limited partnership interests in a partnership, membership interests in a limited liability company or a joint venture, shares in a corporation, or interests in any syndication.

(iv) <u>Farm and Ranch</u>.

(A)    Engaging in farming and ranching;

(B)    Acquiring, owning, holding, developing, and operating farm and ranch properties, either as operator, managing agent, principal, agent, partner, stockholder, syndicate member, associate, joint venturer, participant, or otherwise;

(C)    Investing in and raising funds for farming and ranching;

(D)    Purchasing, constructing, acquiring, owning, developing, operating, leasing, mortgaging, pledging, selling, or otherwise disposing of crops, livestock, and facilities; and

(E)    Doing anything necessary or incident to farming and ranching.

(v) <u>Conveyances</u>. To buy, sell, lease, and deal in services, personal property, and real property.

(vi) <u>Investments</u>. Engage in any other trade, business, or investment activity.

(vii) <u>Oil and Gas</u>. Buying, selling, trading, exchanging, acquiring, transferring, assigning, leasing, developing, managing, and

-5-

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

operating oil, gas, and other mineral interests, either alone or together with others.

(viii) <u>Other Lawful Business Enterprise</u>.  Operating any lawful business enterprise that accomplishes other Partnership Purposes.

(ix) <u>Guaranties</u>.  Guaranteeing the financial transactions of others, with or without charging a fee.

(x) <u>Investments</u>.  Investing and reinvesting any Partnership Property or income until the end of the Partnership Term.

(xi) <u>Depreciable Property</u>.  Purchasing, leasing, acquiring, selling, or disposing of machinery, equipment, buildings, and other depreciable property.

(xii) <u>Acquiring Partnership Property</u>.  Purchasing, acquiring, holding, operating, selling, leasing, or disposing of full or fractional interests in improved or unimproved real and personal property.

(xiii) <u>Lending, Borrowing and Raising Money</u>.  Lending money, and borrowing or raising money by:

    (A)   Issuing, accepting, endorsing, or executing notes, drafts, bills of exchange, warrants, bonds, debentures, instruments or evidences of indebtedness;

    (B)   Securing the indebtedness by mortgage, pledge, transfer, or assignment in trust of all or any part of the Partnership Property; and

    (C)   Selling, pledging, or disposing of the Partnership's obligations.

(xiv) <u>Operating Offices</u>.  Operating one or more offices, leasing or acquiring office space, engaging personnel, and doing all things necessary to operate the office.

(xv) <u>Insurance</u>.  Carrying insurance that the General Partners deem necessary and appropriate.

(xvi) <u>Entering into Contracts</u>.  Making, entering into, delivering and performing all contracts, agreements, or undertakings.

**Exhibit A**

**CFLP Records**

**Page 12**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

(xvii) <u>Paying Expenses and Other Acts</u>. Paying all costs and expenses and performing all acts deemed appropriate by the General Partners to carry out the Partnership Purposes.

## ARTICLE 3. CAPITAL ACCOUNTS; DISTRIBUTIONS TO PARTNERS

3.1 <u>Capital Contributions</u>. Each Partner has made a Capital Contribution to the Partnership of all of his right, title and interest in and to the property as described in Schedule B attached hereto and made a part hereof and in exchange therefor shall receive that number of General Partner Units and/or Limited Partner Units as set forth in Schedule B.

3.2 <u>Capital Accounts</u>.

(a)     The Partnership shall maintain for each Partner a separate Capital Account in accordance with Section 1.704-1(b) of the Treasury Regulations and the principles set forth in Exhibit 2 attached hereto and made a part hereof. The determination of the Partners' Capital Accounts, and any adjustments thereto, shall be made consistent with tax accounting and other principles set forth in Section 704(b) of the Code and applicable Treasury Regulations thereunder.

(b)     Except as otherwise provided in this Agreement, no Partner shall demand or receive a return of his Capital Contributions or withdraw from the Partnership. Under circumstances requiring a return of any Capital Contributions, no Partner shall have the right to receive property other than cash except as may be specifically provided herein.

(c)     No Partner shall receive any interest, salary or drawing with respect to his Capital Contributions or his Capital Account or for services rendered on behalf of the Partnership or otherwise in his capacity as a Partner, except as otherwise provided in this Agreement.

-7-

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

(d)     No Limited Partner shall be liable for the debts, liabilities, contracts or any other obligations of the Partnership.  Except as otherwise provided by the Act, a Limited Partner shall be liable only to make his Capital Contributions and shall not be required to lend any funds to the Partnership or, after his Capital Contributions have been paid, to make any additional Capital Contributions to the Partnership.

(e)     For purposes of computing the amount of any item of income, gain, deduction or loss to be reflected in the Partners' Capital Accounts, the determination, recognition and classification of any such item shall be the same as its determination, recognition and classification for federal income tax purposes, taking into account any adjustments required pursuant to Section 704(b) of the Code and the applicable Treasury Regulations thereunder as more fully described in Exhibit 2.

3.3     Distributions to Partners.

(a)     Distributions of Cash.  Distributable Cash may be distributed to the Partners at such times as the Managing General Partner may determine.  Any distributions of Distributable Cash shall be distributed to the Partners in proportion to their Percentage Interests.

(b)     Estimated Taxes.  Notwithstanding the foregoing provisions of this Section 3.3, the Partnership shall within sixty (60) days after the end of each Fiscal Year make cash distributions to the Partners in proportion to their Percentage Interests until each Partner shall have received distributions equal to the product of (i) the Assumed Tax Rate (as hereinafter defined) for that Fiscal Year and (ii) the Net Profits of the Partnership minus the Net Losses of the Partnership for that Fiscal Year.  For purposes of the preceding sentence, "Assumed Tax Rate" means the highest effective marginal federal, state and local income tax rate prescribed for individuals in a Fiscal Year in the city and state in which a

-8-

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

majority of the then Partners have their principal residence (taking into account the deductibility of state and local income taxes for federal income tax purposes).

## ARTICLE 4.  ALLOCATION OF PROFITS AND LOSSES

4.1     Allocation of Net Profits and Net Losses.  The Net Profits and Net Losses of the Partnership for any Fiscal Year shall be allocated to the Partners pro-rata based upon their Percentage Interests.  Any allocation to a Partner of a portion of the Net Profits or Net Losses of the Partnership shall be a proportionate part of each item of income, gain, loss, deduction or credit that is earned, realized or available by or to the Partnership for federal income tax purposes.

4.2     Special Allocations.  Notwithstanding any provision to the contrary contained in this Article 4, the special allocations set forth in Exhibit 2 shall in all events apply in determining the allocation of Net Profits and Net Losses among the Partners and shall be made prior to the allocations required under Section 4.1 of this Article 4.

4.3     Timing of Allocation.  Except as otherwise expressly provided herein, all allocations of Net Profits and Net Losses shall be made as of the last day of each Fiscal Year of the Partnership.

## ARTICLE 5.  GENERAL PARTNERS; RIGHTS AND POWERS OF GENERAL PARTNERS

5.1     General Partners.  The General Partners shall have full, exclusive and complete authority and control in the management of the Partnership business with all rights and powers generally conferred by the Act or necessary or advisable and consistent therewith and with the provisions of this Agreement.  Subject to the provisions of this Agreement, if there is more than one General Partner, no General Partner shall take any action on behalf of the Partnership unless such action has been approved by the General Partners holding

-9-

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

a majority of the General Partnership Interests in the Partnership. Notwithstanding the preceding sentence and except as otherwise provided herein, if one of the General Partners has been designated as the Managing General Partner, such Managing General Partner may act on behalf of the Partnership as set forth in Section 5.9 hereof.

5.2    Rights and Powers. The General Partners may take any action permitted by this Agreement and the Act to accomplish the Partnership Purposes, including, by way of illustration but not by way of limitation, the following:

(a)    Selling, exchanging, assigning, conveying, leasing, and transferring legal and equitable title to the Partnership Property on terms and conditions deemed reasonable by the General Partners;

(b)    Acquiring, utilizing for Partnership Purposes, and operating, improving, and developing any Partnership Property;

(c)    Retaining, without liability, any property in the form it is received without regard to its productivity or the proportion that any one asset or class of assets may bear to the whole;

(d)    Registering or taking title to assets of the Partnership in the Partnership's name or as Trustee, with or without disclosing the identity of his or her principal; or permitting any securities to be registered in "street name" under a custodial arrangement with an established securities brokerage firm, trust department, or other custodian;

(e)    Borrowing money, financing, refinancing, or otherwise incurring obligations for the Partnership's account and pledging, mortgaging, and granting a security interest in any Partnership Property;

-10-

**Exhibit A**                    **CFLP Records**                    **Page 16**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

(f)     Carrying out the Partnership Purposes through other partnerships, corporations, limited liability companies, or other entities;

(g)     Compromising claims against the Partnership.

(h)     Making any election under any tax law in the manner the General Partners deem advisable, the election or failure to elect of which may not result in any cause of action against the General Partners;

(i)     Executing and accepting any instrument, conveyance, or agreement incident to the business of the Partnership or the Partnership Property without the Partners' joinder, ratification, or consent;

(j)     Paying all Partnership debts, obligations, and expenses;

(k)     Performing the Partnership's obligations, and exercising all the Partnership's rights, under any agreement to which the Partnership or its nominee is a party.

(l)     Loaning funds to any Partner on terms and conditions deemed reasonable;

(m)     Advancing any monies to the Partnership required for Partnership Purposes, but with no obligation to do so;

(n)     Acquiring and determining amounts of insurance coverages required by the Partnership Purposes, property, or business, and maintaining any insurance coverage deemed necessary or appropriate, in such amounts and of such types as shall be determined, including but not limited to public liability insurance coverage and insurance coverage covering the indemnification by the Partnership provided in Section 12.1 hereof.

(o)     Entering into contracts and business undertakings to further the Partnership Purposes;

-11-

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

(p)     Opening and maintaining bank and investment accounts and arrangements, drawing checks and other orders for paying money, and designating individuals with authority to sign or give instructions with respect to those accounts and arrangements;

(q)     Maintaining the Partnership Property in good order;

(r)     Collecting sums due the Partnership;

(s)     Investing and reinvesting property to accomplish the Partnership Purposes;

(t)     Distributing Distributable Cash subject to other provisions of this Agreement;

(u)     Executing and filing certificates or instruments as required or permitted by the Act and any other laws of Ohio or any other jurisdiction where the Partnership does business;

(v)     Withholding any funds due a Partner who is a foreign person as may be required by the Code and applicable Treasury Regulations;

(w)     Performing any and all acts necessary to pay any and all organizational expense incurred in the creation of the Partnership and in raising additional capital, including without limitation broker's commissions, legal and accounting fees (it being understood that all expenses incurred in the creation of the Partnership and the commencement of the Partnership business shall be borne by the Partnership); and compromising, arbitrating or otherwise settling or adjusting claims in favor of or against the Partnership and commencing or defending litigation with respect to the Partnership or any assets of the Partnership as deemed advisable, all or any of the above matters being at the

-12-

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

expense of the Partnership, and executing, acknowledging and delivering any and all instruments to effect any and all of the foregoing;

(x)     Having any kind of dealing with any other person (including lending money to, borrowing money from, selling or leasing assets or services to, and purchasing or leasing assets or services from), any Partner or Affiliate of a Partner, any trust or estate of which any Partner or Affiliate of a Partner is a beneficiary or to which any Partner or Affiliate of a Partner stands in any fiduciary relationship, or any corporation or business enterprise which is owned or controlled, or affiliated with any Partner or Affiliate of a Partner, or is a corporation or business enterprise in which any Partner or Affiliate of a Partner may have an interest as a shareholder, officer, director, partner, manager, member or proprietor; and any profits or income earned by such Partner or Affiliate of a Partner or entity as the result of such transaction shall belong to such Partner or Affiliate of a Partner or entity and not to the Partnership;

(y)     Establishing Partnership offices at such places as may be appropriate, hiring Partnership employees, obtaining the services of independent contractors and consultants, engaging counsel, and otherwise arranging for the facilities and personnel necessary to carry out the purposes and business of the Partnership, the cost and expense thereof and incidental thereto to be borne by the Partnership; and

(z)     Arranging for a facsimile signature for the General Partners for the purpose of executing such checks or other writings or legal instruments as may be necessary or desirable in the Partnership business.

5.3     Duties of General Partners; Not Required to Devote Full Time.     Each General Partner shall be under a fiduciary duty to manage or cause to be managed the affairs of the Partnership in such prudent and businesslike manner as the General Partner

-13-

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

determines in its discretion, exercised in good faith, to be in the best interests of the Partnership. Each General Partner shall devote such time to the Partnership's affairs as the General Partner shall in the General Partner's discretion exercised in good faith determine is reasonably necessary for the conduct of such affairs; provided, however, that it is expressly understood and agreed that no General Partner shall be required to devote the General Partner's entire time or attention to the business of the Partnership.

In carrying out the General Partner's duties and obligations created by this Agreement, the General Partners shall:

(a)　　Obtain and maintain such public liability, hazard and other insurance as may be deemed necessary or appropriate by the General Partners;

(b)　　Deposit all uninvested funds of the Partnership in one or more separate bank accounts with such banks or trust companies as the General Partners may designate (withdrawals from such bank accounts to be made upon such signature or signatures as the General Partners may designate), provided that this provision shall not limit any discretion or authority conferred on the General Partners in Section 5.2;

(c)　　Make available for inspection and copying at the reasonable request and expense of any Partner (or that Partner's duly authorized representative) during ordinary business hours at the Office of the Partnership all of the following:

(i)　　a current list of the full name and last known business or residence address of each Partner, separately listing and identifying, in alphabetical order, the General Partners and the Limited Partners;

(ii)　　a copy of the Certificate, all certificates of amendment thereto, and all certificates of merger filed in mergers in which the Partnership was the surviving partnership, together with executed copies of any powers of attorney pursuant to which any certificate has been executed;

-14-

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

    (iii)    copies of the Partnership's federal, state and local income tax returns and reports for the four most recent years; and

    (iv)    copies of this Agreement, of merger agreements in connection with mergers of which the Partnership was the surviving partnership, and of any financial statements of the Partnership for the four most recent years.

    (d)    Maintain complete and accurate records of all properties owned or leased by the Partnership and complete and accurate books of account (containing such information as shall be necessary to compute allocations and distributions), and make such records and books of account available for inspection and copying at the reasonable request and expense of any Partner (or that Partner's duly authorized representative) during ordinary business hours at the Office of the Partnership;

    (e)    Cause to be prepared and distributed to all Partners as soon as practicable after the end of the Partnership's fiscal year:

    (i)    A statement of cash receipts and disbursements;

    (ii)    A statement of income for such year;

    (iii)    A balance sheet as of year end; and

    (iv)    A statement showing all information required by the current and former Partners for preparation of their income tax returns;

    (f)    Cause to be filed the Certificate and such other certificates and do such other acts as may be required by law to qualify and maintain the Partnership as a limited partnership under the Act; and

    (g)    Cause Schedule B to be amended from time to time as required by this Agreement.

    5.4    <u>Limitations on Actions of General Partners</u>.  Notwithstanding the general authority conferred on the General Partners pursuant to Sections 5.1 and 5.2, if there is

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

more than one General Partner (even if one of such is designated as a Managing General Partner), the General Partners shall take the following actions only upon the approval of the Partners owning 100 percent of the Percentage Interests in the Partnership:

(a)     Dissolve and liquidate the Partnership subject to and pursuant to the provisions of this Agreement on the basis that it is no longer profitable, feasible or advantageous to operate the business of the Partnership; or

(b)     Take any action or make any transfer of an interest in the Partnership that would effect a termination of the Partnership within the meaning of Section 708 of the Code.

5.5     <u>Reliance of Third Parties on Authority of General Partners</u>. No financial institution or any other person, firm or corporation dealing with any General Partner shall be required to ascertain whether such General Partner is acting in accordance with this Agreement, but such financial institution or such other person, firm or corporation shall be protected in relying solely upon the acts and assurances of and the execution of any instruments by such General Partner.

5.6     <u>Tax Elections; Tax Matters Partner</u>. The General Partners shall have the exclusive right to make and determine, in the sole discretion of the General Partners, all options and elections with respect to the Code. As an example of, but not in limitation of, the general authority conferred by the preceding sentence, the General Partners shall determine whether and when to make or revoke the election under Code Section 754. The General Partners (or one of their number designated by them from time to time for this purpose) shall be the "tax matters partner" (as defined in Code Section 6231) and shall be authorized and required to represent the Partnership (at the Partnership's expense) in connection with all examinations of the Partnership's affairs by tax authorities, and to

-16-

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

expend Partnership funds for professional services and costs associated therewith. The tax matters partner shall provide all notices and perform all actions required of a tax matters partner under Subchapter C of Chapter 63 of the Code. Notwithstanding the above, the General Partners shall not have the authority to agree on behalf of any Limited Partner to an extension of time for assessment under Code Sections 6501(c)(4) or 6229(b)(1)(B).

5.7    General Partners May Compete. The Partners hereby acknowledge that the General Partners may from time to time engage in business enterprises similar to the business of the Partnership and competitive with the business of the Partnership without restriction and with no obligation to account to the Partnership or to the Partners for such activities. The General Partners are not obligated to offer business opportunities to the Partnership or to other Partners.

5.8    Compensation of General Partner or Affiliate; Reimbursement of Expenses. The General Partners, acting on behalf of the Partnership, may pay a management fee or other compensation to any General Partner or to any other Partner or Affiliate of any Partner for services rendered in managing the Partnership and conducting the business of the Partnership. The amount of any such management fees or other compensation shall be such amounts as are deemed reasonable by the General Partners. All expenses of any General Partner or any other Partner or Affiliate of any Partner incurred in connection with managing the Partnership and conducting the business of the Partnership shall be reimbursed by the Partnership, or, if billed directly to the Partnership, shall be paid by it.

5.9    Appointment of Managing General Partner. Donald A. Campbell is appointed as the Managing General Partner. The general management and final determination of all questions relating to the ordinary and usual day-to-day business affairs and business policies of the Partnership shall rest with the Managing General Partner.

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

Additionally, specific duties and functions are assigned to the Managing General Partner pursuant to the provisions of Sections 3.3(a), 5.1, 5.12, 6.5 and 11.1 of this Agreement. Any action taken by the Managing General Partner in accordance with the immediately preceding two sentences shall constitute the act of, and serve to bind, the Partnership. The management, operation, and development of the business affairs of the Partnership shall be at the risk of the Partnership and not at the risk of the Managing General Partner, except to the extent of the Managing General Partner's General Partnership Interest in the Partnership. The Managing General Partner is hereby authorized to execute and deliver on behalf of and in the name of the Partnership all contracts, instruments and documents which the Managing General Partner deems necessary or appropriate in furtherance of the Partnership's affairs.

5.10  Successor Managing General Partner. In the event that Donald A. Campbell shall become unwilling or unable to continue to serve as Managing General Partner for any reason, then the General Partners, by a vote of the General Partners holding a majority of the General Partnership Interests in the Partnership, shall designate a new Managing General Partner.

5.11  Conflict of Interest. A General Partner shall not be disqualified from dealing or contracting with the Partnership as a vendor, purchaser, employee, agent or otherwise. Provided that the terms of any such transaction, contract or act are no less favorable to the Partnership than those the Partnership may obtain from unrelated third parties, (a) no transaction, contract or act of the Partnership shall be void or voidable or in any way affected or invalidated by reason of the fact that any General Partner or any relative of any General Partner, or any firm of which any General Partner or any relative of any General Partner is a shareholder, director, member, manager, trustee or partner, or any trust of

-18-

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

which any General Partner or any relative of any General Partner is trustee or beneficiary, is in any way interested in such transaction, contract, or act and (b) no General Partner shall be accountable or responsible to the Partnership for, or in any respect to, any transaction, contract, or act of the Partnership in which such General Partner is interested for any gains or profits directly or indirectly realized by such General Partner therefrom.

5.12    <u>Meetings</u>.  Meetings of the Partners shall be called by the Managing General Partner.  The purpose of such meetings shall be to consider any matters for which the Partners may vote as set forth in this Agreement.  A list of the names and addresses of all Partners shall be maintained as part of the books and records of the Partnership and shall be made available on request to any Partner or his or her personal representative at that Partner's cost.

5.13    <u>Removal of General Partner</u>.  A General Partner may not be removed unless there is at least one remaining General Partner or a successor General Partner as provided in Article 8 hereof.  Subject to the provisions of this Agreement, including the first sentence of this Section 5.13, a General Partner will, however, be removed upon at least a majority-in-interest of all Partnership Interests owned by the Partners other than the General Partner being removed agreeing if (i) a General Partner materially breaches the General Partner's obligations and does not cure, or commence and diligently prosecute curing, the breach within 90 days after notice of the breach by any Limited Partner, or (ii) a General Partner commits any act of fraud or intentional misconduct.  If a General Partner is removed for any reason, the General Partner Units held by the General Partner being removed must be sold by the removed General Partner and purchased in accordance with Article 8 of this Agreement.

-19-

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

## ARTICLE 6.  LIMITED PARTNERS:  RIGHTS OF AND LIMITATIONS ON LIMITED PARTNERS

6.1     Limited Partners. The Limited Partners (each a "Limited Partner") of the Partnership shall be those Partners identified as such on Schedule B, as such Schedule shall be amended from time to time.  A General Partner may also be a Limited Partner.  The names and addresses of the Limited Partners, the amount of their contribution to the capital of the Partnership and their Percentage Interests in the Partnership are set forth in Schedule B.

6.2     Additional Limited Partners. The General Partners may admit additional Limited Partners to the Partnership as provided in this Agreement. The transferee of the interest in the Partnership of an existing Limited Partner shall not become a Limited Partner until admitted as a Substitute Partner pursuant to Section 7.6.

6.3     Limited Partners May Compete. Limited Partners shall not in any way be prohibited from or restricted in engaging or owning an interest in any other business venture of any nature, including any venture which might be competitive with the business of the Partnership, and the Partnership may engage Limited Partners or persons or firms associated with them for specific purposes and may otherwise deal with such Limited Partners, on terms and for compensation to be agreed upon by any such Limited Partner and the Partnership; provided, however, that Limited Partners shall not be entitled to participate in the control of the business of the Partnership.

6.4     Limitations on Limited Partners; Liability for Breach of Agreement. No Limited Partner shall have the right:

(a)     To take part in the control of the Partnership business or to sign for or to bind the Partnership;

-20-

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed:CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

(b)     To have that Limited Partner's Capital Contribution repaid except to the extent provided in this Agreement;

(c)     To require partition of Partnership Property or to compel any sale or appraisement of Partnership Property or sale of a deceased Partner's interest therein;

(d)     To sell, assign or encumber that Limited Partner's Limited Partnership Interest in the Partnership or to constitute the vendee or assignee thereunder a Substitute Partner, except as provided in Article 7 hereof;

(e)     To cause the Partnership's dissolution and winding up by court decree or otherwise; or

(f)     To withdraw from the Partnership.

A Limited Partner who breaches this Agreement shall be liable to the Partnership for the damages caused by the breach and the Partnership may offset the damages against the amounts otherwise distributable to the Limited Partner.

6.5     Meetings.  Meetings of the Partners may be called by the Limited Partners holding 80% of the total Limited Partnership Interest.  The purpose of such meetings shall be to consider any matters for which the Partners may vote as set forth in this Agreement. A list of the names and addresses of all Partners shall be maintained as part of the books and records of the Partnership and shall be made available on request to any Partner or his or her personal representative at that Partner's cost.  Upon receipt of a call of a meeting pursuant to written notice to the Managing General Partner either in person or by certified mail stating the purpose(s) of the meeting, the Managing General Partner shall provide all Partners, within ten (10) days after receipt of said Notice, written notice (either in person or by certified mail) of a meeting and the purpose(s) of such meeting to be held on a date

-21-

**Exhibit A**                                                                 Page 27

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

not less than fifteen (15) nor more than sixty (60) days after receipt of said Notice, at a time and place selected by the Managing General Partner.

6.6 <u>Liabilities</u>. No Limited Partner shall be personally liable for any of the debts of the Partnership or any of the losses thereof. However, the amount committed by him or her to the capital of the Partnership, any return thereon, and his or her interest in the Partnership's undistributed profits shall be subject to any such liability.

6.7 <u>Conflict of Interest</u>. A Limited Partner shall not be disqualified from dealing or contracting with the Partnership as a vendor, purchaser, employee, agent or otherwise. No transaction, contract or act of the Partnership shall be void or voidable or in any way affected or invalidated by reason of the fact that any Limited Partner, or any firm of which any Limited Partner is a shareholder, director, member, manager or trustee, or any trust of which any Limited Partner is trustee or beneficiary, is in any way interested in such transaction, contract, or act. No Limited Partner shall be accountable or responsible to the Partnership for, or in any respect to, any transaction, contract, or act of the Partnership in which he, she or it is interested for any gains or profits directly or indirectly realized by him, her or it therefrom. Without limiting or qualifying the foregoing, if in any judicial or other inquiry, suit, cause, or proceeding, the question of whether a Limited Partner has acted in good faith is material, then notwithstanding any statute or rule of law or of equity to the contrary, the Limited Partner's good faith shall be presumed in the absence of proof to the contrary by clear and convincing evidence.

## ARTICLE 7. TRANSFER OF PARTNERSHIP INTERESTS

7.1 <u>No Transfer of Partnership Interest</u>. Except as specifically provided in this Agreement, no Partner may sell, assign, or in any manner transfer all or any part of that Partner's Partnership Interest.

-22-

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

7.2   <u>Compliance with Securities Act of 1933</u>. The Limited Partnership Units have not been registered under the Securities Act of 1933 in reliance upon the exemption provided in Section 4(2) of such act. Notwithstanding any other provisions in this Agreement, no Limited Partnership Units may be offered for sale, sold, transferred or otherwise disposed of unless, at the expense of the transferring Partner, the Partnership has received an opinion of counsel for the Partnership or counsel acceptable to its counsel, to the effect that such transfer is exempt from registration under the Securities Act of 1933 and is in compliance with all applicable federal and state securities laws and regulations. The General Partners may, in the sole discretion of the General Partners, waive the requirements of this Section with respect to the transfer of any interest, but any such waiver shall not constitute a waiver of any subsequent transfer of such interest or the transfer of any other interest.

7.3   <u>Permitted Transfers of Partnership Interests</u>.

(a)   <u>In General</u>. Except as otherwise set forth in this Agreement and subject to the provisions of this Section 7.3, any Partner may at any time make or cause to be made a Voluntary Transfer or an Involuntary Transfer of all or any part of that Partner's Limited Partnership Interest to a transferee without an offer being made to the Partnership if (a) such transferee is a Permitted Transferee and (b) such transfer (i) occurs as a result of the occurrence of a Disabling Event with respect to such Partner or (ii) is by way of gift.

(b)   <u>Transfers from Custodianships</u>. Any Limited Partnership Units which are held for a custodian for a minor under the Uniform Transfers to Minors Act, Uniform Gifts to Minors Act or similar act of any State shall be fully transferable and assignable to the minor, without an offer first being made to the Partnership, after the minor reaches the age of termination of such custodianship under the applicable statute.

-23-

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed\CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

7.4    Transfers of Limited Partnership Interests.  Except as otherwise set forth in this Agreement, each Limited Partner hereby covenants and agrees that he will not sell, assign, transfer (by Voluntary Transfer or Involuntary Transfer), mortgage, pledge, encumber, hypothecate or otherwise dispose of all or any part of his Limited Partnership Interest in the Partnership to any person, firm, corporation, trust or other entity without first offering in writing to sell such interest to the Partnership.  The Partnership shall have the right to accept the offer at any time during the thirty (30) days following the date on which the written offer is delivered to the Partnership.  If the Partnership shall fail to accept the offer within the thirty (30) day period, such interest may during the following sixty (60) days be disposed of free of the restrictions imposed by this Section 7.4; provided, however, that the purchase price for such interest shall not be less and the terms of purchase for such interest shall not be more favorable than the purchase price and the terms of purchase that would have been applicable to the Partnership had the Partnership purchased the interest; provided further that the purchaser shall first submit to the Partnership his written acceptance and adoption of the terms and provisions of this Agreement as the same may have been amended; and provided further that any interest not so disposed of within the sixty (60) day period shall thereafter remain subject to the terms of this Agreement.

7.5    Transfers of General Partnership Interests.

(a)    In General.  Subject to the provisions of Subsection (b) of this Section 7.5, and except as otherwise set forth in this Agreement and subject to the following proviso, each General Partner hereby covenants and agrees that he will not sell, assign, transfer by Voluntary Transfer, mortgage, pledge, encumber, hypothecate or otherwise dispose of all or any part of his General Partnership Interest in the Partnership to any person, firm, corporation, trust or other entity without first offering in writing to sell such interest to the

-24-

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

Partnership; provided, however, a General Partner shall be permitted to transfer his General Partnership Interest by a Voluntary Transfer which is a gift to a Permitted Transferee without first offering to sell such interest to the Partnership. The Partnership shall have the right to accept the offer at any time during the thirty (30) days following the date on which the written offer is delivered to the Partnership. If the Partnership shall fail to accept the offer within the thirty (30) day period, such interest may during the following sixty (60) days be disposed of free of the restrictions imposed by this Section 7.5; provided, however, that the purchase price for such interest shall not be less and the terms of purchase for such interest shall not be more favorable than the purchase price and the terms of purchase that would have been applicable to the Partnership had the Partnership purchased the interest; provided further that the purchaser shall first submit to the Partnership his written acceptance and adoption of the terms and provisions of this Agreement as the same may have been amended; and provided further that any interest not so disposed of within the sixty (60) day period shall thereafter remain subject to the terms of this Agreement.

(b)    Sole Remaining General Partner.  Notwithstanding the foregoing provisions of Subsection (a) of this Section 7.5, a sole remaining General Partner shall not sell, transfer by Voluntary Transfer, mortgage, pledge, encumber, hypothecate or otherwise dispose of all or any part of his General Partnership Interest in the Partnership unless and until (i) all of the Limited Partners have consented in advance to admit the transferee of the General Partner's General Partnership Interest as a Substitute Partner pursuant to the provisions of Section 7.7 of this Article and (ii) the Partnership has made the determination that the transfer of such General Partnership Interest will not result in a dissolution of the Partnership.

**Exhibit A**                                **CFLP Records**                        **Page 31**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

7.6    Admission of Transferee as Partner - Transfer of Limited Partnership Interests.  Notwithstanding the provisions of Sections 7.3 and 7.4 hereof, no assignee of a Limited Partnership Interest shall become an additional Limited Partner or a Substitute Partner unless and until all of the General Partners shall consent in writing to such addition or substitution, which consent may be arbitrarily withheld.  Upon and contemporaneously with any permitted assignment of a Limited Partnership Interest pursuant to which the assignee does not become an additional Limited Partner or a Substitute Partner, the Partnership shall purchase from the transferor, and the transferor shall sell to the Partnership for a purchase price of $100, any remaining rights of a Limited Partner under this Agreement or under the Act which are not transferred to the assignee.  An assignee of a Limited Partnership Interest who is not admitted as an additional Limited Partner or a Substitute Partner under this Section shall not be entitled to: (a) require any accounting of the Partnership's transactions; (b) inspect the Partnership's books and records; (c) require any information from the Partnership; or (d) exercise any privilege or right of a Partner which is not specifically granted to a nonsubstituted transferee of a limited partnership interest under the Act.

7.7    Admission of Transferee as Partner - Transfer of General Partnership Interests.  Notwithstanding the provisions of Sections 7.3 and 7.5 hereof, no assignee of a General Partnership Interest shall become an additional General Partner or a Substitute Partner unless and until all of the other General Partners, if any, or if none, all of the Limited Partners, consent in writing to such addition or substitution, which consent may be arbitrarily withheld.  Upon and contemporaneously with any permitted assignment of a General Partnership Interest pursuant to which the assignee does not become an additional General Partner or a Substitute Partner, the Partnership shall purchase from the transferor,

-26-

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

and the transferor shall sell to the Partnership, for a purchase price of $100, any remaining rights of a General Partner under this Agreement or under the Act which are not transferred to the assignee.  An assignee of a General Partnership Interest who is not admitted as an additional General Partner or a Substitute Partner under this Section shall not be entitled to: (a) require any accounting of the Partnership's transactions; (b) inspect the Partnership's books and records; (c) require any information from the Partnership; or (d) exercise any privilege or right of a Partner which is not specifically granted to a nonsubstituted transferee of a general partnership interest under the Act.

7.8     Allocations and Distributions With Respect to Transferred Partnership Interests.  If any transfer of a Partnership Interest permitted by this Agreement occurs during a fiscal year (whether or not the assignee is admitted as an additional Partner or a Substitute Partner), then all allocations of Net Profits and Net Losses attributable to the transferred Partnership Interest for such year shall be divided and allocated between the transferor and the transferee by taking into account their varying interests during such fiscal period, using any convention or method of allocation selected by the General Partners which is then permitted under Section 706 of the Code and the Treasury Regulations promulgated thereunder.  All distributions of Distributable Cash made prior to the effective date of any such transfer shall be made to the transferor and any such distributions made after the effective date of such transfer shall be made to the transferee.

7.9     Effect of Transfers and Admissions in Violation of this Article.  Any attempted transfer of a Partnership Interest or admission of a Substitute Partner in violation of this Article shall cause both the transfer and the admission to be null and void and of no force and effect whatsoever.

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

## ARTICLE 8.  WITHDRAWAL, DEATH, INCOMPETENCY OR DISSOLUTION OF A GENERAL PARTNER

8.1    Withdrawal of a General Partner.

(a)    In General.  Subject to the provisions of this Article 8, any General Partner may withdraw from the Partnership upon giving at least ninety (90) but not more than one hundred eighty (180) days' notice in writing of that General Partner's intention to do so to all the other Partners.

(b)    Sole Remaining General Partner.  Notwithstanding the foregoing provisions of Subparagraph (a) of this Section 8.1, the sole remaining General Partner cannot withdraw from the Partnership pursuant to Section 8.1(a) unless and until all of the Limited Partners have consented in advance to such withdrawal.

(c)    Death, Bankruptcy, Liquidation, Etc. of a General Partner.  On the death, bankruptcy, liquidation, dissolution, adjudication of insanity or incompetency, other cessation of the existence of a General Partner or other occurrence of an event of withdrawal of a General Partner described in the Act, such General Partner shall have withdrawn from the Partnership effective as of the date of any such event.

(d)    Treatment of a General Partner Who Withdraws.

(i)    A deceased General Partner may transfer the deceased General Partner's General Partner Units by Last Will and Testament or inter vivos trust to a Permitted Transferee.  A Permitted Transferee who receives an assignment of General Partner Units from a deceased General Partner may qualify to become a General Partner as provided under Section 7.7 of this Agreement; provided, however, if not so qualified, the provisions of Section 8.1(d)(ii) shall apply.

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

(ii)    A General Partner who is not deceased and commits an act of withdrawal pursuant to this Article 8, or a Permitted Transferee who has received an assignment of General Partner Units who does not qualify to become a General Partner, must sell all the General Partner Units owned by such withdrawing General Partner or received by such Permitted Transferee. Such General Partner Units must all be purchased by the remaining General Partners, if any, pro rata. If there are no remaining General Partners and there is a named successor General Partner, the named successor General Partner must purchase all the General Partner Units of the withdrawing or deceased General Partner or the nonqualifying Permitted Transferee. If there are no remaining General Partners and no named successor General Partner, the Limited Partner who has the most Limited Partner Units must purchase all the General Partner Units of the withdrawing or deceased General Partner or the nonqualifying Permitted Transferee. If more than one Limited Partner owns the number of Limited Partner Units that constitute the highest number of Limited Partner Units owned by a single Limited Partner, the oldest, by age, of those Limited Partners must purchase all the General Partner Units of the withdrawing or deceased General Partner or the nonqualifying Permitted Transferee. A Limited Partner who purchases General Partner Units in accordance with this section will automatically qualify as a General Partner.

(iii)   The purchase price of the General Partner Units of a withdrawing General Partner or nonqualifying Permitted Transferee will be the fair market value of those General Partner Units. The fair market value will be determined by an appraisal as of the date a General Partner withdraws. The purchaser of the General Partner Units will have the option to pay the purchase price for the General Partner Units in cash or over a period of ten (10) years in equal annual installments with interest at the

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

rate required to prevent the imputation of interest pursuant to Internal Revenue Code Section 1274 and with the right to prepay said obligation without penalty.

(iv)   In no event will General Partner Units be converted to Limited Partner Units or a General Partnership Interest converted to a Limited Partnership Interest.

(v)   Notwithstanding anything to the contrary in the Act, in no event shall any General Partner who withdraws from the Partnership, whether in accordance with this Agreement or in violation of this Agreement, be entitled to any distribution or any other payment from the Partnership as a result of such withdrawal except as set forth in this Agreement.

(e)   No Other Withdrawal Permitted. Each General Partner covenants and agrees that except as otherwise set forth herein, in no event shall any General Partner withdraw from the Partnership.

(f)   Withdrawal in Violation of Agreement. If the withdrawal of a General Partner violates this Agreement, the Partnership may recover from the withdrawing General Partner damages for breach of this Agreement, including the reasonable cost of obtaining replacement of the services the withdrawing General Partner was obligated to perform and may offset the damages against the amounts otherwise distributable to him, in addition to pursuing any remedies provided under the Agreement or otherwise available under applicable law.

8.2   Dissolution of Partnership Upon a Withdrawal of a General Partner.

(a)   In General.  The withdrawal of a General Partner shall not cause a dissolution of the Partnership in the event that there is at least one remaining General Partner and such General Partner continues the business of the Partnership, such General

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

Partner being authorized and permitted to reconstitute and continue the business of the Partnership.

(b)    <u>Withdrawal of Sole Remaining General Partner</u>. Upon the withdrawal of the sole remaining General Partner, the Partnership shall dissolve and liquidate, unless, within 90 days of such withdrawal, the remaining Limited Partners by a vote of at least 80% of the Limited Partnership Interest owned by the Limited Partners other than the sole remaining General Partner, elect to continue the Partnership and designate a General Partner or General Partners who or which consent to and accept the designation as such effective as of the date of such event.

(c)    <u>General Partner's Withdrawal Constitutes a Breach of this Agreement</u>. If a General Partner withdraws in violation of this Article 8, his withdrawal will be treated as breaching this Agreement.  The Partnership may recover damages from the withdrawing Partner, including reasonable costs of replacing services the withdrawing Partner was obligated to perform.  The Partnership may, in addition to pursuing any remedies otherwise available under applicable law, recover from the withdrawing Partner by offsetting any damages against any amount otherwise distributable to the withdrawing Partner.

(d)    <u>Appointing Successor General Partners</u>. If a General Partner ceases to serve for any reason, the remaining General Partners, if any, acting unanimously will subject to the following proviso, appoint General Partners, so that there will thereafter be two (2) General Partners serving at all times; provided, however, each such successor General Partner must be a Permitted Transferee.  If the General Partner cannot for any reason serve as General Partner, and there are no other General Partners, the Limited Partners owning a majority of the Limited Partnership Interest will, subject to the following proviso, within 90 days after the General Partner's withdrawal, elect new General Partners

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

from among the Limited Partners or any persons not already Limited Partners so that there will be two (2) General Partners serving at all times provided, however, such successor General Partner must be a Permitted Transferee. Each newly appointed General Partner will purchase any withdrawing General Partner's General Partner Units, pro rata, in accordance with Section 8.1.

(e)     Continuing the Partnership. Subject to provisions of this Agreement, and provided that at least one General Partner remains after a dissolution event described herein, it is agreed that the Partnership is permitted to be reconstituted without being wound up, and the Partnership's business will be carried on by the successor General Partner. If no General Partner remains after a dissolution event described in this Agreement, it is agreed that, within 90 days after the dissolution event occurs, all remaining partners will elect new General Partners in accordance with this Agreement who are permitted to reconstitute and continue the Partnership's business.

## ARTICLE 9.   TERMINATION, DISSOLUTION AND LIQUIDATION OF THE PARTNERSHIP

9.1     Events of Dissolution. Upon the (i) expiration of the term of the Partnership set forth in Section 2.4, (ii) any event of withdrawal which causes a dissolution of the Partnership, (iii) a judicial dissolution of the Partnership pursuant to the Act, (iv) any other event causing dissolution under the Act, or (v) upon the determination by all of the Partners that it is no longer profitable, feasible or advantageous to operate the business of the Partnership, the Partnership shall be dissolved and liquidated in accordance with the provisions of this Article. The Partners agree that the Partnership shall not dissolve prior to the occurrence of an event described in the immediately preceding sentence. Although

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

technical dissolutions may occur in accordance with this Section 9.1, if there is a remaining General Partner, the Partnership is permitted to be reconstituted and continued.

9.2    Liquidation.  (a)  Upon the dissolution of the Partnership, the then General Partners, or, if there be none, the Liquidating Trustee appointed pursuant to Section 9.3, shall proceed with the liquidation of the Partnership, and the liquidation proceeds shall be applied in the following order:

    (i)    To creditors in order of priority as provided by law, except for any indebtedness owing to any Partner.

    (ii)    To the establishment of any reserves that may be deemed by the General Partners or other persons having control of the liquidation proceedings to be reasonably necessary for any contingent or unforeseen liabilities or obligations of the Partnership;

    (iii)    To the Partners in satisfaction of any indebtedness owing to them; and

    (iv)    To the Partners in accordance with their positive capital account balances after making the adjustments for allocations under Article 4.

(b)    Upon liquidation of the Partnership, each General Partner shall contribute to the Partnership cash equal to the lesser of (i) any deficit balance in that General Partner's capital account at that time, or (ii) that General Partner's pro rata portion (as between the General Partners based on the size of their respective Deficit Capital Account balances at that time) of 1.01 percent of the excess of the aggregate capital contributions made by the Limited Partners over any capital contributions previously made by the General Partner. No Limited Partner shall be required to contribute any amount to the Partnership solely because of a deficit balance in that Limited Partner's capital account and any such deficit balance shall not for any purpose be considered an asset of the Partnership.

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

(c)     For purposes of the liquidation of the Partnership assets, the discharge of its liabilities and the distributions of the remaining funds among the Partners as above described, the General Partners or Liquidating Trustee appointed pursuant to Section 9.3 shall have the authority on behalf of the Partnership to sell, convey, exchange or otherwise transfer the assets of the Partnership for such consideration and upon such terms and conditions as the General Partners or the Liquidating Trustee shall deem appropriate. The General Partners or the Liquidating Trustee, in the sole discretion of the General Partners or the Liquidating Trustee, may make distributions in kind to Limited Partners. The General Partners (or any of them) shall have the authority to purchase any Partnership Property at its appraised fair market value. A reasonable time shall be allowed for the orderly liquidation of the assets of the Partnership and the discharge of liabilities of the Partnership to creditors to enable the Partnership to minimize normal losses during a liquidation period. Any return of all or any portion of the contributions made by a Partner to the capital of the Partnership shall be made solely from Partnership assets, and the General Partners shall not be personally liable for any such return, except to the extent provided in the preceding subsection.

9.3     _Election of Liquidating Trustee._ In the event there is no General Partner at the time of dissolution, the Limited Partners shall elect, by a vote of majority in interest of the Percentage Interests held by all Limited Partners, one of their members or any other person, firm or corporation of their choice to act as liquidating trustee ("Liquidating Trustee") in the liquidation of the partnership business in accordance with the provisions of this Article.

9.4     _Statements._ Each of the Partners shall be furnished with a statement prepared by the Partnership's accountants, which shall set forth the assets and liabilities of the

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

Partnership as of the date of complete liquidation. When the then General Partners, or if there be none, the Liquidating Trustee, have complied with the distribution plan set forth in this Article, the General Partners or the Liquidating Trustee, as the case may be, shall execute and cause to be filed a Certificate of Cancellation of the Partnership.

### ARTICLE 10. AMENDMENT OF THE AGREEMENT

10.1   Amendments by General Partners. This Agreement may be amended by the General Partners without the approval of any Limited Partner provided that such amendment is:

(a)   Solely for the purpose of clarification and does not change the substance hereof;

(b)   For the purpose of substituting or deleting a Limited Partner or admitting an additional Limited Partner in accordance with the provisions of this Agreement, or deleting a General Partner in accordance with the provisions of this Agreement;

(c)   For the purpose of reflecting a change in the amount or character of the contribution of any Limited Partner;

(d)   Otherwise in implementation of the terms of this Agreement; or

(e)   In the opinion of counsel for the Partnership, necessary or appropriate to satisfy current requirements of the Code with respect to partnerships or any federal or state securities laws or regulations.

Any amendment made pursuant to Subsection (a), (d) or (e) of this Section 10.1 may be made effective as of the date of this Agreement.  All Partners shall be notified as to the substance of any amendment to this Agreement and upon request shall be furnished a copy thereof.

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

10.2    Other Amendments. All other amendments to this Agreement shall require the approval of all of the General Partners and the approval of Limited Partners holding 80% of the Percentage Interests held by all Limited Partners.

## ARTICLE 11. POWER OF ATTORNEY

11.1    Grant of Power. Each of the Limited Partners irrevocably constitutes and appoints the Managing General Partner as his or her lawful attorney, in his name, place and stead, with full power of substitution, for the purpose of executing, acknowledging, swearing to and filing:

(a)    A Certificate of Limited Partnership to be filed with the applicable Secretary of State to give effect to the provisions of this Agreement and to preserve the character of the Partnership as a limited partnership;

(b)    All amendments of such Certificate of Limited Partnership required to give effect to any amendment of this Agreement and to preserve the character of the Partnership as a limited partnership;

(c)    All instruments which effect a change or modification of the Partnership in accordance with this Agreement;

(d)    All documents which may be required to effect the dissolution of the Partnership pursuant to this Agreement and the cancellation of its Certificate of Limited Partnership as amended from time to time;

(e)    All fictitious or assumed name certificates required or permitted to be filed on behalf of the Partnership;

(f)    All amendments to Schedule B of this Agreement in order to reflect from time to time a change in the status of the interests owned by each Partner; and

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

(g)     All other instruments which may be required or permitted by law to be filed on behalf of the Partnership and which are not inconsistent with this Agreement.

11.2    Irrevocability of Power.  It is expressly understood, intended and agreed by each of the Limited Partners for himself, his successors and assigns that the grant of the power of attorney to the Managing General Partner pursuant to provisions of Section 11.1 of this Article 11 is coupled with an interest, is irrevocable and shall survive the death or incapacity of the Limited Partner or the assignment of his interest in the Partnership.

**ARTICLE 12.** PROTECTION OF PARTIES

12.1    General Indemnification.  Subject to the provisions of this Section 12.1, every Partner or former Partner is hereby indemnified by the Partnership against expenses, judgments, decrees, fines, penalties, or amounts paid in settlement in connection with the defense of any pending or threatened action suit or proceeding, criminal or civil, to which he, she or it is or may be made a party by reason of having been such Partner, provided he, she or it is determined by (a) Partners who are not parties to or threatened with such action, suit, or proceeding ("Disinterested Partners") holding a majority in interest of the interests held by such Disinterested Partners; or (b) a Court of competent jurisdiction (i) not to have breached the General Partner's duties created pursuant to Section 5.3 hereof; (ii) not to have been guilty of intentional misconduct in the performance of his duty to the Partnership; and (iii) not to have acted in knowing violation of any law; provided, however, that no such Partner shall be indemnified for any transaction for which he received a personal benefit in violation or breach of any provision of this Agreement.  No Partner who is a party to or threatened with any such action, suit, or proceeding shall be qualified to vote on such matter.

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

Such indemnification shall not be deemed exclusive of any other rights to which such Partner may be entitled, including, without limiting the generality of the foregoing, any insurance purchased by the Partnership.

12.2    Liability of the General Partners.  So long as the General Partners shall act in good faith with respect to the conduct of the business and affairs of the Partnership, no General Partner (including the Managing General Partner) shall be liable or accountable to the Partnership or to any of the Partners, in damages or otherwise, for any error of judgment, for any mistake of fact or of law, or for any other act or thing which he may do or refrain from doing in connection with the business and affairs of the Partnership except for intentional misconduct, breach of the General Partner's duties created pursuant to Section 5.3 hereof, knowing violation of law, or any transaction for which the General Partner received a personal benefit in violation or breach of any provision of this Agreement.

To the extent that, at law or in equity, any Partner has duties (including fiduciary duties) and liabilities to the Partnership or to the other Partners, such Partner acting in connection with the Partnership's affairs shall not be liable to the Partnership or to any Partner for its good faith reliance on the provisions of this Agreement. The provisions of this Agreement, to the extent that they limit the duties and liabilities of any Person otherwise existing at law or in equity, are agreed by the Partners to replace such other duties and liabilities of such Person, all in accordance with the Act.

12.3    Limited Liability of Limited Partners.

(a)    Partnership Losses and Debts.  Notwithstanding the provisions hereof for the allocation of the Partnership's losses and for the distribution of cash to the Partners by the Partnership or with respect to any obligation of indemnification under this Article 12

**Exhibit A**                    **CFLP Records**                    **Page 44**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

or otherwise, the Limited Partners shall not be required to make any contributions to the capital of the Partnership for the payment of any such losses or indemnification obligation or for any other purposes nor shall any Limited Partner be responsible or obligated to any third parties for any debts or liabilities of the Partnership in excess of the sum of his unrecovered contributions to the capital of the Partnership and his share of any undistributed profits of the Partnership.

(b)  Negative Capital Accounts.  The Limited Partners shall not be required to pay to the Partnership or to any other Partner any deficit or negative balance which may exist from time to time in their respective Capital Accounts as a result of the provisions of this Agreement.

### ARTICLE 13. ALTERNATIVE DISPUTE RESOLUTION ("ADR")

13.1  Agreement to Use Procedure.  The Partners have entered into this Agreement in good faith and in the belief that it is mutually advantageous to them.  It is with the same spirit of cooperation that they pledge to attempt to resolve any dispute amicably without the necessity of litigation.  Accordingly, they agree if any dispute arises between them relating to this Agreement (the "Dispute"), they will first utilize the procedures specified in this Article 13 (the "Procedure") before any Additional Proceedings (as defined in Section 13.11 hereof) are commenced.

13.2  Initiation of Procedure.  The Partner seeking to initiate the Procedure (the "Initiating Partner") will give written notice to the other Partners.  The notice must describe in general terms the nature of the Dispute and the Initiating Partner's claim for relief. Additionally, the notice must identify one or more individuals with authority to settle the Dispute on the Partner's behalf.  The Partners receiving the notice (the "Responding Partner", whether one or more) will have five (5) business days within which to designate

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

by written notice to the Initiating Partner, one or more individuals with authority to settle the Dispute on the Partner's behalf.  The individuals so designated will be known as the "Authorized Individuals".  The Responding Partner may authorize himself or herself as an Authorized Individual.  The Initiating Partner and the Responding Partner will collectively be referred to as the "Disputing Partners" or individually "Disputing Partner".

13.3  Direct Negotiations.  The Authorized Individuals may investigate the Dispute as they deem appropriate.  But they agree to promptly, and in no event later than thirty (30) days from the date of the Initiating Partner's written notice, meet to discuss the Dispute's resolution.  The Authorized Individuals will meet at the times and places and with the frequency as they may agree.  If the Dispute has not been resolved within thirty (30) days from their initial meeting date, the Disputing Partners will cease direct negotiations and will submit the Dispute to mediation in accordance with the following procedure.

13.4  Mediator Selection.  The Authorized Individuals will have five (5) business days from the date they cease direct negotiations to submit to each other a written list of acceptable qualified attorney-mediators not affiliated with any Partner.  Within five (5) days from the date the list is received, the Authorized Individuals will rank the mediators in numerical order of preference and exchange the rankings.  If one or more names are on both lists, the highest ranking person will be designated as the mediator.  If no mediator has been selected under this procedure, the Disputing Partners agree jointly to request a State or Federal District Judge of their choosing to supply within ten (10) business days a list of potential qualified attorney-mediators.  If they cannot agree upon a State or Federal Judge, the Local Administrative Judge for the county in which the Partnership's Office is located may supply the list.  Within five (5) business days from the date the list is received, the Authorized Individuals will again rank the proposed mediators in numerical order of

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

preference and will simultaneously exchange the list and will select as the mediator the individual receiving the highest combined ranking.  If the mediator is not available to serve, they will proceed to contact the mediator who was next highest in ranking until they are able to select a mediator.

13.5   Mediation Time and Place.  In consultation with the mediator selected, the Authorized Individuals will promptly designate a mutually convenient time and place for the mediation.  Unless circumstances require otherwise, the time for mediation may not be later than forty-five (45) days after selecting the mediator.

13.6   Information Exchange.  If any Disputing Partner to this Agreement has substantial need for information in another Disputing Partner's possession in order to prepare for the mediation, all Disputing Partners will attempt in good faith to agree to procedures to expeditiously exchange the information, with the mediator's help if required.

13.7   Summary of Views.  At least seven (7) days before the first scheduled mediation session, each Disputing Partner will deliver to the mediator and to the other Disputing Partners a concise written summary of its views on the matter in Dispute and the other matters required by the mediator.  The mediator may also request that a confidential issue paper be submitted by each Disputing Partner to him or her.

13.8   Parties to be Represented.  In the mediation, each Disputing Partner will be represented by an Authorized Individual and may be represented by counsel.  In addition, each Disputing Partner may, with the mediator's permission, bring the additional Persons as needed to respond to questions, contribute information, and participate in the negotiations.

**Exhibit A**                      **CFLP Records**                          **Page 47**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

13.9   Conduct of Mediation.

(a)   Mediation Format. The mediator will determine the format for the meetings. The format must be designed to assure that:

    (i)   both the mediator and the Authorized Individuals have an opportunity to hear an oral presentation of each Disputing Partner's views on the matter in dispute; and

    (ii)   the authorized parties attempt to negotiate to resolve the matter in dispute, with or without the assistance of counsel or others, but with the mediator's assistance.

(b)   Commitment to Participate in Mediation in Good Faith. To this end, the mediator is authorized to conduct both joint meetings and separate private caucuses with the Disputing Partners. The mediation session will be private. The mediator will keep confidential all information learned in private caucus with any Disputing Partner unless specifically authorized by the Disputing Partner to disclose the information to the other Disputing Partner. The Disputing Partners agree to sign a document agreeing that the mediator will be governed by such rules as the mediator will prescribe. The Disputing Partners commit to participate in the proceedings in good faith with the intention of resolving the Dispute if at all possible.

13.10   Termination of Procedure.

(a)   Procedure to Terminate Mediation. The Disputing Partners agree to participate in the mediation procedure to its conclusion. The mediation will be terminated by:

    (i)   executing a settlement agreement by the Disputing Partners;

    (ii)   declaring to the mediator that the mediation is terminated; or

    (iii)   a Disputing Partner declaring in writing that the mediation process is terminated when one full day's mediation session is concluded.

**Exhibit A**      **CFLP Records**      **Page 48**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

(b)   If Dispute is Not Resolved.  Even if the mediation is terminated without the Dispute's resolution, the Disputing Partners agree not to terminate negotiations and not to commence any Additional Proceedings (as defined in Section 13.11) before five days following the day when the mediation expires.  Any Disputing Partner may, however, commence Additional Proceedings within the five-day period if the Dispute could be barred by an applicable statute of limitations.

13.11  Additional Proceedings.  The parties agree to participate in good faith in the ADR to its conclusion.  If the Disputing Partners are not successful in resolving the dispute through the ADR, then the Disputing Partners agree that either Disputing Partner may initiate litigation upon ten (10) days written notice to the other Disputing Partner ("Additional Proceedings").

13.12  Mediation Fees; Disqualification.  The mediator's fees and expenses will be shared equally by the Disputing Partners.  The mediator will be disqualified as a witness, consultant, expert, or counsel for any Disputing Partner with respect to the Dispute and any related matters.

13.13  Confidentiality.  Mediation is a compromise negotiation for purposes of Federal and State Rules of Evidence.  The entire mediation process is confidential, and no stenographic, visual, or audio record will be made.  All conduct, statements, promises, offers, views, and opinions, whether oral or written, made in the mediation's course by any Disputing Partner, their agents, employees, representatives or other invitees and by the mediator are confidential and will, in addition and where appropriate, be deemed privileged. The conduct, statements, promises, offers, views, and opinions will not be discoverable or admissible for any purpose, including impeachment, in any litigation or other proceeding involving the parties.  It will not be disclosed to anyone not any Partner's agent, employee,

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

expert, witness, or representative. Evidence otherwise discoverable or admissible is not, however, excluded from discovery or admission as a result of its use in the mediation.

**ARTICLE 14. MISCELLANEOUS**

14.1    *Successors in Interest*. Except as otherwise provided, all provisions of this Agreement shall be binding upon, and inure to the benefit of, and be enforceable by and against the respective heirs, personal representatives, successors and assigns of all parties hereto.

14.2    *Entire Agreement*. This Agreement contains the entire understanding between and among the parties and supersedes any prior understanding or agreements, both written and oral, between and among them respecting the subject matter. There are no representations, arrangements, understandings or agreements, written, or oral, relating to the subject matter of this Agreement, except those fully expressed herein.

14.3    *Provisions Severable*. This Agreement is intended to be performed in accordance with and only to the extent permitted by, all applicable laws, ordinances, rules and regulations of the jurisdictions in which the Partnership does business. If any provision of this Agreement, or the application thereof to any person or circumstance, shall for any reason and to any extent be invalid or unenforceable, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law.

14.4    *Counterparts*. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement, notwithstanding that all of the parties are not signatories to the original or the same counterpart, or that signature pages from different counterparts are combined, and the

**Exhibit A**                         **CFLP Records**                         **Page 50**

signature of any party to any counterpart shall be deemed to be a signature to and may be appended to any other counterpart.

14.5    Governing Law.    This Agreement shall be interpreted and governed in accordance with the laws of the State of Ohio.

14.6    Gender; Captions. Words of any gender used in this Agreement shall be held to include any other gender, and words of the singular number shall be held to include the plural (and vice-versa), when the sense requires. The captions to each Article and Section are inserted only as a matter of convenience and for reference only and in no way define, limit or describe the scope or intent of this Agreement or in any way affect it.

14.7    No Partition of Partnership Property. Each of the Partners hereby irrevocably waives any and all rights, duties, obligations and benefits with respect to any action for partition of Partnership property or to compel any sale thereof. Further, all rights, duties, benefits and obligations, including inventory and appraisement of the Partnership assets or sale of a deceased Partner's interest therein, provision for which is made in The Act, or on account of the operation of any other rule or law of any other jurisdiction to compel any sale or appraisement of Partnership assets or sale of a deceased Partner's interest therein, are hereby waived and dispensed with and the interest in the Partnership of a deceased Partner shall be subject to the provisions of this Agreement.

14.8    Notices.  Any and all notices or other communications which may be sent to any Partner shall be sent to the address listed in Schedule B, unless the Partnership is notified in writing of any change of address.  Notices or other communications shall be deemed to have been given only when hand delivered or three (3) days after deposited with the United States Post Office by registered or certified mail addressed as set forth above.

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

14.9   Investment Representations.  The undersigned Partners understand (1) that the Partnership Interests evidenced by this Agreement have not been registered under the Securities Act of 1933, the Ohio Securities Act or any other state securities laws (the "Securities Acts") because the Partnership is issuing these Partnership Interests in reliance upon the exemptions from the registrations requirements of the Securities Acts providing for issuance of securities not involving a public offering, (2) that the Partnership has relied upon the fact that the Partnership Interests are to be held by each Partner for investment, and (3) that exemption from registrations under the Securities Acts would not be available if the Partnership Interests were acquired by a Partner with a view to distribution.

Accordingly, each Partner hereby confirms to the Partnership that such Partner is acquiring the Partnership Interests for such own Partner's account, for investment and not with a view to the resale or distribution thereof.  Each Partner agrees not to transfer, sell or offer for sale any portion of the Partnership Interests unless there is an effective registration or other qualification relating thereto under the Securities Act of 1933 and under any applicable state securities laws or unless the holder of Partnership Interests delivers to the Partnership an opinion of counsel, satisfactory to the Partnership, that such registration or other qualification under such Act and applicable state securities laws is not required in connection with such transfer, offer or sale.  Each Partner understands that the Partnership is under no obligation to register the Partnership Interests or to assist such Partner in complying with any exemptions from registration under the Acts if such Partner should at a later date wish to dispose of the Partnership Interests.  Furthermore, each Partner realizes that the Partnership Interests are unlikely to qualify for disposition under Rule 144 of the Securities and Exchange Commission unless such Partner is not an "affiliate"

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

of the Partnership and the Partnership Interests have been beneficially owned and fully paid for by such Partner for at least three years.

14.10  Binding Agreement.  This Agreement shall be binding upon and shall inure to the benefit of all Partners and their respective legal representatives, heirs, permitted successors and permitted assigns.

14.11  Confidential Information.

(a)  Partnership Information.  Each Partner is entitled to all information regarding the Partnership, under the circumstances and subject to the conditions stated in this Agreement and the Act.

(b)  Agreement to Keep Information Confidential.  The Partners acknowledge that they may receive information regarding the Partnership in the nature of trade secrets or that otherwise is confidential.  Each Partner hereby acknowledges that the release of this information may be damaging to the Partnership or persons with which it does business.  Each Partner will hold in strict confidence any information he receives regarding the Partnership that is identified as being confidential (and if that information is provided in writing, that it is so marked).  Partners acknowledge that breaching this obligation may cause irreparable injury to the Partnership for which monetary damages are inadequate, difficult to compute, or both.  Accordingly, the Partners agree any breach of the obligation imposed by this section may be enforced by specific performance.  No Partner may disclose confidential information to any person other than another Partner except as follows:

(i)  Those compelled by law, but, however, the Partner must notify the General Partner promptly of any request for that information, before disclosing it, if practicable.

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

(ii)   Those to advisors or representatives of the Partner or the Partner's assignees, but only if they have agreed to be bound by the provisions of this Section.

(iii)   Those of information the Partner also has received from a source independent of the Partnership that the Partner reasonably believes obtained that information without breaching any confidentiality obligation.

**IN WITNESS WHEREOF,** the parties to this Limited Partnership Agreement have executed counterparts of this Agreement effective on the date set forth at the beginning hereof.

**GENERAL PARTNERS:**                    **LIMITED PARTNERS:**

_Donald A. Campbell_                     _Donald A. Campbell_
Donald A. Campbell                       Donald A. Campbell

_F. Margaret Campbell_                   _F. Margaret Campbell_
F. Margaret Campbell                     F. Margaret Campbell

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

State of Ohio                )
County of _Cuyahoga_ )ss.

Before me, a Notary Public in and for said County, personally appeared Donald A. Campbell, the signer of the foregoing Limited Partnership Agreement, who severally acknowledged that he did sign the same as his free act and deed on this date in _Pepper Pike_, Ohio.

In witness whereof, I have hereunto subscribed my name and affixed my official seal this ___ day of _____, 1997.

_____
Notary Public

Attorney At Law
My commission
has no expiration date.
Section 147.03 O.R.C.

State of Ohio                )
County of _Cuyahoga_ )ss.

Before me, a Notary Public in and for said County, personally appeared F. Margaret Campbell, the signer of the foregoing Limited Partnership Agreement, who severally acknowledged that she did sign the same as her free act and deed on this date in _Pepper Pike_, Ohio.

In witness whereof, I have hereunto subscribed my name and affixed my official seal this ___ day of _____, 1997.

_____
Notary Public

Attorney At Law
My commission
has no expiration date.
Section 147.03 O.R.C.

Exhibit A                    CFLP Records                    Page 55

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:34:48\CONF#: 10957\WORKFLOW ID: 1238714

## SCHEDULE A

## THE CAMPBELL FAMILY LIMITED PARTNERSHIP

Address of the Registered Office of the Partnership

3044 Warrington Road
Shaker Heights, Ohio  44120

Name and Address of the Agent of the Partnership for
Service of Process

Donald A. Campbell
3044 Warrington Road
Shaker Heights, Ohio  44120

-50-

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

## SCHEDULE B

## THE CAMPBELL FAMILY LIMITED PARTNERSHIP

## STATUS OF PARTNERSHIP INTERESTS

| Name and Address of General Partners | Percentage Interests | Capital Contributions | # Units |
|---|---|---|---|
| Donald A. Campbell | 1% | $ 15,224.90 | 100 |
| F. Margaret Campbell | 1% | 15,224.90 | 100 |

| Name and Address of Limited Partners | Percentage Interests | | |
|---|---|---|---|
| Donald A. Campbell | 49% | 746,020.10 | 4,900 |
| F. Margaret Campbell | 49% | 746,020.10 | 4,900 |

-51-

**Exhibit A**

**CFLP Records**

**Page 57**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

EXHIBIT 1

DEFINITIONS

(1)     "Act" means the Revised Uniform Limited Partnership Act of the State of Ohio found at Ohio Revised Code Sections 1782.01 *et. seq.*

(2)     "Additional Partner" means a Partner admitted to the Partnership after the execution of this Agreement who is not a Substitute Partner.

(3)     "Adjusted Capital Account Balance" means the balance in the Capital Account of a Partner as of the end of the relevant Fiscal Year of the Partnership, after giving effect to the following:  (a) credit to such Capital Account any amounts the Partner is obligated to restore, pursuant to the terms of this Agreement or otherwise, or is deemed obligated to restore pursuant to the penultimate sentences of Sections 1.704-2(g)(1) and 1.704-2(i)(5) of the Treasury Regulations, and (b) debit to such Capital Account the items described in Sections 1.704-1(b)(2)(ii)(d)(4), (5) and (6) of the Treasury Regulations.

(4)     "Affiliate".  An "Affiliate" of any person means (i) any person directly or indirectly owning, controlling or holding the power to vote ten percent or more of the outstanding voting securities or membership interests of the specified person; (ii) any person ten percent or more of whose outstanding voting securities or membership interest is directly or indirectly owned, controlled or held with power to vote by the specified person; (iii) any person directly or indirectly controlling, controlled by, or under control of a specified person; (iv) any officer, director, manager or partner of the specified person; and (v) any person of which the specified person is an officer, director, manager or partner.

(5)     "Agreed Value" means the fair market value of Contributed Properties as agreed to by the contributing Partner and the Partnership, using such reasonable method of valuation as they may adopt.

(6)     "Assignee" shall mean a third party who has acquired a Percentage Interest from a Partner but who is not a Substitute Partner and who as such shall own only an Economic Interest.

(7)     "Capital Account" shall mean the account as maintained for each Partner pursuant to this Agreement and in accordance with the following provisions:

(i)     To each Partner's Capital Account there shall be credited such Partner's Capital Contributions, such Partner's distributive share of Net Profits and any items in the nature of income or gain which are specially allocated pursuant to Article 4 hereof, and the amount of any Partnership liabilities assumed by such Partner or which are secured by any Partnership Property distributed to such Partner.

(ii)     To each Partner's Capital Account there shall be debited the amount of cash and the Gross Asset Value of any Partnership Property distributed to such Partner pursuant to any provision of this Agreement, such Partner's distributive share

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

of Net Losses and any items in the nature of expenses or losses that are specially allocated pursuant to Article 4 hereof, and the amount of any liabilities of such Partner assumed by the Partnership or which are secured by any property contributed by such Partner to the Partnership.

(iii)   In the event any interest in the Partnership is transferred in accordance with the terms of this Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent it relates to the transferred interest.

(8)   "Capital Contribution" shall mean, with respect to any Partner, the amount of money and the fair market value of property contributed to the Partnership by such Partner.

(9)   "Code" shall mean the Internal Revenue Code of 1986, as amended from time to time (or any corresponding provisions of any successor law).

(10)   "Contributed Property" means each Partner's interest in property or other consideration (excluding services and cash) contributed to the Partnership by such Partner.

(11)   "Defaulting Event" means (i) a general assignment by the Partnership or by any of the Partners for the benefit of creditors; (ii) the appointment of a receiver, trustee or custodian for all or any substantial part of the property and assets of the Partnership or of any of the Partners; (iii) the entry of an order for relief under Title XI of the United States Code, as amended from time to time, against the Partnership or against any of the Partners, or any other judgment or decree entered against the Partnership or against any of the Partners by any court of competent jurisdiction (which order, judgment or decree continues unstayed and in effect for a period of sixty (60) consecutive days) in any involuntary proceeding against the Partnership or against any of the Partners under present or future federal bankruptcy laws or under any other applicable bankruptcy, insolvency, or other laws respecting debtor's rights; or (iv) the commencement by the Partnership or by any of the Partners of any voluntary proceeding under present or future federal bankruptcy laws or under any other applicable bankruptcy, insolvency, or other laws respecting debtor's rights.

(12)   "Deficit Capital Account" shall mean with respect to any Partner, the deficit balance, if any, in such Partner's Capital Account as of the end of the fiscal year, after giving effect to the following adjustment:

(i)   credit to such Capital Account any amount which such Partner is obligated to restore under Section 1.704-1(b)(2)(ii)(c) of the Treasury Regulations, as well as any addition thereto pursuant to the next to last sentence of Sections 1.704-2(g)(1) and (i)(5) of the Treasury Regulations, after taking into account thereunder any changes during such year in partnership minimum gain (as determined in accordance with Section 1.704-2(d) of the Treasury Regulations) and in the minimum gain attributable to any partner nonrecourse debt (as determined under Section 1.704-2(i)(3) of the Treasury Regulations); and

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

(ii)     debit to such Capital Account the items described in Sections 1.704-1(b)(2)(ii)(d)(4), (5) and (6) of the Treasury Regulations.

This definition of Deficit Capital Account is intended to comply with the provisions of Treasury Regulations Sections 1.704-1(b)(2)(ii)(d) and 1.704-2, and will be interpreted consistently with those provisions.

(13)   "Depreciation" means, for each fiscal year, an amount equal to the depreciation, amortization, or other cost recovery deduction allowable with respect to an asset for such fiscal year, except that if the Gross Asset Value of an asset differs from its adjusted basis for federal income tax purposes at the beginning of such fiscal year, Depreciation shall be an amount which bears the same ratio to such beginning Gross Asset Value as the federal income tax depreciation, amortization, or other cost recovery deduction for such fiscal year bears to such beginning adjusted tax basis; provided, however, that if the adjusted basis for federal income tax purposes of an asset at the beginning of such fiscal year is zero, Depreciation shall be determined with reference to such beginning Gross Asset Value using any reasonable method selected by the General Partner(s).

(14)   "Disabling Event" shall mean:  (i) the death of any Partner who is a natural person; (ii) a determination by a court of competent jurisdiction that any Partner who is a natural person is legally incompetent; or (iii) the dissolution or termination of any Partner which is a firm, corporation, trust or other entity.

(15)   "Distributable Cash" means all cash, revenues, and funds received by the Partnership (including Capital Contributions and loan proceeds to the extent the General Partner(s) determine(s) in accordance with a fiduciary duty to the Partnership they are not necessary or advisable to retain for the business of the Partnership), less the sum of the following to the extent paid or set aside by the Partnership or otherwise determined by the General Partner(s) in accordance with a fiduciary duty to the Partnership to be prudent to retain and not distribute:  (i) all principal and interest payments on indebtedness of the Partnership and all other sums paid to lenders; (ii) all cash expenditures incurred incident to the normal operation of the Partnership's business; and (iii) such reserves as the General Partner(s) deem(s) reasonably necessary to the proper operation of the Partnership's business, taking into account current needs for operating capital, prudent reserves for future operating capital; current investment opportunities and prudent reserves for future investment opportunities.

(16)   "Economic Interest" shall mean a Partner's or Assignee's share of the Partnership's Net Profits, Net Losses and distributions of the Partnership's assets pursuant to this Agreement and The Act, but shall not include any right to participate in the management or affairs of the Partnership, including, the right to vote on, consent to or otherwise participate in any decision of the Partnership.

(17)   "Entity" shall mean any general partnership, limited partnership, limited liability company, corporation, joint venture, trust, business trust, cooperative or association or any foreign trust or foreign business organization.

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

(18)   "Family" shall mean Donald A. Campbell and F. Margaret Campbell and their lineal descendants.

(19)   "Family Assets" shall mean all real and personal property owned by the Family, individually or in combination with others, that has been contributed to or acquired by the Partnership.

(20)   "Fiscal Year" shall mean the Partnership's fiscal year, which shall be the calendar year.

(21)   "General Partner" shall mean Donald A. Campbell and F. Margaret Campbell, plus any other Person(s) who may become a substitute or additional General Partner(s) and who is elected or admitted hereto as a General Partner pursuant to the terms hereof. References to the General Partner in the singular or as him, her, it, itself, or other like references shall also, where the context so requires, be deemed to include the plural or the masculine or feminine reference, as the case may be.

(22)   "General Partnership Interest" means the Partnership Interest of a General Partner represented by General Partnership Units.

(23)   "General Partnership Unit" means a Unit of General Partnership Interest in the Partnership.

(24)   "Gross Asset Value" means, with respect to any asset, the asset's adjusted basis for federal income tax purposes, except as follows:

(i)   The initial Gross Asset Value of any asset contributed by a Partner to the Partnership shall be determined by the contributing Partner and the General Partner(s);

(ii)   The Gross Asset Values of all Partnership assets shall be adjusted to equal their respective gross fair market values, as determined by the General Partner(s) as of the following times:  (A) the acquisition of an additional interest in the Partnership by any new or existing Partner in exchange for more than a _de minimis_ contribution of property (including money); (B) the distribution by the Partnership to a Partner of more than a _de minimis_ amount of property as consideration for an interest in the Partnership; and (C) the liquidation of the Partnership within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(g); provided, however, that adjustments pursuant to clauses (A) and (B) above shall be made only if the General Partner(s) reasonably determine(s) that such adjustments are necessary or appropriate to reflect the relative economic interests of the Partners in the Partnership;

(iii)   The Gross Asset Value of any Partnership asset distributed to any Partner shall be adjusted to equal the gross fair market value of such asset on the date of distribution as determined by the distributee and the General Partner(s), provided that, if the distributee is a General Partner, the determination of the fair

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

market value of the distributed asset shall require the consent of the other Partners owning at least one-half of the Percentage Interests (determined without regard to the Percentage Interest of the distributee Partner); and

(iv)     The Gross Asset Values of Partnership assets shall be increased (or decreased) to reflect any adjustments to the adjusted basis of such assets pursuant to Code Section 734(b) or Code Section 743(b), but only to the extent that such adjustments are taken into account in determining Capital Accounts pursuant to Treasury Regulation Section 1.704-1(b)(2)(iv)(m) or pursuant to the provisions of this Agreement; provided, however, that Gross Asset Values shall not be adjusted pursuant to this subparagraph (iv) to the extent the General Partner(s) determine(s) that an adjustment pursuant to subparagraph (ii) of this definition is necessary or appropriate in connection with a transaction that would otherwise result in an adjustment pursuant to this subparagraph (iv).

If the Gross Asset Value of an asset has been determined or adjusted pursuant to subparagraph (i), (ii) or (iv) of this definition, then such Gross Asset Value shall thereafter be adjusted by the Depreciation taken into account with respect to such asset for purposes of computing Net Profits and Net Losses.

(25)    "Involuntary Transfer" means any transfer not constituting a Voluntary Transfer and includes without limitation any transfer by reason of a Partner being declared to be bankrupt or insolvent by a court of competent jurisdiction, or by reason of a Partner having any of that Partner's Partnership interest foreclosed against or levied upon, any transfer resulting from the death of a Partner or the adjudication of a Partner as legally incompetent by a court of competent jurisdiction, any transfer of a Partner's Partnership interest resulting form any judgment, order or decree of a court of competent jurisdiction concerning the divorce, dissolution or annulment of marriage of a Partner or legal separation form that Partner's spouse, and any other transfer by operation of law or resulting form any judgment, order or decree of a court of competent jurisdiction.

(26)    "Limited Partners" shall mean the original Limited Partner(s) and any other Persons who are admitted to the Partnership as Additional or Substitute Limited Partners.

(27)    "Limited Partnership Interest" means the Partnership Interest of a Limited Partner represented by Limited Partnership Units.

(28)    "Limited Partnership Unit" means a Unit of Limited Partnership interest in the Partnership.

(29)    "Managing General Partner" shall mean the General Partner(s) so appointed and vested with such authority pursuant to and in accordance with Article 5 hereof.

(30)    "Net Profits" and "Net Losses" shall mean for each taxable year of the Partnership an amount equal to the Partnership's net taxable income or loss for such year as determined for federal income tax purposes (including separately stated items) in

**Exhibit A**                    **CFLP Records**                    Page 62

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

accordance with the accounting method and rules used by the Partnership and in accordance with Section 703 of the Code with the following adjustments:

(i)    Any items of income, gain, loss and deduction allocated to Partners shall not be taken into account in computing Net Profits or Net Losses;

(ii)    Any income of the Partnership that is exempt from federal income tax and not otherwise taken into account in computing Net Profits and Net Losses (pursuant to this definition) shall be added to such taxable income or loss;

(iii)    Any expenditure of the Partnership described in Section 705(a)(2)(B) of the Code and not otherwise taken into account in computing Net Profits and Net Losses (pursuant to this definition) shall be subtracted from such taxable income or loss;

(iv)    In the event the Gross Asset Value of any Partnership asset is adjusted pursuant to clause (ii) or (iii) of the definition of Gross Asset Value, the amount of such adjustment shall be taken into account as gain or loss from the disposition of such asset for purposes of computing Net Profits and Net Losses;

(v)    Gain or loss resulting from any disposition of any Partnership asset with respect to which gain or loss is recognized for federal income tax purposes shall be computed with reference to the Gross Asset Value of the asset disposed of, notwithstanding that the adjusted tax basis of such asset differs from its Gross Asset Value; and

(vi)    In lieu of the depreciation, amortization and other cost recovery deductions taken into account in computing such taxable income or loss, there shall be taken into account depreciation for such fiscal year.

(31)    "Nonrecourse Property" shall have the meaning set forth in Section 1.704-2(b)(1) of the Treasury Regulations. The amount of Nonrecourse Deductions for a Partnership Fiscal Year equals the excess, if any, of the net increase, if any, in the amount of Partnership Minimum Gain during that Fiscal Year over the aggregate amount of any distributions during that Fiscal Year of proceeds of a Nonrecourse Liability that are allocable to an increase in Partnership Minimum Gain, determined according to the provisions of Section 1.704-2(c) of the Treasury Regulations.

(32)    "Nonrecourse Liability" shall have the meaning set forth in Section 1.704-2(b)(3) of the Treasury Regulations.

(33)    "Partner" shall mean a partner, whether a General Partner or a Limited Partner, and "Partners" shall mean all the General and Limited Partners of the Partnership.

(34)    "Partner Nonrecourse Debt Minimum Gain" means an amount, with respect to each Partner Nonrecourse Debt, determined in accordance with Section 1.704-2(i) of the Treasury Regulations.

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

(35) "Partner Nonrecourse Debt" shall have the meaning set forth in Section 1.704-2(b)(4) of the Treasury Regulations.

(36) "Partner Nonrecourse Deductions" shall have the meaning set forth in Section 1.704-2(i)(2) of the Treasury Regulations.  The amount of Partner Nonrecourse Deductions with respect to a Partner Nonrecourse Debt for a Partnership Fiscal Year equals the excess, if any, of the net increase, if any, in the amount of Partner Nonrecourse Debt Minimum Gain attributable to such Partner Nonrecourse Debt during that Fiscal Year over the aggregate amount of any distributions during the Fiscal Year to the Partner that bears the economic risk of loss for such Partner Nonrecourse Debt to the extent such distributions are from the proceeds of such Partner Nonrecourse Debt and are allocable to an increase in Partner Nonrecourse Debt Minimum Gain attributable to such Partner Nonrecourse Debt, determined in accordance with Section 1.702-2(i)(2) of the Treasury Regulations.

(37) "Partnership" means the limited partnership formed under this Agreement, as constituted or amended.

(38) "Partnership Interest" means the ownership interest and rights of a Partner in the Partnership.

(39) "Partnership Minimum Gain" shall have the meaning set forth in Sections 1.704-2(b)(2) and 1.704-2(d) of the Treasury Regulations.

(40) "Partnership Property" means all real and personal property acquired by the Partnership and any improvements thereto, and shall include both tangible and intangible property.

(41) "Permitted Transferee" means:

(i) a Partner;

(ii) a Related Party;

(iii) a trust for the benefit of a person described in (i) or (ii) above;

(42) "Person" shall mean any individual, estate, partnership, corporation, trust, unincorporated association, limited liability company, joint venture or any other entity, and the heirs, as defined by the Ohio Revised Code, as amended, executors, administrators, legal representatives, successors, and assigns of such "Person" where the context so permits.

(43) "Percentage Interest" shall mean each Partner's percentage interest in the Partnership determined by dividing the Units of each Partner by the aggregate then existing Units.  All references to the words "in interest" in phrases such as "majority in interest" of the Partners or Limited Partners shall refer to the then Percentage Interests held by the Partner, Limited Partners or other designated group.

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

(44)  "Related Party" shall mean any lineal descendant of Donald A. Campbell and F. Margaret Campbell.

(45)  "Reserves" shall mean, with respect to any fiscal period, funds set aside or amounts allocated during such period to reserves which shall be maintained in amounts deemed sufficient by the General Partner(s) for working capital and to pay taxes, insurance, debt service, or other costs or expenses incident to the ownership or operation of the Partnership's business.

(46)  "Substitute Partner" shall mean a partner, whether a General or a Limited Partner who is admitted to the Partnership in accordance with Article 7, Section 7.7, or Article 7, Section 7.6, as the case may be.

(47)  "Treasury Regulations" means the Federal Income Tax Regulations (including without limitation, Temporary Regulations) promulgated under the Code, as the same may be amended from time to time (including corresponding provisions of successor regulations.

(48)  "Unit" means a Unit of either a General Partnership Unit or Limited Partnership Unit in the Partnership each Unit representing an aggregate Capital Contribution of $_____ to the capital of the Partnership.

(49)  "Voluntary Transfer" means any lifetime transfer by a Partner of that Partner's Partnership interest resulting from a specific decision by that Partner to make such transfer and includes without limitation any sale, assignment, exchange or other lifetime disposition, any gift, and any pledge or other encumbrance of that Partner's Partnership interest.

(50)  "Withdrawing Partner" shall mean a Partner who has elected to withdraw from the Partnership pursuant to the provision of Article 8 of this Agreement.

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

## EXHIBIT 2

For purposes of interpreting and implementing Article 4 of the Partnership Agreement, the following rules shall apply and shall be treated as part of the terms of the Partnership Agreement:

A.    Special Allocation Provisions.

1.    For purposes of determining the amount of gain or loss to be allocated pursuant to Article 4 of the Partnership Agreement, any basis adjustments permitted pursuant to Section 743 of the Code shall be disregarded.

2.    Partnership income, loss, deductions and credits shall be allocated to the Partners in accordance with the portion of the year during which the Partners have held their respective interests. All items of income, loss and deduction shall be considered to have been earned ratably over the period of the fiscal year of the Partnership, except that gains and losses arising from the disposition of assets shall be taken into account as of the date thereof.

3.    Notwithstanding any other provision of the Partnership Agreement, to the extent required by law, income, gain, loss and deduction attributable to property contributed to the Partnership by a Partner shall be shared among the Partners so as to take into account any variation between the basis of the property and the fair market value of the property at the time of contribution in accordance with the requirements of Section 704(c) of the Code and the applicable Treasury Regulations thereunder as more fully described in Part B hereof.

4.    Notwithstanding any other provision of the Partnership Agreement, in the event the Partnership is entitled to a deduction for interest imputed under any provision of the Code on any loan or advance from a Partner (whether such interest is currently deducted, capitalized or amortized), such deduction shall be allocated solely to such Partner.

5.    Notwithstanding any provision of the Partnership Agreement to the contrary, to the extent any payments in the nature of fees paid to a Partner are finally determined to be distributions to a Partner for federal income tax purposes, there will be a gross income allocation to such Partner in the amount of such distribution.

6.    (a) Notwithstanding any provision of the Partnership Agreement to the contrary and subject to the exceptions set forth in Section 1.704-2(f)(2)-(5) of the Treasury Regulations, if there is a net decrease in Partnership Minimum Gain during any Partnership fiscal year, each Partner shall be specially allocated items of Partnership income and gain for such year (and, if necessary, subsequent years) in an amount equal to such Partner's share of the net decrease in Partnership Minimum Gain determined in accordance with Section 1.704-2(g)(2) of the Treasury Regulations. Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Partner pursuant thereto. The items to be so allocated shall be determined in

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

accordance with Section 1.704-2(f) of the Treasury Regulations. This paragraph 6(a) is intended to comply with the minimum gain chargeback requirement in such Section of the Treasury Regulations and shall be interpreted consistently therewith. To the extent permitted by such Section of the Regulations and for purposes of this paragraph 6(a) only, each Partner's Adjusted Capital Account Balance shall be determined prior to any other allocations pursuant to Article 4 of the Partnership Agreement with respect to such fiscal year and without regard to any net decrease in Partner Minimum Gain during such fiscal year.

(b)     Notwithstanding any provision of the Partnership Agreement to the contrary, except paragraph 6(a) of this Exhibit and subject to the exceptions set forth in Section 1.704-2(i)(4) of the Treasury Regulations, if there is a net decrease in Partner Nonrecourse Debt Minimum Gain during any Partnership fiscal year, each Partner who has a share of the Partner Nonrecourse Debt Minimum Gain, determined in accordance with Section 1.704-2(i)(3) of the Treasury Regulations, shall be specially allocated items of Partnership income and gain for such year (and, if necessary, subsequent years) in an amount equal to such Partner's share of the net decrease in Partner Nonrecourse Debt Minimum Gain, determined in accordance with Section 1.704-2(i)(5) of the Treasury Regulations. Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Partner pursuant thereto. The items to be so allocated shall be determined in accordance with Section 1.704-2(i)(4) of the Regulations. This paragraph 6(b) is intended to comply with the minimum gain chargeback requirement in such Section of the Regulations and shall be interpreted consistently therewith. Solely for purposes of this paragraph 6(b), each Partner's Adjusted Capital Account Balance shall be determined prior to any other allocations pursuant to Article 4 of the Partnership Agreement with respect to such fiscal year, other than allocations pursuant to paragraph 6(a) hereof.

7.     Notwithstanding any provision of the Partnership Agreement to the contrary, in the event any Partners unexpectedly receive any adjustments, allocations or distributions described in Treasury Regulation Section 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5) or 1.704-1(b)(2)(ii)(d)(6), items of Partnership income and gain shall be specially allocated to such Partners in an amount and manner sufficient to eliminate the deficits in their Adjusted Capital Account Balances created by such adjustments, allocations or distributions as quickly as possible.

8.     No loss shall be allocated to any Partner to the extent that such allocation would result in a deficit in its Adjusted Capital Account Balance while any other Partner continues to have a positive Adjusted Capital Account Balance; in such event losses shall first be allocated to any Partners with positive Adjusted Capital Account Balances, and in proportion to such balances, to the extent necessary to reduce their positive Adjusted Capital Account Balances to zero. Any excess shall be allocated to the General Partner.

9.     Any special allocations of items pursuant to this Part A shall be taken into account in computing subsequent allocations so that the net amount of any items so allocated and the profits, losses and all other items allocated to each such Partner pursuant to Article 4 of the Partnership Agreement shall, to the extent possible, be equal to the net

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

amount that would have been allocated to each such Partner pursuant to the provisions of Article 4 of the Partnership Agreement if such special allocations had not occurred.

10. Notwithstanding any provision of the Partnership Agreement to the contrary, Nonrecourse Deductions for any fiscal year or other period shall be specially allocated to the Partners in accordance with the percentages determined under Section 4.1 of Article 4.

11. Notwithstanding any provision of the Partnership Agreement to the contrary, any Partner Nonrecourse Deduction for any fiscal year or other period shall be specially allocated to the Partner who bears the economic risk of loss with respect to the Partner Nonrecourse Debt to which such Partner Nonrecourse Deductions are attributable in accordance with Section 1.704-2(i) of the Treasury Regulations.

B. Capital Account Adjustments and 704(c) Tax Allocations

1. For purposes of computing the amount of any item of income, gain, deduction or loss to be reflected in the Partners' capital accounts, the determination, recognition and classification of any such item shall be the same as its determination, recognition and classification for federal income tax purposes; provided, however, that:

(a) Any deductions for depreciation, cost recovery or amortization (other than depletion under Section 611 of the Code) attributable to a Contributed Property shall be determined as if the adjusted basis of such property on the date it was acquired by the Partnership was equal to the Agreed Value of such property. Upon an adjustment to the Gross Asset Value of any Partnership property subject to depletion under Section 611 of the Code, any further deductions for such depreciation, cost recovery or amortization attributable to such property shall be determined as if the adjusted basis of such property was equal to the Gross Asset Value of such property immediately following such adjustment.

(b) Any income, gain or loss attributable to the taxable disposition of any property (including any property subject to depletion under Section 611 of the Code) shall be determined by the Partnership as if the adjusted basis of such property as of such date of disposition was equal in amount to the Partnership's Gross Asset Value with respect to such property as of such a date.

(c) If the Partnership's adjusted basis in a depreciable or cost recovery property is reduced for federal income tax purposes pursuant to Section 48(q)(1) of the Code, the amount of such reduction shall, solely for purposes hereof, be deemed to be an additional depreciation or cost recovery deduction in the year such property is placed in service and shall be allocated among the Partners pursuant to Article 4 of the Partnership Agreement. Any restoration of such basis pursuant to Section 48(q)(2) of the Code shall be

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

allocated in the same manner to the Partners to whom such deemed deduction was allocated.

(d)  The computation of all items of income, gain, loss and deduction shall be made by the Partnership and, as to those items described in Section 705(a)(1)(B) or Section 705(a)(2)(B) of the Code, without regard to the fact that such items are not includable in gross income or are neither currently deductible nor capitalizable for federal income tax purposes.

2.  A transferee of a Partnership interest will succeed to the capital account relating to the Partnership interest transferred; provided, however, that if the transfer causes a termination of the Partnership under Section 708(b)(1)(B) of the Code, the Partnership properties shall be deemed to have been distributed in liquidation of the Partnership to the Partners (including the transferee of a Partnership interest) and recontributed by such Partners and transferees in reconstitution of the Partnership. The capital accounts of such reconstituted Partnership shall be maintained in accordance with the principles set forth herein. Upon the occurrence of any of the following events, the Partnership Property shall be revalued and the Partners' Capital Accounts adjusted to reflect the gain (or loss) that would have been allocated to each Partner if all the Partnership Property had been sold at its fair market value immediately prior to the occurrence of such event:

(a)  The acquisition of an additional interest in the Partnership by any new or existing Partner in exchange for more than a de minimis Capital Contribution;

(b)  The distribution by the Partnership to a Partner of more than a de minimis amount of property or money in consideration for an interest in the Partnership; or

(c)  The "liquidation" of the Partnership within the meaning of §1.704-1(b)(2)(ii)(g) of the Treasury Regulations.

The revaluation of the Partnership Property referred to in the immediately preceding sentence shall be made in accordance with 1.704-1(b)(2)(iv)(f) of the Treasury Regulations.

3.  Upon an issuance of additional Partnership interests for cash or Contributed Property the capital accounts of all Partners (and the Gross Asset Value of all Partnership Property) shall, immediately prior to issuance, be adjusted (consistent with the provisions hereof) upward or downward to reflect any unrealized gain or unrealized loss attributable to each Partnership Property (as if such unrealized gain or unrealized loss had been recognized upon an actual sale of such property at the fair market value thereof immediately prior to such issuance, and had been allocated to the Partners, at such time, pursuant to Article 4 of the Partnership Agreement). In determining such unrealized gain or unrealized loss attributable to the properties, the fair market value of Partnership Property shall be determined by the General Partner using such reasonable methods of valuation as it may adopt.

-63-

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

4. Immediately prior to the distribution of Partnership Property in liquidation of the Partnership, the Capital Accounts of all Partners (and the Gross Asset Values of all Partnership properties) shall be adjusted (consistent with the provisions hereof and Section 704 of the Code) upward or downward to reflect any unrealized gain or unrealized loss attributable to each Partnership Property (as if such unrealized gain or unrealized loss had been recognized upon an actual sale of each such property, immediately prior to such distribution, and had been allocated to the Partners, at such time, pursuant to Article 4 of the Partnership Agreement). In determining such unrealized gain or unrealized loss attributable to the properties, the fair market value of Partnership Property shall be determined by the General Partner using such reasonable methods of valuation as it may adopt.

5. In accordance with Section 704(c) of the Code and the Treasury Regulations thereunder, income, gain, loss and deduction with respect to any Contributed Property shall, solely for tax purposes, be allocated among the Partners so as to take account of any variation between the adjusted basis of such property to the Partnership for federal income tax purposes and its Agreed Value.

6. In the event the Agreed Value of any Partnership asset is adjusted as described in paragraph 3 or 4 above, subsequent allocations of income, gain, loss and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Agreed Value in the same manner as under Section 704(c) of the Code and the regulations thereunder.

7. Any elections or other decisions relating to such allocations shall be made by the General Partner in any manner that reasonably reflects the purpose and intention of this Agreement.

For purposes of this Exhibit, all other capitalized terms will have the same definition as in the Partnership Agreement.

dco\campbell\flp\flp.df1

**Exhibit A**                      **CFLP Records**                      **Page 70**
2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

**GENERAL PARTNER UNIT LEDGER**

Name: _Donald A. Campbell_

FOLIO ( )

| DATE OF ISSUE | CANCELLED CERT. NO. | FROM OR TO WHOM TRANSFERRED | NO. OF NEW CERT. | DATE OF ASSIGNMENT | DEBIT | CREDIT | BAL. |
|---|---|---|---|---|---|---|---|
| 11/15/97 | N/A | Original Issue | 1 | — | — | 100 | 100 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

## GENERAL PARTNER UNIT LEDGER

Name: F. Margaret Campbell

FOLIO ____

| DATE OF ISSUE | CANCELLED CERT. NO. | FROM OR TO WHOM TRANSFERRED | NO. OF NEW CERT. | DATE OF ASSIGNMENT | DEBIT | CREDIT | BAL. |
|---|---|---|---|---|---|---|---|
| 11/15/97 | N/A | Original Issue | 2 | " | 1 | 100 | 100 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Exhibit A**   CFLP Records   Page 72

# THE CAMPBELL FAMILY LIMITED PARTNERSHIP

## CERTIFICATE FOR GENERAL PARTNER PERCENTAGE INTEREST

Certificate No. _____1_____          Percentage Interests ___1%___
                                     Units: 100

THIS CERTIFICATE is issued by The Campbell Family Limited Partnership ("the Company"), certifying that **Donald A. Campbell** is entitled to receive this certificate for the general partner percentage interests set forth above in **The Campbell Family Limited Partnership**.

This Certificate is transferable only on the books of the Company by the registered holder ("Partner") in person or by his duly authorized attorney. The Partner hereof, by receipt and acceptance of this Certificate, manifests his consent that the Company may treat the registered Partner of this Certificate as the true owner hereof for all purposes except as limited by the Company's Partnership Agreement. Transfer of the Interests of the Partner can only be made in strict compliance with the Company's Partnership Agreement and upon delivery of Interest Certificates which shall be made only upon surrender of this Certificate.

**IN WITNESS WHEREOF, The Campbell Family Limited Partnership** by its duly authorized officer, and **Donald A. Campbell** as the certificate owner, have hereunto set their hands this _15_ day of _November_, 1997.

The Campbell Family Limited Partnership

By: _Donald A. Campbell_
Donald A. Campbell,
Managing General Partner

_Donald A. Campbell_
Donald A. Campbell, Owner

**Exhibit A**                    **CFLP Records**                    Page 73

**FOR VALUE RECEIVED**, Donald A. Campbell hereby assigns, transfers and conveys unto _____, _____ (_____) Percentage Interest of **The Campbell Family Limited Partnership**, standing in his name on the books of said Company represented by Certificate No. ___1___ herewith and does hereby irrevocably constitute and appoint _____ attorney to transfer the said Interests on the books of the within named Company with full power of substitution in the premises.

Dated: _____     _____

MHV\CLIENTS\CAMPBELL\FLP

**Exhibit A**                    **CFLP Records**                    **Page 74**

# THE CAMPBELL FAMILY LIMITED PARTNERSHIP

## CERTIFICATE FOR GENERAL PARTNER PERCENTAGE INTEREST

Certificate No. ____2____

Percentage Interests ___1%___
Units:  100

THIS CERTIFICATE is issued by **The Campbell Family Limited Partnership** ("the Company"), certifying that **F. Margaret Campbell** is entitled to receive this certificate for the general partner percentage interests set forth above in **The Campbell Family Limited Partnership**.

This Certificate is transferable only on the books of the Company by the registered holder ("Partner") in person or by his duly authorized attorney.  The Partner hereof, by receipt and acceptance of this Certificate, manifests his consent that the Company may treat the registered Partner of this Certificate as the true owner hereof for all purposes except as limited by the Company's Partnership Agreement.  Transfer of the Interests of the Partner can only be made in strict compliance with the Company's Partnership Agreement and upon delivery of Interest Certificates which shall be made only upon surrender of this Certificate.

**IN WITNESS WHEREOF, The Campbell Family Limited Partnership** by its duly authorized officer, and **F. Margaret Campbell** as the certificate owner, have hereunto set their hands this _15_ day of _November_ , 1997.

The Campbell Family Limited Partnership

By: _____
Donald A. Campbell,
Managing General Partner

_____
F. Margaret Campbell, Owner

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

**FOR VALUE RECEIVED**, F. Margaret Campbell hereby assigns, transfers and conveys unto _____, _____ (_____) Percentage Interest of **The Campbell Family Limited Partnership**, standing in her name on the books of said Company represented by Certificate No. ___2___ herewith and does hereby irrevocably constitute and appoint _____ attorney to transfer the said Interests on the books of the within named Company with full power of substitution in the premises.

Dated: _____          _____

MHV\CLIENTS\CAMPBELL\FLP

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

# THE CAMPBELL FAMILY LIMITED PARTNERSHIP

## CERTIFICATE FOR LIMITED PARTNER PERCENTAGE INTEREST

Certificate No. ____1____

Percentage Interests ___49%___
Units: 4,900

THIS CERTIFICATE is issued by **The Campbell Family Limited Partnership** ("the Company"), certifying that **Donald A. Campbell** is entitled to receive this certificate for the limited partner percentage interests set forth above in **The Campbell Family Limited Partnership.**

This Certificate is transferable only on the books of the Company by the registered holder ("Partner") in person or by his duly authorized attorney. The Partner hereof, by receipt and acceptance of this Certificate, manifests his consent that the Company may treat the registered Partner of this Certificate as the true owner hereof for all purposes except as limited by the Company's Partnership Agreement. Transfer of the Interests of the Partner can only be made in strict compliance with the Company's Partnership Agreement and upon delivery of Interest Certificates which shall be made only upon surrender of this Certificate.

IN WITNESS WHEREOF, **The Campbell Family Limited Partnership** by its duly authorized officer, and **Donald A. Campbell** as the certificate owner, have hereunto set their hands this _15_ day of _November_, 1997.

The Campbell Family Limited Partnership

By: _____
Donald A. Campbell,
Managing General Partner

_____
Donald A. Campbell, Owner

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

# THE CAMPBELL FAMILY LIMITED PARTNERSHIP

### CERTIFICATE FOR LIMITED PARTNER PERCENTAGE INTEREST

Certificate No. _____2_____

Percentage Interests ____49%____
Units: 4,900

       **THIS CERTIFICATE** is issued by **The Campbell Family Limited Partnership** ("the Company"), certifying that **F. Margaret Campbell** is entitled to receive this certificate for the limited partner percentage interests set forth above in **The Campbell Family Limited Partnership.**

       This Certificate is transferable only on the books of the Company by the registered holder ("Partner") in person or by his duly authorized attorney. The Partner hereof, by receipt and acceptance of this Certificate, manifests his consent that the Company may treat the registered Partner of this Certificate as the true owner hereof for all purposes except as limited by the Company's Partnership Agreement. Transfer of the Interests of the Partner can only be made in strict compliance with the Company's Partnership Agreement and upon delivery of Interest Certificates which shall be made only upon surrender of this Certificate.

       **IN WITNESS WHEREOF,** The Campbell Family Limited Partnership by its duly authorized officer, and **F. Margaret Campbell** as the certificate owner, have hereunto set their hands this 15 day of November , 1997.

The Campbell Family Limited Partnership

By: _Donald A. Campbell_
    Donald A. Campbell,
    Managing General Partner

_F. Margaret Campbell_
F. Margaret Campbell, Owner

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

# THE CAMPBELL FAMILY LIMITED PARTNERSHIP

## CERTIFICATE FOR LIMITED PARTNER PERCENTAGE INTEREST

Certificate No. ___3___

Percentage Interests _48.09%_
Units: 4,809

THIS CERTIFICATE is issued by **The Campbell Family Limited Partnership** ("the Company"), certifying that **Donald A. Campbell** is entitled to receive this certificate for the limited partner percentage interests set forth above in **The Campbell Family Limited Partnership**.

This Certificate is transferable only on the books of the Company by the registered holder ("Partner") in person or by his duly authorized attorney. The Partner hereof, by receipt and acceptance of this Certificate, manifests his consent that the Company may treat the registered Partner of this Certificate as the true owner hereof for all purposes except as limited by the Company's Partnership Agreement. Transfer of the Interests of the Partner can only be made in strict compliance with the Company's Partnership Agreement and upon delivery of Interest Certificates which shall be made only upon surrender of this Certificate.

**IN WITNESS WHEREOF**, **The Campbell Family Limited Partnership** by its duly authorized officer, and **Donald A. Campbell** as the certificate owner, have hereunto set their hands this 31st day of December, 1997.

The Campbell Family Limited Partnership

By: _Donald A. Campbell_

Donald A. Campbell,
Managing General Partner

_Donald A. Campbell_

Donald A. Campbell, Owner

**Exhibit A**

**CFLP Records**

**Page 79**

## ASSIGNMENT OF LIMITED PARTNER INTEREST

DONALD A. CAMPBELL hereby assigns, transfers and conveys unto FREDERICK M. CAMPBELL, Eighty-Nine  (89) Limited Partner Units (the "Units") of The Campbell Family Limited Partnership, standing in his name on the books of said Partnership, represented by Certificate No. 3,  and does hereby irrevocably constitute and appoint Missia H. Vaselaney as attorney to transfer the said Units on the books of the within named Partnership with full power of substitution in the premises.

Date: December 31, 1998

Donald A. Campbell

The undersigned, constituting all of the General Partners of The Campbell Family Limited Partnership, hereby consent to the above assignment as required by Section 7.6 of the Partnership Agreement.

Donald A. Campbell

F. Margaret Campbell

CLE - 486830.1

**Exhibit A**                    **CFLP Records**                    **Page 80**

## THE CAMPBELL FAMILY LIMITED PARTNERSHIP

### CERTIFICATE FOR LIMITED PARTNER PERCENTAGE INTEREST

Certificate No. ___4___

Percentage Interests ___48.09%___
Units: 4,809

THIS CERTIFICATE is issued by **The Campbell Family Limited Partnership** ("the Company"), certifying that **F. Margaret Campbell** is entitled to receive this certificate for the limited partner percentage interests set forth above in **The Campbell Family Limited Partnership**.

This Certificate is transferable only on the books of the Company by the registered holder ("Partner") in person or by her duly authorized attorney. The Partner hereof, by receipt and acceptance of this Certificate, manifests her consent that the Company may treat the registered Partner of this Certificate as the true owner hereof for all purposes except as limited by the Company's Partnership Agreement. Transfer of the Interests of the Partner can only be made in strict compliance with the Company's Partnership Agreement and upon delivery of Interest Certificates which shall be made only upon surrender of this Certificate.

IN WITNESS WHEREOF, **The Campbell Family Limited Partnership** by its duly authorized officer, and **F. Margaret Campbell** as the certificate owner, have hereunto set their hands this 31st day of December, 1997.

The Campbell Family Limited Partnership

By: _Donald A. Campbell_
Donald A. Campbell,
Managing General Partner

_F. Margaret Campbell_
F. Margaret Campbell, Owner

## THE CAMPBELL FAMILY LIMITED PARTNERSHIP

CERTIFICATE FOR LIMITED PARTNER PERCENTAGE INTEREST

Certificate No. _____5_____          Percentage Interests _0.91%_
                                     Units: 91

THIS CERTIFICATE is issued by **The Campbell Family Limited Partnership** ("the Company"), certifying that **Frederick M. Campbell** is entitled to receive this certificate for the limited partner percentage interests set forth above in **The Campbell Family Limited Partnership**.

This Certificate is transferable only on the books of the Company by the registered holder ("Partner") in person or by his duly authorized attorney. The Partner hereof, by receipt and acceptance of this Certificate, manifests his consent that the Company may treat the registered Partner of this Certificate as the true owner hereof for all purposes except as limited by the Company's Partnership Agreement. Transfer of the Interests of the Partner can only be made in strict compliance with the Company's Partnership Agreement and upon delivery of Interest Certificates which shall be made only upon surrender of this Certificate.

**IN WITNESS WHEREOF**, The Campbell Family Limited Partnership by its duly authorized officer, and **Frederick M. Campbell** as the certificate owner, have hereunto set their hands this 31st day of December, 1997.

The Campbell Family Limited Partnership

By: _____
Donald A. Campbell,
Managing General Partner

_____
Frederick M. Campbell, Owner

# THE CAMPBELL FAMILY LIMITED PARTNERSHIP

## CERTIFICATE FOR LIMITED PARTNER PERCENTAGE INTEREST

Certificate No. ____6____　　　　　　　Percentage Interests __0.91%__
　　　　　　　　　　　　　　　　　　　　Units: 91

　　　THIS CERTIFICATE is issued by **The Campbell Family Limited Partnership** ("the Company"), certifying that **Frederick M. Campbell** is entitled to receive this certificate for the limited partner percentage interests set forth above in **The Campbell Family Limited Partnership**.

　　　This Certificate is transferable only on the books of the Company by the registered holder ("Partner") in person or by his duly authorized attorney.　The Partner hereof, by receipt and acceptance of this Certificate, manifests his consent that the Company may treat the registered Partner of this Certificate as the true owner hereof for all purposes except as limited by the Company's Partnership Agreement.　Transfer of the Interests of the Partner can only be made in strict compliance with the Company's Partnership Agreement and upon delivery of Interest Certificates which shall be made only upon surrender of this Certificate.

　　　**IN WITNESS WHEREOF**, **The Campbell Family Limited Partnership** by its duly authorized officer, and **Frederick M. Campbell** as the certificate owner, have hereunto set their hands this 31st day of December, 1997.

　　　　　　　　　　　　　　　The Campbell Family Limited Partnership

　　　　　　　　By:_____

　　　　　　　　　　Donald A. Campbell,
　　　　　　　　　　　Managing General Partner


　　　　　　　　_____
　　　　　　　　Frederick M. Campbell, Owner

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

# THE CAMPBELL FAMILY LIMITED PARTNERSHIP

## CERTIFICATE FOR LIMITED PARTNER UNITS

Certificate No. ___7___

Limited Partner Units: 4,720
Partnership Interest: 47.20%

THIS CERTIFICATE is issued by **The Campbell Family Limited Partnership** ("the Company"), certifying that **Donald A. Campbell** is entitled to receive this Certificate for the Limited Partner Units set forth above in **The Campbell Family Limited Partnership**.

This Certificate is transferable only on the books of the Company by the registered holder ("Partner") in person or by his or her duly authorized attorney. The Partner hereof, by receipt and acceptance of this Certificate, manifests his or her consent that the Company may treat the registered Partner of this Certificate as the true owner hereof for all purposes except as limited by the Company's Partnership Agreement. Transfer of the Limited Partner Units can only be made in strict compliance with the Company's Partnership Agreement and upon surrender of this Certificate properly endorsed.

**IN WITNESS WHEREOF**, **The Campbell Family Limited Partnership** by its managing general partner, and **Donald A. Campbell**, as the Certificate owner, have hereunto set their hands this 31st day of December, 1998.

**The Campbell Family Limited Partnership**

By: _____
Donald A. Campbell, Managing General Partner

_____
Donald A. Campbell, Owner

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

## ASSIGNMENT OF LIMITED PARTNER INTEREST

*Donald A. Campbell* (Assignor) hereby assigns, transfers, and conveys unto

*Frederick M. Campbell    84 Limited Partner Units*

of **THE CAMPBELL FAMILY LIMITED PARTNERSHIP** standing in the name of

the transferor on the books of the Partnership, represented by Certificate No. **7**, and

does hereby irrevocably constitute and appoint Missia H. Vaselaney as attorney to

transfer the said units on the books of the Partnership, with full power of substitution in

the premises. Any remaining units of Certificate No. **7** shall remain the property of

Assignor, and Assignor requests that a new certificate be issued therefor.

December 31, 1999
Date

Donald A. Campbell

The undersigned, being all of the General Partners of The Campbell Family

Limited Partnership, consent to the above assignment as required by Section 7.6 of the

Partnership Agreement.

Donald A. Campbell

F. Margaret Campbell

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

# THE CAMPBELL FAMILY LIMITED PARTNERSHIP

## CERTIFICATE FOR LIMITED PARTNER UNITS

Certificate No. ___8___

Limited Partner Units: 4,720
Partnership Interest: 47.20%

THIS CERTIFICATE is issued by **The Campbell Family Limited Partnership** ("the

Company"), certifying that **F. Margaret Campbell** is entitled to receive this Certificate for the

Limited Partner Units set forth above in **The Campbell Family Limited Partnership**.

This Certificate is transferable only on the books of the Company by the registered holder

("Partner") in person or by his or her duly authorized attorney. The Partner hereof, by receipt and

acceptance of this Certificate, manifests his or her consent that the Company may treat the registered

Partner of this Certificate as the true owner hereof for all purposes except as limited by the

Company's Partnership Agreement. Transfer of the Limited Partner Units can only be made in strict

compliance with the Company's Partnership Agreement and upon surrender of this Certificate

properly endorsed.

**IN WITNESS WHEREOF, The Campbell Family Limited Partnership** by its managing

general partner, and **F. Margaret Campbell**, as the Certificate owner, have hereunto set their hands

this 31st day of December, 1998.

**The Campbell Family Limited Partnership**

By: _Donald A. Campbell_____
    Donald A. Campbell, Managing General Partner

_F. Margaret Campbell_____
F. Margaret Campbell, Owner

## ASSIGNMENT OF LIMITED PARTNER INTEREST

*F. Margaret Campbell* (Assignor) hereby assigns, transfers, and conveys unto

*Frederick M. Campbell    84 Limited Partner Units*

of **THE CAMPBELL FAMILY LIMITED PARTNERSHIP** standing in the name of

the transferor on the books of the Partnership, represented by Certificate No. __8__, and

does hereby irrevocably constitute and appoint Missia H. Vaselaney as attorney to

transfer the said units on the books of the Partnership, with full power of substitution in

the premises. Any remaining units of Certificate No. __8__ shall remain the property of

Assignor, and Assignor requests that a new certificate be issued therefor.

December 31, 1999                                      *F. Margaret Campbell*
Date                                                                 F. Margaret Campbell


The undersigned, being all of the General Partners of The Campbell Family

Limited Partnership, consent to the above assignment as required by Section 7.6 of the

Partnership Agreement.

Donald A. Campbell                                    F. Margaret Campbell

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

# THE CAMPBELL FAMILY LIMITED PARTNERSHIP

## CERTIFICATE FOR LIMITED PARTNER UNITS

Certificate No. _____9_____

Limited Partner Units: 360
Partnership Interest: 3.60%

THIS CERTIFICATE is issued by **The Campbell Family Limited Partnership** ("the Company"), certifying that **Frederick M. Campbell** is entitled to receive this Certificate for the Limited Partner Units set forth above in **The Campbell Family Limited Partnership**.

This Certificate is transferable only on the books of the Company by the registered holder ("Partner") in person or by his or her duly authorized attorney. The Partner hereof, by receipt and acceptance of this Certificate, manifests his or her consent that the Company may treat the registered Partner of this Certificate as the true owner hereof for all purposes except as limited by the Company's Partnership Agreement. Transfer of the Limited Partner Units can only be made in strict compliance with the Company's Partnership Agreement and upon surrender of this Certificate properly endorsed.

IN WITNESS WHEREOF, **The Campbell Family Limited Partnership** by its managing general partner, and **Frederick M. Campbell**, as the Certificate owner, have hereunto set their hands this 31st day of December, 1998.

The Campbell Family Limited Partnership

By: _____
Donald A. Campbell, Managing General Partner

_____
Frederick M. Campbell, Owner

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713



# THE CAMPBELL FAMILY LIMITED PARTNERSHIP

*Certificate for Limited Partner Percentage Interest*

Certificate No. ___10___

Percentage Interests: ___46.36%___
Units: ___4636___

**This Certificate** is issued by **The Campbell Family Limited Partnership** (the Partnership), certifying that **Donald A. Campbell** is entitled to receive this Certificate for the limited partner percentage interests and units set forth above in The Campbell Family Limited Partnership.

This Certificate is transferable only on the books of the Partnership by the registered holder (Partner), in person or by his duly authorized attorney. The Partner, by receipt and acceptance of this Certificate, manifests his consent that the Partnership may treat the Partner as the true owner of the interests and units set forth above for all purposes except as limited by the Partnership Agreement. Transfer of the Partner's interests can be made only in strict compliance with the Partnership Agreement and upon delivery of one or more new interest certificates, which shall be made only upon surrender of this Certificate.

*In Witness Whereof,* **The Campbell Family Limited Partnership**, by its duly authorized officer, and **Donald A. Campbell**, as the certificate owner, have hereunto set their hands this 31st day of December, 1999.

THE CAMPBELL FAMILY LIMITED PARTNERSHIP

By _____

Donald A. Campbell
Managing General Partner

_____

Donald A. Campbell, Owner

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

## ASSIGNMENT OF LIMITED PARTNER INTEREST

*Donald A. Campbell* (Assignor) hereby assigns, transfers, and conveys unto

*Frederick M. Campbell    84 Limited Partner Units*

of **THE CAMPBELL FAMILY LIMITED PARTNERSHIP** standing in the name of

the transferor on the books of the Partnership, represented by Certificate No.  **10** , and

does hereby irrevocably constitute and appoint Missia H. Vaselaney as attorney to

transfer the said units on the books of the Partnership, with full power of substitution in

the premises. Any remaining units of Certificate No.  **10**  shall remain the property of

Assignor, and Assignor requests that a new certificate be issued therefor.

December 31, 2000
Date

Donald A. Campbell

The undersigned, being all of the General Partners of The Campbell Family

Limited Partnership, consent to the above assignment as required by Section 7.6 of the

Partnership Agreement.

Donald A. Campbell

F. Margaret Campbell

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713



# THE CAMPBELL FAMILY LIMITED PARTNERSHIP

*Certificate for Limited Partner Percentage Interest*

Certificate No. ___11___

Percentage Interests: ___46.36%___
Units: ___4636___

    *This Certificate* is issued by **The Campbell Family Limited Partnership** (the Partnership), certifying that **F. Margaret Campbell** is entitled to receive this Certificate for the limited partner percentage interests and units set forth above in The Campbell Family Limited Partnership.

    This Certificate is transferable only on the books of the Partnership by the registered holder (Partner), in person or by his duly authorized attorney. The Partner, by receipt and acceptance of this Certificate, manifests his consent that the Partnership may treat the Partner as the true owner of the interests and units set forth above for all purposes except as limited by the Partnership Agreement. Transfer of the Partner's interests can be made only in strict compliance with the Partnership Agreement and upon delivery of one or more new interest certificates, which shall be made only upon surrender of this Certificate.

    *In Witness Whereof,* **The Campbell Family Limited Partnership,** by its duly authorized officer, and **F. Margaret Campbell,** as the certificate owner, have hereunto set their hands this 31st day of December, 1999.

THE CAMPBELL FAMILY LIMITED PARTNERSHIP

By _____
Donald A. Campbell
Managing General Partner

_____
F. Margaret Campbell, Owner

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

## ASSIGNMENT OF LIMITED PARTNER INTEREST

*F. Margaret Campbell* (Assignor) hereby assigns, transfers, and conveys unto

*Frederick M. Campbell   84 Limited Partner Units*

of **THE CAMPBELL FAMILY LIMITED PARTNERSHIP** standing in the name of

the transferor on the books of the Partnership, represented by Certificate No.  __11__ , and

does hereby irrevocably constitute and appoint Missia H. Vaselaney as attorney to

transfer the said units on the books of the Partnership, with full power of substitution in

the premises. Any remaining units of Certificate No.  __11__  shall remain the property of

Assignor, and Assignor requests that a new certificate be issued therefor.

December 31, 2000 _____          *F. Margaret Campbell*
Date                                                         F. Margaret Campbell

The undersigned, being all of the General Partners of The Campbell Family

Limited Partnership, consent to the above assignment as required by Section 7.6 of the

Partnership Agreement.

_____          *F. Margaret Campbell*
Donald A. Campbell                             F. Margaret Campbell

# THE CAMPBELL FAMILY LIMITED PARTNERSHIP

*Certificate for Limited Partner Percentage Interest*

Certificate No. ___12___

Percentage Interests: ___5.28%___
Units: ___528___

*This Certificate* is issued by **The Campbell Family Limited Partnership** (the Partnership), certifying that **Frederick M. Campbell** is entitled to receive this Certificate for the limited partner percentage interests and units set forth above in The Campbell Family Limited Partnership.

This Certificate is transferable only on the books of the Partnership by the registered holder (Partner), in person or by his duly authorized attorney. The Partner, by receipt and acceptance of this Certificate, manifests his consent that the Partnership may treat the Partner as the true owner of the interests and units set forth above for all purposes except as limited by the Partnership Agreement. Transfer of the Partner's interests can be made only in strict compliance with the Partnership Agreement and upon delivery of one or more new interest certificates, which shall be made only upon surrender of this Certificate.

*In Witness Whereof,* **The Campbell Family Limited Partnership,** by its duly authorized officer, and **Frederick M. Campbell,** as the certificate owner, have hereunto set their hands this 31st day of December, 1999.

THE CAMPBELL FAMILY LIMITED PARTNERSHIP

By _____
Donald A. Campbell
Managing General Partner

_____
Frederick M. Campbell, Owner

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713



# THE CAMPBELL FAMILY LIMITED PARTNERSHIP

*Certificate for Limited Partner Percentage Interest*

Certificate No. ___13___

Percentage Interests: ___45.52%___
Units: ___4552___

    ***This Certificate*** is issued by **The Campbell Family Limited Partnership** (the Partnership), certifying that **Donald A. Campbell** is entitled to receive this Certificate for the limited partner percentage interests and units set forth above in The Campbell Family Limited Partnership.

    This Certificate is transferable only on the books of the Partnership by the registered holder (Partner), in person or by his duly authorized attorney. The Partner, by receipt and acceptance of this Certificate, manifests his consent that the Partnership may treat the Partner as the true owner of the interests and units set forth above for all purposes except as limited by the Partnership Agreement. Transfer of the Partner's interests can be made only in strict compliance with the Partnership Agreement and upon delivery of one or more new interest certificates, which shall be made only upon surrender of this Certificate.

    ***In Witness Whereof,*** **The Campbell Family Limited Partnership,** by its duly authorized officer, and **Donald A. Campbell,** as the certificate owner, have hereunto set their hands this 31st day of December, 2000.

THE CAMPBELL FAMILY LIMITED PARTNERSHIP

By _____

Donald A. Campbell
Managing General Partner

_____
Donald A. Campbell, Owner

---

**Exhibit A**         **CFLP Records**        **Page 94**

## ASSIGNMENT OF LIMITED PARTNER INTEREST

*Donald A. Campbell* (Assignor) hereby assigns, transfers, and conveys unto

*Frederick M. Campbell   84 Limited Partner Units*

of **THE CAMPBELL FAMILY LIMITED PARTNERSHIP** standing in the name of

the transferor on the books of the Partnership, represented by Certificate No. **13** , and

does hereby irrevocably constitute and appoint Missia H. Vaselaney as attorney to

transfer the said units on the books of the Partnership, with full power of substitution in

the premises. Any remaining units of Certificate No. **13** shall remain the property of

Assignor, and Assignor requests that a new certificate be issued therefor.

January 31, 2001
Date

Donald A. Campbell

The undersigned, being all of the General Partners of The Campbell Family

Limited Partnership, consent to the above assignment as required by Section 7.6 of the

Partnership Agreement.

Donald A. Campbell

F. Margaret Campbell

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713



# THE CAMPBELL FAMILY LIMITED PARTNERSHIP

### *Certificate for Limited Partner Percentage Interest*

Certificate No. ___14___

Percentage Interests: ___45.52%___
Units: ___4552___

*This Certificate* is issued by **The Campbell Family Limited Partnership** (the Partnership), certifying that **F. Margaret Campbell** is entitled to receive this Certificate for the limited partner percentage interests and units set forth above in The Campbell Family Limited Partnership.

This Certificate is transferable only on the books of the Partnership by the registered holder (Partner), in person or by his duly authorized attorney. The Partner, by receipt and acceptance of this Certificate, manifests his consent that the Partnership may treat the Partner as the true owner of the interests and units set forth above for all purposes except as limited by the Partnership Agreement. Transfer of the Partner's interests can be made only in strict compliance with the Partnership Agreement and upon delivery of one or more new interest certificates, which shall be made only upon surrender of this Certificate.

*In Witness Whereof,* **The Campbell Family Limited Partnership**, by its duly authorized officer, and **F. Margaret Campbell**, as the certificate owner, have hereunto set their hands this 31st day of December, 2000.

THE CAMPBELL FAMILY LIMITED PARTNERSHIP

By _____

Donald A. Campbell
Managing General Partner

_____
F. Margaret Campbell, Owner

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

### ASSIGNMENT OF LIMITED PARTNER INTEREST

*F. Margaret Campbell* (Assignor) hereby assigns, transfers, and conveys unto

*Frederick M. Campbell    84 Limited Partner Units*

of **THE CAMPBELL FAMILY LIMITED PARTNERSHIP** standing in the name of

the transferor on the books of the Partnership, represented by Certificate No. **14** , and

does hereby irrevocably constitute and appoint Missia H. Vaselaney as attorney to

transfer the said units on the books of the Partnership, with full power of substitution in

the premises. Any remaining units of Certificate No. **14** shall remain the property of

Assignor, and Assignor requests that a new certificate be issued therefor.

January 31, 2001                               F. Margaret Campbell
Date                                           F. Margaret Campbell

The undersigned, being all of the General Partners of The Campbell Family

Limited Partnership, consent to the above assignment as required by Section 7.6 of the

Partnership Agreement.

Donald A. Campbell                             F. Margaret Campbell

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

# THE CAMPBELL FAMILY LIMITED PARTNERSHIP

*Certificate for Limited Partner Percentage Interest*

Certificate No. ___15___

Percentage Interests: ___6.96%___
Units: ___696___

*This Certificate* is issued by **The Campbell Family Limited Partnership** (the Partnership), certifying that **Frederick M. Campbell** is entitled to receive this Certificate for the limited partner percentage interests and units set forth above in The Campbell Family Limited Partnership.

This Certificate is transferable only on the books of the Partnership by the registered holder (Partner), in person or by his duly authorized attorney. The Partner, by receipt and acceptance of this Certificate, manifests his consent that the Partnership may treat the Partner as the true owner of the interests and units set forth above for all purposes except as limited by the Partnership Agreement. Transfer of the Partner's interests can be made only in strict compliance with the Partnership Agreement and upon delivery of one or more new interest certificates, which shall be made only upon surrender of this Certificate.

*In Witness Whereof,* **The Campbell Family Limited Partnership,** by its duly authorized officer, and **Frederick M. Campbell,** as the certificate owner, have hereunto set their hands this 31st day of December, 2000.

THE CAMPBELL FAMILY LIMITED PARTNERSHIP

By _____

Donald A. Campbell
Managing General Partner

_____
Frederick M. Campbell, Owner

**Exhibit A**                    **CFLP Records**                    **Page 98**



# THE CAMPBELL FAMILY LIMITED PARTNERSHIP

*Certificate for Limited Partner Percentage Interest*

Certificate No. __16__

Percentage Interests: __44.68%__
Units: __4468__

**This Certificate** is issued by **The Campbell Family Limited Partnership** (the Partnership), certifying that **Donald A. Campbell** is entitled to receive this Certificate for the limited partner percentage interests and units set forth above in The Campbell Family Limited Partnership.

This Certificate is transferable only on the books of the Partnership by the registered holder (Partner), in person or by his duly authorized attorney. The Partner, by receipt and acceptance of this Certificate, manifests his consent that the Partnership may treat the Partner as the true owner of the interests and units set forth above for all purposes except as limited by the Partnership Agreement. Transfer of the Partner's interests can be made only in strict compliance with the Partnership Agreement and upon delivery of one or more new interest certificates, which shall be made only upon surrender of this Certificate.

**In Witness Whereof,** The Campbell Family Limited Partnership, by its duly authorized officer, and **Donald A. Campbell**, as the certificate owner, have hereunto set their hands this 31st day of January, 2001.

THE CAMPBELL FAMILY LIMITED PARTNERSHIP

By _____
Donald A. Campbell
Managing General Partner

_____
Donald A. Campbell, Owner

---

**Exhibit A**  **CFLP Records**  **Page 99**

# THE CAMPBELL FAMILY LIMITED PARTNERSHIP

### *Certificate for Limited Partner Percentage Interest*

Certificate No. ___17___

Percentage Interests: ___44.68%___
Units: ___4468___

    **This Certificate** is issued by **The Campbell Family Limited Partnership** (the Partnership), certifying that **F. Margaret Campbell** is entitled to receive this Certificate for the limited partner percentage interests and units set forth above in The Campbell Family Limited Partnership.

    This Certificate is transferable only on the books of the Partnership by the registered holder (Partner), in person or by his duly authorized attorney. The Partner, by receipt and acceptance of this Certificate, manifests his consent that the Partnership may treat the Partner as the true owner of the interests and units set forth above for all purposes except as limited by the Partnership Agreement. Transfer of the Partner's interests can be made only in strict compliance with the Partnership Agreement and upon delivery of one or more new interest certificates, which shall be made only upon surrender of this Certificate.

    **In Witness Whereof,** **The Campbell Family Limited Partnership,** by its duly authorized officer, and **F. Margaret Campbell,** as the certificate owner, have hereunto set their hands this 31st day of January, 2001.

THE CAMPBELL FAMILY LIMITED PARTNERSHIP

By _____
    Donald A. Campbell
    Managing General Partner

_____
F. Margaret Campbell, Owner

**Exhibit A**       **CFLP Records**      **Page 100**

# THE CAMPBELL FAMILY LIMITED PARTNERSHIP

### *Certificate for Limited Partner Percentage Interest*

Certificate No.  18

Percentage Interests:  8.64%
Units:  864

*This Certificate* is issued by **The Campbell Family Limited Partnership** (the Partnership), certifying that **Frederick M. Campbell** is entitled to receive this Certificate for the limited partner percentage interests and units set forth above in The Campbell Family Limited Partnership.

This Certificate is transferable only on the books of the Partnership by the registered holder (Partner), in person or by his duly authorized attorney. The Partner, by receipt and acceptance of this Certificate, manifests his consent that the Partnership may treat the Partner as the true owner of the interests and units set forth above for all purposes except as limited by the Partnership Agreement. Transfer of the Partner's interests can be made only in strict compliance with the Partnership Agreement and upon delivery of one or more new interest certificates, which shall be made only upon surrender of this Certificate.

*In Witness Whereof,* **The Campbell Family Limited Partnership,** by its duly authorized officer, and **Frederick M. Campbell,** as the certificate owner, have hereunto set their hands this 31st day of January, 2001.

THE CAMPBELL FAMILY LIMITED PARTNERSHIP

By
Donald A. Campbell
Managing General Partner

Frederick M. Campbell, Owner

Exhibit A                    CFLP Records                    Page 101

# THE CAMPBELL FAMILY LIMITED PARTNERSHIP

*Certificate for Limited Partner Percentage Interest*

Certificate No. ___19___

Percentage Interests: ___43.59%___
Units: ___4359___

**This Certificate** is issued by **The Campbell Family Limited Partnership** (the Partnership), certifying that **Donald A. Campbell** is entitled to receive this Certificate for the limited partner percentage interests and units set forth above in The Campbell Family Limited Partnership.

This Certificate is transferable only on the books of the Partnership by the registered holder (Partner), in person or by his duly authorized attorney. The Partner, by receipt and acceptance of this Certificate, manifests his consent that the Partnership may treat the Partner as the true owner of the interests and units set forth above for all purposes except as limited by the Partnership Agreement. Transfer of the Partner's interests can be made only in strict compliance with the Partnership Agreement and upon delivery of one or more new interest certificates, which shall be made only upon surrender of this Certificate.

**In Witness Whereof, The Campbell Family Limited Partnership,** by its duly authorized officer, and **Donald A. Campbell,** as the certificate owner, have hereunto set their hands this 31st day of December, 2002.

THE CAMPBELL FAMILY LIMITED PARTNERSHIP

By _____
Donald A. Campbell
Managing General Partner

_____
Donald A. Campbell, Owner

**Exhibit A**

**CFLP Records**

**Page 102**



# THE CAMPBELL FAMILY LIMITED PARTNERSHIP

### *Certificate for Limited Partner Percentage Interest*

Certificate No. ___20___

Percentage Interests: ___43.59%___
Units: ___4359___

   *This Certificate* is issued by **The Campbell Family Limited Partnership** (the Partnership), certifying that **F. Margaret Campbell** is entitled to receive this Certificate for the limited partner percentage interests and units set forth above in The Campbell Family Limited Partnership.

   This Certificate is transferable only on the books of the Partnership by the registered holder (Partner), in person or by his duly authorized attorney. The Partner, by receipt and acceptance of this Certificate, manifests his consent that the Partnership may treat the Partner as the true owner of the interests and units set forth above for all purposes except as limited by the Partnership Agreement. Transfer of the Partner's interests can be made only in strict compliance with the Partnership Agreement and upon delivery of one or more new interest certificates, which shall be made only upon surrender of this Certificate.

   *In Witness Whereof,* **The Campbell Family Limited Partnership,** by its duly authorized officer, and **F. Margaret Campbell,** as the certificate owner, have hereunto set their hands this 31st day of December, 2002.

THE CAMPBELL FAMILY LIMITED PARTNERSHIP

By _____

Donald A. Campbell
Managing General Partner

_____
F. Margaret Campbell, Owner

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713



# THE CAMPBELL FAMILY LIMITED PARTNERSHIP

*Certificate for Limited Partner Percentage Interest*

Certificate No. ___21___

Percentage Interests: ___10.82%___
Units: ___1082___

*This Certificate* is issued by **The Campbell Family Limited Partnership** (the Partnership), certifying that **Frederick M. Campbell** is entitled to receive this Certificate for the limited partner percentage interests and units set forth above in The Campbell Family Limited Partnership.

This Certificate is transferable only on the books of the Partnership by the registered holder (Partner), in person or by his duly authorized attorney. The Partner, by receipt and acceptance of this Certificate, manifests his consent that the Partnership may treat the Partner as the true owner of the interests and units set forth above for all purposes except as limited by the Partnership Agreement. Transfer of the Partner's interests can be made only in strict compliance with the Partnership Agreement and upon delivery of one or more new interest certificates, which shall be made only upon surrender of this Certificate.

*In Witness Whereof,* **The Campbell Family Limited Partnership,** by its duly authorized officer, and **Frederick M. Campbell,** as the certificate owner, have hereunto set their hands this 31st day of December, 2002.

THE CAMPBELL FAMILY LIMITED PARTNERSHIP

By _Donald A. Campbell_
Donald A. Campbell

_Frederick M. Campbell, Owner_
Frederick M. Campbell, Owner
Managing General Partner

---

**Exhibit A**      **CFLP Records**      **Page 104**

**LIMITED PARTNER UNIT LEDGER**

Name: Donald A. Campbell

FOLIO (

| DATE OF ISSUE | CANCELLED CERT. NO. | FROM OR TO WHOM TRANSFERRED | NO. OF NEW CERT. | DATE OF ASSIGNMENT | DEBIT | CREDIT | BAL. |
|---|---|---|---|---|---|---|---|
| 11/15/97 | N/A | Original Issue | 1 | - | 1 | 4,900 | 4,900 |
| 12/31/97 | 1 | To: Fredrick Campbell (91) | 3 | 12/31/97 | 91 | - | 4,809 |
| 12/31/98 | 3 | To: Fredrick Campbell (89) | 7 | 12/31/98 | 89 | - | 4,720 |
| 12/31/99 | 7 | TO: Frederick W. Campbell (84) | 10 | 12/31/99 | 84 | - | 4,636 |
| 12/31/00 | 10 | TO: Frederick W. Campbell (84) | 13 | 12/31/00 | 84 | - | 4,552 |
| 1/31/01 | 13 | " | 16 | 1/31/01 | 84 | - | 4,468 |

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

## LIMITED PARTNER LEDGER
### Donald A. Campbell

| Certificate No. Issued to This Partner | Date Issued | Units Received From | Units Credited | Date Cancelled | Units Transferred To | Certificate No(s). Transferred To | Units Debited | Current Balance |
|---|---|---|---|---|---|---|---|---|
| 1 | 11/15/1997 | Original Issue | 4,900 | 12/31/1997 | Frederick M. Campbell (91) / Retained Shares (4809) | 5 / 3 | (4,900) | ▓▓▓ |
| 3 | 12/31/1997 | Retained Shares (4809) | 4,809 | 12/31/1998 | Frederick M. Campbell (89) / Retained Shares (4720) | 6 / 7 | (4,809) | ▓▓▓ |
| 7 | 12/31/1998 | Retained Shares (4720) | 4,720 | 12/31/1999 | Frederick M. Campbell (84) / Retained Shares (4636) | 9 / 10 | (4,720) | ▓▓▓ |
| 10 | 12/31/1999 | Retained Shares (4636) | 4,636 | 12/31/2000 | Frederick M. Campbell (84) / Retained Shares (4552) | 12 / 13 | (4,636) | ▓▓▓ |
| 13 | 12/31/2000 | Retained Shares (4552) | 4,552 | 12/31/2001 | Frederick M. Campbell (84) / Retained Shares (4468) | 15 / 16 | (4,552) | ▓▓▓ |
| 16 | 1/31/2001 | Retained Shares (4468) | 4,468 | 12/31/2002 | Frederick M. Campbell (105) | 19 | (4,468) | 4,468 |

*(handwritten)* Retained Shares (4355)

*(handwritten)* 19   12/31/2002   Retained Shares (4355)   4,355

*(handwritten, Current Balance column)* 4,355

Page 1 of 1

Exhibit A

CFLP Records

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

## LIMITED PARTNER UNIT LEDGER
Name: __F. Margaret Campbell__

FOLIO (

| DATE OF ISSUE | CANCELLED CERT. NO. | FROM OR TO WHOM TRANSFERRED | NO. OF NEW CERT. | DATE OF ASSIGNMENT | DEBIT | CREDIT | BAL. |
|---|---|---|---|---|---|---|---|
| 11/15/97 | N/A | Original Issue | 2 | - | - | 4,900 | 4,900 |
| 12/31/97 | 2 | To: Frederick Campbell II (91) | 4 | 12/31/97 | 91 | - | 4,809 |
| 12/31/98 | 4 | To: Frederick Campbell (89) | 8 | 12/31/98 | 89 | - | 4,720 |
| 12/31/99 | 8 | To: Frederick M. Campbell (84) | 11 | 12/31/99 | 84 | - | 4,636 |
| 12/31/2000 | 11 | To: Frederick M. Campbell (84) | 14 | 12/31/00 | 84 | - | 4,552 |
| 1/31/01 | 14 | " | 17 | 12/31/01 | 84 | - | 4,468 |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

## LIMITED PARTNER LEDGER
### F. Margaret Campbell

| Certificate No. Issued to This Partner | Date Issued | Units Received From | Units Credited | Date Cancelled | Units Transferred To | Certificate No(s). Transferred To | Units Debited | Current Balance |
|---|---|---|---|---|---|---|---|---|
| 2 | 11/15/1997 | Original Issue | 4,900 | 12/31/1997 | Frederick M. Campbell (91) / Retained Shares (4809) | 5 / 4 | (4,900) | |
| 4 | 12/31/1997 | Retained Shares (4809) | 4,809 | 12/31/1998 | Frederick M. Campbell (89) / Retained Shares (4720) | 6 / 8 | (4,809) | |
| 8 | 12/31/1998 | Retained Shares (4720) | 4,720 | 12/31/1999 | Frederick M. Campbell (84) / Retained Shares (4636) | 9 / 11 | (4,720) | |
| 11 | 12/31/1999 | Retained Shares (4636) | 4,636 | 12/31/2000 | Frederick M. Campbell (84) / Retained Shares (4552) | 12 / 14 | (4,636) | |
| 14 | 12/31/2000 | Retained Shares (4552) | 4,552 | 12/31/2001 | Frederick M. Campbell (84) / Retained Shares (4468) | 15 / 17 | (4,552) | |
| 17 | 1/31/2001 | Retained Shares (4468) | 4,468 | 12/31/2002 | Frederick M. Campbell (85) | 20 / 21 | (4,468) | 4,468  0 |

*(handwritten annotations)*

20   12/3/2002    Retained Shares (4355)

Retained Shares (4355)

Frederick M. Campbell (85)

4355

Page 1 of 1

**Exhibit A**          **CFLP Records**          **Page 108**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

LIMITED PARTNER UNIT LEDGER
Name: _Frederick M. Campbell_

FOLIO ( )

| DATE OF ISSUE | CANCELLED CERT. NO. | FROM OR TO WHOM TRANSFERRED | NO. OF NEW CERT. | DATE OF ASSIGNMENT | DEBIT | CREDIT | BAL. |
|---|---|---|---|---|---|---|---|
| 12/31/97 | - | From Donald Campbell (91) | 5 | - | - | 91 | 91 |
| 12/31/97 | 5 | From F. Margaret Campbell (91) | 6 | - | - | 91 | 182 |
| 12/31/98 | 6 | From Donald Campbell (89) and F Margaret Campbell (89) | 9 | - | - | 178 | 360 |
| 10/3/00 | 9 | From Donald Campbell (89) and F. Margaret Campbell (89) | 12 | - | - | 168 | 528 |
| 12/31/00 | 12 | From Donald Campbell and F. Margaret Campbell (89) | 15 | - | - | 168 | 696 |
| 1/3/01 | 15 | " | 18 | | | 168 | 864 |

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

LIMITED PARTNER LEDGER
Frederick M. Campbell

| Certificate No. Issued to This Partner | Date Issued | Units Received From | Units Credited | Date Cancelled | Units Transferred To | Certificate No(s). Transferred To | Units Debited | Current Balance |
|---|---|---|---|---|---|---|---|---|
| 5 | 11/15/1997 | Frederick M. Campbell (91) | 91 | 12/31/1998 | Retained Shares (91) | 9 | (91) | |
| 6 | 12/31/1997 | F. Margaret Campbell (91) | 91 | 12/31/1998 | Retained Shares (91) | 9 | (91) | |
| 9 | 12/31/1998 | Frederick M. Campbell (89) F. Margaret Campbell (89) Retained Shares (91+91) | 360 | 12/31/1999 | Retained Shares (360) | 12 | (360) | |
| 12 | 12/31/1999 | Frederick M. Campbell (84) F. Margaret Campbell (84) Retained Shares (360) | 528 | 12/31/2000 | Retained Shares (528) | 15 | (528) | |
| 15 | 12/31/2000 | Frederick M. Campbell (84) F. Margaret Campbell (84) Retained Shares (528) | 696 | 12/31/2001 | Retained Shares (696) | 18 | (696) | |
| 18 | 1/31/2001 | Frederick M. Campbell (84) F. Margaret Campbell (84) Retained Shares (696) | 864 | | | | | 864 |

Page 1 of 1

**Exhibit A**  **CFLP Records**  **Page 110**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

## THE CAMPBELL FAMILY LIMITED PARTNERSHIP

### FIRST AMENDMENT TO
### LIMITED PARTNERSHIP AGREEMENT

THIS FIRST AMENDMENT TO LIMITED PARTNERSHIP AGREEMENT (the "First Amendment") of **The Campbell Family Limited Partnership**, an Ohio limited partnership (the "Partnership") is made effective as of the 22nd day of February, 2010 (the "Effective Date") by the undersigned General Partner.

### W I T N E S S E T H

WHEREAS, the Partnership entered into a Limited Partnership Agreement with its then partners dated as of April 9, 1997 (the "Partnership Agreement"). (Capitalized terms not otherwise defined herein have the same meanings as provided in the Partnership Agreement);

WHEREAS, various permitted transfers of Partnership Interest have taken place and various Partner's ownership have changed and need to be updated in the Partnership. The General Partner of the Partnership deems it necessary and advisable that such updates be reflected on the attached **Schedule B** and that the Partnership no longer issue certificates evidencing General Partner Percentage Interests or Limited Partner Percentage Interests and that all ownership of the Partnership be reflected on **Schedule B** to the Partnership Agreement;

WHEREAS, Donald A. Campbell is appointed as the Managing General Partner of the Partnership in accordance with Section 5.9 of the Partnership Agreement;

WHEREAS, Donald A. Campbell is now deceased and in accordance with Section 5.10 of the Partnership Agreement, the General Partners hereby designate F. Margaret Campbell as the Partnership's Managing General Partner; and

WHEREAS, in accordance with Sections 10.1 of the Partnership Agreement, the General Partners of the Partnership desire to amend the Partnership Agreement to reflect the correct names of Partners, Percentage Interests and Number of Units on an updated **Schedule B** and in accordance with Section 5.10 of the Partnership to designate F. Margaret Campbell as the Managing General Partner of the Partnership.

**NOW THEREFORE**, the General Partners hereby agrees as follows:

1.      **Schedule B** to the Partnership's Partnership Agreement is hereby deleted in its entirety and replaced by the **Schedule B** attached hereto and incorporated herein by reference and that the Partnership no longer issue certificates evidencing General Partner Percentage Interests or Limited Partner Percentage Interests and that all ownership of the Partnership be reflected on **Schedule B** to the Partnership Agreement.

71732598.1

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

2.    That F. Margaret Campbell is hereby designated as the Managing General Partner of the Partnership.

3.    That the name Donald A. Campbell be replaced with F. Margaret Campbell in Sections 5.9 and 5.10 of the Partnership Agreement.

4.    The recitals set forth in this First Amendment are an integral part of this First Amendment and are incorporated herein by reference as if fully rewritten.

5.    Except as expressly amended herein, the Partnership Agreement shall remain in full force and effect.

*The remainder of this page has been left blank intentionally – signature page follows.*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

IN WITNESS WHEREOF, the undersigned has executed this First Amendment as of the Effective Date.

**General Partners:**

_____
F. Margaret Campbell, Trustee of the Donald A. Campbell Trust dated July 2, 2001, as amended

_____
F. Margaret Campbell, Trustee of the F. Margaret Campbell Trust dated July 2, 2001, as amended

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

# THE CAMPBELL FAMILY LIMITED PARTNERSHIP

## SCHEDULE B

| Partner Name | Percentage Interests | Number of Units |
|---|---|---|
| **General Partners:** | | |
| F. Margaret Campbell, Trustee of the Donald A. Campbell Trust dated July 2, 2001, as amended | 1% | 100 |
| F. Margaret Campbell, Trustee of the F. Margaret Campbell Trust dated July 2, 2001, as amended | 1% | 100 |
| **Limited Partners:** | | |
| F. Margaret Campbell, Trustee of the Donald A. Campbell Trust dated July 2, 2001, as amended | 43.59% | 4,359 |
| F. Margaret Campbell, Trustee of the F. Margaret Campbell Trust dated July 2, 2001, as amended | 43.59% | 4,359 |
| Frederick M. Campbell | 10.82% | 1,082 |
| | | |
| Total | 100% | 10,000 |

**Exhibit A**                    **CFLP Records**                    **Page 114**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:35:40\CONF#: 10957\WORKFLOW ID: 1238713

# *Donald A. Campbell*

# *2001 Trust*

*Dated:* ___July 2___, *2001*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:36:22\CONF#: 10957\WORKFLOW ID: 1238712

Article VII.
    Administration of Family Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 7 -
    A.    Division of Family Trust for GST Purposes . . . . . . . . . . . . . . . . . . . . - Page 7 -
    B.    If Margaret Survives Me . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 7 -
        1.    Income to Margaret . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 8 -
        2.    Principal for Margaret . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 8 -
        3.    Margaret's Limited Right to Withdraw Principal . . . . . . . . . . . . - Page 8 -
        4.    Limited Power of Appointment . . . . . . . . . . . . . . . . . . . . . . . - Page 8 -
    C.    Administration after Second Death . . . . . . . . . . . . . . . . . . . . . . . . . - Page 8 -
        1.    Distribution of Exempt Share to Descendants Trust . . . . . . . . . - Page 8 -
        2.    Administration of the Included Share . . . . . . . . . . . . . . . . . . . - Page 8 -
        3.    Administration of Separate Trusts for Children . . . . . . . . . . . . . - Page 8 -
        4.    Distribution of Shares for More Remote Descendants . . . . . . . . - Page 9 -

Article VIII.
    Failure of Descendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 10 -

Article IX.
    Powers in Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 11 -

Article X.
    Statement of Intent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 11 -
    A.    Priority and Guidance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 11 -
        1.    Support . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 11 -
        2.    Health . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 11 -
        3.    Education . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 12 -
        4.    Best Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 12 -
    B.    Consideration of Beneficiary's Resources and Tax Consequences . . . . - Page 12 -

Article XI.
    Claims, Expenses, Pledges and Taxes . . . . . . . . . . . . . . . . . . . . . . . . . - Page 12 -
    A.    Claims, Expenses and Charitable Pledges . . . . . . . . . . . . . . . . . . . . - Page 12 -
    B.    Taxes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 13 -
        1.    Apportionment Pursuant to Terms of my Will or State Law . . . - Page 13 -
        2.    Interest and Penalties . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 13 -
    C.    Conditions to Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 13 -

Article XII.
    Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 14 -
    A.    Appointment of Successor Trustees . . . . . . . . . . . . . . . . . . . . . . . . - Page 14 -
    B.    Beneficiary as Trustee of Each Separate Trust . . . . . . . . . . . . . . . . . - Page 15 -
    C.    Persons Eligible to Act as Successor Trustee . . . . . . . . . . . . . . . . . . - Page 15 -
    D.    Resignation and Removal of Trustees . . . . . . . . . . . . . . . . . . . . . . . - Page 15 -
    E.    Title . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 16 -
    F.    Accountings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 16 -

*- ii -*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:36:22\CONF#: 10957\WORKFLOW ID: 1238712

F.    Limitations on Authority of Trustee . . . . . . . . . . . . . . . . . . . . . . . - Page 25 -
G.    Multiple Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 25 -
    1.    Custody of Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 26 -
    2.    Majority Rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 26 -
    3.    Assignment of Powers . . . . . . . . . . . . . . . . . . . . . . . . . - Page 26 -
    4.    Trustee Proposals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 26 -
    5.    Execution of Documents . . . . . . . . . . . . . . . . . . . . . . . - Page 26 -

Article XIV.
    Death Benefits Payable to the Trust . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 27 -
A.    Insurance Policies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 27 -
B.    Collection of Life Insurance and Other Death Benefits . . . . . . . . . . . . . - Page 27 -
C.    Exoneration of Payors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 27 -

Article XV.
    Spendthrift Provision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 27 -

Article XVI.
    Miscellaneous Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 28 -
A.    Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 28 -
B.    Exoneration of Third Persons . . . . . . . . . . . . . . . . . . . . . . . . - Page 28 -
C.    Trust Binding Upon Successors . . . . . . . . . . . . . . . . . . . . . . . . - Page 28 -
D.    Copies; Memorandum of Trust . . . . . . . . . . . . . . . . . . . . . . . . - Page 28 -
E.    Ohio Revised Code §1340.22 . . . . . . . . . . . . . . . . . . . . . . . . . - Page 29 -
F.    Powers of Appointment . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 29 -

Article XVII.
    Construction Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 29 -
A.    Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 29 -
B.    Executor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 29 -
C.    Children . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 29 -
D.    Descendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 29 -
E.    Income Beneficiaries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 29 -
F.    Living . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 30 -
G.    Determination of Incompetency . . . . . . . . . . . . . . . . . . . . . . . - Page 30 -
H.    Internal Revenue Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 30 -
I.    Gender and Number . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 30 -
J.    Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 30 -
K.    Headings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 30 -
L.    Survivorship . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 31 -
M.    Distributions to or Allocations among Descendants . . . . . . . . . . . . . . . - Page 31 -

Schedule A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - A.1 -

**Exhibit B**        **Donald A. Campbell 2001 Trust**        **Page 5**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:36:22\CONF#: 10957\WORKFLOW ID: 1238712

### Article II.
### Administration during my Life

During my lifetime, this trust shall be administered as follows:

**A.    Income and Principal While I am Competent.** Whenever I am competent and acting as Trustee, I shall deal with the *Trust Estate* as I desire for my benefit. Whenever I am competent but not acting as Trustee, the Trustee shall distribute to me, or for my benefit, so much or all of the net income and principal of the trust as I request and shall periodically add any undistributed net income to principal. Further, if this trust owns tangible personal property, I shall have the right to possess, use, consume and in all manner enjoy such property, and the Trustee shall have no duty to keep informed as to the condition or location of such property or to inventory such property. These rights shall be personal to me and shall not be exercisable by any guardian or representative.

**B.    Income and Principal While I am not Competent.** Whenever I am considered incompetent, the Trustee shall distribute to me, or for my benefit, so much or all of the net income and principal of the trust as the Trustee considers desirable to provide for --

- The support, health, education and best interests of *Margaret* and me; and

- The support, health, education and best interests of any descendant of mine who is dependent upon me.

The Trustee shall periodically add any undistributed net income to principal.

The Trustee also is authorized to make gifts to any one or more of (i) *Margaret* and (ii) my descendants, as the Trustee considers to be in the best interests of my estate and family -- considering the support, health and best interests of *Margaret* and me, my dispositive wishes as indicated in this Trust Agreement, and the anticipated tax benefits and costs of any gift. The Trustee shall pay any gift or other transfer tax resulting from such gifts.

**C.    Power to Amend and Revoke.** I reserve the right to amend or revoke this Trust Agreement, in whole or in part, by a written instrument (other than a Will) delivered to the Trustee during my lifetime or kept with the trust records. The property to which any revocation relates shall be conveyed to me or as I direct. These rights shall be personal to me and shall not be exercisable by any guardian or representative for me.

*- Page 2 -*

**Exhibit B**         **Donald A. Campbell 2001 Trust**         **Page 7**

- Any asset that would not qualify for the federal estate tax marital deduction in my estate (even though the portion otherwise allocable to the *Marital Share* is reduced); or

- To the extent other qualified assets are available, any asset with respect to which a credit for foreign death taxes is allowable against the federal estate tax.

Further, in allocating assets to the *Marital Share*, the Trustee shall not be required to fractionalize each asset, particularly if such division may adversely impact on the value or management of such asset, so long as the aggregate value of the assets allocated to the *Marital Share* fairly represents the net appreciation or depreciation in the value of all assets comprising the *Divisible Estate* (measured from the date of my death to the date of such allocation).

   **2.     Contingent Allocation to Descendants Trust.** If *Margaret* does not survive me, the Trustee shall allocate and distribute a fractional portion of the *Divisible Estate* to the trustee of the *Campbell Family 2001 Descendants Trust*, dated July 6 , 2001, established by myself, as grantor, and *Frederick*, as trustee (the "*Descendants Trust*"). Such property to be added to, and administered as an integral part of, the principal of the *Descendants Trust*. The fraction (if any) of the *Divisible Estate* which shall be allocated to the *Descendants Trust* shall be calculated as follows --

| Fraction of the Divisible Estate to be Allocated to the Descendants Trust if Margaret does not Survive Me | |
|---|---|
| *Numerator* | The amount (if any) of my *GST exemption* (as defined in the *Code*) which is allocated by my executor to the *Trust Estate*. The Trustee's good faith determination of such amount shall be final and binding on all persons. |
| *Denominator* | The greater of (i) the numerator or (ii) the aggregate value of the *Divisible Estate* as finally determined for federal estate tax purposes in connection with my death. |

   **3.     Allocation to Family Trust.** The Trustee shall allocate the following property to a separate trust (the "*Family Trust*") --

- If *Margaret* survives me, the balance (if any) of the *Divisible Estate* after the allocation to the *Marital Share* pursuant to Paragraph III.C.1; or

- If *Margaret* does not survive me, the balance (if any) of the *Divisible Estate* after the allocation to the *Descendants Trust* pursuant to Paragraph III.C.2

The *Family Trust* shall be administered as set forth in Article VII

*- Page 4 -*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:36:22\CONF#: 10957\WORKFLOW ID: 1238712

**D.   *Distribution Upon Margaret's Death.*** Upon *Margaret's* death, the Trustee shall distribute the assets then comprising *Marital Trust 1* as follows:

- All accrued and undistributed net income shall be distributed to *Margaret's* estate;

- All principal shall be distributed to any one or more of my descendants as *Margaret* shall appoint by Will referring specifically to this power of appointment; **and**

- To the extent that *Margaret* does not exercise the foregoing power of appointment, all principal shall be distributed to the *Descendants Trust* -- to be added to the principal of the *Descendants Trust* and administered in all respects as an integral part thereof.

### *Article VI.*
### *Administration of Marital Trust 2*

The Trustee shall administer *Marital Trust 2* as follows:

**A.   *Income to Margaret.*** The Trustee shall distribute all of the net income of *Marital Trust 2* to *Margaret*, or for her benefit, at least quarter-annually (monthly, if feasible) during *Margaret's* lifetime.

**B.   *Discretionary Principal for Margaret.*** The Trustee shall distribute to *Margaret*, or for her benefit, so much or all of the principal of *Marital Trust 2* as the Trustee considers desirable to provide for *Margaret's* support, health, education and best interests.

**C.   *Partial QTIP Election.*** Notwithstanding any other provision of this Article V, if a valid election is made to treat only a fraction or percentage of *Marital Trust 2* as qualifying for the federal estate tax marital deduction in my estate, all distributions of principal of *Marital Trust 2* shall first reduce that fraction or percentage of *Marital Trust 2* which qualified for such federal estate tax marital deduction.

**D.   *Distribution Upon Margaret's Death.*** Upon *Margaret's* death, the Trustee shall distribute the assets then comprising *Marital Trust 2* as follows:

- All accrued and undistributed net income shall be distributed to *Margaret's* estate; **and**

- All principal shall be distributed to any one or more of my descendants as *Margaret* shall appoint by Will referring specifically to this power of appointment.

To the extent that *Margaret* does not exercise the foregoing power of appointment:

- Page 6 -

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:36:22\CONF#: 10957\WORKFLOW ID: 1238712

     *1.*     ***Income to Margaret.***   The Trustee shall distribute to *Margaret*, or for her benefit, all of the net income of the *Family Trust* at least quarter-annually (monthly, if feasible) during *Margaret's* lifetime.

     *2.*     ***Principal for Margaret.***   The Trustee shall distribute to, or for the benefit of, *Margaret* so much or all of the principal of the *Family Trust* as the Trustee considers desirable to provide for her support, health, education and best interests.

     *3.*     ***Margaret's Limited Right to Withdraw Principal.***   The Trustee shall distribute to *Margaret* so much or all of the principal of the *Family Trust* as *Margaret* may request, at any time and from time to time, in writing; provided, however, the aggregate amount of principal withdrawn by *Margaret* under this Paragraph VII.B.3 in any calendar year shall not exceed the greater of (i) $5,000 or (ii) five percent (5%) of the aggregate value of the principal of *Family Trust* calculated as of the last day of such calendar year. This right shall be noncumulative, so that this right shall lapse at the end of each calendar year to the extent not exercised.

     *4.*     ***Limited Power of Appointment.***   The Trustee shall distribute so much or all of the principal of the *Family Trust* to any one or more of my descendants as *Margaret* shall appoint by her Will. To be an effective appointment, such Will must make specific reference to this power of appointment.

    *C.*     ***Administration after Second Death.***   Upon the death of the survivor of *Margaret* and me, the *Family Trust* (or the portion thereof which is not the subject of an effective appointment by *Margaret* pursuant to Paragraph VII.B.4) shall be administered as follows:

     *1.*     ***Distribution of Exempt Share to Descendants Trust.***   The Trustee shall distribute the *Exempt Share* to the trustee of the *Descendants Trust* -- to be added to, and administered as an integral part of, the principal of the *Descendants Trust.*

     *2.*     ***Administration of the Included Share.***   The Trustee shall hold the *Included Share* for the benefit of *Frederick*, or if he does not survive me, then the Trustee shall divide the *Included Share* into as many separate shares, equal in value, as is necessary to provide one such share for the benefit of each child of *Frederick's*, or if such children do not survive me, then for each such child's lineal descendant's, per stirpes. For purposes of this provision, *Heather Campbell Bradford Wallace* and *Manuela Hernandez* shall be treated as a child of *Frederick's*.

     *3.*     ***Administration of Separate Trusts for Children.***   Each such share established for the benefit of *Frederick*, or for a lineal descendant of *Frederick* shall be held and administered as a separate trust, as follows:

      *a.*     ***Income for such Child.***   Until such child has attained the age of 21 years, the Trustee shall --

*- Page 8 -*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:36:22\CONF#: 10957\WORKFLOW ID: 1238712

- Until the beneficiary attains the age of 21 years, distribute to, or for the benefit of, such beneficiary so much or all of the net income and principal of such trust as the Trustee considers desirable for his/her support, health, education and best interests;

- Upon such beneficiary attaining the age of 21 years, distribute to, or for the benefit of, such beneficiary all of the net income of such trust at least quarterly (monthly, if feasible), and so much or all of the principal of the trust as the Trustee considers desirable for his/her support, health, education and best interests; and

- Periodically add any undistributed net income to principal.

If the beneficiary dies before receiving the entire trust, upon his/her death, the Trustee shall distribute all property comprising the trust estate to such persons or organizations, including the beneficiary's estate, as the beneficiary shall appoint by Will referring specifically to this power of appointment; provided, however, the property subject to this general power of appointment shall be limited to that portion of the trust estate which, if distributed as if no such power of appointment existed, would be a generation-skipping transfer ("*GST*") under the *Code* and would result in a *GST* tax.

The Trustee, subject to Article IX, shall distribute all unappointed property comprising the trust estate (including property as to which the beneficiary has no power of appointment) to the beneficiary's then living descendants, *per stirpes* (or, if there are none, to the beneficiary's nearest ancestor who is a descendant of mine; but, if no such ancestor is then living; then the descendants of the beneficiary's nearest ancestor who is a descendant of mine and who has descendants then living; but, if there is no such ancestor with then living descendants, then my descendants); provided, however, any property distributable to a beneficiary for whom a separate trust is then being administered hereunder shall instead be added to the principal of such separate trust.

### *Article VIII.*
### *Failure of Descendants*

If, at any time after my death, there is any trust being administered hereunder for which (but for this Article VIII) no beneficiary is then living, the Trustee shall distribute the assets comprising such trust, equally to *Case Western Reserve University,* of Cleveland, Ohio or its successor in interest; and the *Canadian Military Nurses Association,* of Ottawa, Canada, or its successor in interest. If either charity should not exist at such time and is not survived by a successor in interest, the entire trust shall be distributed to the other charity named herein above.

*- Page 10 -*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:36:22\CONF#: 10957\WORKFLOW ID: 1238712

companions, and psychiatric care and counseling, and may include care for such beneficiary's last illness.

**3.  *Education.***  Distributions for the education of a beneficiary may include distributions for attendance at or enrollment in preparatory, religious, undergraduate, graduate, professional and vocational schools, public or private, and wherever located, and may include tuition, room, board, books, transportation and other living and incidental expenses.

**4.  *Best Interests.***  Distributions for the best interests of a beneficiary may include distributions to enable a beneficiary to purchase an automobile, to make a down payment on the purchase of a home, to furnish a home consistent with a comfortable standard of living, to travel, to invest a reasonable amount in business enterprises in which the beneficiary would be an active participant, or to make gifts to such beneficiary's descendants or for charitable purposes. Distributions for the best interests of a minor beneficiary also may include distributions to enable him or her to attend summer camp or to participate in recreational activities such as music, dance or athletic lessons or leagues.

**B.  *Consideration of Beneficiary's Resources and Tax Consequences.***  In considering discretionary distributions, the Trustee may, but need not, consider the beneficiary's income and resources from all sources known to the Trustee, the obligations of such beneficiary to support others, and the obligations of others to support such beneficiary. The Trustee shall be entitled to rely on a statement of the beneficiary's income and resources signed by the beneficiary or his/her parent or guardian. The Trustee also may, but need not, consider the tax consequences resulting from any decision to accumulate or to distribute income or principal. However, the Trustee shall not be obligated or required to take that action which will, or may be expected to, result in the least aggregate tax liability being incurred by the trust and the beneficiary.

Nothing shall prevent or prohibit the Trustee from considering such matters in one or more instances, but not in other instances, or from considering such matters for one beneficiary but not for another beneficiary.

### *Article XI.*
### *Claims, Expenses, Pledges and Taxes*

**A.  *Claims, Expenses and Charitable Pledges.***  After my death, the Trustee shall pay, or reimburse my executor for:

- All claims allowable against my estate;

- The expenses of my last illness and funeral;

*- Page 12 -*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:36:22\CONF#: 10957\WORKFLOW ID: 1238712

## *Article XII.*
### *Trustees*

    **A.**    ***Appointment of Successor Trustees.*** In the event of a vacancy in the trusteeship, however created, the successor Trustee shall be the following persons in the order named: (i) *Margaret*; then (ii) *Frederick*.

- Whenever I am living and competent, I reserve the right to appoint such successor Trustee. This right shall be personal to me and shall not be exercisable by any guardian or representative.

- After my death (and, during my lifetime, whenever I am incompetent), *Frederick* shall have the right to appoint such successor Trustee; provided, however, such right shall apply only to vacancies which are not filled pursuant to an appointment made by me pursuant to the preceding clause. This right shall be personal to *Frederick* and shall not be exercisable by any guardian or representative.

- *Frederick* and I may exercise the foregoing rights (i) by written instrument delivered to the Trustee during our respective lifetimes or kept with the trust records or (ii) by our respective Wills. Such written instrument or Will --

  - May be executed and delivered prior to the occurrence of any vacancy in the trusteeship; and

  - May set forth a sequence of alternative appointments to (i) address the possibility of multiple future vacancies in the trusteeship and (ii) guard against the possibility that an appointee may be unavailable, ineligible or unwilling to serve as a successor Trustee.

  However, any appointment by *Frederick's* or my Will shall be effective only with respect to vacancies in the trusteeship occurring after (or caused by) our respective deaths.

- In default of an appointment of a successor Trustee by *Frederick* or me --

  - Not later than ten (10) days after an event causing such vacancy prior to the death of the survivor of us; or

  - If such vacancy occurs after (or is caused by) the death of the survivor of us, either (i) prior to such death or (ii) in one of our Wills; then

  the successor Trustee shall be the following person: *Frederick*.

- If no successor Trustee is effectively appointed pursuant to the preceding clauses, a majority of the income beneficiaries of the affected trust shall have the right to appoint such successor

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:36:22\CONF#: 10957\WORKFLOW ID: 1238712

Notwithstanding the foregoing, no Trustee resignation or removal which would result in a vacancy in the trusteeship shall be effective until a successor Trustee is appointed pursuant to Section XII.A

    **E.**    ***Title.***  The title to the *Trust Estate* shall vest forthwith in any successor Trustee, but any resigning or removed Trustee shall execute all instruments and do all acts desirable to vest title to the *Trust Estate* in any successor Trustee without court accounting.

    **F.**    ***Accountings.***  During my tenure as Trustee, I shall not be required to furnish accountings to anyone.  At all other times, upon the written request of an income beneficiary of any trust, the Trustee shall furnish such beneficiary with an accounting showing the receipts, disbursements and inventory of such trust since the most recent accounting for such trust (or, if there is no prior accounting, from the date when I ceased to act as the Trustee).  Notwithstanding the foregoing, no Trustee shall be required to furnish accountings more often than annually to any beneficiary (but may do so voluntarily).  No Trustee shall be required to file accountings in any court or with any public official.

    **G.**    ***Approval of Accountings.***  Any accounting shall be deemed true and correct, and the Trustee making such accounting shall be discharged from all liability as to all transactions disclosed on such accounting to all persons, including persons not in being, to the extent I (or, after my death, the income beneficiary of the affected trust) approve such accounting in writing or fail to notify such Trustee, in writing, that such accounting is not approved within two (2) years after receipt of such accounting.

    With my approval (or, after my death, the approval of the income beneficiary of the affected trust), a successor Trustee may accept the accounting rendered by and the property received from a predecessor Trustee without incurring any liability for so doing, and such approval shall serve as a complete discharge to the predecessor Trustee.

    **H.**    ***Compensation.***  Any corporate Trustee shall be entitled to compensation for its services in administering any trust in accordance with its then published fee schedule for trust services.  Any individual Trustee (other than *Margaret* or any descendant of mine) shall be entitled to reasonable compensation for his/her services hereunder.  Every Trustee shall be entitled to be reimbursed for reasonable expenses and costs, including legal fees, incurred in administering any trust.

    **I.**    ***Exoneration of Trustees Acting in Good Faith.***  No Trustee acting in good faith shall be liable for any loss, liability, expense or damage to the *Trust Estate* occasioned by such Trustee's acts or failures to act in administering the trust.  The Trustee shall be presumed to have acted in good faith if its action or failure to act is in reliance on a written opinion of counsel.

    **J.**    ***Exoneration of Trustees for Acts of Others.***  No Trustee shall be liable for the acts or failures to act of any agent appointed with due care.  No Trustee shall be --

*- Page 16 -*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:36:22\CONF#: 10957\WORKFLOW ID: 1238712

**4.   *Investment of Assets.*** To invest and reinvest any money or property comprising the *Trust Estate* in, and to purchase or otherwise acquire from my estate, from any beneficiary or from others, any property, real or personal, of any kind or nature, including without limitation --

- Any stocks, whether common or preferred, and including stocks of any corporate Trustee, warrants, participations in discretionary common trust funds, money market funds and mutual funds;

- Government bills, notes and bonds, corporate bonds, whether secured or unsecured, debentures, bankers acceptances, certificates of deposit, mortgages and commercial paper;

- Foreign currencies, gold, silver and other precious metals;

- Commodity and stock options (for the purpose of hedging but not for speculation);

- Real estate, whether improved or unimproved;

- Partnership interests, whether general or limited;

- Objects of art, coins, stamps, antiques and other collectibles;

- Life estates and remainder interests following a life estate or a term of years; and

- Interests in any of the foregoing;

even though such investment or purchase (by reason of its character, amount, proportion to the total property of any trust or otherwise) would not be considered appropriate for a trustee apart from this provision; and in the making and retention of investments and reinvestments, the Trustee shall not be confined to the obligations and securities mentioned in any statute or rule of court for fiduciaries for the investment of funds, and the Trustee shall have no duty to diversify the assets or investments of any trust;

**5.   *Joint Investment With Other Trusts.*** To make joint investments involving (i) assets comprising the *Trust Estate* and (ii) assets held by other trusts established by one or more of the following persons --

- *Margaret* or me;

- One or more of our descendants; or

- One or more of our respective ancestors;

*- Page 18 -*

---

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:36:22\CONF#: 10957\WORKFLOW ID: 1238712

the beneficiaries of such estimated costs and to permit the beneficiaries to pay for such response costs; to disclaim any power, actual or implied, which the Trustee believes will or may cause the Trustee to be considered an "owner" or "operator" of property under the provisions of the Comprehensive Environmental Response, Compensation and Liability Act ("*CERCLA*"), as amended, or which may otherwise cause the Trustee to incur liability under *CERCLA* or any other environmental law, rule or regulation;

**10.    *Location of Assets.*** To keep any property of any trust at any place or places in the United States of America, or with a depositary or custodian at such place or places;

**11.    *Abandonment of Property.*** To abandon any property, real or personal, which the Trustee considers to be worthless or not of sufficient value to warrant keeping or protecting; to abstain from the payment of taxes, liens, water rents, assessments, repairs, maintenance or upkeep of any such property; to permit any such property to be lost by tax sale or other proceedings; or to convey any such property for a nominal consideration or without consideration;

**12.    *Bank Accounts.*** To open and maintain one or more checking, savings or time deposit accounts with any bank, trust company, savings and loan or building and loan association, or any other financial institution, wherever located (even though such financial institution is a Trustee or an affiliate of a Trustee); to deposit to the credit of any such account all or part of the funds comprising the *Trust Estate*, whether or not such funds earn interest;

**13.    *Borrowing of Funds.*** To borrow, in the name of any trust, such sums for such periods and on such terms as the Trustee considers advisable (including the right to borrow from a corporate Trustee or an affiliate of a corporate Trustee); to secure any such loan by deed of trust, mortgage or pledge; no lender shall be bound to see to or be liable for the application of the proceeds of any such loan; unless otherwise expressly agreed, the Trustee shall not be personally liable for any such loan, but each such loan shall be payable only out of assets of the affected trust;

**14.    *Lending of Funds.*** To lend money to my estate, to any beneficiary or to any other person, upon such terms and with such security, if any, as the Trustee considers advisable;

**15.    *Voting Securities.*** To vote by proxy or in person any security comprising a part of any trust; to enter into any kind of pooling agreements and voting trusts, even though such action may involve delegation of authority;

**16.    *Compromise Debts.*** To enforce, abandon, defend or have adjudicated (by legal proceedings, arbitration or by compromise) any claim or demand of any nature which arises out of or otherwise exists in favor of or against any trust;

**17.    *Foreclosure of Mortgages.*** To foreclose, as an incident to the collection of any bond or note, any deed of trust or mortgage securing such bond or note; to bid in

*- Page 20 -*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:36:22\CONF#: 10957\WORKFLOW ID: 1238712

**22. *Division of Trusts.*** To divide any trust, whether existing or to be established, into two or more separate smaller trusts (without any requirement for said separate smaller trusts to be equal in value, and without any requirement for discretionary distributions to be made proportionally from said separate smaller trusts), whenever the Trustee believes such division may achieve desirable tax results for such trust or its beneficiaries, promote easier administration or otherwise be in the best interests of any trust or its beneficiaries; upon termination of such separate smaller trusts, to distribute to any beneficiary from any one such separate smaller trusts, in such proportions and amounts as the Trustee considers desirable (so long as the distributions from all such separate smaller trusts would, if such separate smaller trusts were still a single trust, satisfy the provisions governing such distribution);

**23. *Merger of Trusts.*** Whenever the Trustee is holding any trust for the primary benefit of any persons for whose primary benefit the Trustee is holding any other trust upon substantially the same terms, the Trustee may consolidate such trusts and hold them as a single trust, so long as no property will be held in trust for a period which would violate any applicable rule against perpetuities;

**24. *Small Trust Termination.*** Notwithstanding any other provision, if the Trustee determines that --

- The value of any trust does not warrant the cost of continuing the trust; or

- The burden of taxation on the trust or its beneficiaries has become unduly onerous by reason of the existence of the trust; or

- Administration of the trust otherwise has become impractical;

the Trustee may distribute all property comprising such trust to the income beneficiaries (in such proportions as the Trustee considers equitable);

**25. *Authority after Termination of a Trust.*** To exercise all rights, powers and discretions after the termination of any trust and until the same is fully distributed;

**26. *Reliance Upon Wills.*** In determining whether and to what extent a power of appointment has been exercised by Will, the Trustee may rely upon an instrument admitted to probate in any jurisdiction as the Will of the holder of the power; if the Trustee has no written notice of the existence of a Will or of probate proceedings within three months after the holder's death, the Trustee may assume such holder died intestate; this provision shall not, however, affect any right which an appointee or beneficiary in default of appointment may have against any distributee of property from the *Trust Estate*;

**27. *Nominees.*** To hold any investment in any form in which title will pass by delivery or in the name of a nominee without indicating that such investment is held in a fiduciary capacity, but the Trustee shall be liable for any act of its nominee in connection with the investment

*- Page 22 -*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:36:22\CONF#: 10957\WORKFLOW ID: 1238712

2056(b)(7) of the *Code*. However, in my Will, I have not directed my Executor to make any election available under said section. Instead, I have expressed my desire that my Executor exercise judgment in determining whether, and the extent to which, such election should be made -- including consideration of:

- *Margaret's* age and health;

- The size of her estate;

- The advice of *Margaret* and my adult children; and

- All other factors considered relevant by my Executor.

The decision of my Executor shall be final and shall not be subject to question or dispute by any person.

### D.   *Qualified Subchapter S Trust Savings Clause.*   To the extent --

- The Trustee of any trust (i) receives or holds any stock of an *S corporation*, (ii) intends to acquire stock of an *S corporation*, or (iii) intends to consent to an election of *S corporation* status by a *C corporation* in which said trust is a shareholder, and

- Said trust does not otherwise qualify as a permissible shareholder of an *S corporation*;

said *S corporation* stock, assets intended to be used to acquire *S corporation* stock, or *C corporation* stock, as the case may be, shall be receipted into or segregated as a separate trust ("*QSST*") for the income beneficiary and administered as closely as possible to the original trust but so that all requirements of a *qualified subchapter S trust* set forth under section 1361(d) of the *Code* are met, including the requirements that --

- There be only one income beneficiary of the *QSST*;

- All net income of the *QSST* be distributed at least annually to such income beneficiary;

- Any principal distributed from the *QSST* during the life of the income beneficiary be distributed only to such beneficiary;

- The interest of the income beneficiary in the *QSST* terminate on the earlier of such beneficiary's death or the termination of the *QSST*; and

- If the *QSST* terminates during the life of the income beneficiary, the *QSST* distribute all of its assets to such beneficiary.

I intend for any such *QSST* to qualify as a *qualified subchapter S trust* and, as a result, be a permissible shareholder of an *S corporation*. To that end, all provisions of this Trust Agreement

*- Page 24 -*

**Exhibit B**          **Donald A. Campbell 2001 Trust**          **Page 29**

1. ***Custody of Assets.*** The corporate Trustee, if any, shall have custody of the assets comprising the *Trust Estate* and shall handle all ministerial acts necessary or advisable in connection with the acquisition and transfer of personal property and money (including the signing and endorsement of checks, receipts, stock certificates and other instruments).

2. ***Majority Rule.*** All Trustee decisions shall be made by affirmative vote or consent of a majority of the Trustees then serving. To the extent permitted under applicable law, a dissenting Trustee -- who votes against (or affirmatively refuses to consent to) a proposal which is nevertheless approved by a majority of the then serving Trustees -- shall have no liability to any person for participating in or carrying out the decision of the Trustees with respect to such proposal. In the event of an evenly divided vote of the Trustees on any issue (a *"deadlocked issue"*) --

- If any beneficiary of the affected trust is then serving as a Trustee, the non-beneficiary Trustee(s), if any, may take action with respect to the *deadlocked issue* by majority vote or consent of such non-beneficiary Trustee(s); or

- In the absence of such action by majority vote or consent of non-beneficiary Trustee(s), the status quo shall be preserved with respect to the *deadlocked issue.*

3. ***Assignment of Powers.*** A Trustee may, with the consent of any other Trustee, assign and delegate to such other Trustee any part or all of the rights, powers, titles, duties, discretions and immunities granted to or imposed upon the former Trustee. Any such assignment or delegation may be either for a specified time or until the assignment or delegation is revoked by a similar instrument.

4. ***Trustee Proposals.*** A Trustee shall be presumed to have approved any proposed act, or proposed decision to refrain from acting, made by any other Trustee if the former fails to indicate disapproval within 15 days after being requested to do so in writing by the other Trustee. A Trustee shall not be obligated to continue to make such written proposal to another Trustee if (i) the proposal has been disapproved on at least two occasions and (ii) the former has informed the other Trustee that it will be assumed that such proposal continues to be disapproved until notice to the contrary has been received.

5. ***Execution of Documents.*** The Trustees may execute any instrument in connection with the administration of such trust by signing one instrument or concurrent instruments. The Trustees may delegate, to any one or more Trustees, the authority to execute such instruments on behalf of all Trustees.

*- Page 26 -*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:36:22\CONF#: 10957\WORKFLOW ID: 1238712

including, but not limited to, any claim of equitable subrogation by any governmental or quasi-governmental entity, or any other person, providing or bearing the cost of such care, necessities or services).

This provision shall not be construed to prevent (i) any beneficiary from assigning any part or all of his/her interest under this Trust Agreement to any one or more of my descendants, (ii) distributions of income or principal by the Trustee for the benefit of any beneficiary as authorized, or (iii) the exercise of any power of appointment.

### Article XVI.
### *Miscellaneous Provisions*

**A.    *Income.*** All income earned on assets used to make payments authorized under Article XI shall not be added to principal but shall be considered income that the Trustee is authorized to distribute subject to this Trust Agreement. Income accrued or collected, but not distributed at the termination of any beneficial interest in such income, shall be treated as if it had accrued or been collected after the termination of such beneficial interest.

**B.    *Exoneration of Third Persons.*** No person dealing with the Trustee shall --

- Be responsible for the application of any purchase money or other thing of value paid or delivered to the Trustee, and a receipt of the Trustee shall be effective to discharge and release any such person from all liabilities to any beneficiary hereunder; or

- Be under any obligation to ascertain or inquire into the power of the Trustee to purchase, sell, exchange, transfer, mortgage, pledge, lease, distribute or otherwise in any manner dispose of or deal with any security or other property held by the Trustee.

**C.    *Trust Binding Upon Successors.*** This Trust Agreement shall extend to and be binding upon my executors, administrators, successors and assigns.

**D.    *Copies; Memorandum of Trust.*** Any person may rely on a copy of this Trust Agreement certified by the Trustee to be in effect and to be a true and correct copy. Such certified copy shall be considered as an original and shall relieve any person to whom a certified copy is delivered of any duty to inquire further.

Any person may also rely on the provisions of this Trust Agreement as set forth in any Memorandum of Trust filed by me with any County Recorder (or other authorized public official or agency), pursuant to the authority of Ohio Revised Code §5301.255 (or any comparable provision of other state law) -- to the extent such Memorandum of Trust is not thereafter amended, revoked or superseded of record. The public recording of such Memorandum of Trust shall relieve any person relying thereon of any duty to inquire further concerning any provisions of this Trust Agreement which are set forth therein.

*- Page 28 -*

**Exhibit B**          **Donald A. Campbell 2001 Trust**          **Page 33**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:36:22\CONF#: 10957\WORKFLOW ID: 1238712

   *E.*   ***Income Beneficiaries.***  The terms "income beneficiary" and "income beneficiaries" mean the person or persons who receive, or in the Trustee's discretion may receive, the net income of a trust.

   *F.*   ***Living.***  References to persons "living" and "then living" as of a particular date or event include any person conceived prior to the referenced date or event who is subsequently born alive and survives for at least 30 days.

   *G.*   ***Determination of Incompetency.***  Any person shall be considered incompetent --

- If, and as long as, such person is adjudicated incompetent; or

- If two doctors familiar with such person's physical and mental condition certify, in writing, that such person is unable to transact ordinary business and until there is a like certification that such inability has ended; or

- If any bank or trust company acting as a Trustee believes in good faith that such person is physically or mentally unable to transact ordinary business and records such belief in the written trust records; provided, however, no bank or trust company shall be required or have a duty to form or communicate any such belief.

Any individual Trustee who is considered incompetent shall immediately cease to act as a Trustee on the date of such determination without the execution of any further instrument.

   *H.*   ***Internal Revenue Code.***  References to the *Code* refer to the Internal Revenue Code of 1986, as amended or superseded. References to a section of or tax under the *Code* (or to a section of any Treasury Regulation adopted pursuant to the *Code*) include all amendments and successor provisions corresponding to any such section or tax in force after the date of this Trust Agreement. References to tax terms which have defined meanings under the *Code* (or under the Treasury Regulations adopted pursuant to the *Code*) shall have such defined meanings.

   *I.*   ***Gender and Number.***  Except where such construction would be unreasonable --

- The masculine, feminine and neuter genders shall be considered to include all genders; and

- The singular shall be considered to include the plural (and vice versa).

   *J.*   ***Governing Law.***  The laws of Ohio shall govern all questions pertaining to the validity, construction and administration of this Trust Agreement.

   *K.*   ***Headings.***  The headings in this Trust Agreement are inserted solely for convenient reference and shall be ignored in the construction of this Trust Agreement.

*- Page 30 -*

### Donald A. Campbell 2001 Trust

#### *Schedule A*

Cash                                            $1.00

All Grantor's tangible personal property now owned or hereafter
acquired.

*F:\SZD\VASELAND\CLIENTS\Campbell, Donald\Husb Trust.wpd*

*- A.1 -*

**Exhibit B**          **Donald A. Campbell 2001 Trust**          **Page 37**

of any such adopted person, but excluding foster children, step-children and their descendants. Notwithstanding the foregoing, for all purposes of this trust *Heather Campbell Bradford Wallace* shall be deemed the daughter of my son, *Frederick*."

       2.      Except as hereinabove expressly provided, I hereby ratify, approve and confirm all of the provisions contained in said Declaration of Trust.

      IN WITNESS WHEREOF, I have hereunto set my hand, as Grantor and as Trustee, in duplicate, on the day and year first above written.

                                            _____
                                            *Donald A. Campbell*
                                            "Grantor"

                                            _____
                                            *Donald A. Campbell*
                                            "Trustee"

{MHV:K0464372.1}

2

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:36:22\CONF#: 10957\WORKFLOW ID: 1238712

# *Campbell Family*

# *2001 Descendants Trust*

*Dated:* 2 July , *2001*

**Exhibit C**        **Campbell Family 2001 Descendants Trust**        **Page 1**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:37:25\CONF#: 10957\WORKFLOW ID: 1238711

|   |   |   |
|---|---|---|
| 1. | Support | - Page 8 - |
| 2. | Health | - Page 8 - |
| 3. | Education | - Page 8 - |
| 4. | Best Interests | - Page 8 - |
| B. | Consideration of Beneficiary's Resources and Tax Consequences | - Page 8 - |

**Article IX.**

Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 9 -

| A. | Appointment of Successor Trustees | - Page 9 - |
|---|---|---|
| B. | Beneficiary as Trustee of each Separate Trust | - Page 9 - |
| C. | Persons Eligible to Act as Successor Trustee | - Page 9 - |
| D. | Resignation and Removal of Trustees | - Page 10 - |
| E. | Title | - Page 10 - |
| F. | Approval of Accountings | - Page 10 - |
| G. | Compensation | - Page 10 - |
| H. | Exoneration of Trustees Acting in Good Faith | - Page 11 - |
| I. | Exoneration of Trustees for Acts of Others | - Page 11 - |
| J. | Waiver of Qualification and Bond | - Page 11 - |
| K. | Authority of Representative | - Page 11 - |
| L. | Rights and Eligibility of Margaret and Me | - Page 11 - |

**Article X.**

Trustee's Rights And Discretions . . . . . . . . . . . . . . . . . . . . . . . - Page 12 -

| A. | Rights and Discretions | - Page 12 - |
|---|---|---|
| 1. | Additions to the Trust Estate | - Page 12 - |
| 2. | Retention of Assets | - Page 12 - |
| 3. | Sale of Assets | - Page 12 - |
| 4. | Investment of Assets | - Page 12 - |
| 5. | Joint Investment With Other Trusts | - Page 13 - |
| 6. | Operating Businesses | - Page 13 - |
| 7. | Real Property | - Page 14 - |
| 8. | Natural Resources | - Page 14 - |
| 9. | Environmental Provisions | - Page 14 - |
| 10. | Location of Assets | - Page 14 - |
| 11. | Abandonment of Property | - Page 14 - |
| 12. | Bank Accounts | - Page 14 - |
| 13. | Borrowing of Funds | - Page 15 - |
| 14. | Lending of Funds | - Page 15 - |
| 15. | Voting Securities | - Page 15 - |
| 16. | Compromise Debts | - Page 15 - |
| 17. | Foreclosure of Mortgages | - Page 15 - |
| 18. | Determination of Income and Principal | - Page 15 - |
| 19. | Depreciation Reserves | - Page 16 - |
| 20. | Accumulations of Income | - Page 16 - |
| 21. | Division and Allocation of Assets | - Page 16 - |

Exhibit C          **Campbell Family 2001 Descendants Trust**          Page 3

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:37:25\CONF#: 10957\WORKFLOW ID: 1238711

B.  Executor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 24 -
C.  Children . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 24 -
D.  Descendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 24 -
E.  Income Beneficiaries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 24 -
F.  Living . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 24 -
G.  Determination of Incompetency . . . . . . . . . . . . . . . . . . . . . - Page 24 -
H.  Internal Revenue Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 24 -
I.  Gender and Number . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 25 -
J.  Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 25 -
K.  Headings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 25 -
L.  Survivorship . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 25 -
M.  Distributions to or Allocations among Descendants . . . . . . . . . . . . . . . - Page 25 -

Schedule A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - A.1 -

**Exhibit C**          **Campbell Family 2001 Descendants Trust**          **Page 5**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:37:25\CONF#: 10957\WORKFLOW ID: 1238711

For all purposes of this Trust, *Heather Campbell Bradford Wallace* and *Manuela Hernandez* shall be considered to be a child of *Frederick's*. In addition, I make no provision herein for my son *Allen F. Campbell.*

## Article II.
## Administration of Revocable Trust

While this trust is revocable by me, this trust shall be administered as follows:

**A.    Income and Principal While I am Competent.** Whenever I am competent, the Trustee shall distribute to me, or for my benefit, so much or all of the net income and principal of the trust as I request and shall periodically add any undistributed net income to principal. Further, if this trust owns tangible personal property, I shall have the right to possess, use, consume and in all manner enjoy such property, and the Trustee shall have no duty to keep informed as to the condition or location of such property or to inventory such property. These rights shall be personal to me and shall not be exercisable by any guardian or representative.

**B.    Income and Principal While I am not Competent.** Whenever I am considered incompetent, the Trustee shall distribute to me, or for my benefit, so much or all of the net income and principal of the trust as the Trustee considers desirable to provide for --

- The support, health, education and best interests of *Margaret* and me; and

- The support, health, education and best interests of any descendant of mine who is dependent upon me.

The Trustee shall periodically add any undistributed net income to principal.

The Trustee also is authorized to make gifts to any one or more of my descendants, as the Trustee considers to be in the best interests of my estate and family -- considering the support, health and best interests of *Margaret* and me, my dispositive wishes as indicated in this Trust Agreement, and the anticipated tax benefits and costs of any gift. The Trustee shall pay any gift or other transfer tax resulting from such gifts.

**C.    Power to Amend and Revoke.** While both *Margaret* and I are living, I reserve the right to amend or revoke this Trust Agreement, in whole or in part, by a written instrument (other than a Will) delivered to the Trustee during my lifetime or kept with the trust records. The property to which any revocation relates shall be conveyed to me or as I direct. These rights shall be personal to me and shall not be exercisable by any guardian or representative for me.

Exhibit C          **Campbell Family 2001 Descendants Trust**          Page 7

- The maximum dollar limit on such withdrawal right shall be increased from (i) the *Annual Exclusion Amount* to (ii) twice the *Annual Exclusion Amount*; and

- Such maximum dollar limit shall be reduced by all prior gifts to the *Trust Estate* during such year by both the donor and the donor's spouse.

**B.** **Notice of Right.** With respect to each gift made to the *Trust Estate*, the Trustee shall notify, in any reasonable manner, each *Withdrawal Beneficiary* who may withdraw part or all of such gift of the fact of such gift and of his/her withdrawal rights with respect to such gift.

**C.** **Manner and Time of Exercise of Right.** A *Withdrawal Beneficiary's* right of withdrawal shall be exercised within thirty (30) days from the date notice of the gift is first received from me (or from any other source), but in no event shall such right be exercisable after December 31 of the year in which the gift is made. Such exercise shall be made by a written demand, signed by the person making such demand and delivered to the Trustee. Upon receipt of a proper demand, the Trustee shall select and distribute any property of the trust to satisfy such demand.

**D.** **Lapse of Right of Withdrawal.** Any amount that a *Withdrawal Beneficiary* may still withdraw as of the last day of any year shall lapse to the extent of the greater of --

- $5,000; or

- An amount equal to five percent (5%) of the value of the *Trust Estate* determined as of the end of such year;

it being my intent that any lapse shall fall within the provisions of section 2514(e) of the *Code*.

**E.** **Authority of Representative.** Whenever a *Withdrawal Beneficiary* is under a legal disability, whether by reason of age or otherwise, the notice required to be given to such *Withdrawal Beneficiary* shall be given to his/her legal guardian or, if none, to any other competent adult; provided, however, in no event shall notice be given to *Margaret* or me or anyone else whose gift is the subject of such notice. The person to whom such notice is given shall have the right to exercise, for and on behalf of such *Withdrawal Beneficiary*, the right of withdrawal granted to such *Withdrawal Beneficiary*.

**F.** **Value of Gifts.** The value of any gift made to the *Trust Estate* shall be equal to its value for federal gift tax purposes.

**G.** **Conditions Imposed by the Donor.** If a donor specifies that (i) a gift to the *Trust Estate* may be withdrawn by other or additional persons or in an amount or a manner different than that provided for above or (ii) that such gift may not be withdrawn, the conditions so imposed by the donor shall supersede the above terms.

*- Page 4 -*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:37:25\CONF#: 10957\WORKFLOW ID: 1238711

- Distribute to, or for the benefit of, such beneficiary so much or all of the net income of the trust as the Trustee considers desirable to provide for his/her support, health, education and best interests; and

- Periodically add all undistributed net income to principal.

After the beneficiary has attained the age of 21 years, the Trustee shall distribute to him/her all of the net income of the trust at least quarter-annually (monthly, if feasible) until termination of the trust.

  **C. *Principal for the Beneficiary.*** The Trustee shall distribute to, or for the benefit of, the beneficiary of the trust so much or all of the principal of the trust as the Trustee considers desirable to provide for the support, health, education and best interests of the beneficiary.

  **D. *Limited Power in the Beneficiary to Appoint Principal.*** After the beneficiary attains the age of 21 years, the Trustee shall distribute so much or all of the principal of the trust to such of my descendants as the beneficiary shall appoint (i) by a signed instrument delivered to the Trustee during his/her lifetime or (ii) by Will; provided, however, in no event shall principal be appointed to (x) the beneficiary, (y) his/her estate, or (z) creditors of the beneficiary or of his/her estate. To be an effective appointment, such instrument or Will must refer specifically to this power of appointment.

  **E. *Disposition upon the Beneficiary's Death.*** Upon the beneficiary's death, to the extent the beneficiary has not exercised the above limited power of appointment, the Trustee shall allocate the trust, *per stirpes*, among:

- The beneficiary's descendants; but, if no such descendants are then living, then

- The descendants of the beneficiary's parent who is a descendant of mine; but, if no such descendants are then living, then

- The beneficiary's parent who is a descendant of mine; but, if said parent is not then living, then

- The descendants of the beneficiary's nearest ancestor who is a descendant of mine and who has descendants then living; but, if there is no such ancestor with then living descendants, then

- The beneficiary's nearest ancestor who is a descendant of mine; but, if no such ancestor is then living; then

- My descendants.

*- Page 6 -*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:37:25\CONF#: 10957\WORKFLOW ID: 1238711

## *Article VIII.*
### *Statement of Intent*

**A.** **Priority and Guidance.**  In making investments and discretionary distributions, the Trustee shall not consider the interests of any remainderman.  In addition, the Trustee may be guided by the following examples of possible distributions of property for the purposes listed below, but these examples shall in no way bind the Trustee to make any discretionary distribution. Although I intend to grant broad discretion to the Trustee, I do not intend to encourage indolence or extravagance.

    **1.** **Support.**  Distributions for the support of a beneficiary may include distributions for the necessities of food, clothing, transportation, shelter and similar needs, as well as distributions for a beneficiary's maintenance in reasonable comfort and support in his/her accustomed manner of living.

    **2.** **Health.**  Distributions for the health of a beneficiary may include distributions for the payment of medical insurance, medical and dental fees, equipment and drugs, hospital and nursing home care (regardless of length of time), services of private nurses and companions, and psychiatric care and counseling, and may include care for such beneficiary's last illness.

    **3.** **Education.**  Distributions for the education of a beneficiary may include distributions for attendance at or enrollment in preparatory, religious, undergraduate, graduate, professional and vocational schools, public or private, and wherever located, and may include tuition, room, board, books, transportation and other living and incidental expenses.

    **4.** **Best Interests.**  Distributions for the best interests of a beneficiary may include distributions to enable a beneficiary to purchase an automobile, to make a down payment on the purchase of a home, to furnish a home consistent with a comfortable standard of living, to travel, to invest a reasonable amount in business enterprises in which the beneficiary would be an active participant, or to make gifts to such beneficiary's descendants or for charitable purposes. Distributions for the best interests of a minor beneficiary also may include distributions to enable him or her to attend summer camp or to participate in recreational activities such as music, dance or athletic lessons or leagues.

**B.** **Consideration of Beneficiary's Resources and Tax Consequences.** In considering discretionary distributions, the Trustee may, but need not, consider the beneficiary's income and resources from all sources known to the Trustee, the obligations of such beneficiary to support others, and the obligations of others to support such beneficiary.  The Trustee shall be entitled to rely on a statement of the beneficiary's income and resources signed by the beneficiary or his/her parent or guardian.  The Trustee also may, but need not, consider the tax consequences resulting from any decision to accumulate or to distribute income or principal.  However, the Trustee

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:37:25\CONF#: 10957\WORKFLOW ID: 1238711

- Any individual who has attained the age of 30 years; and

- Any bank or trust company which is (i) organized under the laws of the United States of America, any state thereof or the District of Columbia and (ii) is qualified to administer trusts in the jurisdiction in which such institution is located.

**D.    *Resignation and Removal of Trustees.*** Any Trustee may resign at any time, without cause, with respect to any trust created hereunder, by executing and delivering a written instrument to that effect to the other Trustee(s) of such trust (or, if none, to the person(s) then designated to become, or empowered to appoint, the successor Trustee pursuant to Section IX.A).

Any Trustee, other than *Frederick, Margaret or me,* may be removed at any time, without cause, by the persons then empowered, under Section IX.A, to appoint successor Trustees if a vacancy in the trusteeship were to exist. Such removal shall be effected by delivering a signed instrument to that effect to such Trustee and to any other Trustee(s).

Notwithstanding the foregoing, no Trustee resignation or removal which would result in a vacancy in the trusteeship shall be effective until a successor Trustee is appointed pursuant to Section IX.A

**E.    *Title.*** The title to the *Trust Estate* shall vest forthwith in any successor Trustee, but any resigning or removed Trustee shall execute all instruments and do all acts desirable to vest title to the *Trust Estate* in any successor Trustee without court accounting.

**F.    *Approval of Accountings.*** Any accounting shall be deemed true and correct, and the Trustee making such accounting shall be discharged from all liability as to all transactions disclosed on such accounting to all persons, including persons not in being, to the extent I (or, after my death, the income beneficiary of the affected trust) approve such accounting in writing or fail to notify such Trustee, in writing, that such accounting is not approved within two (2) years after receipt of such accounting.

With my approval (or, after my death, the approval of the income beneficiary of the affected trust), a successor Trustee may accept the accounting rendered by and the property received from a predecessor Trustee without incurring any liability for so doing, and such approval shall serve as a complete discharge to the predecessor Trustee.

**G.    *Compensation.*** Any corporate Trustee shall be entitled to compensation for its services in administering any trust in accordance with its then published fee schedule for trust services. Any individual Trustee (other than me, *Margaret* or any descendant of mine) shall be entitled to reasonable compensation for his/her services hereunder. Every Trustee shall be entitled to be reimbursed for reasonable expenses and costs, including legal fees, incurred in administering any trust.

**Exhibit C**          **Campbell Family 2001 Descendants Trust**          **Page 15**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:37:25\CONF#: 10957\WORKFLOW ID: 1238711

## Article X.
## Trustee's Rights And Discretions

**A.     Rights and Discretions.**  I give to the Trustee, subject to the other provisions of this Trust Agreement --

• The rights and discretions set forth below; and

• Except to the extent they may be inconsistent with the rights and discretions granted herein, all powers otherwise conferred upon the Trustee by law;

all of which may be exercised without giving notice to any person or obtaining the consent of any beneficiary or any court order:

**1.     Additions to the Trust Estate.**  To receive additions to any trust and to hold and administer the same under the provisions of this Trust Agreement;

**2.     Retention of Assets.**  To retain without liability for depreciation or loss any asset received from anyone, including me or my estate;

**3.     Sale of Assets.**  Except as provided in Article XIV., to sell, exchange, assign or transfer any asset comprising part or all of the *Trust Estate* upon such terms and conditions and in such manner as the Trustee considers best;

**4.     Investment of Assets.**  To invest and reinvest any money or property comprising the *Trust Estate* in, and to purchase or otherwise acquire from my estate, from any beneficiary or from others, any property, real or personal, of any kind or nature, including without limitation --

• Any stocks, whether common or preferred, and including stocks of any corporate Trustee, warrants, participations in discretionary common trust funds, money market funds and mutual funds;

• Government bills, notes and bonds, corporate bonds, whether secured or unsecured, debentures, bankers acceptances, certificates of deposit, mortgages and commercial paper;

• Foreign currencies, gold, silver and other precious metals;

• Commodity and stock options (for the purpose of hedging but not for speculation);

• Real estate, whether improved or unimproved;

• Partnership interests, whether general or limited;

*- Page 12 -*

**Exhibit C**          **Campbell Family 2001 Descendants Trust**          **Page 17**

7. **Real Property.** Except as provided in Article XIV., to improve or develop any real estate; to construct, alter or repair buildings or structures; to settle boundary lines; to grant easements and other rights affecting real estate; to partition and to join with co-owners and others in dealing with real estate; to lease real estate for such term and upon such provisions as the Trustee considers advisable even though the term of the lease extends beyond the termination of any trust; to generally deal with real estate in any manner and for such purposes as the Trustee considers advisable; to permit any beneficiary to occupy any real property forming part of the *Trust Estate* upon such terms as the Trustee shall consider advisable, whether rent free, in consideration of the payment of taxes, insurance, maintenance and ordinary repairs, or otherwise;

8. **Natural Resources.** To deal with any interest in oil, gas, mineral, timber or farming operations or investments in any manner as I could do if living and the owner of such interest;

9. **Environmental Provisions.** To periodically inspect, review and monitor any property for the purpose of determining compliance with any law, rule or regulation affecting such property; to take all action which the Trustee considers advisable to prevent, abate, "clean up," or otherwise respond to any actual or threatened violation of any law, rule or regulation affecting any property related to the generation, use, treatment, storage, disposal, release, discharge or contamination by any materials or substances that are prohibited or regulated by law or that are known to pose a hazard to the environment or human health, and the Trustee may take such action prior to the initiation of enforcement action by any governmental agency; to obtain estimates of costs to prevent, abate, "clean up", or otherwise respond to such violations, actual or threatened, to notify the beneficiaries of such estimated costs and to permit the beneficiaries to pay for such response costs; to disclaim any power, actual or implied, which the Trustee believes will or may cause the Trustee to be considered an "owner" or "operator" of property under the provisions of the Comprehensive Environmental Response, Compensation and Liability Act ("*CERCLA*"), as amended, or which may otherwise cause the Trustee to incur liability under *CERCLA* or any other environmental law, rule or regulation;

10. **Location of Assets.** To keep any property of any trust at any place or places in the United States of America, or with a depositary or custodian at such place or places;

11. **Abandonment of Property.** To abandon any property, real or personal, which the Trustee considers to be worthless or not of sufficient value to warrant keeping or protecting; to abstain from the payment of taxes, liens, water rents, assessments, repairs, maintenance or upkeep of any such property; to permit any such property to be lost by tax sale or other proceedings; or to convey any such property for a nominal consideration or without consideration;

12. **Bank Accounts.** To open and maintain one or more checking, savings or time deposit accounts with any bank, trust company, savings and loan or building and loan association, or any other financial institution, wherever located (even though such financial

**Exhibit C**          **Campbell Family 2001 Descendants Trust**          **Page 19**

**19. *Depreciation Reserves.*** To establish out of income, and to credit to principal, reasonable reserves for depreciation, rehabilitation, major repairs, replacements and losses in value resulting from wear and tear and obsolescence of tangible property, whether real or personal;

**20. *Accumulations of Income.*** To exercise all rights, powers and discretions with respect to all accumulations of income held in any trust;

**21. *Division and Allocation of Assets.*** Whenever the Trustee is authorized or required to divide the principal or income of any trust into separate trusts or to distribute principal or income among beneficiaries --

- To make such division or distribution in kind, or partly in kind and partly in money, and

- To allocate or distribute (i) undivided interests in assets, (ii) disproportionate interests in assets or (iii) different assets -- without regard to any requirement to effect a proportionate allocation of each asset among the separate trusts or among beneficiaries (but any property divided or distributed in kind shall be valued at its fair market value as of the date of division or distribution);

to hold several trusts as a common fund, dividing the income proportionately among them; to assign undivided interests in specific assets to several trusts; and to make joint investments of the funds comprising several trusts;

**22. *Division of Trusts.*** To divide any trust, whether existing or to be established, into two or more separate smaller trusts (without any requirement for said separate smaller trusts to be equal in value, and without any requirement for discretionary distributions to be made proportionally from said separate smaller trusts), whenever the Trustee believes such division may achieve desirable tax results for such trust or its beneficiaries, promote easier administration or otherwise be in the best interests of any trust or its beneficiaries; upon termination of such separate smaller trusts, to distribute to any beneficiary from any one such separate smaller trusts, in such proportions and amounts as the Trustee considers desirable (so long as the distributions from all such separate smaller trusts would, if such separate smaller trusts were still a single trust, satisfy the provisions governing such distribution);

**23. *Merger of Trusts.*** Whenever the Trustee is holding any trust for the primary benefit of any persons for whose primary benefit the Trustee is holding any other trust upon substantially the same terms, the Trustee may consolidate such trusts and hold them as a single trust, so long as no property will be held in trust for a period which would violate any applicable rule against perpetuities;

**24. *Small Trust Termination.*** Notwithstanding any other provision, if the Trustee determines that --

*- Page 16 -*

**Exhibit C**         **Campbell Family 2001 Descendants Trust**         **Page 21**

**B.    *Qualified Subchapter S Trust Savings Clause.*** To the extent --

- The Trustee of any trust (i) receives or holds any stock of an *S corporation,* (ii) intends to acquire stock of an *S corporation,* or (iii) intends to consent to an election of *S corporation* status by a *C corporation* in which said trust is a shareholder, and

- Said trust does not otherwise qualify as a permissible shareholder of an *S corporation*;

said *S corporation* stock, assets intended to be used to acquire *S corporation* stock, or *C corporation* stock, as the case may be, shall be receipted into or segregated as a separate trust ("*QSST*") for the income beneficiary and administered as closely as possible to the original trust but so that all requirements of a *qualified subchapter S trust* set forth under section 1361(d) of the *Code* are met, including the requirements that --

- There be only one income beneficiary of the *QSST*;

- All net income of the *QSST* be distributed at least annually to such income beneficiary;

- Any principal distributed from the *QSST* during the life of the income beneficiary be distributed only to such beneficiary;

- The interest of the income beneficiary in the *QSST* terminate on the earlier of such beneficiary's death or the termination of the *QSST*; and

- If the *QSST* terminates during the life of the income beneficiary, the *QSST* distribute all of its assets to such beneficiary.

I intend for any such *QSST* to qualify as a *qualified subchapter S trust* and, as a result, be a permissible shareholder of an *S corporation.* To that end, all provisions of this Trust Agreement shall be construed to effectuate this intent, and all provisions which would cause such *QSST* not to qualify as a shareholder of an *S corporation* shall not apply to, and be of no effect with respect to, such *QSST*.

**C.    *Facility of Payment.*** Whenever a beneficiary is, in the Trustee's judgment, incapable of managing financial affairs on account of age, illness, handicap, unavailability or other cause, the Trustee may distribute any income or principal otherwise distributable to such beneficiary either --

- To the parent or guardian of such beneficiary;

- To the individual with whom or the institution in which such beneficiary resides;

- To the spouse or children of such beneficiary who are legally or in fact dependent upon such beneficiary for their support or education;

- Page 18 -

**Exhibit C**          **Campbell Family 2001 Descendants Trust**          **Page 23**

●    In the absence of such action by majority vote or consent of non-beneficiary Trustee(s), the status quo shall be preserved with respect to the *deadlocked issue*.

**3.    *Assignment of Powers.*** A Trustee may, with the consent of any other Trustee, assign and delegate to such other Trustee any part or all of the rights, powers, titles, duties, discretions and immunities granted to or imposed upon the former Trustee. Any such assignment or delegation may be either for a specified time or until the assignment or delegation is revoked by a similar instrument.

**4.    *Trustee Proposals.*** A Trustee shall be presumed to have approved any proposed act, or proposed decision to refrain from acting, made by any other Trustee if the former fails to indicate disapproval within 15 days after being requested to do so in writing by the other Trustee. A Trustee shall not be obligated to continue to make such written proposal to another Trustee if (i) the proposal has been disapproved on at least two occasions and (ii) the former has informed the other Trustee that it will be assumed that such proposal continues to be disapproved until notice to the contrary has been received.

**5.    *Execution of Documents.*** The Trustees may execute any instrument in connection with the administration of such trust by signing one instrument or concurrent instruments. The Trustees may delegate, to any one or more Trustees, the authority to execute such instruments on behalf of all Trustees.

### *Article XI.*
### *Life Insurance Policies*

**A.    *Obtaining Insurance.*** The Trustee has the right and discretion to purchase or otherwise obtain life insurance policies on my life and on the life of others. In regards to any life insurance policies on my life, I agree to execute and deliver all documents and to do all other acts which may be desirable to assist the Trustee in obtaining said policies.

**B.    *Trustee's Rights Over Life Insurance Policies.*** With respect to any life insurance policy, the Trustee shall have the following rights and discretions in addition to those vested in the Trustee elsewhere in this Trust Agreement or by law, with respect to all such insurance policies.

**1.    *Payment of Insurance Costs.*** The Trustee may pay any premiums or assessments due or becoming due on any insurance policy, or any other lien or charge thereon, (collectively, *"Insurance Costs"*) by (i) using any funds made available to it including the income of the *Trust Estate* as determined for purposes of Section 677 of the *Code*, (ii) directing or causing dividends on, or reserves of, any policy to be used or applied for said purposes, (iii) borrowing funds from any source (including itself or any insurer) for said purposes, and in procuring, renewing or

*- Page 20 -*

**Exhibit C**          **Campbell Family 2001 Descendants Trust**          **Page 25**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:37:25\CONF#: 10957\WORKFLOW ID: 1238711

- Be subject to execution, attachment or sequestration for any debts or liabilities of any such person or for any care, necessities or services provided to or for such person (specifically including, but not limited to, any claim of equitable subrogation by any governmental or quasi-governmental entity, or any other person, providing or bearing the cost of such care, necessities or services).

This provision shall not be construed to prevent (i) any beneficiary from assigning any part or all of his/her interest under this Trust Agreement to any one or more of my descendants, (ii) distributions of income or principal by the Trustee for the benefit of any beneficiary as authorized, or (iii) the exercise of any power of appointment.

### Article XIII.
### Miscellaneous Provisions

**A.     Exoneration of Third Persons.**  No person dealing with the Trustee shall --

- Be responsible for the application of any purchase money or other thing of value paid or delivered to the Trustee, and a receipt of the Trustee shall be effective to discharge and release any such person from all liabilities to any beneficiary hereunder; or

- Be under any obligation to ascertain or inquire into the power of the Trustee to purchase, sell, exchange, transfer, mortgage, pledge, lease, distribute or otherwise in any manner dispose of or deal with any security or other property held by the Trustee.

**B.     Trust Binding Upon Successors.**  This Trust Agreement shall extend to and be binding upon my executors, administrators, successors and assigns.

**C.     Copies; Memorandum of Trust.**  Any person may rely on a copy of this Trust Agreement certified by the Trustee to be in effect and to be a true and correct copy.  Such certified copy shall be considered as an original and shall relieve any person to whom a certified copy is delivered of any duty to inquire further.

Any person may also rely on the provisions of this Trust Agreement as set forth in any Memorandum of Trust filed by me with any County Recorder (or other authorized public official or agency), pursuant to the authority of Ohio Revised Code §5301.255 (or any comparable provision of other state law) -- to the extent such Memorandum of Trust is not thereafter amended, revoked or superseded of record.  The public recording of such Memorandum of Trust shall relieve any person relying thereon of any duty to inquire further concerning any provisions of this Trust Agreement which are set forth therein.

**D.     Perpetuities.**  To the extent permitted under applicable law, I intend that neither (i) Section 2131.08(B) of the Ohio Revised Code nor (ii) any common law "rule against perpetuities" shall apply to this trust.  I hereby acknowledge that I have been advised that, under Section 2131.09

*- Page 22 -*

**Exhibit C**          **Campbell Family 2001 Descendants Trust**          **Page 27**

**B.** **Executor.** The term "executor" means any personal representative of a decedent's estate, regardless of how designated.

**C.** **Children.** The term "children" means lawful descendants in the first degree of the designated parent. This term also includes persons who have been adopted during their minority according to law or under any court proceeding. Such term shall not include a stepchild or foster child.

**D.** **Descendants.** The term "descendants" means children and more remote lawful descendants of the designated ancestor -- including persons who acquire such status as a result of adoption during their minority according to law or under any court proceeding, and the descendants of any such adopted person, but excluding foster children, step-children and their descendants.

**E.** **Income Beneficiaries.** The terms "income beneficiary" and "income beneficiaries" mean the person or persons who receive, or in the Trustee's discretion may receive, the net income of a trust.

**F.** **Living.** References to persons "living" and "then living" as of a particular date or event include any person conceived prior to the referenced date or event who is subsequently born alive and survives for at least 30 days.

**G.** **Determination of Incompetency.** Any person shall be considered incompetent --

- If, and as long as, such person is adjudicated incompetent; or

- If two doctors familiar with such person's physical and mental condition certify, in writing, that such person is unable to transact ordinary business and until there is a like certification that such inability has ended; or

- If any bank or trust company acting as a Trustee believes in good faith that such person is physically or mentally unable to transact ordinary business and records such belief in the written trust records; provided, however, no bank or trust company shall be required or have a duty to form or communicate any such belief.

Any individual Trustee who is considered incompetent shall immediately cease to act as a Trustee on the date of such determination without the execution of any further instrument.

**H.** **Internal Revenue Code.** References to the *Code* refer to the Internal Revenue Code of 1986, as amended or superseded. References to a section of or tax under the *Code* (or to a section of any Treasury Regulation adopted pursuant to the *Code*) include all amendments and successor provisions corresponding to any such section or tax in force after the date of this Trust

*- Page 24 -*

**Exhibit C**     **Campbell Family 2001 Descendants Trust**     **Page 29**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:37:25\CONF#: 10957\WORKFLOW ID: 1238711

# *Campbell Family 2001 Descendants Trust*

## *Schedule A*

Cash                                        $1.00

F:\SZD\VASELANM\CLIENTS\Campbell, Donald\Descendants.wpd

*- A.1 -*

**Exhibit C**          **Campbell Family 2001 Descendants Trust**          **Page 31**

# *Last Will and Testament*

## *of*

# *F. Margaret Campbell*

*Dated: April 19, 2011*

**Exhibit D**                    Last Will of F. Margaret Campbell                    **Page 1**

71612724 1

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:38:32\CONF#: 10957\WORKFLOW ID: 1238710

*Last Will and Testament*
*of*
*F. Margaret Campbell*

### *Table of Contents*

**Article I.** Family ........................................................................................................ 1

**Article II.** Tangible Personal Property and Specific Bequests ................................. 1
    A. Descendants ........................................................................................ 1
    B. Failure of Agreement on Division ....................................................... 1
    C. Written Instructions ............................................................................ 1
    D. Ava Margaret Campbell ("Ava") ......................................................... 1
    E. Heather Campbell Reedy ("Heather") ................................................. 2
    F. Manuela Hernandez ("Manuela") ........................................................ 2
    G. Melissa McGee ("Melissa") ................................................................ 2

**Article III.** Residuary Estate ................................................................................... 2
    A. Disposition of Residuary Estate .......................................................... 2
    B. Conditional Incorporation of Trust by Reference ............................... 2
    C. Direct Distribution to Trust Beneficiaries .......................................... 2

**Article IV.** Claims, Expenses, Pledges and Taxes ................................................... 2
    A. Claims, Expenses and Pledges ............................................................ 2
    B. Taxes ................................................................................................... 3

**Article V.** Executors ................................................................................................ 3
    A. Appointment of Executor .................................................................... 3
    B. Waiver of Bond .................................................................................. 3
    C. Appointment of Personal Representative by my Executor ................... 3
    D. Tax Elections ...................................................................................... 3
    E. Authorization to Furnish Information to the Trustee ........................... 3
    F. Executor's Rights and Discretions....................................................... 3
        1. Retention of Assets ...................................................................... 4
        2. Sale of Assets ............................................................................... 4
        3. Investment of Assets .................................................................... 4
        4. Operating Businesses ................................................................... 4
        5. Real Property ............................................................................... 5
        6. Natural Resources ........................................................................ 5
        7. Voting Securities........................................................................... 5
        8. Foreclosure of Mortgages ............................................................ 5
        9. Compromise Debts........................................................................ 5
        10. Abandonment of Property ........................................................... 6
        11. Location of Assets ....................................................................... 6
        12. Bank Accounts ............................................................................ 6
        13. Lending of Funds ........................................................................ 6
        14. Borrowing of Funds ..................................................................... 6

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:38:32\CONF#: 10957\WORKFLOW ID: 1238710

**15.** Dealing With Trustees of Employee Benefit Trusts .......................................... 6
**16.** Determination of Income and Principal ........................................................ 6
**17.** Depreciation Reserves ................................................................................ 7
**18.** Accumulation of Income ............................................................................. 7
**19.** Facility of Payment .................................................................................... 7
**20.** Nominees .................................................................................................. 7
**21.** Agents ...................................................................................................... 8
**22.** Execution and Delivery of Instruments ....................................................... 8
**23.** All Necessary Acts .................................................................................... 8
G. Exoneration of Executor ................................................................................ 8

**Article VI.** Provisions Relating to Merrill Lynch Trust Company .......................... 8
A. Powers of MLTC Regarding Affiliates ............................................................ 8
B. Jurisdiction and Nominee Name. ................................................................... 8
C. Compensation of the Fiduciary. ..................................................................... 9
D. Power of the Fiduciary to Delegate ................................................................ 9
E. Power of the Fiduciary to Resign. .................................................................. 9
F. Fiduciary's Accounting. ................................................................................ 9

**Article VII.** Construction Provisions .................................................................... 9
A. Executor ..................................................................................................... 9
B. Descendants ................................................................................................ 9
C. Gender and Number ..................................................................................... 10
D. Internal Revenue Code .................................................................................. 10
E. Headings ..................................................................................................... 10

**Exhibit D**          **Last Will of F. Margaret Campbell**          **Page 3**

*Page ii*

# Last Will and Testament
## of
## F. Margaret Campbell

I, *F. Margaret Campbell aka Freda Margaret Campbell* of Cleveland, Ohio, declare this to be my Last Will and Testament and revoke all former wills and codicils previously made by me.

## Article I.
## Family

I am not married.  The names and dates of birth of my only children who are living at the date of this Will are as follows:

| Name | Date of Birth |
|---|---|
| *Allen F. Campbell ("Allen")* | *September 23, 1948* |
| *Frederick M. Campbell ("Frederick")* | *September 17, 1951* |

For all purposes of this, my Last Will and Testament, *Frederick's* step-daughter, *Manuela Hernandez,* shall be treated as a child of *Frederick's* and as a grandchild of mine.

## Article II.
## Tangible Personal Property and Specific Bequests

I bequeath all my tangible personal property, together with all insurance on such property, as follows:

**A.    Descendants.**  I bequeath all such property and insurance to my descendants who survive me, in such shares as my children shall agree.  My Executor shall represent any minor child of mine in the division of such property.

**B.    Failure of Agreement on Division.**  If, six (6) months after my death, there remains tangible personal property which my children have not agreed how to divide, my Executor shall sell, donate to charity, or otherwise dispose of such property, whether to my descendants or others, in whatever manner my Executor considers best, and my Executor shall add any net proceeds to my Residuary Estate.

**C.    Written Instructions.**  If I leave a signed letter or memorandum requesting that specific articles of tangible personal property be given to named individuals, I ask that my family honor such request.

**D.    *Ava Margaret Campbell ("Ava").***  I bequeath the sum of Fifty Thousand Dollars ($50,000:00) to my granddaughter, *Ava,* if she survives me,

Exhibit D          Last Will of F. Margaret Campbell                    Page 4

*Page 1*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:38:32\CONF#: 10957\WORKFLOW ID: 1238710

    **E.**    ***Heather Campbell Reedy ("Heather").***  I bequeath the sum of Fifty Thousand Dollars ($50,000.00) to my granddaughter, ***Heather***, if she survives me.

    **F.**    ***Manuela Hernandez ("Manuela").***  I bequeath the sum of Fifty Thousand Dollars ($50,000.00) to my granddaughter, ***Manuela***, if she survives me.

    **G.**    ***Melissa McGee ("Melissa").***  I bequeath the sum of Fifty Thousand Dollars ($50,000.00) to my granddaughter, ***Melissa***, if she survives me.

### Article III.
### Residuary Estate

    **A.**    ***Disposition of Residuary Estate.***  I devise and bequeath all my remaining property, including lapsed legacies and devises, (my ***"Residuary Estate"***) to the trustee (the "Trustee") of the ***F. Margaret Campbell 2011 Trust dated April 19, 2011***, as amended (the "Trust"), created by myself as Grantor and Trustee.  My Residuary Estate shall be added to the principal of the Trust and shall be administered in all respects as an integral part of the Trust.

    **B.**    ***Conditional Incorporation of Trust by Reference.***  To the extent the devise and bequest of my Residuary Estate to the Trust fails for any reason --

- I incorporate the terms of the Trust herein by reference; <u>and</u>

- I devise and bequeath my Residuary Estate to the Trustee -- to be administered as provided in the Trust.

    **C.**    ***Direct Distribution to Trust Beneficiaries.***  Notwithstanding the above, if the Trustee informs my Executor in writing that any portion of my Residuary Estate would, upon receipt by the Trustee, be immediately distributable to a beneficiary of the Trust, my Executor shall distribute such portion directly to such beneficiary.

### Article IV.
### Claims, Expenses, Pledges and Taxes

    **A.**    ***Claims, Expenses and Pledges.***  My Executor shall pay (i) all claims allowable against my estate, the expenses of my last illness and funeral, and expenses of administration (including ancillary administration) in such amounts as my Executor considers reasonable without regard to any limitation imposed by law or rule of court, and (ii) any charitable pledge signed by me (unsigned pledges shall not be recognized) unless such pledge by its terms is released by my death or conditioned upon my survival.  The reasonable costs of protecting, packing, storing, insuring, shipping and delivering all assets of my estate, including costs incurred before the qualification of my Executor, shall be paid as an expense of administering my estate.  All such payments shall be charged against my Residuary Estate.

Exhibit D          Last Will of F. Margaret Campbell          Page 5

*Page 2*

71612724.1

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:38:32\CONF#; 10957\WORKFLOW ID: 1238710

Notwithstanding the above, my Executor may request payment of such items by the Trustee from assets of the Trust.

**B.     Taxes.**  My Executor shall pay all estate, inheritance, legacy, succession or transfer taxes imposed by reason of my death.  Such taxes shall be equitably apportioned in accordance with the law of the state in which I am domiciled at my death.  My Executor shall seek reimbursement of such taxes from the recipients, if any, of any property to which such taxes are apportioned to the extent of such apportionment.  Interest and penalties, if any, concerning any tax shall be paid and apportioned in the same manner as the tax.

## Article V.
## Executors

**A.     Appointment of Executor.**  I appoint the following persons, in the order named, to be the Executor of my estate: (i) **Frederick**; then (ii) **Allen**; then (iii) **Merrill Lynch Trust Company.**

**B.     Waiver of Bond.**  I direct that no bond or other security be required of my Executor in any jurisdiction.  If a bond should nevertheless be required, I waive surety thereon.

**C.     Appointment of Personal Representative by my Executor.**  If the appointment of a personal representative of my estate is desirable in any jurisdiction in which my Executor is unable or unwilling to act, I appoint as my personal representative in that jurisdiction such individual (who may be an employee of my Executor) or corporation as is designated by my Executor, to act without bond or without surety on any required bond, and to have all the rights, powers, titles, duties, discretions and immunities with respect to my estate in that jurisdiction during administration that my Executor is given with respect to the balance of my estate, to be exercised without court order.

**D.     Tax Elections.**  My Executor shall make such elections under the tax laws as my Executor determines will be in the best interests of my estate and its beneficiaries, without regard to the relative interests of the beneficiaries.  No adjustment shall be made between income and principal or in the relative interests of the beneficiaries to compensate for the effect of any such election made by my Executor.

**E.     Authorization to Furnish Information to the Trustee.**  My Executor shall furnish to the Trustee complete information, to the extent known by my Executor and requested by the Trustee, concerning all assets included in my gross estate for tax purposes and concerning all liabilities and claims against my estate or against any item in my estate.

**F.     Executor's Rights and Discretions.**  I give to my Executor full rights and discretions in the management and control of my entire estate, real and personal (except that my Executor shall not have the management and control of any real property specifically devised herein), including the rights and discretions set forth below:

**Exhibit D**          **Last Will of F. Margaret Campbell**          **Page 6**

*Page 3*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:38:32\CONF#: 10957\WORKFLOW ID: 1238710

   *1.*     ***Retention of Assets.***  To retain without liability for depreciation or loss any asset received from me:

   *2.*     ***Sale of Assets.***   To sell, exchange, assign or transfer any asset comprising part or all of my estate upon such terms and conditions and in such manner as my Executor considers best;

   *3.*     ***Investment of Assets.***  To invest and reinvest any money or property of my estate in any property, real or personal, of any kind or nature, including without limitation --

- Any stocks, whether common or preferred, and including stocks of any corporate executor;

- Warrants, participations in discretionary common trust funds, money market funds and mutual funds;

- Government bills, notes and bonds;

- Corporate bonds, whether secured or unsecured, debentures, bankers acceptances, certificates of deposit, mortgages and commercial paper;

- Foreign currencies, gold, silver or other precious metals;

- Commodity and stock options (for the purpose of hedging but not for speculation);

- Real estate, whether improved or unimproved;

- Partnership interests, whether general or limited;

- Life estates or remainder interests following a life estate or a term of years; and

- Interests in any of the foregoing;

even though such investment or purchase (by reason of its character, amount, proportion to the total property of my estate or otherwise) would not be considered appropriate for an executor apart from this provision;

   In the making and retention of investments and reinvestments, my Executor shall not be confined to the obligations and securities mentioned in any statute or rule of court for fiduciaries for the investment of funds and shall have no duty to diversify the assets or investments of my estate;

   *4.*     ***Operating Businesses.***  To initiate and to carry on, as a sole proprietor, general or limited partner, shareholder, joint venturer, or in any other ownership capacity, any new or existing business, enterprise, investment or trade, for such time as my Executor considers

**Exhibit D**           **Last Will of F. Margaret Campbell**           **Page 7**

*Page 4*

71612724 1

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:38:32\CONF#: 10957\WORKFLOW ID: 1238710

advisable, without any duty to comply with Ohio Revised Code § 2113.30 (or any comparable provision of applicable law);

To serve with compensation as an officer, director, employee, agent or independent contractor of any such business or enterprise without any obligation to account for such compensation;

**5.** **Real Property.** With respect to any real property owned by my estate, or in which my estate has an interest --

- To improve or develop such real property;

- To construct, alter or repair buildings or structures;

- To settle boundary lines;

- To grant easements and other rights;

- To partition and to join with co-owners and others in dealing with such real property;

- To lease such real property for such term and upon such provisions as my Executor considers advisable even though the term of the lease may extend beyond the administration of my estate;

**6.** **Natural Resources.** To deal with any interest in oil, gas, mineral, timber or farming operations or investments in any form in any manner as I could do if living and the owner of such interest;

**7.** **Voting Securities.** To vote by proxy or in person any security comprising a part of my estate; to enter into any kind of pooling agreements and voting trusts, even though such action may involve delegation of authority;

**8.** **Foreclosure of Mortgages.** To foreclose, as an incident to the collection of any bond or notes, any deed of trust or mortgage securing such bond or note and to bid in the mortgaged property at such foreclosure sale;

To acquire property by deed from the mortgagor without foreclosure;

To retain property bid in at foreclosure or acquired without foreclosure for such time as my Executor considers advisable or to dispose of such property by sale, exchange or otherwise upon such terms as my Executor considers advisable;

**9.** **Compromise Debts.** To enforce, abandon, defend or have adjudicated by legal proceedings, arbitration or compromise, any claim or demand of any nature which arises out of or otherwise exists in favor of or against my estate;

**Exhibit D**          **Last Will of F. Margaret Campbell**          **Page 8**

*Page 5*

71612724 1

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:38:32\CONF#: 10957\WORKFLOW ID: 1238710

     **10.**    *Abandonment of Property.*  To abandon any property, real or personal, which my Executor considers to be worthless or not of sufficient value to warrant keeping or protecting;

     To abstain from the payment of taxes, liens, water rents, assessments, repairs, maintenance or upkeep of any such property;

     To permit any such property to be lost by tax sale or other proceedings;

     To convey any such property for a nominal consideration or without consideration;

     **11.**    *Location of Assets.*  To keep any property comprising my estate at any place or places in the United States of America (or with the continuing approval of all beneficiaries having an interest in such property, outside the United States of America) or with a depository or custodian at such place or places;

     **12.**    *Bank Accounts.*  To open and maintain one or more checking or savings accounts with any bank, trust company, savings and loan or building and loan association, or any other financial institution, wherever located, (even though such financial institution is my Executor or an affiliate of my Executor) and to deposit to the credit of any such account all or part of the funds belonging to my estate, whether or not such funds earn interest;

     **13.**    *Lending of Funds.*  To lend money to any beneficiary or to any other person, upon such terms and with such security, if any, as my Executor considers advisable;

     **14.**    *Borrowing of Funds.*  To borrow in the name of my estate such sums for such periods and on such terms as my Executor considers advisable (including the right to borrow from any Executor or the banking department or affiliate of a corporate Executor), and to secure any such loan by deed of trust, mortgage or pledge;

     No lender shall be bound to see to or be liable for my Executor's application of any loan proceeds;

     Unless otherwise expressly agreed, my Executor shall not be personally liable for any such loan, but each such loan shall be payable only out of assets of my estate;

     **15.**    *Dealing With Trustees of Employee Benefit Trusts.*  To deal with the trustees of any pension, profit-sharing or other employee benefit trust, plan or account, or the payees of any individual retirement plan or account, under which my Executor or my estate is designated as a beneficiary and to elect optional modes of settlement of proceeds due my Executor or my estate under any such trust, plan or account;

     **16.**    *Determination of Income and Principal.*  To reasonably determine the manner of ascertaining income and principal and the allocation or apportionment of all receipts and disbursements between income and principal as my Executor considers desirable, even though contrary to any statutory or regulatory presumption concerning ascertainment of

**Exhibit D**          **Last Will of F. Margaret Campbell**          **Page 9**

71612724 1

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:38:32\CONF#: 10957\WORKFLOW ID: 1238710

income and principal, without regard to the relative interests of the beneficiaries of my estate, but with regard to general principles of trust accounting;

Notwithstanding the above, I direct that --

- Periodic cash distributions from any partnership interest be considered net income for accounting but not for income tax purposes and be distributable as such, even though a portion thereof may constitute depreciation or amortization (except to the extent that my Executor considers it advisable to establish all or a portion of such distributions as a reserve for future capital contributions to such partnerships); and

- Upon the sale or other disposition of property which has been unproductive or under productive of income, no part of the proceeds received shall be allocated to income;

**17.  Depreciation Reserves.**  To establish or not to establish out of income, and to credit to principal, reasonable reserves for rehabilitation, major repairs, replacements and losses in value resulting from wear and tear and obsolescence of tangible property;

**18.  Accumulation of Income.**  To exercise all rights, powers and discretions with respect to all accumulations of income held in my estate;

**19.  Facility of Payment.**  During any time that a beneficiary is, in my Executor's judgment, incapable of managing financial affairs on account of age, illness, handicap, unavailability or any other cause, my Executor may distribute any income or principal otherwise distributable to such beneficiary either --

- To the parent or guardian of such beneficiary;

- To the individual with whom or the institution in which such beneficiary resides;

- To the spouse or children of such beneficiary who are legally or in fact dependent upon such beneficiary for their support or education;

- In the case of a minor beneficiary, to the minor beneficiary or to his or her custodian under any applicable Uniform Transfers (or Uniform Gifts) to Minors Act; or

- By applying the same for the benefit of such beneficiary;

the receipt of such beneficiary, other individual or institution, or evidence that such distribution was applied for the benefit of such beneficiary shall be a full discharge to my Executor for such distribution;

**20.  Nominees.**  To hold any investment in any form in which title will pass by delivery or in the name of a nominee without indicating that such investment is held in a fiduciary capacity, but my Executor shall be liable for any act of the nominee in connection with the investment so held;

| Exhibit D | **Last Will of F. Margaret Campbell** | **Page 10** |

*Page 7*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:38:32\CONF#: 10957\WORKFLOW ID: 1238710

**21.    Agents.**  To employ accountants, attorneys, brokers, custodians, investment counsel and other agents, even though such agent is my Executor (or is an employee of, or is associated with, my Executor), and to pay them reasonable compensation, whether from income or principal, as my Executor shall determine;

**22.    Execution and Delivery of Instruments.**  To execute and deliver agreements, assignments, bills of sale, contracts, deeds, notes, powers of attorney, receipts and other instruments which my Executor considers advisable for the advantageous administration of my estate or for the exercise of any right, power or discretion conferred upon my Executor; and

**23.    All Necessary Acts.**  To perform all other acts which my Executor considers advisable for the advantageous administration of my estate.

**G.    Exoneration of Executor.**  No Executor acting in good faith shall be liable for any loss, liability, expense or damage to my estate occasioned by my Executor's acts or failures to act in the administration of my estate.  My Executor shall be presumed to have acted in good faith if its action or failure to act is in reliance on a written opinion of counsel.

### Article VI.
### Provisions Relating to Merrill Lynch Trust Company

The following provisions will apply when **Bank of America, N.A.,** through its **Merrill Lynch Trust Company** division (hereinafter referred to in this Article as **"MLTC"**), is serving as Fiduciary hereunder.

**A.    Powers of MLTC Regarding Affiliates.**  The Fiduciary shall have the following specific powers and may exercise the same in its sole and absolute discretion:

- To engage any corporation, partnership or other entity affiliated with **MLTC** (an "Affiliated Entity") to render services to the estate or any trust hereunder, including, without limitation, to act as a broker or dealer to execute transactions, (including the purchase of any securities currently distributed, underwritten or issued by an Affiliated Entity) at standard commission rates, markups or concessions and to provide other management or investment services, including the custody of assets, at such Affiliated Entity's standard rates, and to pay for any such services from trust property.

- To invest in open-end or closed-end investment companies offered by an Affiliated Entity or to which an Affiliated Entity may render services for compensation.

- To invest estate or trust assets or sweep cash awaiting distribution or investment into its own deposits or the deposits of Affiliated Entity.

**B.    Jurisdiction and Nominee Name.**  The Fiduciary may cause all or any part of the estate or any trust hereunder to be maintained or managed in any jurisdiction and may hold the estate or any trust property in the name of its nominee or a nominee of any corporation, partnership or other entity affiliated with **MLTC**.

**Exhibit D**          **Last Will of F. Margaret Campbell**          **Page 11**

*Page 8*

71612724.1

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:38:32\CONF#: 10957\WORKFLOW ID: 1238710

C.  **Compensation of the Fiduciary.**  *MLTC* shall receive payment for its services in accordance with its schedule of rates in effect at the time such compensation becomes payable, without reduction for any other fees or other compensation paid to it (or any corporation, partnership or other entity affiliated with *MLTC*) including, but not limited to, such fees or other compensation paid by any open-end or closed-end investment company, unit investment trust or other investment vehicle, or an agent.

D.  **Power of the Fiduciary to Delegate.**  The Fiduciary shall have the power to employ and/or to delegate any of its discretionary and nondiscretionary powers to agents (including any corporation, partnership or other entity affiliated with the Fiduciary) including, but not limited to, attorneys, investment advisors, appraisers or accountants, as it deems appropriate and to pay for such services from the estate or trust property.

E.  **Power of the Fiduciary to Resign.**  The Fiduciary may resign as Personal Representative (Executor) of the estate or as Trustee of any trust hereunder at any time by written notice delivered to any Co-Fiduciary serving in the same capacity and to all beneficiaries currently eligible to receive estate assets or trust income or to the natural or legal guardians of such beneficiaries (the "Beneficiaries"). Such resignation shall be effective upon the written appointment and acceptance of a Successor Fiduciary and court approval to the extent required by applicable law. Subject to court approval if required by applicable law, a majority of the Beneficiaries shall have the power to appoint a Successor Fiduciary. If in default of such appointment the Fiduciary office would be vacant and no Successor Fiduciary has been appointed, then sixty (60) days following the Fiduciary's initial notice of its intent to resign, the Fiduciary shall have the power to petition the court at estate or trust expense (including reasonable attorneys' fees) to appoint its Successor. No bond or other security shall be required of the Trustee in any jurisdiction.

F.  **Fiduciary's Accounting.**  The Fiduciary may, but shall not be required to except as provided by applicable law, at any time, and from time to time, file an account of its administration with a court of competent jurisdiction. Prior to transferring any or all of the assets of the estate or any trust hereunder to a Successor Fiduciary or to making complete distribution of the estate or trust principal, the Fiduciary may require an approval of its account either by a court of competent jurisdiction or by such of the Beneficiaries as it deems appropriate. All of the Fiduciary's fees and expenses (including reasonable attorneys' fees) attributable to any such accounting and approval shall be paid by the estate or trust as the case may be.

## *Article VII.*
## *Construction Provisions*

A.  **Executor.**  References to my Executor shall be construed to mean the personal representative of my estate, regardless of how designated.

B.  **Descendants.**  Reference to my descendants means my children and more remote lawful descendants. Such reference includes persons who have been adopted during their minority according to law or under any court proceeding and the descendants of any such

71612724.1

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:38:32\CONF#: 10957\WORKFLOW ID: 1238710

adopted person. Such reference does not include a stepchild or foster child (or any of their descendants).

**C.** *Gender and Number.* The masculine, feminine and neuter genders shall be considered to include all genders, and the singular the plural and vice versa, except where such construction would be unreasonable.

**D.** *Internal Revenue Code.* References to the Code are to the Internal Revenue Code of 1986, as amended or superseded, and references to a section of or tax under the Code include all amendments and successor provisions corresponding to any such section or tax in force after the date of this Will. References to tax terms which have defined meanings under the Code shall have such defined meanings.

**E.** *Headings.* The headings in this Will are inserted solely for convenient reference and shall be ignored in its construction.

*In Witness Whereof,* I have signed this Will on the 19th day of April, 2011.

_____
**F. Margaret Campbell**

On the 19th day of April, 2011, this instrument was signed by *F. Margaret Campbell* in our presence and was acknowledged and declared by her to be her Will. Immediately thereafter, at her request, in her presence, and in the presence of each other, we signed this instrument as subscribing witnesses.

_____ residing at _6891 Darrow Rd_
Signature

_NANCY COX_ _Hudson Oh 44236_
Print Name Print Address

_____ residing at _2511 Milford Rd Univ Hts OH 44118_
Signature

_Carl J Monastra_ _2511 Milford Rd univ Hts OH 44118_
Print Name Print Address

---

**Exhibit D**        **Last Will of F. Margaret Campbell**        **Page 13**

*Page 10*

71612724 1

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:38:32\CONF#: 10957\WORKFLOW ID: 1238710

# *F. Margaret Campbell*
## *2011 Trust*

*Dated:* <u>*April 19, 2011*</u>

71612754.1

**Exhibit E**          F. Margaret Campbell 2011 Trust          Page 1

## *F. Margaret Campbell 2011 Trust*

### *Table of Contents*

**Article I.** Name and Beneficiaries of Trust ............................................................. 1

**Article II.** Administration during my Life ............................................................... 2
    A. Income and Principal While I am Competent ................................................ 2
    B. Income and Principal While I am not Competent ......................................... 2
    C. Power to Amend and Revoke ......................................................................... 2
    D. Attorney-in-Fact for Grantor While Serving as Trustee ............................... 2
    E. Distributions to Persons Holding Certain Powers of Attorney from Me ...... 3

**Article III.** Administration after my Death ............................................................. 3
    A. Payment of Claims, Expenses, Charitable Pledges and Taxes ..................... 3
    B. Disposition of Personal Effects and Specific Bequests ................................ 3
    C. Administration of Remaining Trust Estate .................................................... 3
        1. Allocation to Descendants Trust .............................................................. 3
        2. Allocation to Family Trust ........................................................................ 4

**Article IV.** Administration of Family Trust ............................................................. 4
    A. Division of the Family Trust .......................................................................... 4
    B. Administration of Separate Trusts for Children ............................................ 4
        1. Income for my Child ................................................................................. 4
        2. Principal for the Beneficiary .................................................................... 5
        3. Limited Power in the Beneficiary to Appoint Principal ........................... 5
        4. Distribution upon my Child's Death ......................................................... 5
    C. Distribution of Shares for More Remote Descendants ................................... 5

**Article V.** Failure of Descendants .......................................................................... 6

**Article VI.** Powers in Trust .................................................................................... 6

**Article VII.** Statement of Intent ............................................................................. 7
    A. Priority and Guidance ................................................................................... 7
        1. Support ..................................................................................................... 7
        2. Health ....................................................................................................... 7
        3. Education .................................................................................................. 7
        4. Best Interests ........................................................................................... 7
    B. Consideration of Beneficiary's Resources and Tax Consequences ............... 8

**Article VIII.** Claims, Expenses, Pledges and Taxes .............................................. 8
    A. Claims, Expenses and Charitable Pledges .................................................... 8
    B. Taxes ............................................................................................................. 8
        1. Apportionment Pursuant to Terms of my Will or State Law .................... 8
        2. Interest and Penalties ............................................................................... 9
    C. Conditions to Payment .................................................................................. 9

71612754.1

- i -

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

**Article IX.** Trustees ............................................................................................ 9
    A. Appointment of Successor Trustees ..................................................... 9
    B. Beneficiary as Trustee of each Separate Trust ................................... 10
    C. Persons Eligible to Act as Successor Trustee ...................................... 10
    D. Resignation and Removal of Trustees .................................................. 11
    E. Title ........................................................................................................ 11
    F. Accountings ........................................................................................... 11
    G. Approval of Accountings ...................................................................... 11
    H. Compensation ........................................................................................ 12
    I. Exoneration of Trustees Acting in Good Faith ..................................... 12
    J. Exoneration of Trustees for Acts of Others .......................................... 12
    K. Waiver of Qualification and Bond ....................................................... 12
    L. Authority of Representative ................................................................... 12

**Article X.** Trustee's Rights And Discretions ....................................................... 12
    A. Rights and Discretions .......................................................................... 12
        1. Additions to the Trust Estate ........................................................ 13
        2. Retention of Assets ...................................................................... 13
        3. Sale of Assets ............................................................................... 13
        4. Investment of Assets .................................................................... 13
        5. Joint Investment With Other Trusts ............................................. 14
        6. Operating Businesses .................................................................... 14
        7. Real Property ................................................................................ 14
        8. Natural Resources ......................................................................... 14
        9. Environmental Provisions ............................................................. 15
        10. Location of Assets ....................................................................... 15
        11. Abandonment of Property ........................................................... 15
        12. Bank Accounts ............................................................................ 15
        13. Borrowing of Funds .................................................................... 15
        14. Lending of Funds ........................................................................ 15
        15. Voting Securities ......................................................................... 16
        16. Compromise Debts ...................................................................... 16
        17. Foreclosure of Mortgages ........................................................... 16
        18. Determination of Income and Principal ...................................... 16
        19. Depreciation Reserves ................................................................. 16
        20. Accumulations of Income ........................................................... 16
        21. Division and Allocation of Assets .............................................. 16
        22. Division of Trusts ........................................................................ 17
        23. Merger of Trusts .......................................................................... 17
        24. Small Trust Termination .............................................................. 17
        25. Authority after Termination of a Trust ....................................... 17
        26. Reliance Upon Wills .................................................................... 17
        27. Nominees ..................................................................................... 18
        28. Agents .......................................................................................... 18
        29. Special Trustees ........................................................................... 18
        30. Execution and Delivery of Instruments ...................................... 18
        31. All Desirable Acts ....................................................................... 18

71612754.1
**Exhibit E**        **F. Margaret Campbell 2011 Trust**        **Page 3**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

B. Qualified Subchapter S Trust Savings Clause ........................................ 18
C. Facility of Payment .................................................................................. 19
D. Limitations on Authority of Trustee ....................................................... 19
E. Multiple Trustees .................................................................................... 20
    1. Custody of Assets ................................................................................ 20
    2. Majority Rule ....................................................................................... 20
    3. Assignment of Powers ........................................................................ 20
    4. Trustee Proposals ............................................................................... 20
    5. Execution of Documents ..................................................................... 21

**Article XI. Provisions Relating to Merrill Lynch Trust Company** ............. 21
A. Powers of MLTC Regarding Affiliates ................................................... 21
B. Jurisdiction and Nominee Name ............................................................. 21
C. Compensation of the Trustee .................................................................. 21
D. Power of the Trustee to Delegate ............................................................ 21
E. Power of the Trustee to Resign ............................................................... 22
F. Trustee's Accounting .............................................................................. 22
G. MLTC Named as Successor Trustee in Original Document ................... 22
H. Trustee's Power to Deal with Environmental Hazards .......................... 22

**Article XII. Trust Protector** ........................................................................ 23
A. Appointment of Trust Protector and Successor Trust Protector ............ 23
B. Designation of Successor Trust Protector .............................................. 23
C. Limited Right of Amendment and Restatement ...................................... 23

**Article XIII. Death Benefits Payable to the Trust** ...................................... 24
A. Insurance Policies ................................................................................... 24
B. Collection of Life Insurance and Other Death Benefits ......................... 24
C. Exoneration of Payors ............................................................................ 25

**Article XIV. Spendthrift Provision** ............................................................. 25

**Article XV. Miscellaneous Provisions** ........................................................ 25
A. Income .................................................................................................... 25
B. Exoneration of Third Persons ................................................................. 26
C. Trust Binding Upon Successors .............................................................. 26
D. Perpetuities ............................................................................................. 26
E. Copies; Memorandum of Trust ............................................................... 26
F. Powers of Appointment .......................................................................... 27

**Article XVI. Construction Provisions** ......................................................... 27
A. Trustee .................................................................................................... 27
B. Executor ................................................................................................. 27
C. Children .................................................................................................. 27
D. Descendants ........................................................................................... 27
E. Income Beneficiaries .............................................................................. 27
F. Living ...................................................................................................... 27

71612754.1

**Exhibit E**                  **F. Margaret Campbell 2011 Trust**                 **Page 4**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

G. Determination of Incompetency.................................................................................28
H. Internal Revenue Code................................................................................................28
I. Gender and Number......................................................................................................28
J. Governing Law..............................................................................................................28
K. Headings......................................................................................................................28
L. Survivorship .................................................................................................................28
M. Distributions to or Allocations among Descendants ..............................................28

Schedule A ........................................................................................................................A.1

- iv -

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

# *F. Margaret Campbell 2011 Trust*

I, *F. Margaret Campbell* aka *Freda Margaret Campbell*, of Cleveland, Ohio, am a Grantor of a Declaration of Trust (the "*Trust*"), dated March 25, 1993 which was fully amended and restated on July 24, 1996 and again on July 2, 2001, and amended on February 1, 2004 (the "*Prior Agreement*").  In Article II of the *Prior Agreement*, I reserved the right to amend the *Prior Agreement*, in any manner, by an instrument in writing signed by myself and delivered to the Trustee.  I hereby exercise such reserved right, effective this 19th day of April, 2011, as follows:

I hereby fully amend and restate the *Prior Agreement* so that, henceforth, the provisions of this instrument, as the same may be hereafter amended, as provided herein, shall govern the administration of the Trust.

I, *F. Margaret Campbell* of Cleveland, Ohio, make this Declaration of Trust Agreement as Grantor and Trustee, on this 19th day of April, 2011.

## *Witnesseth:*

I, *F. Margaret Campbell*, desire to establish a trust with the expectation and intent that this trust, as further funded by lifetime and testamentary gifts, will serve as a vehicle for the management and ultimate disposition of a portion of my estate.

To that end, I declare that I hold the property listed on Schedule A as Trustee, and agree to hold all other property or proceeds which I may acquire as Trustee, (collectively, the "*Trust Estate*") in trust for the following uses and subject to the following terms.

## Article I.
## Name and Beneficiaries of Trust

This trust shall be known as the *F. Margaret Campbell 2011 Trust* and is for the primary benefit of myself and then my children.  The names and dates of birth of my presently living children are:

| Name | Date of Birth |
|---|---|
| *Allen F. Campbell ("Allen")* | *September 23, 1948* |
| *Frederick M. Campbell ("Frederick")* | *September 17, 1951* |

For all purposes of Trust, *Frederick's* step-daughter, *Manuela Hernandez*, shall be treated as a child of *Frederick's* and as a grandchild of mine.

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

### *Article II.*
### *Administration during my Life*

During my lifetime, this trust shall be administered as follows:

**A.   *Income and Principal While I am Competent.***   Whenever I am competent and acting as Trustee, I shall deal with the ***Trust Estate*** as I desire for my benefit. Whenever I am competent but not acting as Trustee, the Trustee shall distribute to me, or for my benefit, so much or all of the net income and principal of the trust as I request and shall periodically add any undistributed net income to principal. Further, if this trust owns tangible personal property, I shall have the right to possess, use, consume and in all manner enjoy such property, and the Trustee shall have no duty to keep informed as to the condition or location of such property or to inventory such property. These rights shall be personal to me and shall not be exercisable by any guardian or representative.

**B.   *Income and Principal While I am not Competent.***   Whenever I am considered incompetent, the Trustee shall distribute to me, or for my benefit, so much or all of the net income and principal of the trust as the Trustee considers desirable to provide for --

- My support, health, education and best interests; and

- The support, health, education and best interests of any descendant of mine who is dependent upon me.

The Trustee shall periodically add any undistributed net income to principal.

The Trustee also is authorized to make gifts to any one or more of my descendants, as the Trustee considers to be in the best interests of my estate and family considering my support, health and best interests, my dispositive wishes as indicated in this Trust Agreement, and the anticipated tax benefits and costs of any gift. The Trustee shall pay any gift or other transfer tax resulting from such gifts.

**C.   *Power to Amend and Revoke.***   I reserve the right to amend or revoke this Trust Agreement, in whole or in part, by a written instrument (other than a Will) delivered to the Trustee during my lifetime or kept with the trust records. The property to which any revocation relates shall be conveyed to me or as I direct. These rights shall be personal to me and shall not be exercisable by any guardian or representative for me.

**D.   *Attorney-in-Fact for Grantor While Serving as Trustee.***   While the Grantor is serving as Trustee, the attorney-in-fact under such individual's durable power of attorney shall have the ability to make inquiries, receive information and give direction to any institution or individual regarding any asset titled in the name of the Trust or the currently serving Trustee of this Trust, in his or her fiduciary capacity. Any person or institution relying upon such durable power of attorney shall be entitled to presume conclusively that such durable power of attorney is in full force and effect. Any person or institution may rely on a copy of such durable power of attorney to be in effect and to be a true and correct copy. Such copy shall

71612754.1

**Exhibit E**                **F. Margaret Campbell 2011 Trust**                **Page 7**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

be considered as an original and shall relieve any person to whom or which such copy is delivered of any duty to inquire further. No person relying in good faith upon such durable power of attorney shall be required to see to the application and disposition of any moneys or other property paid or delivered to my attorney-in-fact designated thereunder.

**E.    *Distributions to Persons Holding Certain Powers of Attorney from Me.***  During my lifetime, the Trustee shall distribute to any person possessing a Power of Attorney from me such amount or amounts from the ***Trust Estate*** as may be requested in writing by such person acting under and pursuant to the provisions of any Power of Attorney that specifically provides for the power to withdraw property from this Trust Agreement.

### *Article III.*
### *Administration after my Death*

Upon my death, the assets comprising the ***Trust Estate***, including all accrued and undistributed net income and all property that may be added to the ***Trust Estate*** by reason of my death (pursuant to my Will or otherwise), shall be administered as follows:

**A.    *Payment of Claims, Expenses, Charitable Pledges and Taxes.***  The Trustee shall first pay, or make provision for the payment of, claims, expenses, charitable pledges and taxes of my estate, but only to the extent provided in Article VIII.

**B.    *Disposition of Personal Effects and Specific Bequests.***  The Trustee shall distribute all tangible personal property and specific bequests in the same manner as such property would have been distributed if such property had been part of my probate estate.

**C.    *Administration of Remaining Trust Estate.***  After the payments and distributions authorized above, the remaining assets comprising the ***Trust Estate*** (the "***Divisible Estate***") shall be administered as follows:

**1.    *Allocation to Descendants Trust.***  The Trustee shall allocate and distribute a fractional portion of the ***Divisible Estate*** to the trustee of the ***F. Margaret Campbell Family 2011 Descendants Trust***, dated April 19, 2011, established by myself, as grantor and trustee (the "***Descendants Trust***"). Such property to be added to, and administered as an integral part of, the principal of the ***Descendants Trust***. The fraction (if any) of the ***Divisible Estate*** which shall be allocated to the ***Descendants Trust*** shall be calculated as follows --

71612754.1

| | |
|---|---|
| | The amount (if any) of my *GST exemption* (as defined in the *Code*) which is allocated by my executor to the *Trust Estate*. The Trustee's good faith determination of such amount shall be final and binding on all persons. |
| | The greater of (i) the numerator or (ii) the aggregate value of the *Divisible Estate* as finally determined for federal estate tax purposes in connection with my death. |

**2.** **Allocation to Family Trust.** The Trustee shall allocate the balance (if any) of the *Divisible Estate* after the allocation to the *Descendants Trust* pursuant to Article III.C.1. to a separate trust (the "*Family Trust*"). The *Family Trust* shall be administered as set forth in Article IV.

## Article IV.
### Administration of Family Trust

Upon establishment and funding of the *Family Trust* in accordance with the provisions of this Trust Agreement, the Trustee shall administer the *Family Trust* as follows:

**A.** **Division of the Family Trust.** The Trustee shall divide the *Family Trust* into as many separate shares, equal in value, as is necessary to provide (i) one such share for the benefit of each child of mine who is then living and (ii) one such share for the collective benefit of the then living descendants of each child of mine who is then deceased but who has at least one then living descendant.

**B.** **Administration of Separate Trusts for Children.** Each such share established for the benefit of a child of mine shall be held and administered as a separate trust, as follows:

**1.** **Income for my Child.** Until my child has attained the age of 21 years, the Trustee shall --

- Distribute to, or for the benefit of, such child so much or all of the net income of the trust as the Trustee considers desirable to provide for his/her support, health, education and best interests; <u>and</u>

- Periodically add all undistributed net income to principal.

After my child has attained the age of 21 years, the Trustee shall distribute to, or for the benefit of, such child all of the net income of the trust at least quarter annually (monthly, if feasible) until termination of the trust.

**2.** **Principal for the Beneficiary.** The Trustee shall distribute to, or for the benefit of, the beneficiary of the trust so much or all of the principal of the trust as the Trustee considers desirable to provide for the support, health, education and best interests of the beneficiary.

**3.** **Limited Power in the Beneficiary to Appoint Principal.** After the beneficiary attains the age of 21 years, the Trustee shall distribute so much or all of the principal of the trust to such of my descendants as the beneficiary shall appoint (i) by a signed instrument delivered to the Trustee during his/her lifetime or (ii) by Will; provided, however, in no event shall principal be appointed to (x) the beneficiary, (y) his/her estate, or (z) creditors of the beneficiary or of his/her estate. To be an effective appointment, such instrument or Will must refer specifically to this power of appointment.

**4.** **Distribution upon my Child's Death.** If my child dies before receiving the entire trust, upon his/her death, the Trustee shall distribute all property comprising the **Trust Estate** to such of my child's creditors, as my child shall appoint by Will referring specifically to this power of appointment; provided, however, the property subject to this general power of appointment shall be limited to that portion of the **Trust Estate** which, if distributed as if no such power of appointment existed, would be a generation-skipping transfer ("**GST**") under the **Code** and would result in a **GST** tax.

The Trustee, subject to Article VI, shall distribute all unappointed property comprising the **Trust Estate** (including property as to which my child has no power of appointment) to my child's then living descendants, **per stirpes** (or, if there are none, to my then living descendants, **per stirpes**); provided, however, any property distributable to a child of mine for whom a separate trust is then being administered hereunder shall instead be added to the principal of such separate trust.

**C.** **Distribution of Shares for More Remote Descendants.** The Trustee shall further divide, on a **per stirpes** basis, each such share established for the collective benefit of the then living descendants of a deceased child of mine into separate shares for such descendants. I recognize that a **per stirpes** division (i) may not result in the creation of a separate share for every then living descendant of such deceased child of mine and (ii) may produce separate shares which are not all equal in value. The Trustee shall administer each such separate share, as a separate trust hereunder, as follows

- Until the beneficiary attains the age of 21 years, distribute to, or for the benefit of, such beneficiary so much or all of the net income and principal of such trust as the Trustee considers desirable for his/her support, health, education and best interests;

- Upon such beneficiary attaining the age of 21 years, distribute to, or for the benefit of, such beneficiary all of the net income of such trust at least quarterly (monthly, if feasible), and so much or all of the principal of the trust as the Trustee considers desirable for his/her support, health, education and best interests; and

- Periodically add any undistributed net income to principal.

71612764.1

**Exhibit E**        **F. Margaret Campbell 2011 Trust**        **Page 10**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

If the beneficiary dies before receiving the entire trust, upon his/her death, the Trustee shall distribute all property comprising the *Trust Estate* to such of the beneficiary's creditors, as the beneficiary shall appoint by Will referring specifically to this power of appointment; provided, however, the property subject to this general power of appointment shall be limited to that portion of the *Trust Estate* which, if distributed as if no such power of appointment existed, would be a generation-skipping transfer ("*GST*") under the *Code* and would result in a *GST* tax.

The Trustee, subject to Article VI, shall distribute all unappointed property comprising the *Trust Estate* (including property as to which the beneficiary has no power of appointment) to the beneficiary's then living descendants, *per stirpes* (or, if there are none, to the beneficiary's nearest ancestor who is a descendant of mine; but, if no such ancestor is then living; then the descendants of the beneficiary's nearest ancestor who is a descendant of mine and who has descendants then living; but, if there is no such ancestor with then living descendants, then my descendants); provided, however, any property distributable to a beneficiary for whom a separate trust is then being administered hereunder shall instead be added to the principal of such separate trust.

### Article V.
### *Failure of Descendants*

If, at any time after my death, there is any trust being administered hereunder for which (but for this Article V) no beneficiary is then living, the Trustee shall distribute the assets comprising such trust, subject to Article VI, to my heirs in accordance with the then existing statutes of Ohio governing the intestate distribution of tangible personal property, as if --

- I owned such assets free of trust;

- All such assets were tangible personal property; *and*

- I had then died, intestate, domiciled in Ohio, a single person without descendants.

If I have no heirs then living, all of such assets shall be distributed to one or more charitable organizations described in section 170(c) of the *Code* as selected by the Trustee. In selecting such organizations, I request the Trustee to give consideration to those charities to which I contributed time or property during my lifetime (to the extent the Trustee is aware of such contributions).

### Article VI.
### *Powers in Trust*

If, upon the termination of any trust created hereunder, property would (but for this Article VI) be distributable to any beneficiary who is under 30 years of age, such property shall vest in such beneficiary, but the Trustee shall not distribute such property. Instead, the Trustee shall retain such property in trust and shall --

*- Page 6 -*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

- Distribute to or for the benefit of such beneficiary so much or all of the net income and principal of such trust as the Trustee considers desirable for his/her support, health, education and best interests; **and**

- Periodically add any undistributed net income to principal.

The Trustee shall distribute all property comprising such trust to the beneficiary when he/she attains the age of 30 years (or to such beneficiary's estate upon his/her death prior to attaining such age).

Notwithstanding the foregoing, the Trustee is authorized to distribute the entire trust to a custodian for the benefit of such beneficiary whenever the Trustee considers such distribution advisable in light of the needs and best interests of the beneficiary, the size of the trust and any other facts and circumstances which the Trustee considers relevant, even though such distribution may result in the entire trust being distributed to the beneficiary before he/she attains 30 years of age.

### Article VII.
### Statement of Intent

**A.    Priority and Guidance.**   In making investments and discretionary distributions, the Trustee shall not consider the interests of any remainderman. In addition, the Trustee may be guided by the following examples of possible distributions of property for the purposes listed below, but these examples shall in no way bind the Trustee to make any discretionary distribution. Although I intend to grant broad discretion to the Trustee, I do not intend to encourage indolence or extravagance.

**1.    Support.**  Distributions for the support of a beneficiary may include distributions for the necessities of food, clothing, transportation, shelter and similar needs, as well as distributions for a beneficiary's maintenance in reasonable comfort and support in his/her accustomed manner of living.

**2.    Health.**  Distributions for the health of a beneficiary may include distributions for the payment of medical insurance, medical and dental fees, equipment and drugs, hospital and nursing home care (regardless of length of time), services of private nurses and companions, and psychiatric care and counseling, and may include care for such beneficiary's last illness.

**3.    Education.**  Distributions for the education of a beneficiary may include distributions for attendance at or enrollment in preparatory, religious, undergraduate, graduate, professional and vocational schools, public or private, and wherever located, and may include tuition, room, board, books, transportation and other living and incidental expenses.

**4.    Best Interests.**  Distributions for the best interests of a beneficiary may include distributions to enable a beneficiary to purchase an automobile, to make a down payment on the purchase of a home, to furnish a home consistent with a comfortable standard of living, to

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

travel, to invest a reasonable amount in business enterprises in which the beneficiary would be an active participant, or to make gifts to such beneficiary's descendants or for charitable purposes. Distributions for the best interests of a minor beneficiary also may include distributions to enable him or her to attend summer camp or to participate in recreational activities such as music, dance or athletic lessons or leagues.

### B. Consideration of Beneficiary's Resources and Tax Consequences.

In considering discretionary distributions, the Trustee may, but need not, consider the beneficiary's income and resources from all sources known to the Trustee, the obligations of such beneficiary to support others, and the obligations of others to support such beneficiary. The Trustee shall be entitled to rely on a statement of the beneficiary's income and resources signed by the beneficiary or his/her parent or guardian. The Trustee also may, but need not, consider the tax consequences resulting from any decision to accumulate or to distribute income or principal. However, the Trustee shall not be obligated or required to take that action which will, or may be expected to, result in the least aggregate tax liability being incurred by the trust and the beneficiary.

Nothing shall prevent or prohibit the Trustee from considering such matters in one or more instances, but not in other instances, or from considering such matters for one beneficiary but not for another beneficiary.

### Article VIII.
### Claims, Expenses, Pledges and Taxes

**A.** **Claims, Expenses and Charitable Pledges.** After my death, the Trustee shall pay, or reimburse my executor for:

- All claims allowable against my estate;

- The expenses of my last illness and funeral;

- Expenses of administration (including ancillary administration) in such amounts as the Trustee considers reasonable, without regard to any limitation imposed by law or rule of court; and

- Any charitable pledge signed by me (unsigned pledges shall not be recognized) unless such pledge by its terms is released by my death or conditioned upon my survival.

**B.** **Taxes.** Subject to the provisions of Article VIII.C., the Trustee shall pay, or reimburse my executor for, all estate, inheritance, legacy, succession or transfer taxes imposed by reason of my death (my "*Death Taxes*"), as follows:

**1.** **Apportionment Pursuant to Terms of my Will or State Law.** The Trustee shall pay, or reimburse such Executor for, *Death Taxes* only to the extent that my *Death Taxes* are apportioned against the *Trust Estate* under the terms of my Will (or, in the

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

absence of any tax apportionment provision in my Will, under the laws of the state in which I am domiciled at my death).

**2.    Interest and Penalties.** Interest and penalties concerning any **Death Taxes** shall be paid by, and charged against, the **Trust Estate** to the same extent, and in the same manner, as such **Death Taxes.**

**C.    Conditions to Payment.** Notwithstanding the foregoing, the Trustee shall not pay, or reimburse my executor for, any claims, expenses, charitable pledges or **Death Taxes** unless my executor requests such payment or reimbursement.  In addition --

- Property otherwise excluded from my gross estate for federal estate tax purposes shall not be used to pay such items;

- Property included in my gross estate for federal estate tax purposes but excluded for state estate tax purposes shall not be used to pay any such items unless the Trustee believes there are no other assets available, readily marketable and desirable to make such payments; and

- United States treasury bonds redeemable at par in payment of the federal estate tax shall be used first in payment of such tax.

The Trustee shall rely conclusively on a certificate of my executor as to the validity and correctness of the amount of any such items, but receipt of such certificate shall not be a condition to the Trustee's authority to make such payments.

### Article IX.
### Trustees

**A.    Appointment of Successor Trustees.**  In the event of a vacancy in the trusteeship, however created, a successor Trustee shall be appointed as follows:

- Whenever I am living and competent, I reserve the right to appoint such successor Trustee.  This right shall be personal to me and shall not be exercisable by any guardian or representative.

- I may exercise the foregoing right (i) by written instrument delivered to the Trustee during my lifetime or kept with the trust records or (ii) by my Will.  Such written instrument or Will --

  - May be executed and delivered prior to the occurrence of any vacancy in the trusteeship; and

  - May set forth a sequence of alternative appointments to (i) address the possibility of multiple future vacancies in the trusteeship and (ii) guard against the possibility

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

that an appointee may be unavailable, ineligible or unwilling to serve as a successor Trustee.

However, any appointment by my Will shall be effective only with respect to vacancies in the trusteeship occurring after (or caused by) my death.

- In default of my appointment of a successor Trustee --

  - Not later than ten (10) days after an event causing such vacancy during my lifetime; or

  - If such vacancy occurs after (or is caused by) my death, either (i) prior to my death or (ii) in my Will; then

the successor Trustee shall be the following persons in the order named:  (i) *Frederick*; then (ii) *Allen*, then (iii) *Merrill Lynch Trust Company*.  The last serving of *Frederick* and *Allen* shall have the right to appoint a successor Trustee and/or a list of successor Trustees.

- If no successor Trustee is effectively appointed pursuant to the preceding clauses, a majority of the income beneficiaries of the affected trust shall have the right to appoint such successor Trustee.  Such right may be exercised only by written instrument executed within a reasonable time after the event causing such vacancy in the trusteeship.  Exercise of such right within 30 days after the event causing such vacancy shall be conclusively deemed to satisfy such "reasonable time" requirement.

Any appointment of a successor Trustee shall be effective only upon written acceptance of the trusteeship by such successor Trustee.  Any successor Trustee shall have all the rights, powers, duties, discretions and immunities granted to the original Trustee.

**B.   *Beneficiary as Trustee of each Separate Trust*.**  Notwithstanding Article IX.A. (or any other provision of this Trust Agreement), after the establishment of separate trusts (pursuant to Article IV.), the Trustee of each such separate trust shall be the beneficiary for whom such trust is established; provided, however, such beneficiary must be --

- Competent and willing to serve; and

- at least thirty (30) years of age.

If a beneficiary satisfies such requirements but then becomes incompetent or unwilling to serve, a vacancy in the trusteeship shall exist and be filled pursuant to Article IX.A.; provided, however, whenever such beneficiary thereafter again satisfies such requirements, the beneficiary shall be the Trustee of his/her separate trust without the execution of any further instrument.

**C.   *Persons Eligible to Act as Successor Trustee*.**  The persons eligible to be appointed as a successor Trustee shall be limited to:

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

- Any individual who has attained the age of thirty (30) years; or

- Any bank or trust company which is (i) organized under the laws of the United States of America, any state thereof or the District of Columbia and (ii) is qualified to administer trusts in the jurisdiction in which such institution is located.

**D.    Resignation and Removal of Trustees.**  Any Trustee may resign at any time, without cause, with respect to any trust created hereunder, by executing and delivering a written instrument to that effect to the other Trustee(s) of such trust (or, if none, to the person(s) then designated to become, or empowered to appoint, the successor Trustee pursuant to Article IX.A.).

Any Trustee other than **Frederick** or **Allen,** may be removed at any time, without cause, by the persons then empowered, under Article IX.A., to appoint successor Trustees if a vacancy in the trusteeship were to exist.  Such removal shall be effected by delivering a signed instrument to that effect to such Trustee and to any other Trustee(s).

Notwithstanding the foregoing, no Trustee resignation or removal which would result in a vacancy in the trusteeship shall be effective until a successor Trustee is appointed pursuant to Article IX.A.

**E.    Title.**  The title to the **Trust Estate** shall vest forthwith in any successor Trustee, but any resigning or removed Trustee shall execute all instruments and do all acts desirable to vest title to the **Trust Estate** in any successor Trustee without court accounting.

**F.    Accountings.**  During my tenure as Trustee, I shall not be required to furnish accountings to anyone.  At all other times, upon the written request of an income beneficiary of any trust, the Trustee shall furnish such beneficiary with an accounting showing the receipts, disbursements and inventory of such trust since the most recent accounting for such trust (or, if there is no prior accounting, from the date when I ceased to act as the Trustee).  Notwithstanding the foregoing, no Trustee shall be required to furnish accountings more often than annually to any beneficiary (but may do so voluntarily).  No Trustee shall be required to file accountings in any court or with any public official.

**G.    Approval of Accountings.**  Any accounting shall be deemed true and correct, and the Trustee making such accounting shall be discharged from all liability as to all transactions disclosed on such accounting to all persons, including persons not in being, to the extent I (or, after my death, a majority of the income beneficiaries of the affected trust) approve such accounting in writing or fail to notify such Trustee, in writing, that such accounting is not approved within two (2) years after receipt of such accounting.

With my approval (or, after my death, the approval of a majority of the income beneficiaries of the affected trust), a successor Trustee may accept the accounting rendered by and the property received from a predecessor Trustee without incurring any liability for so doing, and such approval shall serve as a complete discharge to the predecessor Trustee.

71612754.1

*- Page 11 -*

**H.    Compensation.**  Any corporate Trustee shall be entitled to reasonable compensation for its services in administering any trust in accordance with its then published fee schedule for trust services.  Any individual Trustee (other than myself, or any descendant of mine) shall be entitled to reasonable compensation for his/her services hereunder.  Every Trustee shall be entitled to be reimbursed for reasonable expenses and costs, including legal fees, incurred in administering any trust.

**I.    Exoneration of Trustees Acting in Good Faith.**  No Trustee acting in good faith shall be liable for any loss, liability, expense or damage to the *Trust Estate* occasioned by such Trustee's acts or failures to act in administering the trust.  The Trustee shall be presumed to have acted in good faith if its action or failure to act is in reliance on a written opinion of counsel.

**J.    Exoneration of Trustees for Acts of Others.**  No Trustee shall be liable for the acts or failures to act of any agent appointed with due care.  No Trustee shall be --

- Under a duty to inquire into the acts or doings of a previous Trustee or to examine the accountings or records of a previous Trustee or any allocation made by a previous Trustee; or

- Liable for the acts or failures to act of any previous Trustee or for failing to demand or contest any accounting of any previous Trustee.

**K.    Waiver of Qualification and Bond.**  No Trustee shall be required to qualify or take an oath before any court or public official in any jurisdiction.  Further, no bond or other security shall be required of any Trustee in any jurisdiction.  If a bond should nevertheless be required, I waive surety thereon.

**L.    Authority of Representative.**  Except as otherwise specifically provided in this Trust Agreement, whenever a person described or referred to herein is under a legal disability (whether by reason of age or otherwise), his/her legal or natural guardian (or, if none, any other competent adult selected by the Trustee) shall, for and on behalf of such person, (i) receive all notices and accountings; (ii) execute all receipts; (iii) approve all accountings; (iv) appoint successor Trustees; and (v) generally, do all other acts required or permitted hereunder.

## Article X.
### Trustee's Rights And Discretions

**A.    Rights and Discretions.**  I give to the Trustee, subject to the other provisions of this Trust Agreement --

- The rights and discretions set forth below; and

- Except to the extent they may be inconsistent with the rights and discretions granted herein, all powers otherwise conferred upon the Trustee by law;

71612754.1

**Exhibit E**               **F. Margaret Campbell 2011 Trust**               Page 17

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

all of which may be exercised without giving notice to any person or obtaining the consent of any beneficiary or any court order:

    **1.**    **Additions to the Trust Estate.** To receive additions to any trust and to hold and administer the same under the provisions of this Trust Agreement;

    **2.**    **Retention of Assets.** To retain without liability for depreciation or loss any asset received from anyone, including me or my estate;

    **3.**    **Sale of Assets.** To sell, exchange, assign or transfer any asset comprising part or all of the *Trust Estate* upon such terms and conditions and in such manner as the Trustee considers best;

    **4.**    **Investment of Assets.** To invest and reinvest any money or property comprising the *Trust Estate* in, and to purchase or otherwise acquire from my estate, from any beneficiary or from others, any property, real or personal, of any kind or nature, including without limitation --

- Any stocks, whether common or preferred, and including stocks of any corporate Trustee, warrants, participations in discretionary common trust funds, money market funds and mutual funds;

- Government bills, notes and bonds, corporate bonds, whether secured or unsecured, debentures, bankers acceptances, certificates of deposit, mortgages and commercial paper;

- Foreign currencies, gold, silver and other precious metals;

- Commodity and stock options (for the purpose of hedging but not for speculation);

- Real estate, whether improved or unimproved;

- Partnership interests, whether general or limited;

- Objects of art, coins, stamps, antiques and other collectibles;

- Life estates and remainder interests following a life estate or a term of years; and

- Interests in any of the foregoing;

even though such investment or purchase (by reason of its character, amount, proportion to the total property of any trust or otherwise) would not be considered appropriate for a trustee apart from this provision; and in the making and retention of investments and reinvestments, the Trustee shall not be confined to the obligations and securities mentioned in any statute or rule of court for fiduciaries for the investment of funds, and the Trustee shall have no duty to diversify the assets or investments of any trust;

*- Page 13 -*

71612754.1

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

**5.**  ***Joint Investment With Other Trusts.***  To make joint investments involving (i) assets comprising the ***Trust Estate*** and (ii) assets held by other trusts established by one or more of the following persons --

- Me;

- One or more of my descendants; or

- One or more of my ancestors;

for the purpose of making such joint investments, to cause the several trusts to --

- Enter into partnership agreements, agency agreements, letters of understanding, or other arrangements establishing the respective rights and interests of each particular trust in each joint investment;

- Divide the income derived from each joint investment among such several trusts in proportion to their respective interests therein; and

- Assign undivided interests in specific assets comprising any joint investment to such several trusts;

**6.**  ***Operating Businesses.***  To initiate and to carry on (as a sole proprietor, general or limited partner, shareholder, joint venturer, or in any other ownership capacity) any new or existing business, enterprise, investment or trade, for such time as the Trustee considers advisable; to reorganize, recapitalize or restructure any corporation or partnership or to convert any corporation into a partnership or vice versa; to serve with compensation as an officer, director, employee, consultant, agent, independent contractor or in any other capacity of any such business or enterprise without any duty to account for such compensation; to contribute, invest or loan assets of any trust to any such business; to pledge assets of any trust as security for loans made to any such business;

**7.**  ***Real Property.***  To improve or develop any real estate; to construct, alter or repair buildings or structures; to settle boundary lines; to grant easements and other rights affecting real estate; to partition and to join with co owners and others in dealing with real estate; to lease real estate for such term and upon such provisions as the Trustee considers advisable even though the term of the lease extends beyond the termination of any trust; to generally deal with real estate in any manner and for such purposes as the Trustee considers advisable; to permit any beneficiary to occupy any real property forming part of the ***Trust Estate*** upon such terms as the Trustee shall consider advisable, whether rent free, in consideration of the payment of taxes, insurance, maintenance and ordinary repairs, or otherwise;

**8.**  ***Natural Resources.***  To deal with any interest in oil, gas, mineral, timber or farming operations or investments in any manner as I could do if living and the owner of such interest;

71612764.1

**Exhibit E**     **F. Margaret Campbell 2011 Trust**     **Page 19**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

9.  *Environmental Provisions.*  To periodically inspect, review and monitor any property for the purpose of determining compliance with any law, rule or regulation affecting such property; to take all action which the Trustee considers advisable to prevent, abate, "clean up," or otherwise respond to any actual or threatened violation of any law, rule or regulation affecting any property related to the generation, use, treatment, storage, disposal, release, discharge or contamination by any materials or substances that are prohibited or regulated by law or that are known to pose a hazard to the environment or human health, and the Trustee may take such action prior to the initiation of enforcement action by any governmental agency; to obtain estimates of costs to prevent, abate, "clean up," or otherwise respond to such violations, actual or threatened, to notify the beneficiaries of such estimated costs and to permit the beneficiaries to pay for such response costs; to disclaim any power, actual or implied, which the Trustee believes will or may cause the Trustee to be considered an "owner" or "operator" of property under the provisions of the Comprehensive Environmental Response, Compensation and Liability Act ("*CERCLA*"), as amended, or which may otherwise cause the Trustee to incur liability under *CERCLA* or any other environmental law, rule or regulation;

10.  *Location of Assets.*  To keep any property of any trust at any place or places in the United States of America, or with a depositary or custodian at such place or places;

11.  *Abandonment of Property.*  To abandon any property, real or personal, which the Trustee considers to be worthless or not of sufficient value to warrant keeping or protecting; to abstain from the payment of taxes, liens, water rents, assessments, repairs, maintenance or upkeep of any such property; to permit any such property to be lost by tax sale or other proceedings; or to convey any such property for a nominal consideration or without consideration;

12.  *Bank Accounts.*  To open and maintain one or more checking, savings or time deposit accounts with any bank, trust company, savings and loan or building and loan association, or any other financial institution, wherever located (even though such financial institution is a Trustee or an affiliate of a Trustee); to deposit to the credit of any such account all or part of the funds comprising the *Trust Estate*, whether or not such funds earn interest;

13.  *Borrowing of Funds.*  To borrow, in the name of any trust, such sums for such periods and on such terms as the Trustee considers advisable (including the right to borrow from a corporate Trustee or an affiliate of a corporate Trustee); to secure any such loan by deed of trust, mortgage or pledge; no lender shall be bound to see to or be liable for the application of the proceeds of any such loan; unless otherwise expressly agreed, the Trustee shall not be personally liable for any such loan, but each such loan shall be payable only out of assets of the affected trust;

14.  *Lending of Funds.*  To lend money to my estate, to any beneficiary or to any other person, upon such terms and with such security, if any, as the Trustee considers advisable;

**15.  Voting Securities.**  To vote by proxy or in person any security comprising a part of any trust; to enter into any kind of pooling agreements and voting trusts, even though such action may involve delegation of authority;

**16.  Compromise Debts.**  To enforce, abandon, defend or have adjudicated (by legal proceedings, arbitration or by compromise) any claim or demand of any nature which arises out of or otherwise exists in favor of or against any trust;

**17.  Foreclosure of Mortgages.**  To foreclose, as an incident to the collection of any bond or note, any deed of trust or mortgage securing such bond or note; to bid in the mortgaged property at such foreclosure sale; to acquire the property by deed from the mortgagor without foreclosure; to retain property bid in under foreclosure or acquired without foreclosure for such time as the Trustee considers advisable; and to dispose of such property by sale, exchange or otherwise upon such terms as the Trustee considers advisable;

**18.  Determination of Income and Principal.**  To reasonably determine the manner of ascertaining income and principal and the allocation or apportionment between income and principal as the Trustee considers desirable --

- Even though contrary to any statutory or regulatory presumption concerning ascertainment of income and principal; and

- Without regard to the relative interests of the beneficiaries; but

- With regard to general principles of trust accounting;

notwithstanding the above, except as required by applicable law, upon the sale or other disposition of property which has been unproductive or under productive of income, no part of the proceeds received shall be allocated to income;

**19.  Depreciation Reserves.**  To establish out of income, and to credit to principal, reasonable reserves for depreciation, rehabilitation, major repairs, replacements and losses in value resulting from wear and tear and obsolescence of tangible property, whether real or personal;

**20.  Accumulations of Income.**  To exercise all rights, powers and discretions with respect to all accumulations of income held in any trust;

**21.  Division and Allocation of Assets.**  Whenever the Trustee is authorized or required to divide the principal or income of any trust into separate trusts or to distribute principal or income among beneficiaries --

- To make such division or distribution in kind, or partly in kind and partly in money, and

- To allocate or distribute (i) undivided interests in assets, (ii) disproportionate interests in assets or (iii) different assets  - without regard to any requirement to effect a

71612764.1

**Exhibit E**                    **F. Margaret Campbell 2011 Trust**                    **Page 21**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

proportionate allocation of each asset among the separate trusts or among beneficiaries (but any property divided or distributed in kind shall be valued at its fair market value as of the date of division or distribution);

to hold several trusts as a common fund, dividing the income proportionately among them; to assign undivided interests in specific assets to several trusts; and to make joint investments of the funds comprising several trusts;

**22. Division of Trusts.** To divide any trust, whether existing or to be established, into two or more separate smaller trusts (without any requirement for said separate smaller trusts to be equal in value, and without any requirement for discretionary distributions to be made proportionally from said separate smaller trusts), whenever the Trustee believes such division may achieve desirable tax results for such trust or its beneficiaries, promote easier administration or otherwise be in the best interests of any trust or its beneficiaries; upon termination of such separate smaller trusts, to distribute to any beneficiary from any one such separate smaller trusts, in such proportions and amounts as the Trustee considers desirable (so long as the distributions from all such separate smaller trusts would, if such separate smaller trusts were still a single trust, satisfy the provisions governing such distribution);

**23. Merger of Trusts.** Whenever the Trustee is holding any trust for the primary benefit of any persons for whose primary benefit the Trustee is holding any other trust upon substantially the same terms, the Trustee may consolidate such trusts and hold them as a single trust, so long as no property will be held in trust for a period which would violate any applicable rule against perpetuities;

**24. Small Trust Termination.** Notwithstanding any other provision, if the Trustee determines that --

- The value of any trust does not warrant the cost of continuing the trust; or

- The burden of taxation on the trust or its beneficiaries has become unduly onerous by reason of the existence of the trust; or

- Administration of the trust otherwise has become impractical;

the Trustee may distribute all property comprising such trust to the income beneficiaries (in such proportions as the Trustee considers equitable);

**25. Authority after Termination of a Trust.** To exercise all rights, powers and discretions after the termination of any trust and until the same is fully distributed;

**26. Reliance Upon Wills.** In determining whether and to what extent a power of appointment has been exercised by Will, the Trustee may rely upon an instrument admitted to probate in any jurisdiction as the Will of the holder of the power; if the Trustee has no written notice of the existence of a Will or of probate proceedings within three months after the holder's death, the Trustee may assume such holder died intestate; this provision shall not,

*- Page 17 -*

71612754.1

**Exhibit E**          **F. Margaret Campbell 2011 Trust**          **Page 22**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

however, affect any right which an appointee or beneficiary in default of appointment may have against any distributee of property from the *Trust Estate;*

**27.    Nominees.**  To hold any investment in any form in which title will pass by delivery or in the name of a nominee without indicating that such investment is held in a fiduciary capacity, but the Trustee shall be liable for any act of its nominee in connection with the investment so held; to form partnerships for the purpose of taking and holding title to assets comprising the *Trust Estate;*

**28.    Agents.**  To employ accountants, attorneys, brokers, custodians, investment counsel and other agents (even though such agent is a Trustee or an employee of or associated with a Trustee); to pay such agents reasonable compensation, whether from income or principal, as the Trustee shall decide;

**29.    Special Trustees.**  To appoint or remove by written instrument any individual or qualified corporation, wherever located, as special trustee to hold title to or to invest, or both, any part of the *Trust Estate* (including property as to which the Trustee does not act);

**30.    Execution and Delivery of Instruments.**  To execute and deliver agreements, assignments, bills of sale, contracts, deeds, notes, powers of attorney, receipts and other instruments which the Trustee considers advisable for the advantageous administration of the *Trust Estate* or for the exercise of any right, power or discretion conferred upon the Trustee; and

**31.    All Desirable Acts.**  To perform all other acts which the Trustee considers desirable for the advantageous administration of the *Trust Estate.*

**B.    Qualified Subchapter S Trust Savings Clause.**  To the extent --

- The Trustee of any trust (i) receives or holds any stock of an *S corporation,* (ii) intends to acquire stock of an *S corporation,* or (iii) intends to consent to an election of *S corporation* status by a *C corporation* in which said trust is a shareholder, and

- Said trust does not otherwise qualify as a permissible shareholder of an *S corporation;*

said *S corporation* stock, assets intended to be used to acquire *S corporation* stock, or *C corporation* stock, as the case may be, shall be receipted into or segregated as a separate trust ("*QSST*") for the income beneficiary and administered as closely as possible to the original trust but so that all requirements of a *qualified subchapter S trust* set forth under section 1361(d) of the *Code* are met, including the requirements that --

- There be only one income beneficiary of the *QSST;*

- All net income of the *QSST* be distributed at least annually to such income beneficiary;

71612754.1
**Exhibit E**                **F. Margaret Campbell 2011 Trust**                **Page 23**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

- Any principal distributed from the *QSST* during the life of the income beneficiary be distributed only to such beneficiary;

- The interest of the income beneficiary in the *QSST* terminate on the earlier of such beneficiary's death or the termination of the *QSST*; and

- If the *QSST* terminates during the life of the income beneficiary, the *QSST* distribute all of its assets to such beneficiary.

I intend for any such *QSST* to qualify as a *qualified subchapter S trust* and, as a result, be a permissible shareholder of an *S corporation*. To that end, all provisions of this Trust Agreement shall be construed to effectuate this intent, and all provisions which would cause such *QSST* not to qualify as a shareholder of an *S corporation* shall not apply to, and be of no effect with respect to, such *QSST*.

**C.    *Facility of Payment.*** Whenever a beneficiary is, in the Trustee's judgment, incapable of managing financial affairs on account of age, illness, handicap, unavailability or other cause, the Trustee may distribute any income or principal otherwise distributable to such beneficiary either --

- To the parent or guardian of such beneficiary;

- To the individual with whom or the institution in which such beneficiary resides;

- To the children of such beneficiary who are legally or in fact dependent upon such beneficiary for their support or education;

- In the case of a minor beneficiary, to the minor beneficiary or to his/her custodian under any applicable Uniform Transfers (or Uniform Gifts) to Minors Act; or

- By applying the same for the benefit of such beneficiary;

the receipt of such beneficiary, other individual or institution, or evidence that such distribution was applied for the benefit of such beneficiary, shall be a full discharge of the Trustee for such distribution;

**D.    *Limitations on Authority of Trustee.*** Notwithstanding any other provision of this Trust Agreement, no Trustee shall make or participate in any Trustee decision with respect to --

- Gifts made during my lifetime from the *Trust Estate* to himself/herself or to any person whom he/she is legally obligated to support;

- Distributions of principal or income to himself/herself to the extent not limited by an ascertainable standard relating to support, health or education;

71612754.1

**Exhibit E**    **F. Margaret Campbell 2011 Trust**    **Page 24**

2020ADV251147/Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

- Distributions of principal or income which satisfy a legal obligation of such Trustee; or

- If such Trustee is also a beneficiary of such trust, an early termination of such trust.

Such discretionary powers shall be exercisable only by another Trustee (if any).

**E.    Multiple Trustees.** Except as otherwise specifically provided in this Trust Agreement, whenever multiple Trustees are acting, the following provisions shall be applicable where the context permits:

**1.    Custody of Assets.** The corporate Trustee, if any, shall have custody of the assets comprising the **Trust Estate** and shall handle all ministerial acts necessary or advisable in connection with the acquisition and transfer of personal property and money (including the signing and endorsement of checks, receipts, stock certificates and other instruments).

**2.    Majority Rule.** All Trustee decisions shall be made by affirmative vote or consent of a majority of the Trustees then serving. To the extent permitted under applicable law, a dissenting Trustee -- who votes against (or affirmatively refuses to consent to) a proposal which is nevertheless approved by a majority of the then serving Trustees -- shall have no liability to any person for participating in or carrying out the decision of the Trustees with respect to such proposal. In the event of an evenly divided vote of the Trustees on any issue (a "**deadlocked issue**") --

- If any beneficiary of the affected trust is then serving as a Trustee, the non-beneficiary Trustee(s), if any, may take action with respect to the **deadlocked issue** by majority vote or consent of such non-beneficiary Trustee(s); or

- In the absence of such action by majority vote or consent of non-beneficiary Trustee(s), the status quo shall be preserved with respect to the **deadlocked issue.**

**3.    Assignment of Powers.** A Trustee may, with the consent of any other Trustee, assign and delegate to such other Trustee any part or all of the rights, powers, titles, duties, discretions and immunities granted to or imposed upon the former Trustee. Any such assignment or delegation may be either for a specified time or until the assignment or delegation is revoked by a similar instrument.

**4.    Trustee Proposals.** A Trustee shall be presumed to have approved any proposed act, or proposed decision to refrain from acting, made by any other Trustee if the former fails to indicate disapproval within 15 days after being requested to do so in writing by the other Trustee. A Trustee shall not be obligated to continue to make such written proposal to another Trustee if (i) the proposal has been disapproved on at least two occasions and (ii) the former has informed the other Trustee that it will be assumed that such proposal continues to be disapproved until notice to the contrary has been received.

71612764.1
**Exhibit E**                **F. Margaret Campbell 2011 Trust**                **Page 25**

**5.** **Execution of Documents.** The Trustees may execute any instrument in connection with the administration of such trust by signing one instrument or concurrent instruments. The Trustees may delegate, to any one or more Trustees, the authority to execute such instruments on behalf of all Trustees.

## Article XI.
## Provisions Relating to Merrill Lynch Trust Company

The following provisions will apply when **Bank of America, N.A.,** through its **Merrill Lynch Trust Company** division (hereinafter referred to in this Article as **"MLTC"**), is serving as Trustee hereunder.

**A.** **Powers of MLTC Regarding Affiliates.** The Trustee shall have the following specific powers and may exercise the same in its sole and absolute discretion:

- To engage any corporation, partnership or other entity affiliated with the corporate Trustee (an "Affiliated Entity") to render services to any trust hereunder, including, without limitation, to act as a broker or dealer to execute transactions, (including the purchase of any securities currently distributed, underwritten or issued by an Affiliated Entity) at standard commission rates, markups or concessions and to provide other management or investment services, including the custody of assets, at such Affiliated Entity's standard rates, and to pay for any such services from trust property.

- To invest in open-end or closed-end investment companies offered by an Affiliated Entity or to which an Affiliated Entity may render services for compensation.

- To invest trust assets or sweep cash awaiting distribution or investment into the corporate Trustee's own deposits or the deposits of Affiliated Entity.

**B.** **Jurisdiction and Nominee Name.** The corporate Trustee may cause all or any part of any trust hereunder to be maintained or managed in any jurisdiction and may hold any trust property in the name of its nominee or a nominee of any corporation, partnership or other entity affiliated with the corporate Trustee.

**C.** **Compensation of the Trustee.** The corporate Trustee shall receive payment for its services in accordance with its schedule of rates in effect at the time such compensation becomes payable, without reduction for any other fees or other compensation paid to the corporate Trustee (or any corporation, partnership or other entity affiliated with the corporate Trustee) including, but not limited to, such fees or other compensation paid by any open-end or closed-end investment company, unit investment trust or other investment vehicle, or an agent.

**D.** **Power of the Trustee to Delegate.** The Trustee shall have the power to employ and/or to delegate any of its discretionary and nondiscretionary powers to agents (including any corporation, partnership or other entity affiliated with the corporate Trustee)

71612754.1

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

including, but not limited to, attorneys, investment advisors, appraisers or accountants, as it deems appropriate and to pay for such services from the trust property.

**E.    Power of the Trustee to Resign.**  Any Trustee may resign as a Trustee of any trust hereunder at any time by written notice delivered to any Co-Trustee(s) and to all beneficiaries to whom current trust payments may or must then be distributed or to the natural or legal guardians of such beneficiaries (the "Beneficiaries"). Such resignation shall be effective upon the written appointment and acceptance of a Successor Trustee. A majority of the Beneficiaries shall have the power to appoint a Successor Trustee. If in default of such appointment the office of Trustee would be vacant and none has been appointed, then sixty days following the Trustee's initial notice of its intent to resign, the Trustee shall have the power to petition the court at trust expense (including reasonable attorneys' fees) to appoint its Successor. No bond or other security shall be required of the Trustee in any jurisdiction.

**F.    Trustee's Accounting.**  The Trustee may, but shall not be required to, at any time, and from time to time, file an account of its administration with a court of competent jurisdiction. Prior to transferring any or all of the assets of any trust hereunder to a Successor Trustee or to making complete distribution of trust principal, the Trustee may require an approval of its account either by a court of competent jurisdiction or by such of the beneficiaries as it deems appropriate. All of the Trustee's fees and expenses (including reasonable attorneys' fees) attributable to any such accounting and approval shall be paid by the trust.

**G.    MLTC Named as Successor Trustee in Original Document.**  The Trustee shall not be liable for any claims, losses, liabilities, and expenses, which may be sustained at any time because of any act or omission, including acts or omissions of ordinary negligence, occurring before the date the trust property was received by it. The Trustee is expressly relieved of any duty or responsibility to audit or review the actions or accounts of its predecessor(s).

**H.    Trustee's Power to Deal with Environmental Hazards.**  The Trustee shall have the power to (i) conduct environmental assessments, audits, and site monitoring to determine compliance with any environmental law or regulation; (ii) take all appropriate remedial action to contain, cleanup or remove any environmental hazard including a spill, release, discharge or contamination, either on its own accord or in response to an actual or threatened violation of any environmental law or regulation (iii) institute legal proceedings concerning environmental hazards or contest or settle legal proceedings brought by any local, state, or federal agency concerned with environmental compliance, or by a private litigant; (iv) comply with any local, state or federal agency order or court order directing an assessment, abatement or cleanup of any environmental hazards; and (v) employ agents, consultants and legal counsel to assist or perform the above undertakings or actions. Any expenses incurred by the Trustee under this paragraph shall be paid from the trust.

The Trustee shall not be liable for any loss or depreciation in value sustained by the trust as a result of the Trustee's retaining any property upon which there is later discovered to be hazardous materials or substances requiring remedial action pursuant to any federal, state, or

71612754.1

**Exhibit E**              **F. Margaret Campbell 2011 Trust**              **Page 27**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

local environmental law, unless the Trustee contributed to the loss or depreciation in value through willful misconduct or gross negligence.

## Article XII.
## Trust Protector

**A.   Appointment of Trust Protector and Successor Trust Protector.** At such time that this Trust Agreement becomes Irrevocable, notwithstanding the provisions of Article II.C., hereinabove, *Frederick* shall serve as the Trust Protector of the trust. The Trust Protector shall be consulted by the then serving Trustee for written approval to amend or restate the terms of this trust in any manner. In the event *Frederick*, named as Trust Protector of the trust, shall die, resign, be disqualified, or be incapable or unwilling to serve as Trust Protector, then I direct that *Allen* shall serve as successor Trust Protector hereunder with the same rights, powers, duties and obligations as those stipulated for the original Trust Protector hereunder. The last individual serving shall have the right to appoint a successor Trust Protector and/or a list of successor Trust Protectors, to serve with the same rights, duties, and obligation herein granted to the original Trust Protector. If at anytime there is no Trust Protector serving hereunder, either by appointment herein or by designation by the authority herein granted, a majority of the adult income beneficiaries at that time shall have the right, by written designation, to appoint a Trust Protector to serve with the same rights, duties, and obligations herein granted to the original Trust Protector.

**B.   Designation of Successor Trust Protector.** Notwithstanding any provision herein to the contrary, any person serving as a Trust Protector or successor Trust Protector may, with the consent of the then serving Trustee, from time to time designate a person or entity to serve as a successor Trust Protector in lieu of their designation set forth herein. Any such designation shall be in writing. If there are more than one such designation, the latest designation shall control. Any successor Trust Protector designated under this paragraph shall have the same rights, duties and obligations herein granted to my original Trust Protector including the right to appoint his or her successor as set forth in this Section. Upon the death, resignation, disqualification, unwillingness or incapability to serve of a Trust Protector appointed under this Article XII.B., and absent any written designation by such then serving Trustee of his or her replacement in accordance with this Article XII.B., the Trust Protectorship shall be filled in accordance with the preceding sections of this Article XII.

**C.   Limited Right of Amendment and Restatement.** The Trustee may, subject to Section XII.C.6. hereinbelow, with the written consent of the Trust Protector then serving under Article XII.A. herein, with respect to any trust as to which the Trustee is acting, modify, amend or restate:

**1.**   The trust administrative provisions relating to the identity, qualifications, successions, removal and appointment, (other than the grantor), of the Trustee, including, but not limited to changing the age set forth in Article X.B. at which Michael may become Trustee of the separate trust share established for his benefit;

71612754.1

**2.** The investment, financial, and asset management powers of the Trustee enumerated under Article X, hereinabove;

**3.** The withdrawal rights granted under Article III (except a withdrawal right already in existence at the time the Trustee seeks to exercise the power conferred under this subparagraph);

**4.** The terms and conditions of any trust with respect to (i) the Trustee's right to add additional beneficiaries or change beneficiaries, (ii) the purposes for which the Trustee may distribute trust income and principal, and the circumstances and factors the Trustee may take into account in making such distributions, (iii) the termination date of the Trust, (iv) the ages and/or events causing distributions; and (v) the identity of the permissible appointees under the power of appointment granted to a beneficiary. In the case of a limited power of appointment, such class shall not be expanded to include the appointee's estate, the appointee's creditors and/or the creditors of the appointee's estate;

**5.** Any provision of the trust to incorporate any benefit available to such trust provision as a result of any Federal or State tax law change subsequent to the date hereof;

**6.** No amendment, modification or restatement shall be made and none of the powers granted under this Article XII shall be exercised which would cause (or be deemed cause) the inclusion of the Trust Estate in the estate for federal tax purposes by) the Grantor, any Trustee, any Co-Trustee and/or any Protector, and all such provisions shall be construed so as to achieve prevention of such inclusion. Furthermore, no amendment, modification or restatement may be made under this Article to a trust which constitutes a Qualified Subchapter S Trust under the Code.

## Article XIII.
### *Death Benefits Payable to the Trust*

**A.** *Insurance Policies.* I reserve all rights as owner of any life insurance policies under which I designate the trust as beneficiary, including the rights (i) to borrow money thereon; (ii) to cancel, pledge, assign, use, surrender or convert such policies; (iii) to exercise options and elections with respect to such policies; (iv) to change the beneficiaries thereof; and (v) to receive dividends, surrender values and all other payments and benefits of any kind available during my lifetime on account of such policies. The Trustee shall be under no obligation to pay premiums, assessments or other charges on any such policies, or to notify me of any amounts due, whether or not such policies are deposited with the Trustee.

**B.** *Collection of Life Insurance and Other Death Benefits.* Upon my death, the Trustee shall take steps reasonably necessary to collect all life insurance and other death benefits payable to the Trustee, including the institution of proceedings to enforce payment. However, the Trustee shall not be required to maintain any legal action unless indemnified to its satisfaction against all liabilities and expenses to which the Trustee, in its judgment, may be subjected as a result of such action. The Trustee is authorized to compromise, adjust, settle or submit to arbitration any claims arising out of any life insurance or other death

- Page 24 -

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

benefit, on such terms that it considers advisable, and the decision of the Trustee shall be binding on all interested parties.  The Trustee is further authorized to give receipts, releases and acquittances to any payor in full discharge of such payor's liabilities to the trust and its beneficiaries.  The benefits so collected by the Trustee shall be added to and become a part of the principal of the *Trust Estate.*

**C.**    ***Exoneration of Payors.***  No payor of life insurance or other death benefits shall have any obligation to inquire into the terms of this Trust Agreement or see to the application of such benefits.

### Article XIV.
### *Spendthrift Provision*

No income or principal of any trust which is distributable, or will become distributable, shall --

- Be subject in any manner to being anticipated, assigned, charged, encumbered or transferred by any person deriving any right or title thereto;

- Be liable, while in the hands of the Trustee, for the debts, contracts, or other instruments or obligations (including alimony and child support payments) of any such person; or

- Be subject to execution, attachment or sequestration for any debts or liabilities of any such person or for any care, necessities or services provided to or for such person (specifically including, but not limited to, any claim of equitable subrogation by any governmental or quasi-governmental entity, or any other person, providing or bearing the cost of such care, necessities or services).

This provision shall not be construed to prevent (i) any beneficiary from assigning any part or all of his/her interest under this Trust Agreement to any one or more of my descendants, (ii) distributions of income or principal by the Trustee for the benefit of any beneficiary as authorized, or (iii) the exercise of any power of appointment.

This provision is one of the primary purposes of this Trust Agreement.

### Article XV.
### *Miscellaneous Provisions*

**A.**    ***Income.***  All income earned on assets used to make payments authorized under Article VIII shall not be added to principal but shall be considered income that the Trustee is authorized to distribute subject to this Trust Agreement.  Income accrued or collected, but not distributed at the termination of any beneficial interest in such income, shall be treated as if it had accrued or been collected after the termination of such beneficial interest.

*- Page 25 -*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

**B.    Exoneration of Third Persons.** No person dealing with the Trustee shall --

- Be responsible for the application of any purchase money or other thing of value paid or delivered to the Trustee, and a receipt of the Trustee shall be effective to discharge and release any such person from all liabilities to any beneficiary hereunder; or

- Be under any obligation to ascertain or inquire into the power of the Trustee to purchase, sell, exchange, transfer, mortgage, pledge, lease, distribute or otherwise in any manner dispose of or deal with any security or other property held by the Trustee.

**C.    Trust Binding Upon Successors.** This Trust Agreement shall extend to and be binding upon my executors, administrators, successors and assigns.

**D.    Perpetuities.** To the extent permitted under applicable law, I intend that neither (i) Section 2131.08(B) of the Ohio Revised Code nor (ii) any common law "rule against perpetuities" shall apply to this trust. I hereby acknowledge that I have been advised that, under Section 2131.09 of the Ohio Revised Code (as such statute may be hereafter amended or superseded), the preceding sentence may be ineffective to avoid the application of such statutory provision and/or such common law rule to this trust unless certain conditions (the "*Statutory Prerequisites*") are satisfied. As of the date of execution of this Trust Agreement, the *Statutory Prerequisites* include (i) the Trustee must have unlimited power to sell all assets comprising the *Trust Estate* or the Trustee (either alone or in conjunction with one or more other persons) must have unlimited power to terminate the trust and (ii) the trust must satisfy one of four alternative standards for establishing an appropriate nexus between this trust and the State of Ohio.

In the event that any *Statutory Prerequisites* applicable to this Trust Agreement cannot be satisfied, each trust created hereunder, including any interest created by the exercise of a power of appointment, shall vest in possession within twenty-one (21) years after the death of the last survivor of all descendants of my parents who are living on the date when this Trust Agreement becomes irrevocable (as a result of my death or otherwise). The property comprising any trust which (but for this Article XV.D.) would not have so vested shall not be held in further trust after the expiration of that period. Instead, such property shall thereupon be distributed, subject to Article VI, to the income beneficiary of such trust.

**E.    Copies; Memorandum of Trust.** Any person may rely on a copy of this Trust Agreement certified by the Trustee to be in effect and to be a true and correct copy. Such certified copy shall be considered as an original and shall relieve any person to whom a certified copy is delivered of any duty to inquire further.

Any person may also rely on the provisions of this Trust Agreement as set forth in any Memorandum of Trust filed by me with any County Recorder (or other authorized public official or agency), pursuant to the authority of Ohio Revised Code §5301.255 (or any comparable provision of other state law) to the extent such Memorandum of Trust is not thereafter amended, revoked or superseded of record. The public recording of such Memorandum of Trust shall relieve any person relying thereon of any duty to inquire further concerning any provisions of this Trust Agreement which are set forth therein.

**F.**     ***Powers of Appointment.*** In addition to the rights accorded by law to holders of powers of appointment, the holder of a power of appointment may exercise such power --

●     By making appointments from the ***Trust Estate*** in cash or in kind (including a direction to the Trustee to distribute specific property to, or in trust for the benefit of, any one or more of the permitted objects of the power);

●     By creating life estates for any one or more permitted objects of the power and remainders to other permitted objects; or

●     By imposing lawful restrictions and conditions upon any appointment, provided that no one other than permitted objects of the power is benefitted thereby.

However, unless the holder of a power of appointment is a permitted object of that power, the holder may not exercise such power in such a manner as to satisfy a legal obligation of said holder.

### *Article XVI.*
### *Construction Provisions*

**A.**     ***Trustee.*** The term "Trustee" means the person, whether named herein or selected in any other manner, acting as such from time to time.

**B.**     ***Executor.*** The term "executor" means any personal representative of a decedent's estate, regardless of how designated.

**C.**     ***Children.*** The term "children" means lawful descendants in the first degree of the designated parent. This term also includes persons who have been adopted during their minority according to law or under any court proceeding. Such term shall not include a stepchild or foster child.

**D.**     ***Descendants.*** The term "descendants" means children and more remote lawful descendants of the designated ancestor including persons who acquire such status as a result of adoption during their minority according to law or under any court proceeding, and the descendants of any such adopted person, but excluding foster children, step children and their descendants.

**E.**     ***Income Beneficiaries.*** The terms "income beneficiary" and "income beneficiaries" mean the person or persons who receive, or in the Trustee's discretion may receive, the net income of a trust.

**F.**     ***Living.*** References to persons "living" and "then living" as of a particular date or event include any person conceived prior to the referenced date or event who is subsequently born alive and survives for at least 30 days.

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

### G.   *Determination of Incompetency.*   Any person shall be considered incompetent --

- If, and as long as, such person is adjudicated incompetent; or

- If two doctors familiar with such person's physical and mental condition certify, in writing, that such person is unable to transact ordinary business and until there is a like certification that such inability has ended; or

- If any bank or trust company acting as a Trustee believes in good faith that such person is physically or mentally unable to transact ordinary business and records such belief in the written trust records; provided, however, no bank or trust company shall be required or have a duty to form or communicate any such belief.

Any individual Trustee who is considered incompetent shall immediately cease to act as a Trustee on the date of such determination without the execution of any further instrument.

### H.   *Internal Revenue Code.*   References to the *Code* refer to the Internal Revenue Code of 1986, as amended or superseded. References to a section of or tax under the *Code* (or to a section of any Treasury Regulation adopted pursuant to the *Code*) include all amendments and successor provisions corresponding to any such section or tax in force after the date of this Trust Agreement. References to tax terms which have defined meanings under the *Code* (or under the Treasury Regulations adopted pursuant to the *Code*) shall have such defined meanings.

### I.   *Gender and Number.*   Except where such construction would be unreasonable --

- The masculine, feminine and neuter genders shall be considered to include all genders; and

- The singular shall be considered to include the plural (and vice versa).

### J.   *Governing Law.*   The laws of Ohio shall govern all questions pertaining to the validity, construction and administration of this Trust Agreement.

### K.   *Headings.*   The headings in this Trust Agreement are inserted solely for convenient reference and shall be ignored in the construction of this Trust Agreement.

### L.   *Survivorship.*   A person shall be considered to have survived another only if such person survives the other by at least 30 days. A person in gestation shall be considered to have survived another only if such person is subsequently born alive and lives for at least 30 days.

### M.   *Distributions to or Allocations among Descendants.*   Whenever property is required to be distributed to or allocated among the descendants of any designated

71612754.1

**Exhibit E**                    **F. Margaret Campbell 2011 Trust**                    **Page 33**

person, the distribution or allocation shall be made to or among the then living descendants of such person, *per stirpes*, and the *stirps* shall begin with the children of such designated person even though such designated person may have no children then living.

*In Witness Whereof,* I have executed this Declaration of Trust Agreement on the day and year first above written.

F. Margaret Campbell, as Grantor and Trustee

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

# *F. Margaret Campbell 2011 Trust*

## *Schedule A*

Cash                                                     $1.00

All Grantor's tangible personal property now owned or hereafter acquired.

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:39:09\CONF#: 10957\WORKFLOW ID: 1238709

# *F. Margaret Campbell Family*

# *2011 Descendants Trust*

*Dated: April 19, 2011*

71612755.1

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:40:10\CONF#: 10957\WORKFLOW ID: 1238708

| | | | |
|---|---|---|---|
| **F.** | Accountings. | | 10 |
| **G.** | Approval of Accountings. | | 10 |
| **H.** | Compensation. | | 10 |
| **I.** | Exoneration of Trustees Acting in Good Faith. | | 10 |
| **J.** | Exoneration of Trustees for Acts of Others. | | 10 |
| **K.** | Waiver of Qualification and Bond. | | 11 |
| **L.** | Authority of Representative. | | 11 |
| **M.** | Rights and Eligibility of Me. | | 11 |

Article X. Trustee's Rights And Discretions ......................................................... 11
- **A.** Rights and Discretions. ......................................................................... 11
  - 1. Additions to the Trust Estate. ...................................................... 11
  - 2. Retention of Assets. ..................................................................... 12
  - 3. Sale of Assets. .............................................................................. 12
  - 4. Investment of Assets. ................................................................... 12
  - 5. Joint Investment With Other Trusts. ............................................ 12
  - 6. Operating Businesses. .................................................................. 13
  - 7. Real Property. .............................................................................. 13
  - 8. Natural Resources. ....................................................................... 13
  - 9. Environmental Provisions. ........................................................... 13
  - 10. Location of Assets. ...................................................................... 14
  - 11. Abandonment of Property. ........................................................... 14
  - 12. Bank Accounts. ............................................................................ 14
  - 13. Borrowing of Funds. .................................................................... 14
  - 14. Lending of Funds. ........................................................................ 14
  - 15. Voting Securities. ......................................................................... 14
  - 16. Compromise Debts. ...................................................................... 14
  - 17. Foreclosure of Mortgages. ........................................................... 15
  - 18. Determination of Income and Principal. ...................................... 15
  - 19. Depreciation Reserves. ................................................................. 15
  - 20. Accumulations of Income. ........................................................... 15
  - 21. Division and Allocation of Assets. ............................................... 15
  - 22. Division of Trusts. ....................................................................... 16
  - 23. Merger of Trusts. ......................................................................... 16
  - 24. Small Trust Termination. ............................................................. 16
  - 25. Authority after Termination of a Trust. ....................................... 16
  - 26. Reliance Upon Wills. ................................................................... 16
  - 27. Nominees. ................................................................................... 16
  - 28. Agents. ........................................................................................ 17
  - 29. Special Trustees. .......................................................................... 17
  - 30. Execution and Delivery of Instruments. ....................................... 17
  - 31. All Desirable Acts. ....................................................................... 17
- **B.** Qualified Subchapter S Trust Savings Clause. ....................................... 17
- **C.** Facility of Payment. ............................................................................... 18
- **D.** Limitations on Authority of Trustee. ...................................................... 18
- **E.** Multiple Trustees. .................................................................................. 18
  - 1. Custody of Assets. ....................................................................... 19

- ii -

71612755.1

**Exhibit F**          **F. Margaret Campbell 2011 Descendants Trust**          **Page 3**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:40:10\CONF#: 10957\WORKFLOW ID: 1238708

I.      Gender and Number.................................................................. 27
J.      Governing Law. ...................................................................... 27
K.      Headings. ............................................................................... 27
L.      Survivorship........................................................................... 27
M.      Distributions to or Allocations among Descendants.............. 27

- iv -

71812755.1

**Exhibit F**          **F. Margaret Campbell 2011 Descendants Trust**          **Page 5**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:40:10\CONF#: 10957\WORKFLOW ID: 1238708

## *Article II.*
## *Administration of Revocable Trust*

While this trust is revocable by me, this trust shall be administered as follows:

**A.     Income and Principal While I am Competent.**     Whenever I am competent, the Trustee shall distribute to me, or for my benefit, so much or all of the net income and principal of the trust as I request and shall periodically add any undistributed net income to principal.  Further, if this trust owns tangible personal property, I shall have the right to possess, use, consume and in all manner enjoy such property, and the Trustee shall have no duty to keep informed as to the condition or location of such property or to inventory such property.  These rights shall be personal to me and shall not be exercisable by any guardian or representative.

**B.     Income and Principal While I am not Competent.**     Whenever I am considered incompetent, the Trustee shall distribute to me, or for my benefit, so much or all of the net income and principal of the trust as the Trustee considers desirable to provide for --

- The support, health, education and best interests of me; and

- The support, health, education and best interests of any descendant of mine who is dependent upon me.

The Trustee shall periodically add any undistributed net income to principal.

The Trustee also is authorized to make gifts to any one or more of my descendants, as the Trustee considers to be in the best interests of my estate and family -- considering the support, health and best interests of me, my dispositive wishes as indicated in this Trust Agreement, and the anticipated tax benefits and costs of any gift.  The Trustee shall pay any gift or other transfer tax resulting from such gifts.

**C.     Power to Amend and Revoke.**     While I am living, I reserve the right to amend or revoke this Trust Agreement, in whole or in part, by a written instrument (other than a Will) delivered to the Trustee during my lifetime or kept with the trust records.  The property to which any revocation relates shall be conveyed to me or as I direct.  These rights shall be personal to me and shall not be exercisable by any guardian or representative for me.

I may release the foregoing rights of amendment and revocation at any time --

- If I am not then serving as the Trustee, by delivering a written instrument to that effect to the Trustee; or

- If I am then serving as the Trustee, by first resigning as the Trustee and then delivering a written instrument to that effect to the successor Trustee appointed pursuant to Article IX.A hereof.

71612755.1

**Exhibit F          F. Margaret Campbell 2011 Descendants Trust          Page 7**

**C.  Manner and Time of Exercise of Right.**  A *Withdrawal Beneficiary's* right of withdrawal shall be exercised within thirty (30) days from the date notice of the gift is first received from the Trustee (or from any other source), but in no event shall such right be exercisable after December 31 of the year in which the gift is made.  Such exercise shall be made by a written demand, signed by the person making such demand and delivered to the Trustee. Upon receipt of a proper demand, the Trustee shall select and distribute any property of the trust to satisfy such demand.

**D.  Lapse of Right of Withdrawal.**  Any amount that a *Withdrawal Beneficiary* may still withdraw as of the last day of any year shall lapse to the extent of the greater of --

- $5,000; or

- An amount equal to five percent (5%) of the value of the *Trust Estate* determined as of the end of such year; it being my intent that any lapse shall fall within the provisions of section 2514(e) of the *Code.*

**E.  Authority of Representative.**  Whenever a *Withdrawal Beneficiary* is under a legal disability, whether by reason of age or otherwise, the notice required to be given to such *Withdrawal Beneficiary* shall be given to his/her legal guardian or, if none, to any other competent adult; provided, however, in no event shall notice be given to me or anyone else whose gift is the subject of such notice.  The person to whom such notice is given shall have the right to exercise, for and on behalf of such *Withdrawal Beneficiary*, the right of withdrawal granted to such *Withdrawal Beneficiary.*

**F.  Value of Gifts.**  The value of any gift made to the *Trust Estate* shall be equal to its value for federal gift tax purposes.

**G.  Conditions Imposed by the Donor.**  If a donor specifies that (i) a gift to the *Trust Estate* may be withdrawn by other or additional persons or in an amount or a manner different than that provided for above or (ii) that such gift may not be withdrawn, the conditions so imposed by the donor shall supersede the above terms.

## Article IV.
### Establishment of Separate Trusts

As soon as practicable after this trust becomes irrevocable (as a result of my death or otherwise), the Trustee shall divide the *Trust Estate* into separate trusts as follows:

- The Trustee shall divide the *Trust Estate* into as many separate shares as is necessary to provide (i) one such share for the benefit of each of my children who is then living and (ii) one such share for the collective benefit of the then living descendants of each such child of mine who is then deceased but who has at least one then living descendant.

- The Trustee shall hold such separate shares in separate trusts for each descendant to whom an allocation is made.

*- Page 4 -*

71612755.1

**Exhibit F**          **F. Margaret Campbell 2011 Descendants Trust**          **Page 9**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:40:10\CONF#: 10957\WORKFLOW ID: 1238708

of the trust to such of my descendants as the beneficiary shall appoint (i) by a signed instrument delivered to the Trustee during his/her lifetime or (ii) by Will; provided, however, in no event shall principal be appointed to (x) the beneficiary, (y) his/her estate, or (z) creditors of the beneficiary or of his/her estate.  To be an effective appointment, such instrument or Will must refer specifically to this power of appointment.

**E.**  ***Disposition upon the Beneficiary's Death.***  Upon the beneficiary's death, to the extent the beneficiary has not exercised the above limited power of appointment, the Trustee shall allocate the trust, *per stirpes*, among:

- The beneficiary's descendants; but, if no such descendants are then living, <u>then</u>

- The descendants of the beneficiary's parent who is a descendant of mine; but, if no such descendants are then living, <u>then</u>

- The beneficiary's parent who is a descendant of mine; but, if said parent is not then living, <u>then</u>

- The descendants of the beneficiary's nearest ancestor who is a descendant of mine and who has descendants then living; but, if there is no such ancestor with then living descendants, <u>then</u>

- The beneficiary's nearest ancestor who is a descendant of mine; but, if no such ancestor is then living; <u>then</u>

- My descendants.

Each portion thus allocated to any person shall be held in a separate trust and administered as set forth in this Article V; provided, however, any portion allocated to a person for whom a separate trust is then being administered hereunder shall instead be added to such then existing trust.

## *Article VI.*
## *Failure of Descendants*

If, at any time after my death, there is any trust being administered hereunder for which (but for this Article VI) no beneficiary is then living, the Trustee shall distribute the assets comprising such trust, subject to Article VII, to my heirs, in accordance with the then existing statutes of Ohio governing the intestate distribution of tangible personal property, as if ---

- I owned such assets free of trust;

- All such assets were tangible personal property; <u>and</u>

- I had then died, intestate, domiciled in Ohio, a single person without descendants.

*- Page 6 -*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:40:10\CONF#: 10957\WORKFLOW ID: 1238708

**2.    Health.**  Distributions for the health of a beneficiary may include distributions for the payment of medical insurance, medical and dental fees, equipment and drugs, hospital and nursing home care (regardless of length of time), services of private nurses and companions, and psychiatric care and counseling, and may include care for such beneficiary's last illness.

**3.    Education.**  Distributions for the education of a beneficiary may include distributions for attendance at or enrollment in preparatory, religious, undergraduate, graduate, professional and vocational schools, public or private, and wherever located, and may include tuition, room, board, books, transportation and other living and incidental expenses.

**4.    Best Interests.**  Distributions for the best interests of a beneficiary may include distributions to enable a beneficiary to purchase an automobile, to make a down payment on the purchase of a home, to furnish a home consistent with a comfortable standard of living, to travel, to invest a reasonable amount in business enterprises in which the beneficiary would be an active participant, or to make gifts to such beneficiary's descendants or for charitable purposes. Distributions for the best interests of a minor beneficiary also may include distributions to enable him or her to attend summer camp or to participate in recreational activities such as music, dance or athletic lessons or leagues.

**B.    Consideration of Beneficiary's Resources and Tax Consequences.**  In considering discretionary distributions, the Trustee may, but need not, consider the beneficiary's income and resources from all sources known to the Trustee, the obligations of such beneficiary to support others, and the obligations of others to support such beneficiary. The Trustee shall be entitled to rely on a statement of the beneficiary's income and resources signed by the beneficiary or his/her parent or guardian. The Trustee also may, but need not, consider the tax consequences resulting from any decision to accumulate or to distribute income or principal. However, the Trustee shall not be obligated or required to take that action which will, or may be expected to, result in the least aggregate tax liability being incurred by the trust and the beneficiary.

Nothing shall prevent or prohibit the Trustee from considering such matters in one or more instances, but not in other instances, or from considering such matters for one beneficiary but not for another beneficiary.

### Article IX.
### Trustees

**A.    Appointment of Successor Trustees.**  In the event of a vacancy in the trusteeship, however created, the successor Trustee shall be the following persons in the order named: (i) *Frederick*; then (ii) *Allen*; then (iii) *Merrill Lynch Trust Company*. The last serving of *Frederick* and *Allen* shall have the right to appoint a successor Trustee and/or a list of successor Trustees.

If no successor Trustee is effectively appointed pursuant to the preceding paragraph, a majority of the income beneficiaries of the affected trust shall have the right to appoint such

*- Page 8 -*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:40:10\CONF# 10957\WORKFLOW ID: 1238708

**E.   Title.**  The title to the *Trust Estate* shall vest forthwith in any successor Trustee, but any resigning or removed Trustee shall execute all instruments and do all acts desirable to vest title to the *Trust Estate* in any successor Trustee without court accounting.

**F.   Accountings.**  During my tenure as Trustee, I shall not be required to furnish accountings to anyone.  At all other times, upon the written request of an income beneficiary of any trust, the Trustee shall furnish such beneficiary with an accounting showing the receipts, disbursements and inventory of such trust since the most recent accounting for such trust (or, if there is no prior accounting, from the date when I ceased to act as the Trustee).  Notwithstanding the foregoing, no Trustee shall be required to furnish accountings more often than annually to any beneficiary (but may do so voluntarily).  No Trustee shall be required to file accountings in any court or with any public official.

**G.   Approval of Accountings.**  Any accounting shall be deemed true and correct, and the Trustee making such accounting shall be discharged from all liability as to all transactions disclosed on such accounting to all persons, including persons not in being, to the extent I (or, after my death, the income beneficiary of the affected trust) approve such accounting in writing or fail to notify such Trustee, in writing, that such accounting is not approved within two (2) years after receipt of such accounting.

With my approval (or, after my death, the approval of the income beneficiary of the affected trust), a successor Trustee may accept the accounting rendered by and the property received from a predecessor Trustee without incurring any liability for so doing, and such approval shall serve as a complete discharge to the predecessor Trustee.

**H.   Compensation.**  Any corporate Trustee shall be entitled to reasonable compensation for its services in administering any trust in accordance with its then published fee schedule for trust services.  Any individual Trustee (other than me or any descendant of mine) shall be entitled to reasonable compensation for his/her services hereunder.  Every Trustee shall be entitled to be reimbursed for reasonable expenses and costs, including legal fees, incurred in administering any trust.

**I.   Exoneration of Trustees Acting in Good Faith.**  No Trustee acting in good faith shall be liable for any loss, liability, expense or damage to the *Trust Estate* occasioned by such Trustee's acts or failures to act in administering the trust.  The Trustee shall be presumed to have acted in good faith if its action or failure to act is in reliance on a written opinion of counsel.

**J.   Exoneration of Trustees for Acts of Others.**  No Trustee shall be liable for the acts or failures to act of any agent appointed with due care.  No Trustee shall be --

- Under a duty to inquire into the acts or doings of a previous Trustee or to examine the accountings or records of a previous Trustee or any allocation made by a previous Trustee; <u>or</u>

*- Page 10 -*

71612755.1

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:40:10\CONF#: 10957\WORKFLOW ID: 1238708

2.    **Retention of Assets.**  To retain without liability for depreciation or loss any asset received from anyone, including me or my estate;

3.    **Sale of Assets.**    To sell, exchange, assign or transfer any asset comprising part or all of the *Trust Estate* upon such terms and conditions and in such manner as the Trustee considers best;

4.    **Investment of Assets.**  To invest and reinvest any money or property comprising the *Trust Estate* in, and to purchase or otherwise acquire from my estate, from any beneficiary or from others, any property, real or personal, of any kind or nature, including without limitation --

- Any stocks, whether common or preferred, and including stocks of any corporate Trustee, warrants, participations in discretionary common trust funds, money market funds and mutual funds;

- Government bills, notes and bonds, corporate bonds, whether secured or unsecured, debentures, bankers acceptances, certificates of deposit, mortgages and commercial paper;

- Foreign currencies, gold, silver and other precious metals;

- Commodity and stock options (for the purpose of hedging but not for speculation);

- Real estate, whether improved or unimproved;

- Partnership interests, whether general or limited;

- Objects of art, coins, stamps, antiques and other collectibles;

- Life estates and remainder interests following a life estate or a term of years; and

- Interests in any of the foregoing;

even though such investment or purchase (by reason of its character, amount, proportion to the total property of any trust or otherwise) would not be considered appropriate for a trustee apart from this provision; and in the making and retention of investments and reinvestments, the Trustee shall not be confined to the obligations and securities mentioned in any statute or rule of court for fiduciaries for the investment of funds, and the Trustee shall have no duty to diversify the assets or investments of any trust;

5.    **Joint Investment With Other Trusts.**  To make joint investments involving (i) assets comprising the *Trust Estate* and (ii) assets held by other trusts established by one or more of the following persons --

- Me;

*- Page 12 -*

71612755.1

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:40:10\CONF#: 10957\WORKFLOW ID: 1238708

regulated by law or that are known to pose a hazard to the environment or human health, and the Trustee may take such action prior to the initiation of enforcement action by any governmental agency; to obtain estimates of costs to prevent, abate, "clean up", or otherwise respond to such violations, actual or threatened, to notify the beneficiaries of such estimated costs and to permit the beneficiaries to pay for such response costs; to disclaim any power, actual or implied, which the Trustee believes will or may cause the Trustee to be considered an "owner" or "operator" of property under the provisions of the Comprehensive Environmental Response, Compensation and Liability Act ("*CERCLA*"), as amended, or which may otherwise cause the Trustee to incur liability under *CERCLA* or any other environmental law, rule or regulation;

   **10.     *Location of Assets.*** To keep any property of any trust at any place or places in the United States of America, or with a depositary or custodian at such place or places;

   **11.     *Abandonment of Property.*** To abandon any property, real or personal, which the Trustee considers to be worthless or not of sufficient value to warrant keeping or protecting; to abstain from the payment of taxes, liens, water rents, assessments, repairs, maintenance or upkeep of any such property; to permit any such property to be lost by tax sale or other proceedings; or to convey any such property for a nominal consideration or without consideration;

   **12.     *Bank Accounts.*** To open and maintain one or more checking, savings or time deposit accounts with any bank, trust company, savings and loan or building and loan association, or any other financial institution, wherever located (even though such financial institution is a Trustee or an affiliate of a Trustee); to deposit to the credit of any such account all or part of the funds comprising the *Trust Estate*, whether or not such funds earn interest;

   **13.     *Borrowing of Funds.*** To borrow, in the name of any trust, such sums for such periods and on such terms as the Trustee considers advisable (including the right to borrow from a corporate Trustee or an affiliate of a corporate Trustee); to secure any such loan by deed of trust, mortgage or pledge; no lender shall be bound to see to or be liable for the application of the proceeds of any such loan; unless otherwise expressly agreed, the Trustee shall not be personally liable for any such loan, but each such loan shall be payable only out of assets of the affected trust;

   **14.     *Lending of Funds.*** To lend money to my estate, to any beneficiary or to any other person, upon such terms and with such security, if any, as the Trustee considers advisable;

   **15.     *Voting Securities.*** To vote by proxy or in person any security comprising a part of any trust; to enter into any kind of pooling agreements and voting trusts, even though such action may involve delegation of authority;

   **16.     *Compromise Debts.*** To enforce, abandon, defend or have adjudicated (by legal proceedings, arbitration or by compromise) any claim or demand of any nature which arises out of or otherwise exists in favor of or against any trust;

*- Page 14 -*

71612755.1

**Exhibit F**          **F. Margaret Campbell 2011 Descendants Trust**          **Page 19**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:40:10\CONF#: 10957\WORKFLOW ID: 1238708

**22.** *Division of Trusts.* To divide any trust, whether existing or to be established, into two or more separate smaller trusts (without any requirement for said separate smaller trusts to be equal in value, and without any requirement for discretionary distributions to be made proportionally from said separate smaller trusts), whenever the Trustee believes such division may achieve desirable tax results for such trust or its beneficiaries, promote easier administration or otherwise be in the best interests of any trust or its beneficiaries; upon termination of such separate smaller trusts, to distribute to any beneficiary from any one such separate smaller trusts, in such proportions and amounts as the Trustee considers desirable (so long as the distributions from all such separate smaller trusts would, if such separate smaller trusts were still a single trust, satisfy the provisions governing such distribution);

**23.** *Merger of Trusts.* Whenever the Trustee is holding any trust for the primary benefit of any persons for whose primary benefit the Trustee is holding any other trust upon substantially the same terms, the Trustee may consolidate such trusts and hold them as a single trust, so long as no property will be held in trust for a period which would violate any applicable rule against perpetuities;

**24.** *Small Trust Termination.* Notwithstanding any other provision, if the Trustee determines that --

- The value of any trust does not warrant the cost of continuing the trust; or

- The burden of taxation on the trust or its beneficiaries has become unduly onerous by reason of the existence of the trust; or

- Administration of the trust otherwise has become impractical;

the Trustee may distribute all property comprising such trust to the income beneficiaries (in such proportions as the Trustee considers equitable);

**25.** *Authority after Termination of a Trust.* To exercise all rights, powers and discretions after the termination of any trust and until the same is fully distributed;

**26.** *Reliance Upon Wills.* In determining whether and to what extent a power of appointment has been exercised by Will, the Trustee may rely upon an instrument admitted to probate in any jurisdiction as the Will of the holder of the power; if the Trustee has no written notice of the existence of a Will or of probate proceedings within three months after the holder's death, the Trustee may assume such holder died intestate; this provision shall not, however, affect any right which an appointee or beneficiary in default of appointment may have against any distributee of property from the *Trust Estate*;

**27.** *Nominees.* To hold any investment in any form in which title will pass by delivery or in the name of a nominee without indicating that such investment is held in a fiduciary capacity, but the Trustee shall be liable for any act of its nominee in connection with the investment so held; to form partnerships for the purpose of taking and holding title to assets comprising the *Trust Estate*;

*- Page 16 -*

**Exhibit F**   **F. Margaret Campbell 2011 Descendants Trust**   **Page 21**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:40:10\CONF#: 10957\WORKFLOW ID: 1238708

I intend for any such *QSST* to qualify as a ***qualified subchapter S trust*** and, as a result, be a permissible shareholder of an ***S corporation***. To that end, all provisions of this Trust Agreement shall be construed to effectuate this intent, and all provisions which would cause such *QSST* not to qualify as a shareholder of an *S corporation* shall not apply to, and be of no effect with respect to, such *QSST*.

    **C.   *Facility of Payment.*** Whenever a beneficiary is, in the Trustee's judgment, incapable of managing financial affairs on account of age, illness, handicap, unavailability or other cause, the Trustee may distribute any income or principal otherwise distributable to such beneficiary either --

- To the parent or guardian of such beneficiary;

- To the individual with whom or the institution in which such beneficiary resides;

- To the children of such beneficiary who are legally or in fact dependent upon such beneficiary for their support or education;

- In the case of a minor beneficiary, to the minor beneficiary or to his/her custodian under any applicable Uniform Transfers (or Uniform Gifts) to Minors Act; <u>or</u>

- By applying the same for the benefit of such beneficiary;

the receipt of such beneficiary, other individual or institution, or evidence that such distribution was applied for the benefit of such beneficiary, shall be a full discharge of the Trustee for such distribution;

    ***D.   Limitations on Authority of Trustee.*** Notwithstanding any other provision of this Trust Agreement, no Trustee shall make or participate in any Trustee decision with respect to --

- Gifts made during my lifetime from the ***Trust Estate*** to himself/herself or to any person whom he/she is legally obligated to support;

- Distributions of principal or income to himself/herself to the extent not limited by an ascertainable standard relating to support, health or education;

- Distributions of principal or income which satisfy a legal obligation of such Trustee; <u>or</u>

- If such Trustee is also a beneficiary of such trust, an early termination of such trust.

Such discretionary powers shall be exercisable only by another Trustee (if any).

    **E.   *Multiple Trustees.*** Except as otherwise specifically provided in this Trust Agreement, whenever multiple Trustees are acting, the following provisions shall be applicable where the context permits:

*- Page 18 -*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:40:10\CONF#: 10957\WORKFLOW ID: 1238708

**A.  Powers of MLTC Regarding Affiliates.** The Trustee shall have the following specific powers and may exercise the same in its sole and absolute discretion:

- To engage any corporation, partnership or other entity affiliated with the corporate Trustee (an "Affiliated Entity") to render services to any trust hereunder, including, without limitation, to act as a broker or dealer to execute transactions, (including the purchase of any securities currently distributed, underwritten or issued by an Affiliated Entity) at standard commission rates, markups or concessions and to provide other management or investment services, including the custody of assets, at such Affiliated Entity's standard rates, and to pay for any such services from trust property.

- To invest in open-end or closed-end investment companies offered by an Affiliated Entity or to which an Affiliated Entity may render services for compensation.

- To invest trust assets or sweep cash awaiting distribution or investment into the corporate Trustee's own deposits or the deposits of Affiliated Entity.

**B.  Jurisdiction and Nominee Name.** The corporate Trustee may cause all or any part of any trust hereunder to be maintained or managed in any jurisdiction and may hold any trust property in the name of its nominee or a nominee of any corporation, partnership or other entity affiliated with the corporate Trustee.

**C.  Compensation of the Trustee.** The corporate Trustee shall receive payment for its services in accordance with its schedule of rates in effect at the time such compensation becomes payable, without reduction for any other fees or other compensation paid to the corporate Trustee (or any corporation, partnership or other entity affiliated with the corporate Trustee) including, but not limited to, such fees or other compensation paid by any open-end or closed-end investment company, unit investment trust or other investment vehicle, or an agent.

**D.  Power of the Trustee to Delegate.** The Trustee shall have the power to employ and/or to delegate any of its discretionary and nondiscretionary powers to agents (including any corporation, partnership or other entity affiliated with the corporate Trustee) including, but not limited to, attorneys, investment advisors, appraisers or accountants, as it deems appropriate and to pay for such services from the trust property.

**E.  Power of the Trustee to Resign.** Any Trustee may resign as a Trustee of any trust hereunder at any time by written notice delivered to any Co-Trustee(s) and to all beneficiaries to whom current trust payments may or must then be distributed or to the natural or legal guardians of such beneficiaries (the "Beneficiaries"). Such resignation shall be effective upon the written appointment and acceptance of a Successor Trustee. A majority of the Beneficiaries shall have the power to appoint a Successor Trustee. If in default of such appointment the office of Trustee would be vacant and none has been appointed, then sixty days following the Trustee's initial notice of its intent to resign, the Trustee shall have the power to petition the court at trust expense (including reasonable attorneys' fees) to appoint its Successor. No bond or other security shall be required of the Trustee in any jurisdiction.

71612756.1

**Exhibit F**         **F. Margaret Campbell 2011 Descendants Trust**         **Page 25**

successor Trust Protectors, to serve with the same rights, duties, and obligation herein granted to the original Trust Protector. If at anytime there is no Trust Protector serving hereunder, either by appointment herein or by designation by the authority herein granted, a majority of the adult income beneficiaries at that time shall have the right, by written designation, to appoint a Trust Protector to serve with the same rights, duties, and obligations herein granted to the original Trust Protector.

**B. Designation of Successor Trust Protector.** Notwithstanding any provision herein to the contrary, any person serving as a Trust Protector or successor Trust Protector may, with the consent of the then serving Trustee, from time to time designate a person or entity to serve as a successor Trust Protector in lieu of their designation set forth herein. Any such designation shall be in writing. If there are more than one such designation, the latest designation shall control. Any successor Trust Protector designated under this paragraph shall have the same rights, duties and obligations herein granted to my original Trust Protector including the right to appoint his or her successor as set forth in this Section. Upon the death, resignation, disqualification, unwillingness or incapability to serve of a Trust Protector appointed under this Article XII.B., and absent any written designation by such then serving Trustee of his or her replacement in accordance with this Article XII.B., the Trust Protectorship shall be filled in accordance with the preceding sections of this Article XII.

**C. Limited Right of Amendment and Restatement.** The Trustee may, subject to Section XII.C.6. hereinbelow, with the written consent of the Trust Protector then serving under Article XII.A. herein, with respect to any trust as to which the Trustee is acting, modify, amend or restate:

*1.* The trust administrative provisions relating to the identity, qualifications, successions, removal and appointment, (other than the grantor), of the Trustee, including, but not limited to changing the age set forth in Article X.B. at which Michael may become Trustee of the separate trust share established for his benefit;

*2.* The investment, financial, and asset management powers of the Trustee enumerated under Article X, hereinabove;

*3.* The withdrawal rights granted under Article III (except a withdrawal right already in existence at the time the Trustee seeks to exercise the power conferred under this subparagraph);

*4.* The terms and conditions of any trust with respect to (i) the Trustee's right to add additional beneficiaries or change beneficiaries, (ii) the purposes for which the Trustee may distribute trust income and principal, and the circumstances and factors the Trustee may take into account in making such distributions, (iii) the termination date of the Trust, (iv) the ages and/or events causing distributions; and (v) the identity of the permissible appointees under the power of appointment granted to a beneficiary. In the case of a limited power of appointment, such class shall not be expanded to include the appointee's estate, the appointee's creditors and/or the creditors of the appointee's estate;

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:40:10\CONF#: 10957\WORKFLOW ID: 1238708

**C.  Collection of Insurance Proceeds.**  Upon the maturity of any insurance policy, the Trustee shall take steps reasonably necessary to collect all benefits payable to the trust, including the institution of proceedings to enforce payment.  However, the Trustee shall not be required to maintain any legal action unless indemnified to its satisfaction against all liabilities and expenses to which the Trustee, in its judgment, may be subjected as a result of such action.  The Trustee is authorized to compromise, adjust, settle or submit to arbitration any claims arising out of any policy, on such terms as it considers advisable, and the decision of the Trustee shall be binding on all interested parties.  The Trustee is further authorized to give receipts, releases and acquittances to any payor in full discharge of such payor's liabilities to the trust and its beneficiaries.  The benefits so collected by the Trustee shall be added to and become a part of the principal of the *Trust Estate.*

**D.  Exoneration of Payors.**  No payor of life insurance or other death benefits shall be obligated to inquire into the terms of this Trust Agreement or see to the application of such benefits.

## Article XIV.
### *Spendthrift Provision*

No income or principal of any trust which is distributable, or will become distributable, shall --

- Be subject in any manner to being anticipated, assigned, charged, encumbered or transferred by any person deriving any right or title thereto;

- Be liable, while in the hands of the Trustee, for the debts, contracts, or other instruments or obligations (including alimony and child support payments) of any such person; or

- Be subject to execution, attachment or sequestration for any debts or liabilities of any such person or for any care, necessities or services provided to or for such person (specifically including, but not limited to, any claim of equitable subrogation by any governmental or quasi-governmental entity, or any other person, providing or bearing the cost of such care, necessities or services).

This provision shall not be construed to prevent (i) any beneficiary from assigning any part or all of his/her interest under this Trust Agreement to any one or more of my descendants, (ii) distributions of income or principal by the Trustee for the benefit of any beneficiary as authorized, or (iii) the exercise of any power of appointment.

This provision is one of the primary purposes of this Trust Agreement.

## Article XV.
### *Miscellaneous Provisions*

**A.  Exoneration of Third Persons.**  No person dealing with the Trustee shall --

*- Page 24 -*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:40:10\CONF#: 10957\WORKFLOW ID: 1238708

**E.** **Powers of Appointment.** In addition to the rights accorded by law to holders of powers of appointment, the holder of a power of appointment may exercise such power --

● By making appointments from the **Trust Estate** in cash or in kind (including a direction to the Trustee to distribute specific property to, or in trust for the benefit of, any one or more of the permitted objects of the power);

● By creating life estates for any one or more permitted objects of the power and remainders to other permitted objects; or

● By imposing lawful restrictions and conditions upon any appointment, provided that no one other than permitted objects of the power is benefitted thereby.

However, unless the holder of a power of appointment is a permitted object of that power, the holder may not exercise such power in such a manner as to satisfy a legal obligation of said holder.

## Article XVI.
## Construction Provisions

**A.** **Trustee.** The term "Trustee" means the person, whether named herein or selected in any other manner, acting as such from time to time.

**B.** **Executor.** The term "executor" means any personal representative of a decedent's estate, regardless of how designated.

**C.** **Children.** The term "children" means lawful descendants in the first degree of the designated parent. This term also includes persons who have been adopted during their minority according to law or under any court proceeding. Such term shall not include a stepchild or foster child.

**D.** **Descendants.** The term "descendants" means children and more remote lawful descendants of the designated ancestor -- including persons who acquire such status as a result of adoption during their minority according to law or under any court proceeding, and the descendants of any such adopted person, but excluding foster children, step-children and their descendants.

**E.** **Income Beneficiaries.** The terms "income beneficiary" and "income beneficiaries" mean the person or persons who receive, or in the Trustee's discretion may receive, the net income of a trust.

**F.** **Living.** References to persons "living" and "then living" as of a particular date or event include any person conceived prior to the referenced date or event who is subsequently born alive and survives for at least 30 days.

- Page 26 -

71612755.1
**Exhibit F**      **F. Margaret Campbell 2011 Descendants Trust**      **Page 31**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:40:10\CONF#: 10957\WORKFLOW ID: 1238708

such person, *per stirpes,* and the stirps shall begin with the children of such designated person even though such designated person may have no children then living.


**In Witness Whereof,** I have executed this Declaration of Trust on the day and year first above written.

*F. Margaret Campbell,* as Grantor and Trustee

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:40:10\CONF#: 10957\WORKFLOW ID: 1238708

# Application for Single Premium Variable Life Insurance

## Monarch Life Insurance Company    Springfield, Massachusetts

**I. The Proposed Insured**

Name: DONALD A. CAMPBELL

Street: 3044 WARRINGTON

City: Shaker Hts. Oh.   Zip: 44120

Phone: (216) 921-5380   Social Security Number: _____   Marital Status: M

Height: 6 ft 4½   Weight: 218   Date of Birth: 6/9   State of Birth: Oh   Sex: M   Residence State: OH

Occupation and Duties: Retired

**II. Basic Coverage**

Single Premium: $250,000   Face Amount: _____

Amount Paid: -0-

**III. The Beneficiary**

(Give full names and relationship to the insured and list any contingent beneficiaries)

E. Margaret Campbell, Wife

**IV. The Owner**

Name: _____   (Complete this section if the owner is other than the insured)

Relationship to Insured: _____   Social Security Number: _____

Address: _____

Contingent Owner: _____

**V. Suitability**

1. Did the owner receive the prospectus?  Date of Prospectus and/or Supplement
   Yes ☐  No ☐          5 85

2. Does the owner understand that
   • the death benefit (exclusive of optional benefits) may increase or decrease depending on the policy's investment return, but will never be less than the guaranteed minimum?
   Yes ☐  No ☐
   • the cash value may increase or decrease depending on the investment return?
   Yes ☐  No ☐

3. Does the owner believe that this policy will meet insurance needs and financial objectives?
   Yes ☐  No ☐

4. Will this policy replace an existing insurance or annuity?
   Yes ☐  No ☒   "If "yes," list all companies and policy numbers)

**VI. Remarks** none - Any prior
inflamation can be found on
previous App dated 3/85

**VII. Insurability**   LD0033874

Name and phone of person to contact to set up any examination
Donald A. Campbell

1. a. In the past 5 years, has the proposed insured
   • had heart or kidney trouble, stroke, high blood pressure, diabetes, or cancer?
   Yes ☐  No ☒
   • been hospitalized for any reason?
   Yes ☐  No ☒
   • received medical or surgical treatment or advice for any ailment, sickness or injury? (Ignore colds, minor virus, minor injury or normal pregnancy.)
   Yes ☒  No ☐

   If the answer to any question above is "yes," please give details below. Use Remarks section for additional answers, if any.

   Condition: P.E. w/ EKG  Summer '85
   Treatment or Advice: Dr. David Waggoner
   Physician/Hospital: 1611 So. Green  Cleveland Oh 4414
   Address: Flu Shot Oct '85

2. Has the proposed insured
   • flown other than as a passenger in the past year?
   Yes ☐  No ☒
   If "yes," what is the average number of hours flown each year? What type of license is used?
   Student ☐  Commercial ☐  Other ☐ _____  Hours _____
   • engaged in during the past year or have plans to engage in during the next two years any of the following activities: hang gliding, skydiving or motor vehicle racing?
   Yes ☐  No ☒

3. Is the proposed insured now doing his or her regular occupation full time at the usual place? (A full-time housewife or student should answer "yes")
   Yes ☒  No ☐

**VIII. Important Notes**

The full net premium will be allocated to investment division 1 (money reserve portfolio). After the free look period, the owner may reallocate the investment base among the investment divisions.

On request, we will furnish illustrations, including death benefits and cash values, for the VLI policy applied for and a fixed life insurance policy for the same single premium.

The death benefit under a VLI policy may increase or decrease on each policy anniversary, depending on the investment return for the policy. Regardless of investment return, the death benefit can never be less than the Guaranteed Insurance Amount. The cash value may increase or decrease on any day, depending on the investment return for the policy. No minimum cash value is guaranteed.

**IX. Agreement and Signature**

To the best of my knowledge and belief, all answers and statements in the application and any required supplements are complete and true and may be relied on in determining whether to issue the policy. I agree they will form a part of any policy of insurance to be issued.

I agree that no policy will take effect unless
• a policy is delivered to the owner and the first premium is paid while the proposed insured is living, and
• the answers and statements in the application and any required supplements continue to be complete and true at the time of such payment and delivery.

I understand that no agent or medical examiner has authority to modify this agreement or to waive any of Monarch's rights or requirements.

Date: Nov. 6 1985   Cleveland Oh.
Applicant X Donald A. Campbell
Agent X _____

50819 (8/81)   3

LD0033874 Policy File Redacted                                      Page 1
2020ADV25114\JJudge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:41:09\CONF#: 10957\WORKFLOW ID: 1238707

**AGENT'S REPORT**

MON~~▬~~LIFE INSURANCE COMPANY
~~VA~~RIABLE LIFE SERVICE OFFICE
111 BROADWAY, NEW YORK, NY   10006

**Proposed Insured**

| NAME: Donald A Campbell | MARITAL STATUS: ☐ Single ☐ Divorced/Separated ☑ Married ☐ Widowed | SEX ☐F ☐ | DATE OF BIRTH |
|---|---|---|---|

| EMPLOYMENT C ☐ Private Ltd | PREVIOUS RESIDENCE (if current address is less than 2 years) |  |  |
| A ☐ Self Employed  D ☐ Class Corp | Street 3044 Warrington Cleveland State OH18 Zip Code - 44120 |
| B ☐ Partnership   E ☐ Public Corp |

| EDUCATION | OCCUPATION ☐ Homemaker ☐ Corp. Exec. ☐ Military Officer |
| ☐ High School or Less  ☐ Some College ☑ College Grad | ☐ Unemployed Spouse ☐ White Collar ☐ Military Enlisted |
| ☐ College Plus   ☐ Grad School Grad | ☐ Professional ☐ Blue Collar |

| ANNUAL INCOME (income salary, interest, dividends, etc.) $ 250,000 | NET WORTH (including any net worth in sep. P) $ 2 M | OTHER LIFE INSURANCE OWNED Death Benefit 1 M |

## Marketing Information

| PURPOSE OF INSURANCE | SOURCE OF SALE | COMPANION BUSINESS | SERVICES USED (check any) |
|---|---|---|---|
| A ☐ Estate Creation | A ☐ Cold Prospect | A ☐ Open Account | A ☐ Proposal/Rate Card |
| B ☐ Mortgage | B ☐ Own Client | Additional Purchase: | B ☐ Mtn Adv. Underwriting |
| D ☐ Emergency/Cash | C ☐ Client's Family | B ☐ Annuity | C ☐ Other Adv. Underwriting |
| D ☐ Estate Settlement Costs | D ☐ Client's Referral | C ☐ Health | D ☐ Mtn Competition |
| E ☐ Education Fund | E ☐ Center of Influence/Advisor | D ☐ Service/Mutual Funds | E ☐ Other Competition |
| F ☐ Retirement Income | F ☐ Friend/Neighbor | E ☐ Other Insurance | F ☐ Sales Materials |
| G ☐ Pure Gift | G ☐ Assoc. Referral |  | G ☐ Seminar/A.V. Tapes |
| H ☐ Trust Funding | H ☐ Seminar/Business Group |  | H ☐ Special Offers/Discounts |
| I ☐ Qualified Plans | I ☐ Seminar/Sponsored Group |  |  |
| J ☐ Deferred Compensation | J ☐ Seminar/Salary Deduction |  |  |
| K ☐ Key Employee | K ☐ Sales Material Response |  |  |
| L ☐ Split Dollar | L ☐ Advertisement Response |  |  |
| M ☐ Buy Sell/Stock Redemp. | M ☐ Group Conversion |  |  |

## Service Requirements

Please check the notices you would ~~like~~ to receive for the policy applied for:

☐ Notice of Premium Status........ Prepared for: Premiums overdue beyond the Grace Period; Premiums overdue more than 46 days; Final Lapse Notice.

☐ Notice of Policy Transaction.... Request for: Loan, Election of Cash Value Benefit, ~~Invest~~ment Base Allocation; and Waiver of Premiums un~~...~~

☐ Notice of Options Due.......... Option To Convert Term Insurance; Option to Purchase Additional Insurance.

☐ Notice of Policy Change......... Change in: Address, Owner, Beneficiary.

*[stamp:]* NOV 1 1 1985  NEW BUSINESS

## Replacement

To the best of your knowledge is replacement involved?..... ...............  ☐ Yes ☑ No
If "Yes", please complete replacement form.

| (Print) Agent's Name(s) | Number | % Interest |
|---|---|---|
| John S. Darst | 4914 | 100 |

Service Agent's Signature *[signature]*

LD0033874 Policy File Redacted
2020ADV25114/Judge: GALLAGHER THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:41:09\CONF#: 10957\WORKFLOW ID: 1238707



POLICY SCHEDULE B

FACE AMOUNT        $350,404

ISSUE AGE & SEX        60 MALE
PREMIUM CLASS         NON-SMOKER

- - - - - - - - - TABULAR CASH VALUES - - - - - - - - - -

THE TABULAR CASH VALUES SHOWN BELOW ARE NOT MINIMUM VALUES BUT REPRESENT
THE VALUES THAT WOULD BE PAYABLE IF THE ACTUAL RATE OF RETURN WERE __% IN
EACH POLICY YEAR. THE CASH VALUE MAY BE MORE OR LESS THAN AMOUNTS SHOWN.
SEE 'POLICY BENEFITS FOR THE OWNER' FOR DESCRIPTION OF CASH VALUES.

TABULAR CASH VALUES AT END OF POLICY YEARS

| END OF POLICY YEAR | TABULAR CASH VALUES | END OF POLICY YEAR | TABULAR CASH VALUES | END OF POLICY YEAR | TABULAR CASH VALUES |
|---|---|---|---|---|---|
| 1 | $ 235,470 | 10 | $ | 17 | $ |
| 2 | | 11 | | 18 | |
| 3 | | 12 | | 19 | |
| 4 | | 13 | | 20 | 350,221 |
| 5 | | 14 | | | |
| 6 | 275,273 | 15 | | | |

WE WILL DETERMINE THE TABULAR CASH VALUE ON DATES NOT SHOWN IN A CONSISTENT
MANNER WITH ALLOWANCE FOR TIME ELAPSED AND PREMIUMS PAID. VALUES NOT SHOWN
WILL BE FURNISHED ON REQUEST.

THE NET PREMIUM OF $229,873.00 IS USED IN THE INVESTMENT BASE CALCULATION
(SEE 'HOW VARIABLE LIFE INSURANCE WORKS' SECTION) AND IS NOT FOR PREMIUM
PAYMENT PURPOSES.

THE NET PREMIUM WILL BE ALLOCATED AS FOLLOWS:
60% TO MONEY RESERVE        40% TO 1990 TRUST

LD0033874        13.30.49.09 - 86.031        POLICY SCHEDULE B

2020ADV25114/Judge: GALLAGHER/ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:41:09\CONF#: 10957\WORKFLOW ID: 1238707



POLICY AMENDMENT RIDE

INCREASE IN INVESTMENT BASE

THIS RIDER PROVIDES FOR AN INCREASE IN THE TOTAL INVESTMENT BASE
AS OTHERWISE DETERMINED IN THE BASIC POLICY, AS OF THE FIRST DAY OF THE
POLICY YEARS SET OUT BELOW. THE INCREASE WILL BE DISTRIBUTED AMONG THE
INVESTMENT DIVISIONS IN PROPORTION TO THE INVESTMENT BASE IN EACH
DIVISION AS OF THE IMMEDIATELY PRECEDING ANNIVERSARY. THE INCREASES
ARE APPLICABLE ONLY AS OF THE DATE INDICATED AND ARE NOT CUMULATIVE;
THE INCREASES WILL BE AS FOLLOWS:

| FIRST DAY OF POLICY YEAR | INVESTMENT BASE OTHERWISE DETERMINED INCREASED BY |
|---|---|
| 02 | $20,125.00 |
| 03 | 18,100.00 |
| 04 | 16,100.00 |
| 05 | 14,092.00 |
| 06 | 8,068.00 |
| 07 | 6,056.00 |
| 08 | 4,028.00 |
| 09 | 2,012.00 |
| 10 | 0 |

THEREAFTER

THE INVESTMENT RETURN FOR THIS POLICY PROVISION IN THE BASIC
POLICY IS MODIFIED BY ADDING THE FOLLOWING TO THE END OF THE FIRST
PARAGRAPH:

", EXCEPT THAT THE PORTION OF THE TOTAL INVESTMENT BASE
EQUAL TO THE AMOUNT IN ANY PAID ONLY MONEY ABOVE, SHALL
BE MULTIPLIED BY THE POLICY'S ACTUAL RATE OF RETURN IN
EITHER YEAR THE DIFFERENCE BETWEEN THE ACTUAL RATE OF
RETURN AND .045."

ALL OTHER REFERENCES TO INVESTMENT RETURN FOR THIS POLICY IN THIS
PROVISION ARE QUALIFIED ACCORDINGLY.

56733                                               LD0033874

---

**Exhibit G - Part 1**          **Policy LD0033874**          **Page 7**

2020ADV25114/Judge: GALLAGHER/ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:41:09\CONF#: 10957\WORKFLOW ID: 1238707



LD0033874 Policy File Redacted                                        Page 9
2020ADV251147/Judge: GALLAGHER/ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:41:09\CONF#: 10957\WORKFLOW ID: 1238707



*Amendment of Application*

## MONARCH LIFE INSURANCE COMPANY
### VARIABLE LIFE SERVICE CENTER
### 146 CHESTNUT STREET, SPRINGFIELD, MA 01103

I, DONALD A CAMPBELL ........ .... ........., hereby amend my application to THE MONARCH
LIFE INSURANCE COMPANY, Policy No. LD0033874 ........ dated NOVEMBER 06, 1985 ........, as follows

ISSUE WITH NET PREMIUM ALLOCATION OF 60% MONEY MARKET/40% 1985
TRUST.

I hereby agree that these changes shall be an amendment to and form a part of the original application and of the
Policy issued thereunder, if any, and that they shall be binding on any person who shall have or claim any interest under
such Policy.

If, by the above amendment, I have agreed to any special restriction in the Policy applied for in my original
application, the consideration for such agreement shall be deemed to be the issuance to me of such Policy containing
such restriction

Dated at Cleveland, Ohio ....... this 4 day of March ........ 1986

Witness ........................  ........................
To be signed by witness          Signature of proposed insured

........................
Signature of policy owner, if other than the
proposed insured

THIS COPY ATTACHED TO THE POLICY MUST BE SIGNED, DATED, AND WITNESSED ON DELIVERY OF THE
POLICY. THE DUPLICATE COPY ACCOMPANYING THE POLICY MUST BE SIGNED, DATED, WITNESSED, AND
RETURNED TO THE COMPANY.



Merrill Lynch
Insurance Group Services, Inc

Variable Life Service Center
P.O. Box 9025
Springfield, Massachusetts 01102-9025

**Merrill Lynch**

October 14, 1993

Donald A Campbell
3044 Warrington Rd
Shaker Hts OH 44120

Re: Policy # LD00482 (2 LD0033874)

Dear Mr. Campbell:

As you requested, we have updated our records to reflect the following changes on the variable life insurance policy listed above:

· the new beneficiary designation for your policy

We've enclosed an acknowledged copy of the request form to confirm these changes. Please file this with your other important policy documents.

We value you as a client of Merrill Lynch Life Insurance Company. If we can be of further assistance, please call one of our Service Representatives at 1-800-356-5333; or write to us at P.O. Box 9025 Springfield, MA 01102-9025.

Sincerely,

Jeff Zahr
Client Services

cc:   John Darst #612
      Office # D0000P6

**Exhibit G - Part 2**          **Policy LD0033874**          **Page 12**

2020ADV251147/Judge: GALLAGHER/ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:41:37\CONF#: 10957\WORKFLOW ID: 1238706



**Merrill Lynch**

Merrill Lynch
Insurance Group Services Inc

Variable Life Service Center
P.O. Box 9025
Springfield, Massachusetts 01102-9025

November 26, 1997

Campbell Family Limited Partnership
3044 Warrington Road
Shaker Heights, OH 44120

Re: Policy # LD0048273 & LD0033874

Dear Mr. & Mrs. Campbell,

As you requested, we have updated our records to reflect the following changes on the variable life insurance policy(ies) listed above:

- the new ownership designation for your policy
- the new instructions as to who has been authorized to act as the owner of the policy on behalf of the corporation

We've enclosed an acknowledged copy of the request form to confirm these changes. Please file this with your other important policy documents.

In the future, please note that you will need to sign any requests for financial and contractual changes that affect this policy in your new capacity as general partner for the owner of this policy, i.e., Donald A. Campbell, general partner.

We have also mailed you a new Personal Identification Number for your policy(ies). This number helps to ensure that no one else has access to your policy values. You'll want to keep this number handy, as you'll need it whenever you call us to ask about your policy(ies).

Our records indicate the beneficiary(ies) as Primary: Donald Campbell Trust Contingent: None . We have enclosed a Change of Beneficiary form if you wish to make a change to the current designation.

**Merrill Lynch**

☒ MERRILL LYNCH LIFE INSURANCE COMPANY
☐ ML LIFE INSURANCE COMPANY OF NEW YORK
Variable Life Service Center, P.O. Box 9025, Springfield, MA  01102-9025

## Change or Transfer of Ownership (Absolute Assignment)

| | |
|---|---|
| Instructions | Please complete this form in ink and return it to us. Do not return your policy to us. For your protection, we require that all signatures be Signature Guaranteed or Notarized.  (See Signature Guarantee requirements below.) |
| | This revokes all previous designations of owner and contingent owner. |
| Current Policy Information | Please complete this section with current policy information. |
| | Name of Insured(s)  DONALD A CAMPBELL                    Policy Number  LD0033874 |

**New Policy owner(s) Information**

The new owner(s) information is required to be completed in the following section.  If the new ownership is joint, all owners' names, signatures, social security numbers or tax identification numbers and dates of birth are required. (See the Multiple Owners section on the reverse side.)

Name(s) of New Owner(s)  CAMPBELL FAMILY LIMITED PARTNERSHIP     Soc. Sec. or Tax ID #(s) 34-1849051   Date(s) of Birth N/A

Home(s) of New Owner(s)  3044 WARRINGTON ROAD     Soc. Sec. or Tax ID #(s)   Date(s) of Birth

Mailing Address     City SHAKER HTS   State OHIO   Zip Code 44120

CMA Number of New Owner (if applicable)  612- 07A83     CMA ACCOUNT MUST BE IN THE NAME OF THE NEW OWNER(s)

Contingent Owner(s) (if any)     Soc. Sec. or Tax ID #(s)   Date(s) of Birth

**Signature(s) of Current Policyowner(s)**

Signature Requirements:  Each Signature is required to be Signature Guaranteed or Notarized.

Signature(s) of Current Policyowner(s) DONALD A CAMPBELL     9/30/97     Daytime Telephone # 216-921-5380
(Indicate title if appropriate, i.e. custodian, trustee, executor, president, etc.)

Signature(s) of Current Policyowner(s) MARGARET CAMPBELL    9/30/97     Daytime Telephone #
(Indicate title if appropriate, i.e. custodian, trustee, executor, president, etc.)

Signature(s) of Irrevocable Beneficiary(ies) (if applicable)     Date
(Indicate title if appropriate, i.e. custodian, trustee, executor, president, etc.)

Signature(s) of Collateral Assignee(s) (if applicable)     Date
(Indicate title if appropriate, i.e. trustee, executor, president, etc.)

**Certification for New Owner**

Under penalties of perjury, I certify that:

(1) The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and

(2) I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of failure to report all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding.

You must cross out item (2) above if you have been notified by the IRS that you are subject to backup withholding because of under reporting interest or dividends on your tax return. However, if after being notified by the IRS that you were subject to backup withholding you received another notification from the IRS that you are no longer subject to backup withholding, do not cross out item (2).

**Signature(s) of New Policyowner(s)**

We require specimen signature(s) of all individuals named as new owner(s) to be on file with us. Please sign below.
Signature Requirements: Each Signature is Required to be Signature Guaranteed or Notarized.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.     RECEIVED

Signature(s) of New Policyowner(s) Donald A. Campbell     9/30/97     NOV 1 7 1997     Daytime Telephone #
Indicate title if appropriate, i.e. custodian, trustee, executor, president, etc.: General Partner  VLSC NEW SERVICES

Signature(s) of New Policyowner(s) Margaret Campbell    9/30/97     Daytime Telephone #
Indicate title if appropriate, i.e. custodian, trustee, executor, president, etc.:     SIGNATURE GUARANTEED

**Signature Guarantee Requirements**

For your protection, we require signatures to be guaranteed by one of the following institutions:
• national bank or trust company (NOT a savings bank or federal savings and loan association),
• member bank of the Federal Reserve System; or
• member firm of a national securities exchange.
Guarantees must be signed by an authorized individual as a qualifying institution. A "Signature Guarantee" stamp is required. The phrase "Signature Guaranteed" must appear with the signature.

**Variable Life Service Center**

By _____

Note: Incomplete forms will be returned by regular mail to the policyowner.

**Merrill Lynch**

☒ MERRILL LYNCH LIFE INSURANCE COMPANY
☐ ML LIFE INSURANCE COMPANY OF NEW YORK
Variable Life Service Center, P.O. Box 9025, Springfield, MA  01102-9025

**Certification to Exercise Ownership Rights**

**Instructions**

This Certification voids and replaces all previous certifications on file with us.

Please use this form to name the individual within a corporation, corporate trust, or partnership who is authorized to exercise ownership rights regarding the policy described below.

We will send you a copy of this certificate for your records. Changes in the information given below can only be made by an amendment to the policy. This certification is valid until we receive a new Certification to Exercise Ownership Rights form from you.

We will follow the instructions of any person named in this form as authorized to exercise ownership rights. We will not be liable for any claims, expenses, legal fees, or losses if we follow any instructions that we believe are genuine.

All corporations and incorporated associations are required to have the secretary affix the corporate seal on this form.

A corporation/association with only one officer, a corporate trust, a partnership and all others require either a corporate seal or a signature guarantee.

**Certification**

Please complete the following:

Is this the first Certification form completed?  ☒ Yes   ☐ No

Name of Insured or Proposed Insured _____ DONALD A CAMPBELL _____

Name of Owner _ CAMPBELL FAMILY LIMITED PARTNERSHIP _

Policy Number _____ (LD0033874) _____

Policyowner's Telephone Number __ 216-921-5380 __

Policyowner is a: (check one)

☐ Corporation/Incorporated Association

☐ Corporate Trust     Trust Date _____

☒ Partnership

☐ Other (non-profit or religious organization, sole proprietorship, non-incorporated association, etc.)

**RECEIVED**

NOV 1 / 1997

**CLIENT SERVICES**

List below the names, titles, and specimen signatures of the individuals authorized to exercise ownership rights regarding the policy described above.

| Print Name | Title | Specimen signature |
|---|---|---|
| Donald A. Campbell | General Partner | *[signature]* |
| F. Margaret Campbell | General Partner | F.Margaret Campbell |

How many authorized signatures will be necessary to exercise ownership rights? ___ ONE ___
(Unless you tell us otherwise, we will follow the instructions of any one of the people named above.)

*Please complete the reverse side.*

VERIFY PRESENCE OF DDH WATERMARK — HOLD TO LIGHT TO VIEW

Reg. Dist. No. 18
Primary Reg. Dist. No. 1801

Ohio Department of Health
VITAL STATISTICS
CERTIFICATE OF DEATH

State File No

Registrar's No. 2010-001805

1. Decedent's Legal Name (Include AKA's if any)(First, Middle, LAST 1st)
DONALD ALLEN CAMPBELL

2. Sex Male

3. Date of Death (Mo/Day/Year) February 22, 2010

4. Social Security Number ...421
5a. Age (Years) 90

6. Date of Birth(Mo/Day/Year)

7. Birthplace(City and State or Foreign Country) CLEVELAND, OHIO

8a. Residence State OHIO
8b. County CUYAHOGA
8c. City or Town CLEVELAND
8d. Zip Code 44106

9. Street and Number 2181 Ambleside Drive

10. Ever in U.S. Armed Forces? Yes
11. Marital Status at Time of Death Married
13. Decedent of Hispanic Origin No
14. Decedent's Race White

16. Informant's Name MARGARET D CAMPBELL
17b. Relationship to Decedent Wife
17c. Mailing Address 2181 Ambleside Drive CLEVELAND, OHIO 44106

18a. Place of Death Nursing Home/Long Term Care Facility
18b. Facility Name (if not institution, give street & number) JUDSON PARK
18c. City of Town, State and Zip Code CLEVELAND, OH 44106
18d. County of Death CUYAHOGA

12. Decedent's Education (E.G., BA, AB, BB) BACHELORS DEGREE (E.G., BA, AB, BB)

15. Father's Name (First, Middle, Last) FREEMAN CAMPBELL
16. Mother's Name (First, Middle, Last Prior to first Marriage) PEARL ALBERTA EGERT

20. License Number (if licensed) 008186
21. Name and Complete Address of Funeral Facility BROWN-FORWARD INC 17022 CHAGRIN BLVD SHAKER HEIGHTS, OH 44120

22a. Method of Disposition Cremation
22b. Date of Disposition February 25, 2010
22c. Location (City/Town and State) Hillcrest Crematory BEDFORD HEIGHTS, OH

24. Date Filed MAR - 2 2010

23. Registrar's Signature Levone Dean

25. Name of Person Providing Burial Permit TREPES, MARY LOU
25b. Permit No 1805
25c. State Burial Permit Issued February 25, 2010

26a. Certifying Physician
26b. Time of Death O620
26c. Date February 22 2010
26d. License Number 35.07123G
26e. Date Signed 2/25/10

27. Name (Last, First, Middle) and Address of Person who Completed Cause of Death
FISCHER, CHRISTINE POTOKAR, 2500 Metrohealth Dr CLEVELAND, OH 44109

Immediate Cause:
a. End Stage Pulmonary Fibrosis    2 yr

b. Due to (or as Consequence of):

c. Due to (or as Consequence of):

d. Due to (or as Consequence of):

31. Did Tobacco Use Contribute to Death?
Yes  ☒ No  Probably  Unknown

32. Manner of Death: ☒ Natural

Exhibit G - Part 5

Policy LD0033874

Page 23

THR 1110049546

LD0033874 Policy File Redacted

2020ADV251147/Judge: GALLAGHER THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:42:59\CONF#: 10957\WORKFLOW ID: 1238703

## Life Claimant Statement for Trusts/Estates

Merrill Lynch Life Insurance Company
P.O. Box 19100
Greenville, SC 29602

1. Policy numbers  LD0048212    LD0033874

**Insured Information**

2. Name of Insured  Donald A Campbell

3. Date of Birth [redacted]   Date of Death 2/22/10   Social Security Number [redacted]3421

**Beneficiary Information**

4. Taxpayer Identification Number and Name of the Trust/Estate (please circle one)
Donald A Campbell Trust u/a/d 3/25/93          27-6554220

5. Name(s) of Trustee/Administrator of Estate (please circle one)   F Margaret Campbell, Succ TTEE

*PLEASE NOTE: TRUSTEE MUST COMPLETE TRUST CERTIFICATION FORM IN ADDITION TO THIS FORM*

**Settlement Option Available**
☒ Elect to receive a lump sum distribution

**Overnight delivery**
☐ Please provide overnight delivery.  *A delivery fee that will be deducted from the Death Benefit applies to all overnight requests.*

**Lost Contract Statement (Do not check if the policy is being sent to us)**
☒ I do hereby certify that the said policy has been lost or destroyed and is not in my possession. If the said policy comes into my possession in the future, I agree to deliver it to the Company for cancellation.

These statements are true and complete to the best of my knowledge and belief. I understand that the furnishing of forms by the Company does not constitute an admission that there is any insurance in force.

Your claim cannot be processed if the Claimant Statement is not fully completed and signed. Other requirements may exist, please refer to the attached cover letter for additional details. Under penalties of perjury, I certify that (1) the number shown on this form is my correct taxpayer identification number and (2) I am not subject to back up withholding because (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and (3) I am a U S citizen or resident alien  If you are a foreign person, please complete a W8-BEN form. If you have any questions about your claim or the claim form, please contact us at 1-800-384-6333.

Signature: _F Margaret Campbell_  Trustee   Date 03/18/2010
Trustee/ Administrator of Estate (please circle one)

Signature: _____  Date _____
Trustee/Administrator of Estate (please circle one)

Mailing Address c/o Merrill Lynch 25000 Great Northern Corp Ctr 100 N Olmsted OH 44070
                    STREET                    CITY              STATE       ZIP

Telephone Number ( 216 ) 921-5380

AO-0150IML  12/09                                                    CS-FL

2010 APR 14  AM 10: 54

LD0033874 Policy File Redacted                                    Page 139
2020ADV291 Judge: GALLAGHER THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:43:25\CONF#: 10957\WORKFLOW ID: 1238702

The Insurance Company is authorized to accept instructions, including contract changes and distribution privileges, from those individuals or entities listed below.

I/We have received and understand the terms of this document and have not relied on any representation or advice by the Insurance Company or its representatives regarding the legal or tax effects of this Certification.

I/We hereby certify under penalty of perjury that the undersigned are all the Trustees. (All Trustees must sign. Attach extra page if necessary.)

Attached are copies of the first page and signature page of this Trust.

F Margaret Campbell

*Current Trustee Name (Please Print)        Current Trustee Name (Please Print)

Trustee Signature                   Trustee Signature

2181 Ambleside Rd #216-218

Address                               Address

Cleveland OH 44106   216-921-5380

Phone Number                          Phone Number

               03/18/2010

Witness       Date                      Witness       Date

*Should only one person execute this agreement, it shall constitute a representation that the signatory is the sole Trustee. Where applicable, plural references in this certification shall be deemed singular.

Federal law requires all financial institutions, including Insurance Companies, to obtain, verify, and record information that identifies each person who opens an account. This may include name, address, date of birth, and other information that will allow the Insurance Company to identify you. This will assist them in ensuring that your information is secure.

We recommend you seek the advice of your tax and/or legal counsel with any questions you may have concerning your trust. The Insurance Company reserves the right to request, when deemed necessary, a copy of the Trust Document and other documentation in addition to this executed form.

## Please Read the following information before completing this form.

### Contract/Policy Information
Indicate the name of the contract(s)/policyowner(s) and existing contract/policy number, if possible.

### Information from your Trust Document
This section is asking for specific information that must be obtained from your trust document. Please refer to the trust definitions below to help you determine the information the Company is requesting:

### Definitions
*Trustor(s)/Grantor(s)/Settlor(s):* The individual(s) who creates a trust and who gives (transfers) property to the trust.

*Trustee(s):* The individual(s) and/or institution(s) named by the trustor(s)/grantor(s)/settlor(s) to act on behalf of the trust according to the terms as outlined in the trust document.

*Successor Trustee(s):* The individual(s) who will become trustee(s) upon the death or resignation of the named Current Trustee(s)

*Beneficiary(ies):* The individual(s) to whom the assets of the trust will be distributed, based upon the terms of the trust, once a triggering event, such as the death of the trustor(s)/grantor(s)/settlor(s), occurs

*Revocable trust:* a trust that allows the maker(s) of the trust to change or terminate the trust.

*Irrevocable trust:* a trust that does not allow the maker(s) of the trust to change or terminate it.

### Investments Permitted
Please indicate the type of investments permitted within the powers of the trust.

### Trustee(s) Authorized Individual(s)
Please indicate the name(s) and signature(s) that are authorized to give instructions for the trust.

### Note
The Company recommends that you seek the advice of your legal counsel with any questions you may have concerning your trust.

AG01048ML 0609                   Page 2 of 2                64592 0600
FI-C5

(margin, rotated) 2010 APR 14 AM 10: 54

**Exhibit G - Part 6**        **Policy LD0033874**        **Page 26**

LD0033874 Policy File Redacted         Page 141

2020ADV251114/Judge: GALLAGHER/ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:43:25\CONF#: 10957\WORKFLOW ID: 1238702

| Life Death Claim Work Sheet | | | | | MIPS | |
|---|---|---|---|---|---|---|
| INSURED | **DONALD A. CAMPBELL** ✓ | | | POLICY NUMBER | **LD0033874** | |
| AGE AT ISSUE SEX **66-M** | AGE AT DEATH **90** | DATE OF BIRTH | DATE LAST PREMIUM PAID | PREMIUM PAID TO **250,000-S** | | |
| DATE OF POLICY **1/28/1986** | ISSUE DATE **1/31/1986** | POLICY FORM **PP4** | | OWNER'S RESIDENCE STATE **OH-44106** | | CONTRACT ST **OH** |
| BENEFICIARY | | | | | | |
| Primary: | **DONALD A. CAMPBELL TRUST U/A/D 3/25/93, PG. 89** | | | | | |
| Contingent: | **NONE** | | | | | |

| CLAIM NUMBER | DATE OF NOTICE **3/4/2010** | COMPANY **ML** | | | REINSURANCE **NONE** | |
|---|---|---|---|---|---|---|
| **D-20626** | PROOFS MAILED | AGENT NAME **SHORT/MELTER/CO** | | | REINSURING COMPANY | |
| | PROOFS RECEIVED | | | | | |
| **D-20624** | PROOFS IN CLAIM # ✓ | COMPANY CODE **3** | AGENT # **612** | | | |
| | DATE OF DEATH ✓ **02/22/10** | ASSIGNED TO: | | | | |
| | CAUSE OF DEATH *Pulmonary Fibrosis* | | CAUSE CODE *63* | SPART | | |

| GUAR. D.B. | $402,278.38 | ADD-ON ☐ | YES ☐ |
|---|---|---|---|
| VA | $351,911.88 | EFFECTIVE DATE | |
| EPU | $0.00 | PREMIUM AMOUNT | |
| (TERM ADDITIONS) | | EFFECTIVE DATE | |
| (GROSS CLAIM) | $754,190.26 | PREMIUM AMOUNT | |
| (LESS LOAN) | $0.00 | EFFECTIVE DATE | |
| NET DEATH BENEFIT | $754,190.26 | PREMIUM AMOUNT | |
| ACCIDENTAL DEATH | | REMARKS | YES OR NO |
| PREMIUM REFUND | | FORM 712 REQUIRED | |
| PRE-PAY REFUND | | STATE TAX FORM REQUIRED | |
| POST MORTEM INTEREST | *5537.62* | STATE CONSENT NECESSARY | |
| PREMIUM DUE | | | |
| TOTAL AMOUNT PAID | *759,727.88* | CASH VALUE | $667,100.38 |
| AMOUNT OF CHECK(S) | | | |
| CHECK DATE(S) | *4-29-10* | NAR | $87,089.88 |
| CHECK TO THE ORDER OF: | | | |

*RD118046*

*Donald A Campbell*
*Trust 3-25-93*

APPROVED
*RD*

| Name of Beneficiary | Donald A. Campbell Tst 3/25/93 |
| Percentage of Benefit | 100% |

| Insured Name | Donald A. Campbell |
| Policy Number | LD0033874 |
| Issue date of Policy | 1/31/1986 |

| Issue State | Insured Resident state | Beneficiary Resident state | Delivery State |
|---|---|---|---|
| OH | OH | OH | OH |

| Date of Death of Insured | Date of Notification of Loss | Date of Receipt of Proof of Loss | Date of Check |
|---|---|---|---|
| 2/22/2010 | 3/4/2010 | 4/14/2010 | 4/30/2010 |

| | | | Rounding |
|---|---|---|---|
| Gross Death Benefit | $754,190.26 | $754,190.26 | Neutral |
| Loaned Amount | $0.00 | $0.00 | Neutral |
| Premium Refunded | $0.00 | $0.00 | Neutral |
| Net Death Benefit | $754,190.26 | $754,190.26 | Neutral |

| | | | Rounding |
|---|---|---|---|
| State Interest Rate | 0.72% | | |
| State Interest Paid | | | Neutral |
| Interest start date | | | |
| Interest Stop Date | | | |
| # of days | | | |

| | | | Rounding |
|---|---|---|---|
| Product Interest Rate | 4% | | |
| Product Interest Paid | $5,537.62 | $5,537.62 | Neutral |
| Interest start date | 2/22/2010 | | |
| Interest Stop Date | 4/30/2010 | | |
| # of days | 67 | | |

| Total Interest paid | $5,537.62 |
|---|---|
| Total Death Benefit Amount | $759,727.88 |
| Total Check Amount | $759,727.88 |

### CLAIMS LEGISLATION FOR: Ohio

(1) OH ST Sec. 3915.052(C) states interest is to be paid only if insured was resident of this state on date of death and unless the beneficiary under the life insurance policy elects to receive, or a written election has been made for the beneficiary to receive, the proceeds of the policy by means of a lump sum payment.

TYPE OF CONTRACTS: Life insurance other than credit life and industrial policies    INTEREST RATE USED: Greater of: annual short -term applicable federal rate for purpose of sec 1274(d) of IRC as defined in 5747.01 of Revised Code in effect for month in which insured died or current rate of interest on proceeds left on deposit with the company under an interest settlement option    TIME PERIOD TO PAY WITHOUT INTEREST: Date of Notification    DATE WHEN INTEREST ACCRUES FROM: Date of death

**Exhibit G - Part 7**                    **Policy LD0033874**                    **Page 29**

**Merrill Lynch**
**Life Insurance Company**

Service Center
P.O. Box 19100
Greenville, SC 29602-9100

April 29, 2010

Donald A. Campbell Trust 3/25/93
C/O F. Margaret Campbell – Trustee
Attn: Merrill Lynch
25000 Great Northern Corp Ctr 100
N. Olmstead OH 44070

   Re: Insured: Donald A. Campbell
   Life Policy Numbers: LD0048212 & LD0033874
   Life Claim Numbers: D-20624 & D-20626

Dear Trustee:

Thank you for sending in your claim forms. Enclosed are our checks for the death
benefit due. This represents the full benefit payable under these Merrill Lynch Life
Insurance Company life insurance policies. The values are as follows:

**LD0048212**
| | |
|---|---|
| Death Benefit | $329,767.00 |
| Post Mortem Interest * | 2,421.30 |
| Total Due | $332,118.30 |

**LD0033874**
| | |
|---|---|
| Death Benefit | $754,190.26 |
| Post Mortem Interest * | 5,537.62 |
| Total Due | $759,727.88 |

   * 67 days at 4 percent (taxable income) (2/22/2010 to 4/30/2010).

If we can be of further assistance, please call the claims department at 1-800-354-5333;
or write to us at P.O. Box 19100, Greenville, SC 29602.

Encl. Checks

1cc: Short/Melter/Co #612

2cc: F. Margaret Campbell - Trustee
    2181 Ambleside Rd #216-218
    Cleveland OH 44106

**Exhibit G - Part 8**           **Policy LD0033874**          **Page 30**

 **MONARCH LIFE INSURANCE COMPANY**

# POLICY ISSUE SUMMARY

FROM: JOHN DARST                                          OFFICE: 650
INSURED: DONALD P CAMPBELL                        POLICY NO: LD0033874

= = = = = = = = = = = = = = AGENT INFORMATION = = = = = = = = = = = = = =

AGENT                    CODE        AINT                           OFFICE
JOHN DARST             0004914      100                           650 CC

= = = = = = = = = = = POLICY INFORMATION = = = = = = = = = = =

POLICY OWNER                     POLICY NO       LD0033874
DONALD A CAMPBELL            SEX ID NO               4471
3044 WARRINGTON            BIRTH DATE
SHAKER HEIGHTS OH 44120    ISSUE AGE-SEX      58-MALE
                                         RECEIVED DATE      JAN-20-86

BENEFICIARY
F MARJARET CAMPBELL/SPOUSE

    PLAN            CLASS        AMOUNT IN UNITS    SINGLE PREMIUM
PRIME PLAN IV    NON-SMOKER      350.604          350,000.00

= = = = = = = = = = = = = DELIVERY INSTRUCTIONS = = = = = = = = = = = = =

PREMIUM                  $350,000.00      *POLICY TO BE RETURNED TO MONARCH FOR*
CASH WITH APP        $350,000.00      *CANCELLATION IF NOT DELIVERED ON OR *
                                                    *PRIOR TO      FEB-20-86
COLLECT                   NONE
APPLICATION AMENDMENT - ORIGINAL AND COPY IN POLICY TO BE SIGNED

                                            rec'd. 3/6
                                              LG.

LD0033874 Policy File Redacted                                        Page 31
2020ADV251747/Judge: GALLAGHER/THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:44:47/CONF#: 10957/WORKFLOW ID: 1238699

**Limited Power of Attorney**

The under[___]ner(s) of the variable life insur[___]es) listed below, hereby appoint(s) John S[___] as the undersigned's true and lawful attorney and agent to execute the following actions with full power and authority and to act with respect thereto in the place and stead of the undersigned with the same effect as if the undersigned had taken such action:

☑ To change the allocation of the investment base and any future net premiums of the policy(ies) listed below between and among the investment divisions of the variable account of Monarch Life Insurance Company.

☑ To make inquiries and receive information, including duplicate notices regarding the cash values, loan values and death benefits of said policy(ies).

Monarch Life Insurance Company will not be required to inquire into the basis of any such action and may receive and accept the authorization of said attorney and agent with regard to such action without further inquiry.

This Limited Power of Attorney shall be binding upon the undersigned and the successor or successors thereof and may be relied upon by Monarch as being in full force and effect until notice of revocation in writing to Monarch at the above address.

The undersigned hereby indemnifies and agrees to hold Monarch and its agents and employees harmless from and against any and all loss, expense, cost or liability of any nature arising as a result of any action taken by Monarch or its agents and employees in reliance upon this Limited Power of Attorney.

Note: If this Limited Power of Attorney is to a corporation or partnership, list the personnel authorized to take the actions listed above:

**Signatures**

Subject to my/our written revocation of any of the choices completed above, Monarch Life Insurance Company and the Variable Life Service Center are authorized to administer the policy or policies listed below in accordance with these instructions.

Signature of proposed insured X _____

Agent/Witness    John S. Darst _____

Owner (if other than insured) _____

Proposed co-owner (if any) _____

Date  March 19, 1986         City Cleveland       State Ohio

Agent/Witness _____

Policy no. (if known) LD0033874

Print name of insured/Proposed insured    DONALD A. CAMPBELL

**For Variable Life Service Center Use**

LD0033874 Policy File Redacted                                    Page 33
2020ADV25174/Judge: GALLAGHER: THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:44:47\CONF#: 10957\WORKFLOW ID: 1238699



Merrill Lynch
Insurance Group Services Inc.

Variable Life Service Center
PO Box 9015
Springfield, Massachusetts 01102-9125

**Merrill Lynch**

July 31, 1997

Donald A. & F. Margaret Campbell
3044 Warrington Rd
Shaker Heights, OH 44120

Re: Policy # LD0004321 & LD0033874

Dear Mr. & Mrs. Campbell,

As you requested, we have updated our records to reflect the following changes on the
Merrill Lynch Life Insurance Company variable life insurance policy(ies) listed above:

　　the new ownership designation for your policy

We are pleased to enclose the acknowledged copy(ies) of the request form(s) to confirm
these changes.  Please file this with your other important policy documents.

Because of the change in the policy's ownership, the previous Power of Attorney you
assigned is no longer valid.  If you would like to again authorize someone other than the
policy's owners to inquire about or make changes to this policy, please complete the
enclosed Power of Attorney form.

We value you as a client of Merrill Lynch Life Insurance Company.  If we can be of
further assistance, please call one of our Service Representatives at 1-800-356-3333; or
write to us at P.O. Box 9015, Springfield, MA 01102-9015.

Sincerely,

Elizabeth Sullivan
Client Services

Encl.
cc:　　Shani/ Mishor #612
　　　　Office # I:000007

LD0033874 Policy File Redacted
2020ADV23119 \Judge \GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:42:04\CONF#: 10957\WORKFLOW ID: 1238705

Merrill Lynch

☑ MERRILL LYNCH LIFE INSURANCE COMPANY
☐ ML LIFE INSURANCE COMPANY OF NEW YORK
Variable Life Service Center, P.O. Box 1023, Springfield, MA 01102-0025

**Change or Transfer of Ownership**

**Instruction**
Please complete this form and return it to us. Do not return your policy to us. For your protection, we require that all signatures be Signature Guaranteed or Notarized. (See Signature Guarantee requirements below.)

This revokes all previous designation of owner and contingent owner.

**Current Policy Information**
Please complete this ____ with current policy information.

Name of Insured(s) DONALD A CAMPBELL     Policy Number LD0033874

**New Policyowner(s) Information**
The new own ___ information is required to be completed in the following section. If the new ownership is joint, all owners' names, signatures, social security numbers or tax identification numbers and dates of birth are required. (See the Multiple Owners section on the reverse side.)

DONALD A CAMPBELL        0432
Name(s) of New Owner(s)     (Soc. Sec. or Tax ID #(s))    Date(s) of Birth

F MARGARET CAMPBELL        818
Name(s) of New Owner(s)     (Soc. Sec. or Tax ID #(s))    Date(s) of Birth

3044 HARRINGTON ROAD      SHAKER HTS   OHIO   44120
Mailing Address

612-24917
CMA Number of New Owner (if applicable) (CMA ACCOUNT MUST BE IN THE NAME OF THE NEW OWNER(S))

Contingent Owner(s) (if any)     (Soc. Sec. or Tax ID #(s))    Date(s) of Birth

**Signature(s) of Current Policyowner(s)**
Signature Requirements Each Signature is required to be Signature Guaranteed or Notarized.

_[signature]_                  JULY 16, 1997   216 921 5380
Signature(s) of Current Policyowner(s)        Date    Daytime Telephone #
(Indicate title if appropriate, i.e. custodian, trustee, executor, president, etc.)

Signature(s) of Current Policyowner(s)        Date    Daytime Telephone #
(Indicate title if appropriate, i.e. custodian, trustee, executor, president, etc.)

Signature(s) of Irrevocable Beneficiary(ies) (if applicable)     Date
(Indicate title if appropriate, i.e. custodian, trustee, executor, president, etc.)

Signature(s) of Collateral Assignee(s) (if applicable)     Date
(Indicate title if appropriate, i.e. trustee, executor, president, etc.)

**Certification for New Owner**
Under penalties of perjury, I certify that:
(1) The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and
(2) I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of failure to report all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding.
You must cross out Item (2) above if you have been notified by the IRS that you are subject to backup withholding because of under reporting interest or dividends on your tax return. However, if after being notified by the IRS that you were subject to backup withholding you received another notification from the IRS that you are no longer subject to backup withholding, do not cross out Item (2).

**Signature(s) of New Policyowner(s)**
We require specimen signature(s) of all individuals named as new owner(s) to be on file with us. Please sign below. Signature Requirements Each Signature is Required to be Signature Guaranteed or Notarized.
The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

_[signature]_                JULY 16, 1997   921-5380
Signature(s) of New Policyowner(s)        Date    Daytime Telephone #
(Indicate title if appropriate, i.e. custodian, trustee, executor, president, etc.)

RECEIVED
JUL 21 1997

_F Margaret Campbell_       July 16, 1997   921-5380
Signature(s) of New Policyowner(s)        Date    Daytime Telephone #
(Indicate title if appropriate, i.e. custodian, trustee, executor, president, etc.)

CLIENT SERV___

Signature(s) of Contingent Owner(s)     Date
(Indicate title if appropriate, i.e. custodian, trustee, executor, president, etc.)

**Signature Guarantee Requirements**
For your protection, we require that your signature be guaranteed by a:
* national bank or trust company (not a savings and loan or savings and loan association)
* member bank of the Federal Reserve System; or
* member firm of a national securities exchange.

Variable Life _[stamp]_  Guarantees must be signed by an authorized individual or a qualifying individual. A "Signature Guarantee" stamp is required. The phrase "Signature Guarantee" must appear with the signature.

By _[signature]_

**Note:** Recorded ____ forms will be returned by regular mail to the policyowner.

2020ADV251147/Judge: GALLAGHER/ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:42:04/CONF#: 10957/WORKFLOW ID: 1238705



**INSTRUCTIONS**

**Ownership**

Under this Change of Ownership (Absolute Assignment) you agree to transfer all your rights to the new owner, including but not limited to, the right to reallocate the investment base, receive money or other benefits, change the beneficiary, further transfer the ownership and cancel the policy to receive the net cash surrender value.

Ownership of this policy will not be transferred until we receive and acknowledge this form at our Service Center. Confirmation and all future notices will be sent to the new owner. If the new ownership is other than a single owner, we will require completion of additional forms. (See the Multiple Owner section below.)

Policyowners are advised to consult with tax and legal advisors prior to completing this form. We do not give tax or legal advice to policyowners.

**SPIAR/SPIAC**

If a Single Premium Immediate Annuity Rider/Single Premium Immediate Annuity Contract was purchased with the policy, ownership of the SPIAR/SPIAC will also be transferred automatically to the new owner.

**Payors**

On a premium paying policy, the payor on the policy will be transferred automatically to the new owner unless otherwise indicated.

**Corporations**

If a policy is owned by a corporation, corporate trust or partnership, a Certification to Exercise Ownership Rights form (#50497) must also be completed. This form must be on file with us in order to process policy transactions. All requests for financial or contractual changes are required to be signed by the authorized officer(s) indicating their appropriate title(s).    *Example: John Smith, President.*

**Trusts**

If you name a trust as policyowner, we will not inquire into the terms of the trust. Please indicate the name of the trust, the date of the trust agreement, the tax identification number of the trust and the trustee(s) name(s) and address(es). A testamentary trust cannot be a policyowner. To exercise ownership rights on a policy owned by a trust, a Certificate of Trustee/Policy Owned by Trust form (#50537) must also be on file with us.
The trustee(s) must sign all future requests for financial or contractual changes and indicate their capacity as trustee.    *Example: Jane Doe, trustee.*

**Minors**

Minors cannot exercise ownership rights to the policy. Ownership should not be transferred to a minor unless there is a court-appointed legal custodian/guardian for the minor or unless the ownership is under the Uniform Gifts (or Transfers) to Minors Act (UGMA/UTMA).

If the ownership is under the UGMA/UTMA, the proper designation is: (Custodian's Name), as Custodian for (Minor's Name) under the Uniform Gifts (or Transfers) to Minors Act (Name of State).

The minor's social security number must be indicated under the New Policyowner Information section on the reverse side of this form. There can only be one custodian for one minor on each account. The custodian must sign all future requests for financial or contractual changes in their capacity as custodian for the minor under UGMA/UTMA including the name of the state.    *Example: Jane Doe, custodian for John Doe, UTMA/UMA.*

Ownership of the policy will revert automatically to the minor at the age stated in the state's UGMA/UTMA.

Please refer to the UGMA/UTMA provisions for your state for the permissible beneficiaries.

**Irrevocable Beneficiary**

If you have designated an irrevocable beneficiary on your policy, the irrevocable beneficiary must also sign this form in the space provided for signature of an irrevocable beneficiary.

**Executor/Administrator/ Personal Representative**

If this form is signed by the Executor, Administrator or Personal Representative of the owner's estate, a certified copy of their appointment must also be submitted to us. To exercise ownership rights, the Executor, Administrator or Personal Representative must sign this form and all future requests for financial or contractual changes and indicate their capacity as Executor, Administrator or Personal Representative.    *Example: John Doe, Executor.*

**Multiple Owners**

If you are designating more than one owner (other than spouses) a Multiple Owner form (#51672) must also be completed.
Dollar amount ownerships are not allowed.

**Collateral Assignments**

If you have assigned your policy for collateral, the assignee must also sign this form in the space provided for signature of Collateral Assignee on the reverse side of this form.

*complete the reverse side of this form.*

**Exhibit G - Part 3**                    **Policy LD0033874**                    **Page 16**

# Monarch Life Insurance Company

*Springfield, Massachusetts*

*Application for Modified Single Premium Variable Life Insurance*

No. LD0048212

**I. Proposed Insured**

☒Mr ☐Mrs. ☐Miss ☐Ms. ☐Other: ___ Marital status: m

Last name **Campbell** First **Donald** Middle **A.**

Street address (permanent residence) **3044 WARRINGTON RD.**

City **SHAKER HTS.** State **OH.** Zip code **44120**

Telephone ( 216 ) 921-5380 Soc. Sec. or Tax I.D. no. **8421**

Date of birth ___ Place of birth **Oh** Sex **m** Age nearest birthday **66**

Height **6'4"** Weight **205** Occupation and duties **RETIRED**

During the past five years, has the proposed insured:

| | Yes | No |
|---|---|---|
| 1.) had heart, liver, lung or kidney trouble, high blood pressure, stroke, diabetes, cancer or nervous disorder? | ☐ | ☒ |
| 2.) been hospitalized or received medical or surgical treatment or advice for any ailment, sickness or injury other than colds, minor viral infection, minor injuries and normal pregnancies? | ☐ | ☒ |

*If answer to Question 1 or 2 is yes, please give details here. Attach additional page if more space is needed.*

Condition(s) ___ Date(s) ___

Treatment or advice ___

Physician/Hospital ___ Address ___

| | Yes | No |
|---|---|---|
| 3.) Has the proposed insured smoked any cigarettes within the last 12 months? | ☐ | ☒ |
| 4.) Has the proposed insured ever been refused life insurance, been offered a modified or rated policy, or had an insurance company postpone, cancel or withdraw an application for life insurance? | ☐ | ☒ |
| 5.) Has the proposed insured engaged in hang gliding, skydiving or motor vehicle racing in the past year, or plan to engage in these activities within the next two years? | ☐ | ☒ |
| 6.) Does the proposed insured now perform his/her usual occupational duties full-time? | ☒ | ☐ |
| 7.) Has the proposed insured flown other than as a passenger in the past 24 months? | ☐ | ☒ |

*If answer to Questions 4 or 5 is yes, or 6 is no, explain in Remarks (Section VII)*

Hours last 12 months: ___ Hours previous 12 months: ___ Type of license: ___

**II. Owner** *(if different from proposed insured)*

Name(s) ___

Street address ___ Telephone ( )

City ___ State ___ Zip code ___

Relationship to proposed insured ___ Soc. Sec. or Tax ID no. ___

Contingent owner ___

**III. Plan Applied For**

Base coverage: Check one box in this section and specify the Single premium: $ **150,000**

☒ Maximum Investment (Guarantee Period for life)
☐ Maximum Face Amount (minimum Guarantee Period)

☐ Specified Face Amount of $ ___

Optional riders (as checked below):
☐ Single Premium Immediate Annuity Single premium $ ___
☐ Ten year certain ☐ Other ___ N/A *As limited by our rules*

☐ Other ___ N/A Single premium $ ___

*Partial payments not permitted*

Total single premium submitted with application $ **150,000**
Make check payable to: Monarch Life

APP 3A (10)

B

LD0048212 Policy File Redacted
2020ADV251147 Judge: GALLAGHER THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Page 1
Electronically Filed: CWC 03/18/2020 14:45:15\CONF#: 10957\WORKFLOW ID: 1238698

**IV. Investment's Suitability**

The applicant has received a copy of Edition No. ___ of the prospectus, and understand that:

|  | Yes | No |
|---|---|---|
| (8) the policy's cash value may increase or decrease depending on the investment results and the cash value on surrender may be less than the policy's investment base? | ☒ | ☐ |
| (9) the death benefit (exclusive of optional benefits) may increase or decrease depending on the investment results, but will never be less than the face amount during the Guarantee Period? | ☒ | ☐ |
| (10) the policy is a long-term commitment to meet insurance needs and financial goals? | ☒ | ☐ |
| (11) Will this policy replace or change an existing insurance policy or annuity? | ☐ | ☒ |

*If answer to Question 11 is yes, list all companies and policy numbers in Remarks (Section VII).*

**V. Initial Investment Allocation** *(Basic coverage only)*

**Show the amount in dollars or percentages (in whole numbers).**

Division (specify by name)

| 1995 TRUST | 50 % or $25,000 |
| MONEY RESERVE | 50 % or $75,000 |
|  | ___ % $ ___ |
|  | ___ % $ ___ |

Total 100 % or $150,000

Variable Account __A__ (specify by letter designation)

Note: Allocation of initial investment base is subject to the provisions of the prospectus and Monarch Life Insurance Company's rules and limits. After the free look period, the owner may reallocate the investment base among the investment divisions.

**VI. Beneficiary Designation(s)**

**Show name(s) and relationship to proposed insured.**

Beneficiary (ies):

F. MARGARET Campbell
(WIFE)

Contingent Beneficiary (ies):
___

The owner reserves the right to change the beneficiary (ies) unless indicated above.

**VII. Remarks** *(attach additional pages if necessary)*

App # LD0048212

**VIII. Important Information**

Upon request, illustration of the death benefits and cash values comparing the policy applied for and affixed life insurance policy for the same premium will be furnished. We will furnish any other information that may be currently required by the insurance supervisory official of the jurisdiction in which this policy is delivered

The death benefit under a policy may increase or decrease on each policy process ng date, depending upon the investment results of the policy, but will never be less than the face amount. The duration for which a policy is in effect may depend on the investment results of the policy, but will never be less than the Guarantee Period. The policy's cash value may increase or decrease on any day, depending upon the investment results. No minimum cash value is guaranteed.

By signing below, you acknowledge the explanation above and agree that to the best of your knowledge and belief, all statements and answers in this application are complete and true and may be relied upon in determining whether to issue the policy. Your answers will form a part of any policy to be issued, and no medical examiner or registered representative has authority to modify this agreement or waive any of Monarch's rights or requirements

You also understand that unless otherwise provided by the Receipt and Conditional Insuring Agreement, no policy will take effect unless, while the insured is living, the single premium is paid, the policy is delivered to and accepted by the owner, and answers and statements in this application continue to be complete and true at the time of such payment and delivery.

Proposed Insured X _____  Agent/Witness X _____

Applicant X _____  Owner, if other than applicant X

Agent/Witness X _____

Date  7-22-86  City  Cleveland  State  Oh

Print name of Registered Rep.  John  Darst  Soc. Sec. or Tax ID no.  ▓▓▓▓▓

Broker Dealer  Merrill Lynch  Branch Office  CL

7 APP86-S  (M)

NEW BUSINESS [stamp]

JUL 25 1986 [stamp]

LD0048212 Policy File Redacted
2020ADV251147\Judge: GALLAGHER\THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:45:15\CONF#: 10957\WORKFLOW ID: 1238698            Page 2

LD0048212

**Authorization by Proposed Insured**

To help determine insurability, you authorize:
- any physician, ho___ , other medical practitioner or facility, insu___ ce company and the Medical Information Bureau (see Notice above) to release to Monarch an___ s reinsurers information about your health or the health of any of your minor children who are to be insured;
- any employer, business associate, financial institution, consumer reporting agency, government unit, and the Medical Information Bureau (see Notice above) to release to Monarch and its reinsurers any information about your occupation, avocation, finances, driving record, character and re___ utation or that of your minor children who are to be insured;
- Monarch to obtain investigative consumer reports, if appropriate and
- Monarch to report information about the insur___ bility of you or any of your minor children to its reinsurers and to the Medical Information Bureau, as described in the statement of Monarch's underwriting procedures (See Notice above).

You understand that you have the right to learn the content and receive a copy of any such report. You agree that a photographic copy of this authorization is as valid as the original. You acknowledge receipt of the Fair Credit Reporting Act and Medical Information Bureau Notices. You agree this authorization is valid for two and one-half years from the date signed.

APPROVED MAR 710    OG

Signature _____ Insured  X _____  Date  7·22·86

Applicant parent  X _____  Date _____ 10

LD0048212 Policy File Redacted
2020ADV251147\Judge: GALLAGHER\THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE    Page 3
Electronically Filed: CWC 03/18/2020 14:45:15\CONF#: 10957\WORKFLOW ID: 1238698

**Monarch Life Insurance Company**
**Variable Life Service Center**

PO Box 9025
Springfield MA
01102-9025
(800) 354-5333

### Agent's Report on New Accounts

**Proposed Insured**
Last Name CAMPBELL  First DONALD  Middle A.
Previous residence (if at current residence less than 2 years)
Street address          City          State          Zip

**Suitability** The agent represents that he or she has reasonable grounds for believing that the coverage provided is suitable for the client, based on the owner's or proposed insured's circumstances, including but not limited to income and need for insurance, and that the values, benefits and costs of this insurance are suited to the proposed insured's or owner's insurance and financial objectives.

**Replacement** To the best of your knowledge, is replacement or change of existing policy involved? If yes, please complete replacement form. ☐ Yes ☒ No

**Comments** (Add any additional underwriting information)  POL # LD0048212

**Agent's Information** To the best of my knowledge, the answers to the questions on the application were recorded accurately, as given by the proposed insured.
Signature of Agent/Witness X _____ Date 7-22-86
Print Name of Agent/Witness JOHN S. DARST
FC/TIS. John S. Darst  % Credit 100 %  Branch # CL  SS # 7817
4914
Merrill Lynch Client Account #: 630 - 60737

### New Account Information

**Information About the Proposed Owner**
☒ Married ☐ Single ☒ Male ☐ Female  Age 66
Education: ☐ High school graduate ☒ College graduate
☐ Associate degree ☒ Advanced degree ☐ Other
Occupation: ☒ None/Student ☐ Military ☐ Blue collar
☒ Retired ☐ Executive/Managerial ☐ Professional (Attny., Acct., Doctor, Consultant, etc. Private Practice)
☐ Skilled Tradesman ☐ White Collar
Employment: ☐ Privately-held ☐ Public corporation ☐ Federal/State/Municipal
☐ Non profit corporation ☐ Self employed ☐ Partnership
Annual income: $ 250,000
Net worth: $ 2,000,000
Other life insurance owned (death benefit): $ 250,000  Prime Plan

**Marketing Information**
Purpose of Purchase: A. ☒ Personal/Estate  Source of Sale: A. ☒ Own client  Additional Client Business: A. ☐ Open new account only  Service Used: A. ☒ Insurance Consultant (TIS/ASM)
B. ☐ Education fund  B. ☐ Referral  B. ☐ Annuity  B. ☐ Special offers/Discounts
C. ☐ Retirement fund  C. ☐ Cold prospect  C. ☐ Securities/Mutual funds
D. ☐ Gift  D. ☐ Response  D. ☐ Other insurance
E. ☐ Business/Corporate  E. ☐ Seminar
F. ☐ Qualified plans  F. ☐ Group conversion

Exhibit H - Part 1          Policy LD0048212          Page 4

LD0048212 Policy File Redacted          Page 4
2020ADV251747\Judge: GALLAGHER\THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:45:15\CONF#: 10957\WORKFLOW ID: 1238698

Monarch Life Insurance Compa
Variable Life Service Center

P.O. Box 9025
Springfield, MA
01102-9025
(800) 354-9311

## Loan by Phone Authorization

L000 YF312

**Policy and Account Identification**

Complete this section. Give the address of the local bank branch office where the account to be wired is include the bank account number (and sub-account number if proceeds are to be wired to an account of a member firm of a national securities exchange for crediting to your account with them).

Name of insured                                                  Policy number

Name of policyowner

Name of bank

Address of bank

Account number                          Sub-account number (if applicable)

Account name(s) (must be same as policyowner)

**Terms**

By signing, you agree to the following terms:

- Monarch will not be liable for any loss, liability, cost, or expense for acting on your telephoned instructions;
- Monarch's sole responsibility is to transmit the wire to the institution you have designated;
- policy loans will be made under and are subject to the terms of the policy and interest will be determined as specified by the policy;
- the policy will be assigned to Monarch as sole security for the policy loan;
- total loans will include and cover any existing loan, including interest due or accrued;
- Monarch will furnish a confirmation providing full details of the transaction, including the amount of policy debt to Monarch;
- interest will be payable on each anniversary date as provided in the policy, with due and unpaid interest added to the loan amount, and will itself bear interest; and
- if the policy debt exceeds the policy's cash value, the policy will terminate on Monarch's compliance with any requirements of the policy to give notice;

  if the policy is in the name of a corporation, a Certification to Exercise Ownership Rights (Form 56941) or Corporate Resolution (Form 16729) must be filed with us concurrently, or be on file with Monarch;
- if the policy is in the name of a partnership, this authorization must be signed by a majority of general partners unless otherwise provided in a Certification to Exercise Ownership Rights (Form 56941).

At the time you request a policy loan, you certify that no bankruptcy or insolvency proceedings have been filed or started by or against you

**Signatures**

By signing this form, you authorize any telephoned loan requests made according to your agreement with us. You acknowledge that you have read the additional terms above, and agree to them.

Signature of policyowner X                                         Date

Signature of joint owner
(if applicable)         X                                          Date

FEB 26 1987

56736
4/86



LD0048212 Policy File Redacted                                                    Page 5
2020ADV291747\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:45:15\CONF#: 10957\WORKFLOW ID: 1238698



MONARCH LIFE INSURANCE COMPANY
VARIABLE LIFE INSURANCE (VLI)

ILLUSTRATION OF DEATH BENEFITS, INVESTMENT BASE, CASH SURRENDER VALUES
AND ACCUMULATED PREMIUMS
ASSUMING CURRENT VLI MORTALITY CHARGES

FOR: DONALD A. CAMPBELL
AGE/SEX: 66/MALE                          PRIME PLAN V

UNDERWRITING: SIMPLIFIED

| | SINGLE | FACE | INITIAL INVESTMENT |
|---|---|---|---|
| | PREMIUM | AMOUNT | BASE |
| CLASS: NON-SMOKER | 150,000 | 212,175 | 150,000 |

GUARANTEE
PERIOD: FOR LIFE

| POLICY YEAR | PAYMENTS(1) | TOTAL PAYMENTS MADE PLUS INTEREST AT 5% | END OF YEAR DEATH BENEFIT (2) (3) ASSUMING HYPOTHETICAL GROSS ANNUAL RATE OF RETURN OF 0.00% | 6.00% | 12.00% |
|---|---|---|---|---|---|
| 1 | 150000 | 157500 | 212175 | 216901 | 230138 |
| 2 | 0 | 165375 | 212175 | 221955 | 240650 |
| 3 | 0 | 173644 | 212175 | 226479 | 270449 |
| 4 | 0 | 182326 | 212175 | 233969 | 292029 |
| 5 | 0 | 191442 | 212175 | 236950 | 316337 |
| 6 | 0 | 201014 | 212175 | 241619 | 341030 |
| 7 | 0 | 211065 | 212175 | 246926 | 368022 |
| 8 | 0 | 221618 | 212175 | 251900 | 397985 |
| 9 AGE 75 | 0 | 232699 | 212175 | 256963 | 429061 |
| 10 | 0 | 244534 | 212175 | 261800 | 462232 |
| 15 | 0 | 311639 | 212175 | 288442 | 672251 |
| 19 AGE 85 | 0 | 379002 | 212175 | 312111 | 900565 |
| 20 | 0 | 597904 | 212175 | 318305 | 979619 |
| 25 | 0 | 507953 | 212175 | 352603 | 1453173 |

| POLICY YEAR | END OF YEAR INVESTMENT BASE (2) (4) ASSUMING HYPOTHETICAL GROSS ANNUAL RATE OF RETURN OF 0.00% | 6.00% | 12.00% | END OF YEAR CASH SURRENDER VALUE (2) (3) ASSUMING HYPOTHETICAL GROSS ANNUAL RATE OF RETURN OF 0.00% | 6.00% | 12.00% |
|---|---|---|---|---|---|---|
| 1 | 146062 | 155023 | 163907 | 136632 | 145573 | 154467 |
| 2 | 142227 | 160301 | 179544 | 153857 | 151551 | 170944 |
| 3 | 130156 | 165635 | 196187 | 130806 | 158485 | 188837 |
| 4 | 133915 | 171386 | 214456 | 127535 | 165036 | 208266 |
| 5 | 126219 | 177041 | 234690 | 123961 | 171791 | 229540 |
| 6 | 124270 | 182779 | 256464 | 120070 | 170579 | 252204 |
| 7 | 11081 | 160564 | 280123 | 115731 | 185434 | 276977 |
| 8 | 113052 | 194470 | 305936 | 110953 | 192376 | 303038 |
| 9 AGE 75 | 107060 | 260317 | 333796 | 100900 | 199267 | 332740 |
| 10 | 100908 | 206062 | 363796 | 100908 | 206062 | 363796 |
| 15 | 73569 | 242194 | 504372 | 73759 | 242154 | 504472 |
| 19 AGE 85 | 43790 | 257360 | 755511 | 60291 | 273260 | 795511 |
| 20 | 44152 | 201151 | 465273 | 44152 | 201151 | 465273 |
| 25 | 12152 | 42516 | 1313512 | 12152 | 323163 | 1313512 |

Hypothetical rates of return are illustrative only and should not be deemed a
representation of past or future rates of return.  Actual rates of return may
be more or less than those shown and will depend on a number of factors,
including the investment allocations made by an owner, prevailing interest
rates and rates of inflation.  The Death Benefit, Investment Base and Cash
Surrender Value for a policy would be different from those shown if the actual
gross annual rates of return averaged 0.00%, 6.00% and 12.00% over a period of
years, but also fluctuated above or below those averages for individual policy
years.  No representations can be made by Monarch or the Series Fund or the
Trusts that these hypothetical rates of return can be achieved for any one year
or sustained over the period of time.
Illustrated values may vary slightly from actual values due to rounding.

This illustration is invalid and incomplete unless accompanied by 'ILLUSTRATION
NOTES,' beginning on page 2 of 2 and dated 07-28-1986 which explains any
numbered references on this page.

STATE: OH  DATE: 07-28-1986

PAGE 1 of 2                                              REL T2.02

LD0048212 Policy File Redacted                                Page 6
2020ADV251747\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:45:15\CONF#: 10957\WORKFLOW ID: 1238698

MONARCH LIFE INSURANCE COMPANY
VARIABLE LIFE INSURANCE (VLI)
ILLUSTRATION NOTES

FOR: DONALD A CAMPBELL
AGE/SEX: 66/MALE

UNDERWRITING: SIMPLIFIED

CLASS: NON-SMOKER

GUARANTEE
PERIOD: FOR LIFE

PRIME PLAN V

| SINGLE PREMIUM | FACE AMOUNT | INITIAL INVESTMENT BASE |
|---|---|---|
| 150,000 | 212,175 | 150,000 |

(1) All payments are illustrated as if made at the beginning of the policy year.

(2) Assumes no policy loan has been made.

(3) Additional payments will be required to prevent a policy termination for any year in which an asterisk appears.

STATE: OH   DATE: 07-28-1986

PAGE  2  of 2                                                HLL T2.02

LD0048212 Policy File Redacted                                             Page 7
2020ADV251147\Judge: GALLAGHER\THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:45:15\CONF#: 10957\WORKFLOW ID: 1238698



 MONARCH LIFE INSURANCE COMPANY

## POLICY ISSUE SUMMARY

FOR: JOHN DARST                                    OFFICE: 650
INSURED: DONALD A CAMPBELL                         POLICY NO: LD0048212

- - - - - - - - - - - AGENT INFORMATION - - - - - - - - - - -

AGENT                      CODE        AGNT                   OFFICE

JOHN DARST                 0004914     100                    650 06

- - - - - - - - - - POLICY INFORMATION - - - - - - - - - - -

POLICY OWNER               POLICY NO  LD0048212

DONALD A CAMPBELL          TAX ID NO        4421
5044 JARRINGTON RD         BIRTH DATE
SHAKER HTS OH 44120        ISSUE AGE-SEX   86-MALE
                           POLICY DATE     JUL-23-86

BENEFICIARY

F MARGARET CAMPBELL/SPOUSE

      PLAN         CLASS      AMOUNT IN UNITS  SINGLE PREMIUM
PRIME PLAN V    NON-SMOKER      212.175         150,000.00

- - - - - - - - - DELIVERY INSTRUCTIONS - - - - - - - - -

PREMIUMS        $150,000.00    *POLICY TO BE RETURNED TO MONARCH FOR*
CASH WITH APP   $150,000.00    *CANCELLATION IF NOT DELIVERED ON OR *
                               *PRIOR TO   SEP-08-86
COLLECT            NONE

Exhibit H - Part 2            Policy LD0048212                  Page 8

2020ADV251147\Judge: GALLAGHER\THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:45:47\CONF#: 10957\WORKFLOW ID: 1238697

**Merrill Lynch**

Merrill Lynch
Insurance Group Services, Inc.

Variable Life Service Center
P.O. Box 9025
Springfield, Massachusetts 01102-9025

October 14, 1993

Donald A. Campbell
3044 Warrington Rd
Shaker Hts OH 44120

Re: Policy# LD0048212 LD0933874

Dear Mr. Campbell:

As you requested, we have updated our records to reflect the following changes on the variable life insurance policy listed above:

. the new beneficiary designation for your policy

We've enclosed an acknowledged copy of the request form to confirm these changes. Please file this with your other important policy documents.

We value you as a client of Merrill Lynch Life Insurance Company.  If we can be of further assistance, please call one of our Service Representatives at 1-800-354-5333; or write to us at P.O. Box 9025 Springfield, MA 01102-9025.

Sincerely,

Jeff Zahr
Client Services

cc:     John Darst #612
        Office # D0000P6

---

Exhibit H - Part 3            Policy LD0048212                    Page 9

JUL 06 '93 03:55PM HL CS     *TRUST DTE 3-25-93*   P.2/3

## Change of Beneficiary

| | |
|---|---|
| **Beneficiary Information** | Policy no. *LD0058994* Name of Insured *Donald A. Campbell*
**Primary beneficiary:** *Donald H. Campbell Trust*   Relationship:
Address *3044 Warrington Rd.*
City *Shaker Hts*   State *OH*   Zip *44120-2245*
If no primary beneficiary is living at the insured's death, proceeds will be paid to the contingent beneficiary named below.
**Contingent beneficiary:**     Relationship:

Address
City    State    Zip
If no primary or contingent beneficiary is living at the insured's death, proceeds will be paid to the second contingent beneficiary named below.
**Second Contingent beneficiary:**     Relationship:

Address
City    State    Zip
If no beneficiary is living at the insured's death, proceeds will be paid to the administrator or executor of the insured's estate.
If any of the above beneficiaries are trusts, please indicate the name of the Trust, the Trustee and the date of the Trust Agreement. |
| **Right to Change the Beneficiary in the Future** | ☒ I reserve the right to revoke this designation and name new beneficiaries in the future. (Revocable)
☐ This designation cannot be revoked. I do not reserve the right to name new beneficiaries. (Irrevocable) To exercise the rights and options under this policy, I must act together with the primary beneficiary(ies).
If you have designated an Irrevocable Beneficiary on your policy, the Irrevocable Beneficiary must also sign this form in the space provided for "Signature of Irrevocable Beneficiary," and will be required to authorize future policy changes. |
| **Signature(s)** | By signing this Change of Beneficiary form, I revoke any previous designation of beneficiaries. I agree that upon the insured's death, the proceeds of my policy will go to the beneficiaries named above.
I promise that the policy is in my possession and that you have a record of any person (including corporations) claiming any interest in the policy.
Signature of policyowner(s) *Donald A Campbell* Date *July 25/93*
Signature of Irrevocable beneficiary(ies)
(if applicable)
Witness *William A Campbell*   *7/93*
(other than a beneficiary)
*Should show in Acct 612-32800* |

**SERVICE CENTER**
By:

RECEIVED
AUG 09 1993
POLICY SERVICE

RECEIVED
AUG 30

RECEIVED
OCT 4 1993

RECEIVED
SEP 20 1993
POLICY SERVICE

Note: Incomplete forms will be returned by regular mail to the policyowner.

**Exhibit H - Part 3**     **Policy LD0048212**     **Page 10**



**Merrill Lynch**

Merrill Lynch
Insurance Group Services Inc.

Variable Life Service Center
P.O. Box 9025
Springfield, Massachusetts  01102-9025

July 31, 1997

Donald A. & F. Margaret Campbell
3044 Warrington Rd
Shaker Heights, OH 44120

Re: Policy # LD0048212 & LD0033874

Dear Mr. & Mrs. Campbell,

As you requested, we have updated our records to reflect the following changes on the
Merrill Lynch Life Insurance Company variable life insurance policy(ies) listed above:

  . the new ownership designation for your policy

We are pleased to enclose the acknowledged copy(ies) of the request form(s) to confirm
these changes.  Please file this with your other important policy documents.

Because of the change in the policy's ownership, the previous Power-of-Attorney you
assigned is no longer valid.  If you would like to again authorize someone other than the
policy's owners to inquire about or make changes to this policy, please complete the
enclosed Power of Attorney form.

We value you as a client of Merrill Lynch Life Insurance Company.  If we can be of
further assistance, please call one of our Service Representatives at *1-800-354-5333*; or
write to us at P.O. Box 9025, Springfield, MA 01102-9025.

Sincerely,

Elizabeth Sullivan
Client Services

Encl.
cc:     Short/ Melter #612
        Office # D000087

**Exhibit H - Part 4**          **Policy LD0048212**          **Page 11**

**Merrill Lynch**

☒ MERRILL LYNCH LIFE INSURANCE COMPANY
☐ ML LIFE INSURANCE COMPANY OF NEW YORK

Variable Life Service   ..., P.O. Box 4035, Springfield, MA  01101-9045

## Change or Transfer of Ownership (Absolute Assignment)

**Instructions**   Please complete this form in ink and return it to us. Do not return it ... policy to us. For your protection, we require that all signatures be Signature Guaranteed or Notarized. (See Signature Guarantee requirements below.)

This revokes all previous designations of owner and contingent owner.

**Current Policy Information**   Please complete this section with current policy information.

Name of Insured(s)  DONALD A CAMPBELL        Policy Number  LD0048212

**New Policy Owner(s) Information**   The new owner(s) information is required to be completed in the following section. If the new ownership is joint, all owners' names, signatures, social security numbers or tax identification numbers and dates of birth are required. (See the Multiple Owners section on the reverse side.)

DONALD A CAMPBELL                             8432
Name(s) of New Owner(s)                   Soc. Sec. or Tax ID #(s)        Date(s) of Birth
F MARGARET CAMPBELL
3044 HARRINGTON ROAD              SHAKER HTS    OHIO    44120
Mailing Address                                    City        State    Zip Code
612-24917
EUA Number of New Owner (if applicable) (EUA & COV #'s MUST BE in the NAME of the New Owner(s))

Contingent Owner(s) (if any)                    Soc. Sec. or Tax ID #(s)    Date(s) of Birth

**Signature(s) of Current Policyowner(s)**   Signature Requirements: Each Signature is required to be Signature Guaranteed or Notarized.

_[signature]_                    July 16, 1992      216921380
Signature(s) of Current Policyowner(s)            Date            Daytime Telephone #
(Indicate title if appropriate, i.e. chairman, trustee, executor, president, etc.)

_____        _____    _____
Signature(s) of Current Policyowner(s)            Date            Daytime Telephone #
(Indicate title if appropriate, i.e. chairman, trustee, executor, president, etc.)

_____        _____    _____
Signature(s) of Irrevocable Beneficiary(ies) (if applicable)    Date
(Indicate title if appropriate, i.e. chairman, trustee, executor, president, etc.)

_____        _____    _____
Signature(s) of Collateral Assignee(s) (if applicable)          Date
(Indicate title if appropriate, i.e. chairman, trustee, executor, president, etc.)

**Certifications for New Owner**   Under penalties of perjury, I certify that:
(1) The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and
(2) I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of failure to report all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding.
You must cross out Item (2) above if you have been notified by the IRS that you are subject to backup withholding because of under reporting interest or dividends on your tax return. However, if after being notified by the IRS that you were subject to backup withholding you received another notification from the IRS that you are no longer subject to backup withholding, do not cross out Item (2).

**Signature(s) of New Policyowner(s)**   We require specimen signature(s) of all individuals named as owner(s) to be on file with us. Please sign below.
Signature Requirements: Each Signature is Required to be Signature Guaranteed or Notarized.
The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

F Margaret Campbell            July 16, 1992    921-5580
Signature(s) of New Policy Owner(s)              Date            Daytime Telephone #
(Indicate title if appropriate, i.e. custodian, trustee, executor, president, etc.)

**RECEIVED**   _[signature]_          July 16, 1992    921 5580
Signature(s) of New Policy Owner(s)              Date            Daytime Telephone #
JUL 2 1 1992      (Indicate title if appropriate, i.e. custodian, trustee, executor, president, etc.)

**CLIENT SERVICES**   _____        _____    _____
Signature(s) of Contingent Owner(s)              Date
(Indicate title if appropriate, i.e. custodian, trustee, executor, president, etc.)

**Signature Guarantee Requirements**   For your protection, we require that your signature be guaranteed by a:
SIGNATURE GUARANTEED • national bank or trust company (not a savings bank or federal savings and loan association).
Variable Life Service Center • member bank of the Federal Reserve System; or _[signature]_
_[signature]_ • member firm of a national securities exchange.
By _[signature]_   A "Signature Guarantee" provided by an authorized individual at a qualifying institution. A "Signature Guarantee" stamp is required. The phrase "Signature Guarantee" must appear with the signature.

X0174446
Note: Incomplete forms will be returned by regular mail to the policyowner.

LD0048212 Policy File Redacted                                        Page 71
2020ADV251747\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:47:01\CONF#: 10957\WORKFLOW ID: 1238695





Merrill Lynch
Insurance Group Services Inc

Variable Life Service Center
P.O. Box 9025
Springfield, Massachusetts 01102-9025

November 26, 1997

Campbell Family Limited Partnership
3044 Warrington Road
Shaker Heights, OH 44120

Re: Policy # LD0048212 & LD0033074

Dear Mr. & Mrs. Campbell,

As you requested, we have updated our records to reflect the following changes on the variable life insurance policy(ies) listed above:

. the new ownership designation for your policy

. the new instructions as to who has been authorized to act as the owner of the policy on behalf of the corporation

We've enclosed an acknowledged copy of the request form to confirm these changes. Please file this with your other important policy documents.

In the future, please note that you will need to sign any requests for financial and contractual changes that effect this policy in your new capacity as general partner for the owner of this policy, i.e., Donald A. Campbell, general partner.

We have also mailed you a new Personal Identification Number for your policy(ies). This number helps to ensure that no one else has access to your policy values. You'll want to keep this number handy, as you'll need it whenever you call us to ask about your policy(ies).

Our records indicate the beneficiary(ies) as Primary: Donald Campbell Trust Contingent: None . We have enclosed a Change of Beneficiary form if you wish to make a change to the current designation.

Exhibit H - Part 5          Policy LD0048212                    Page 14



We value you as a client of Merrill Lynch Life Insurance Company.  If we can be of further assistance, please call one of our Service Representatives at *1-800-354-5333;* or write to us at P.O. Box 9025, Springfield, MA 01102-9025.

Sincerely,

Elizabeth Sullivan
Client Services

Encl.
cc:      Short/ Melter #612
         Office # D000087

**Exhibit H - Part 5**             **Policy LD0048212**                      Page 15

2020ADV251747\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:47:40\CONF#: 10957\WORKFLOW ID: 1238694

MAS
MerrillLynch

☒ MERRILL LYNCH LIFE INSURANCE COMPANY
☐ ML LIFE INSURANCE COMPANY OF NEW YORK
Variable Life Service Center, P.O. Box 9025, Springfield, MA  01102-9025

## Change or Transfer of Ownership (Absolute Assignment)

**Instructions**
Please complete this form in ink and return it to us.  Do not return your policy to us.  For your protection, we require that all signatures be Signature Guaranteed or Notarized.  (See Signature Guarantee requirements below.)

This revokes all previous designations of owner and contingent owner.

**Current Policy Information**
Please complete this section with current policy information.

Name of Insured(s)   DONALD A CAMPBELL       Policy Number  LD0048212.

**New Policyowner(s) Information**
The new owner(s) information is required to be completed in the following section.  If the new ownership is joint, all owners' names, signatures, social security numbers or tax identification numbers and dates of birth are required. (See the Multiple Owners section on the reverse side.)

Name(s) of New Owner(s)   CAMPBELL FAMILY LIMITED PARTNERSHIP    N/A
Soc Sec or Tax ID #(s)      Date(s) of Birth

Name(s) of New Owner(s)   Soc Sec or Tax ID #(s)     Date(s) of Birth

Mailing Address  3044 WARRINGTON ROAD     SHAKER HTS    OHIO    44120
                                           City          State   Zip Code
612-  D7A83
CMA Number of New Owner (if Applicable) (CMA ACCOUNT MUST BE IN THE NAME OF THE NEW OWNER)

Contingent Owner(s) (if any)   Soc Sec or Tax ID #(s)

**Signature(s) of Current Policyowner(s)**
Signature Requirements:  Each Signature is required to be Signature Guaranteed or Notarized

Signature(s) of Current Policyowner(s)  DONALD A CAMPBELL    7/30/97    216-921-5380
(individual, if appropriate, i.e. custodian, trustee, president, etc.)                    Daytime Telephone #

Signature(s) of Current Policyowner(s)  MARGARET CAMPBELL   9/30/97         Daytime Telephone #
(individual, if appropriate, i.e. custodian, trustee, president, etc.)

Signature(s) of Irrevocable Beneficiary(ies) (if applicable)                    Title
(individual, if appropriate, i.e. custodian, trustee, notary, president, etc.)

Signature(s) of Collateral Assignee(s) (if applicable)            RECEIVED      Date
(Policy may be applicable, i.e. trustee, custodian, president etc.)            NOV 17 1997

**Certification for New Owner**
Under penalties of perjury, I certify that:    CLIENT SERVICES
(1) The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and
(2) I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of failure to report all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding.
You must cross out Item (2) above if you have been notified by the IRS that you are subject to backup withholding because of under reporting interest or dividends on your tax return.  However, if after being notified by the IRS that you are subject to backup withholding you received another notification from the IRS that you are no longer subject to backup withholding, do not cross out Item (2).

**Signature(s) of New Policyowner(s)**
We require specimen signatures of all individuals named as new owner(s) to be on file with us.  Please sign below.
Signature Requirements:  Each Signature is Required to be Signature Guaranteed or Notarized.
The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

Signature    Donald A. Campbell    7/30/97    7/3/    Daytime Telephone #
(individual, if appropriate, i.e. custodian, trustee, president, etc.)    General Partner

Signature    Margaret Campbell    9/30/97    9/3/    Daytime Telephone #
(individual, if appropriate, i.e. custodian, trustee, president, etc.)
                                                   SIGNATURE GUARANTEED
                                                   MEDALLION GUARANTEED
                                                   MERRILL LYNCH, PIERCE
                                                   FENNER & SMITH INC.
Signature(s) of Irrevocable Beneficiary(ies) (if applicable)              Title
(individual, if appropriate, i.e. custodian, trustee, notary, president, etc.)

**Signature Guarantee Requirements**
For your protection, we require that ALL signatures be guaranteed by a:
• national bank or trust company (not a savings bank or federal savings and loan association),
• member bank of the Federal Reserve System, or
• member firm of a national securities exchange.
Guarantees must be signed by an authorized individual at a qualifying institution. A "Signature Guarantee" stamp is required.  The phrase "Signature Guarantee" must appear with the signature.

**Variable Life Service Center**
By

**Note:  Incomplete forms will be returned by regular mail to the policyowner.**

Change of Transfer of Ownership (Absolute Assignment)

## INSTRUCTIONS

**Ownership**

Under this Change of Ownership (Absolute Assignment) you agree to transfer all your rights to the new owner, including but not limited to, the right to reallocate the investment base, receive money or other benefits, change the beneficiary, further transfer the ownership and cancel the policy to receive the net cash surrender value.

Ownership of this policy will not be transferred until we receive and acknowledge this form at our Service Center. Confirmation and all future notices will be sent to the new owner. If the new ownership is other than a single ownership, we will require completion of additional forms. (See the *Multiple Owner* section below.)

Policyowners are advised to consult with tax and legal advisors prior to completing this form. We do not give tax or legal advice to policyowners.

**SPIAR/SPIAC**

If a Single Premium Immediate Annuity Rider/Single Premium Immediate Annuity Contract was purchased with the policy, ownership of the SPIAR/SPIAC will also be transferred automatically to the new owner.

**Payors**

On a premium paying policy, the payor on the policy will be transferred automatically to the new owner unless otherwise indicated.

**Corporations**

If a policy is owned by a corporation, corporate trust or partnership, a Certification to Exercise Ownership Rights form (#50497) must also be completed. This form must be on file with us in order to process policy transactions. All requests for financial or contractual changes are required to be signed by the authorized officer(s) indicating their appropriate title(s).  *Example:* John Smith, President.

**Trusts**

If you name a trust as policyowner, we will not inquire into the terms of the trust. Please indicate the name of the trust, the date of the trust agreement, the tax identification number of the trust and the trustee(s) name(s) and address(es). A testamentary trust cannot be a policyowner.

To exercise ownership rights on a policy owned by a trust, a Certificate of Trustee/Policy Owned by Trust form (#50537) must also be on file with us.

The trustee(s) must sign all future requests for financial or contractual changes and indicate their capacity as trustee.  *Example:* Jane Doe, trustee.

**Minors**

Minors cannot exercise ownership rights to the policy. Ownership should not be transferred to a minor unless there is a court-appointed legal custodian/guardian for the minor or unless the ownership is under the Uniform Gifts (or Transfers) to Minors Act (UGMA/UTMA).

If the ownership is under the UGMA/UTMA, the proper designation is: (Custodian's Name), as Custodian for (Minor's Name) under the Uniform Gifts (or Transfers) to Minors Act (Name of State).

The minor's social security number must be indicated under the *New Policyowner Information* section on the reverse side of this form. There can only be one custodian for one minor on each account. The custodian must sign all future requests for financial or contractual changes in their capacity as custodian for the minor under UGMA/UTMA including the name of the state.  *Example:* Jane Doe, custodian for John Doe, UTMA/MA.

Ownership of the policy will revert automatically to the minor at the age attained in the state's UGMA/UTMA.

Please refer to the UGMA/UTMA provisions for your state for the permissible beneficiaries.

**Irrevocable Beneficiary**

If you have designated an irrevocable beneficiary on your policy, the irrevocable beneficiary must also sign this form in the space provided for signature of irrevocable beneficiary.

**Executor/Administrator/ Personal Representative**

If this form is signed by the Executor, Administrator or Personal Representative of the owner's estate, a certified copy of their appointment must also be submitted to us. To exercise ownership rights, the Executor, Administrator or Personal Representative must sign this form and all future requests for financial or contractual changes and indicate their capacity as Executor, Administrator or Personal Representative.  *Example:* John Doe Executor.

**Multiple Owners**

If you are designating more than one owner (other than spouses) a Multiple Owner form (#51672) must also be completed.

Dollar amount ownerships are not allowed.

**Collateral Assignments**

If you have assigned your policy for collateral, the assignee must also sign this form in the space provided for signature of Collateral Assignee on the reverse side of this form.

*Please complete the reverse side of this form.*

**Merrill Lynch**

☑ MERRILL LYNCH LIFE INSURANCE COMPANY
☐ ML LIFE INSURANCE COMPANY OF NEW YORK
Variable Life Service Center, P.O. Box 9025, Springfield, MA  01102-9025

## Certification to Exercise Ownership Rights

**Instructions**

This Certification voids and replaces all previous certifications on file with us.

Please use this form to name the individual within a corporation, corporate trust, or partnership who is authorized to exercise ownership rights regarding the policy described below.

We will send you a copy of this certification for your records. Changes in the information given below can only be made by an amendment to the policy. This certification is valid until we receive a new Certification to Exercise Ownership Rights form from you.

We will follow the instructions of any person named in this form as authorized to exercise ownership rights. We will not be liable for any claims, expenses, legal fees, or losses if we follow any instructions that we believe are genuine.

All corporations and incorporated associations are required to have the secretary affix the corporate seal on this form.

A corporation/association with only one officer, a corporate trust, a partnership and all others require either a corporate seal or a signature guarantee.

**Certification**

Please complete the following:

Is this the first Certification form completed?   ☑ Yes   ☐ No

Name of Insured or Proposed Insured _____ DONALD A CAMPBELL

Name of Owner _____ CAMPBELL FAMILY LIMITED PARTNERSHIP

Policy Number _____ ( LD0048212 )

Policyowner's Telephone Number _____ 216-921-5380

Policyowner is a: (check one)

☐ Corporation/Incorporated Association

☐ Corporate Trust        Trust Date _____

☑ Partnership

☐ Other (non-profit or religious organization, sole proprietorship, non-incorporated association, etc.)

List below the names, titles, and specimen signatures of the individuals authorized to exercise ownership rights regarding the policy described above.

| Print Name | Title | Specimen signature |
|---|---|---|
| Donald A. Campbell | General Partner | *(signature)* |
| F. Margaret Campbell | General Partner | *(signature)* F. Margaret Campbell |

How many authorized signatures will be necessary to exercise ownership rights? _____
(Unless you tell us otherwise, we will follow the instructions of any one of the people named above.)

*Please complete the reverse side.*

LD0048212 Policy File Redacted

2020ADV251747/Judge: GALLAGHER/ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE          Page 89
Electronically Filed: CWC 03/18/2020 14:47:40/CONF#: 10957\WORKFLOW ID: 1238694

**Please Complete the Appropriate Section**

**Section I**
**Signatures**
(this section must be completed by corporations or incorporated associates only.
A Corporate Seal is required.)

I, _____ Secretary of the above-named Owner, do hereby certify that at a meeting on _____ at which a quorum was present throughout, the Board of Directors of the corporation/the officers of the association duly adopted a resolution in full force and effect and in accordance with the Owner's charter and by-laws. The resolution did the following.

* empowered the above-named authorized person(s) to effect transactions for the owner on the terms described above;
* authorized the Secretary to certify, from time to time, the names and titles of the officers of the owner and to notify the Variable Life Service Center when changes in office occur; and
* authorize the Secretary to certify that such resolution has been duly adopted and will remain in full force and effect until the Variable life Service Center receives a duly executed amendment to this Certification form

Witness my hand on behalf of the corporation/association this _____ day of _____ 19____.

Secretary _____

Corporate Seal

If the Secretary is one of the individuals authorized to exercise ownership rights, the secretary's signature in this section must be witnessed by another corporate or association officer.

Witness (Corporate or Association Officer)

**Section II**
**Signatures**
(This section is to be completed by a corporation/association that has only one officer. Either a Signature Guarantee or Corporate Seal is required.)

I am the sole shareholder and officer of the

Name of Company _____

Signature _____

Corporate Seal

Signature Guarantee Stamp
SIGNATURE GUARANTEED
MEDALLION GUARANTEED
MERRILL LYNCH, PIERCE
FENNER & SMITH INC.

X000187G
NYSE, INC. MEDALLION SIGNATURE PROGRAM

**Section III**
**Signatures**
(This section is to be completed by corporate trusts, partnerships, and all others. A Signature Guarantee is required.)

Certifying trustee/General partner/other _____

Certifying trustee/General partner/other _____

Signature Guarantee Stamp

For your protection, we require that your signature be guaranteed by at
* national bank or trust company (not a savings bank or federal savings and loan association).
* member bank of the Federal Reserve System; or
* member firm of a national securities exchange.
Guarantees must be signed by an authorized individual at a qualifying institution. A "Signature Guarantee" stamp is required. The phrase "Signature Guarantee" must appear with the signature.

VARIABLE LIFE SERVICE CENTER
By: _____

ES 11/26/97

Note: Incomplete forms will be returned by regular mail to the policyowner.

**Exhibit H - Part 5**    **Policy LD0048212**    **Page 19**

LD0048212 Policy File Redacted

NOTICE: PRESENCE OF REDACTION/WATERMARK INDICATES COPY OR REVIEW

Reg Dist No.    18
Primary Reg Dist No  1801
Registrar's No  **2010-001905**

Ohio Department of Health
VITAL STATISTICS
**CERTIFICATE OF DEATH**

State File No

1. Decedent's Local Name (Include ANY if any) First Middle, LAST (Suffix)
**DONALD ALLEN CAMPBELL**

2. Sex **Male**

3. Date of Death (Mo/Day/Year) **February 22, 2010**

4. Social Security Number **3421**

5a. Age Last Birthday (Years) **90**

5b. Under 1 Year Months Days

5c. Under 1 Day Hours Minutes

6. Date of Birth (Mo/Day/Year)

7. Birthplace (City and State or Foreign Country) **CLEVELAND, OHIO**

8. Was Decedent Ever in US Armed Forces? **Yes**

9a. Residence State **OHIO**

9b. County **CUYAHOGA**

9c. City or Town **CLEVELAND**

9d. Street and Number **2181 Ambleside Drive**

9e. Apt. No

9f. Zip code **44106**

9g. Inside City Limits **Yes**

10. Marital Status **Married**

11. Surviving Spouse's Name (give name prior to first marriage) **MARGARET OAKIN**

12. Decedent's Education **BACHELORS DEGREE (E.G., BA, AB, BS)**

13. Decedent is of Hispanic Origin? **No**

14. Decedent's Race **White**

15. Father's Name **FREEMAN CAMPBELL**

16. Mother's Name (prior to first marriage) **PEARL ALBERTA EGERT**

17a. Informant's Name **MARGARET D CAMPBELL**

17b. Relationship to Decedent **Wife**

17c. Mailing Address (Street and Number, City, State or Zip Code) **2181 Ambleside Drive CLEVELAND, OHIO 44106**

18a. Place of Death **Nursing Home/Long Term Care Facility**

18b. Facility Name (If not Institution, give Street & Number) **JUDSON PARK**

18c. City or Town, State and Zip Code **CLEVELAND, OH 44106**

18d. County **CUYAHOGA**

20. Signature of Funeral Service Licensee or Person Acting as Such

20a. License Number (of licensee) **008166**

21. Name and Complete Address of Funeral Facility **BROWN-FORWARD INC**

22a. Method of Disposition **Cremation**

22b. Date of Disposition **January 25, 2010**

22c. Location (City/Name and State) **BEDFORD HEIGHTS, OH**

**17022 CHAGRIN BLVD SHAKER HEIGHTS  OH 44128**

Name of Cemetery, Crematory, or Other Place **Hillcrest Crematory**

23. Registrar's Signature **Devorne Dean**

24. Date Filed **MAR - 2 2010**

25a. Date Received **1805**

25b. Date Burial Permit Issued **January 28, 2010**

25. Name of Person Issuing Burial Permit **TREPES, MARY LOU**

26. Check only one
☑ Certifying Physician
☐ Coroner

26a. Time of Death **0620**

26b. Date (Mo/Day/Year) **February 22 2010**

26c. Was Case Referred to Coroner? **No**

26d. Date Signed **2/25/10**

26e. Signature and Title of Certifier **Christine Fischer MD**

35 071236

27. Name (Last, First, Middle) and Address of Person who Completed Cause of Death
**FISCHER, CHRISTINE POTOKAR, 2500 Metrohealth Dr  CLEVELAND, OH 44109**

Part I. Immediate Cause **End Stage Pulmonary Fibrosis**    Approximate Interval Between Onset and Death  **2 yr.**

Due to (or as a Consequence of)

Sequentially list conditions, if any, leading to immediate cause

Due to (or as a Consequence of)

Due to (or as a Consequence of)

Part II. Other Significant Conditions Contributing to Death but not resulting in the underlying cause given in Part I

28a. Was an Autopsy Performed? ☐ Yes ☑ No

28b. Were Autopsy Findings Available Prior to Completion of Cause of Death? ☐ Yes ☐ No ☐ Not Applicable

29. Did Tobacco Use Contribute to Death?
☐ Yes   ☐ Unknown
☑ No   ☐ Probably

30. If Female, Pregnancy Status
☐ Not pregnant within past year
☐ Pregnant at time of death
☐ Not pregnant, but pregnant 42 days of death
☐ Not pregnant, but pregnant 43 days to 1 year before death
☐ Unknown if pregnant within the past year

31. Manner of Death
☑ Natural
☐ Accident
☐ Suicide
☐ Homicide
☐ Pending Investigation
☐ Could not be Determined

32a. Date of Injury (Mo/Day/Year)

32b. Time of Injury

32c. Place of Injury (e.g. Decedent's home, construction site, restaurant, wooded area)

32d. Injury at Work?
☐ Yes ☐ No

33. Location of Injury (Street and Number or Rural Route Number, City or Town, State)

34. Describe How Injury Occurred

35. If Transportation Injury, Specify
☐ Driver/Operator ☐ Pedestrian ☐ Passenger
☐ Other

THIS IS A TRUE AND EXACT
COPY OF THE DOCUMENT ON
FILE WITH THE OHIO DEPARTMENT OF
HEALTH.

HHR 11 10 04 9 5 4 6

STATE REGISTRAR
OF VITAL STATISTICS
SEAL

NOTICE: PRESENCE OF REDACTION/WATERMARK INDICATES COPY OR REVIEW

**Exhibit H - Part 6**          **Policy LD0048212**          **Page 20**

**LD0048212 Policy File Redacted**                    **Page 124**
2020ADV251747\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:48:07\CONF#: 10957\WORKFLOW ID: 1238693

## Life Claimant Statement for Trusts/Estates

Merrill Lynch Life Insurance Company
P.O. Box 19100
Greenville, SC 29602

1. Policy numbers  LD0048212    LD0033874

### Insured Information

2. Name of Insured  Donald A Campbell

3. Date of Birth _____  Date of Death 2/22/10   Social Security Number ____3421

### Beneficiary Information

4. Taxpayer Identification Number and Name of the Trust/Estate (please circle one)
Donald A Campbell Trust u/a/d 3/25/93        37-6554220

5. Name(s) of Trustee/Administrator of Estate (please circle one)   F Margaret Campbell, Succ TTEE

*PLEASE NOTE: TRUSTEE MUST COMPLETE TRUST CERTIFICATION FORM IN ADDITION TO THIS FORM*

### Settlement Option Available

☑ Elect to receive a lump sum distribution

**Overnight delivery**

☐ Please provide overnight delivery.  *A delivery fee for that will be deducted from the Death Benefit applies to all overnight requests.*

**Lost Contract Statement (Do not check if the policy is being sent to us)**

☑ I do hereby certify that the said policy has been lost or destroyed and is not in my possession. If the said policy comes into my possession in the future, I agree to deliver it to the Company for cancellation.

These statements are true and complete to the best of my knowledge and belief. I understand that the furnishing of forms by the Company does not constitute an admission that there is any insurance in force.

Your claim cannot be processed if the Claimant Statement is not fully completed and signed. Other requirements may exist, please refer to the attached cover letter for additional details. Under penalties of perjury I certify that (1) the number shown on this form is my correct taxpayer identification number and (2) I am not subject to back up withholding because (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and (3) I am a U.S citizen or resident alien. If you are a foreign person, please complete a W8-BEN form. If you have any questions about your status or the claim forms, please contact us at 1-800-354-3333.

Signature _____  Date: 03/18/2010

Trustee/ Administrator of Estate (please circle one)

Signature _____  Date: _____

Trustee/Administrator of Estate (please circle one)

Mailing Address c/o Merrill Lynch 25000 Great Northern Corp Ctr 100 N. Olmsted OH 44070
STREET           CITY        STATE   ZIP.?

Telephone Number ( 216 ) 921-5380

LD0048212 Policy File Redacted                                    Page 140
2020ADV251747\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:48:34\CONF#: 10957\WORKFLOW ID: 1238692

Merrill Lynch Insurance Company

**TRUSTEE CERTIFICATION OF**
**TRUST AND TRUSTEE POWERS**
Mailing Address, PO Box 19100, Greenville, SC 29602

P: 17

**1. CONTRACT POLICY INFORMATION**

Contract/Policy Information - indicate the name of the contract/policyowner(s) and the contract/policy number(s).

Campbell Family Limited Partnership          LD0048212 and LD0033874

Contract/Policyowner(s)                       Contract/Policy Number(s) (if existing Contract/Policy)

**2. INFORMATION ABOUT THE TRUST**

From information obtained from your trust see page 2 for instructions before completing this form. Complete every line; if not applicable indicate with N/A.

In consideration of the Insurance Company opening and/or maintaining one or more contracts and/or policies for the Trust named below, we the undersigned below, Trustees, certify as follows:

Donald A Campbell Trust uda/d 3/25/93 by Donald A Campbell
The full title or name of the Trust

3/25/93                                          N/A
The date of the Trust                            The date of the latest Trust Amendment

37-6559220                                       F Margaret Campbell, Successor TTEE
The Tax Identification Number used for the Trust  The name(s) of the Trustor(s)/Grantor(s)/Settlor(s)

The Trust is: ☐ Revocable  ☒ Irrevocable        The Trustee(s) may act: ☒ Singly  ☐ Jointly

n/a
The name of the Successor Trustee(s), if any     Trust is: ☐ Owner  ☒ Beneficiary  ☐ Both

n/a
Successor Trustee(s) Signature, if any

**3. INVESTMENTS PERMITTED**

I/We certify that I/We have power under the Trust Agreement and applicable law to enter into transactions, both purchases and sales, of the types specified below: (Check types of investments which are permitted)

☒ Annuities  ☒ Life Insurance  ☐ Other

personal savings
Source of Premiums

**4. NOTE: AUTHORIZED PERSON(S)**

I/We certify that the proposed transactions are within the powers of the Trust Agreement, and there are no Trustee(s) of the Trust other than the undersigned

I/We agree to inform the Insurance Company in writing, of any amendment to the Trust, any change in the composition of the Trustee(s) or any other event which could materially alter the Certifications made.

I/We, the Trustee(s), jointly and severally indemnify the Insurance Company and hold the Insurance Company harmless from any liability for effecting transactions of the types specified, if the Insurance Company acts pursuant to instructions given by any of the Authorized Individual(s) listed below. It is understood and agreed that the Insurance Company shall not be responsible for the application or disposition of the proceeds by the Trustee(s) and the payment of the proceeds to the Trustee(s) shall fully and finally discharge the Insurance Company from all liability under the Contract(s)/Policy(ies).

Please indicate trustee names and signatures that are authorized to give instructions for the trust.

F Margaret Campbell

AGI-1048ML 0X69                        Page 1 of 2                        64582 0609
                                                                          PLAS

2010 APR 14  AM 10: 54

LD0048212 Policy File Redacted                                        Page 141
2020ADV251747Judge: GALLAGHER THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:48:34\CONF#: 10957\WORKFLOW ID: 1238692

The Insurance Company is authorized to accept instructions, including contract changes and distribution privileges, from those individuals or entities listed below.

I/We have received and understand the terms of this document and have not relied on any representation or advice by the Insurance Company or its representatives regarding the legal or tax effects of this Certification.

I/We hereby certify under penalty of perjury that the undersigned are all the Trustees. (All Trustees must sign. Attach extra page if necessary.)

Attached are copies of the first page and signature page of this Trust.

F. Margaret Campbell
*Current Trustee Name (Please Print)                    Current Trustee Name (Please Print)

_Margaret Campbell_
Trustee Signature                                        Trustee Signature

2161 Ambleside Rd #216-218
Address                                                  Address

Cleveland, OH 44106    216-921-5380
Phone Number                                             Phone Number

_Abe Maass_        03/18/2010
Witness            Date          Witness                 Date

*Should only one person execute this agreement, it shall constitute a representation that the signatory is the sole Trustee. Where applicable, plural references in this certification shall be deemed singular.

Federal law requires all financial institutions, including Insurance Companies, to obtain, verify, and record information that identifies each person who opens an account. This may include name, address, date of birth, and other information that will allow the Insurance Company to identify you. This will assist them in ensuring that your information is secure.

We recommend you seek the advice of your tax and/or legal counsel with any questions you may have concerning your trust. The Insurance Company reserves the right to request, when deemed necessary, a copy of the Trust Document and other documentation in addition to this executed form.

**Please Read the following information before completing this form.**

**Contract/Policy Information**
Indicate the name of the contract(s)/policyowner(s) and existing contract/policy number, if possible.

**Information from your Trust Document**
This section is asking for specific information that must be obtained from your trust document. Please refer to the trust definitions below to help you determine the information the Company is requesting:

**Definitions**
*Trustor(s)/Grantor(s)/Settlor(s):* The individual(s) who creates a trust and who gives (transfers) property to the trust.

*Trustee(s).* The individual(s) and/or institution(s) named by the trustor(s)/grantor(s)/settlor(s) to act on behalf of the trust according to the terms as outlined in the trust document.

*Successor Trustee(s):* The individual(s) who will become trustee(s) upon the death or resignation of the named Current Trustee(s)

*Beneficiary(ies).* The individual(s) to whom the assets of the trust will be distributed, based upon the terms of the trust, once a triggering event, such as the death of the trustor(s)/grantor(s)/settlor(s), occurs.

*Revocable trust:* a trust that allows the maker(s) of the trust to change or terminate the trust.

*Irrevocable trust:* a trust that does not allow the maker(s) of the trust to change or terminate it.

**Investments Permitted**
Please indicate the type of investments permitted within the powers of the trust.

**Trustee(s) Authorized Individual(s)**
Please indicate the name(s) and signature(s) that are authorized to give instructions for the trust.

**Note**
The Company recommends that you seek the advice of your legal counsel with any questions you may have concerning your trust.

AG0104RXL 06/09                    Page 2 of 2                    64592 0909 FI-5

2010 APR 14. AM 10: 54

LD0048212 Policy File Redacted                                  Page 142
2020ADV251747\Judge: GALLAGHER\THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:48:34\CONF#: 10957\WORKFLOW ID: 1238692

| Life Death Claim Work Sheet | | FLEX | |
|---|---|---|---|
| INSURED  DONALD A. CAMPBELL ✓ | | POLICY NUMBER  LD0048212 | |

| AGE AT ISSUE SEX  66-M | AGE AT DEATH  90 | DATE OF BIRTH ✓ | DATE LAST PREMIUM PAID | PREMIUM PAID TO  150,000-S | |
|---|---|---|---|---|---|
| DATE OF POLICY  7/23/1986 | ISSUE DATE  7/24/1986 | POLICY FORM  MSA | | OWNERS RESIDENCE STATE  OH-44106 | CONTRACT ST..  OH |

BENEFICIARY

**Primary:**   DONALD A. CAMPBELL TRUST U/A/D 3/25/93, PG. 59

**Contingent:**   NONE

| CLAIM NUMBER  D-20624 | DATE OF NOTICE  3/4/2010 | COMPANY  ML | REINSURANCE  NONE | |
|---|---|---|---|---|
| | PROOFS MAILED | AGENT NAME  SHORT/MELTER/CO | REINSURING COMPANY | |
| D-20626 | PROOFS RECEIVED | | | |
| | PROOFS IN CLAIM ✓ | COMPANY CODE   3 | AGENT #   612 | |
| | DATE OF DEATH ✓  02/22/10 | ASSIGNED TO: | SPIAR? | |
| | CAUSE OF DEATH  Pulmonary Fibrosis | CAUSE CODE  63 | | |

| GUAR. D. B. | $212,175.00 | | ADD-ON  YES |
|---|---|---|---|
| VIA | $117,592.00 | | EFFECTIVE DATE |
| EPU | | | PREMIUM AMOUNT |
| (TERM ADDITIONS) | | | EFFECTIVE DATE |
| (GROSS CLAIM) | $329,767.00 | | PREMIUM AMOUNT |
| (LESS LOAN) | $0.00 | | EFFECTIVE DATE |
| NET DEATH BENEFIT | $329,767.00 | | PREMIUM AMOUNT |
| ACCIDENTAL DEATH | | | REMARKS  113 OR 712 |
| PREMIUM REFUND | | | FORM 712 REQUIRED |
| PRE-PAY REFUND | | | STATE TAX FORM REQUIRED |
| POST MORTEM INTEREST | 2421.30 | | STATE CONSENT NECESSARY |
| PREMIUM DUE | | | |
| TOTAL AMOUNT PAID | 332,188.30 | | CASH VALUE  $297,615.83 |
| AMOUNT OF CHECK(S) | | | |
| CHECK DATE(S)  4-29-70 | | | NAR  $32,151.17 |

CHECK TO THE ORDER OF:

RD11803C       Donald A. Campbell
              Trust 3-25-93

APPROVED  RD

LD0048212 Policy File Redacted
2020ADV251147/Judge: GALLAGHER/THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:49:00/CONF#: 10957\WORKFLOW ID: 1238691

| Name of Beneficiary | Donald A. Campbell Tst 3/25/93 |
|---|---|
| Percentage of Benefit | 100% |

| Insured Name | Donald A. Campbell |
|---|---|
| Policy Number | LD0048212 |
| Issue date of Policy | 7/24/1986 |

| Issue State | Insured Resident state | Beneficiary Resident state | Delivery State |
|---|---|---|---|
| OH | OH | OH | OH |

| Date of Death of Insured | Date of Notification of Loss | Date of Receipt of Proof of Loss | Date of Check |
|---|---|---|---|
| 2/22/2010 | 3/4/2010 | 4/14/2010 | 4/30/2010 |

| | | | Rounding |
|---|---|---|---|
| Gross Death Benefit | $329,767.00 | $329,767.00 | Neutral |
| Loaned Amount | $0.00 | $0.00 | Neutral |
| Premium Refunded | $0.00 | $0.00 | Neutral |
| Net Death Benefit | $329,767.00 | $329,767.00 | Neutral |

| | | | Rounding |
|---|---|---|---|
| State Interest Rate | 0.72% | | |
| State Interest Paid | | | Neutral |
| Interest start date | | | |
| Interest Stop Date | | | |
| # of days | | | |

| | | | Rounding |
|---|---|---|---|
| Product Interest Rate | 4% | | |
| Product Interest Paid | $2,421.30 | $2,421.30 | Neutral |
| Interest start date | 2/22/2010 | | |
| Interest Stop Date | 4/30/2010 | | |
| # of days | 67 | | |

| Total Interest paid | $2,421.30 |
|---|---|
| Total Death Benefit Amount | $332,188.30 |
| Total Check Amount | $332,188.30 |

CLAIMS LEGISLATION FOR: Ohio

[1] OH ST Sec. 3915.052(C) states interest is to be paid only if insured was resident of this state on date of death and unless the beneficiary under the life insurance policy elects to receive, or a written election has been made for the beneficiary to receive, the proceeds of the policy by means of a lump sum payment.

TYPE OF CONTRACTS: Life insurance other than credit life and industrial policies    INTEREST RATE USED: Greater of: annual short -term applicable federal rate for purpose of sec 1274(d) of IRC as defined in 5747.01 of Revised Code in effect for month in which insured died or current rate of interest on proceeds left on deposit with the company under an interest settlement option    TIME PERIOD TO PAY WITHOUT INTEREST: Date of Notification    DATE WHEN INTEREST ACCRUES FROM: Date of death

**Exhibit H - Part 8**          **Policy LD0048212**          **Page 25**

**Merrill Lynch**
**Life Insurance Company**

Service Center
P.O. Box 19100
Greenville, SC 29602-9100

April 29, 2010

Donald A. Campbell Trust 3/25/93
C/O F. Margaret Campbell - Trustee
Attn: Merrill Lynch
25000 Great Northern Corp Ctr 100
N. Olmstead OH 44070

Re: Insured: Donald A. Campbell
Life Policy Numbers: LD0048212 & LD0033874
Life Claim Numbers: D-20624 & D-20626

Dear Trustee:

Thank you for sending in your claim forms. Enclosed are our checks for the death benefit due. This represents the full benefit payable under these Merrill Lynch Life Insurance Company life insurance policies. The values are as follows:

**LD0048212**
| | |
|---|---|
| Death Benefit | $329,767.00 |
| Post Mortem Interest * | 2,421.30 |
| Total Due | $332,118.30 |

**LD0033874**
| | |
|---|---|
| Death Benefit | $754,190.26 |
| Post Mortem Interest * | 5,537.62 |
| Total Due | $759,727.88 |

* 67 days at 4 percent (taxable income) (2/22/2010 to 4/30/2010).

If we can be of further assistance, please call the claims department at 1-800-354-5333; or write to us at P.O. Box 19100, Greenville, SC 29602.

Encl. Checks

1cc: Short/Melter/Co #612

2cc: F. Margaret Campbell - Trustee
2181 Ambleside Rd #216-218
Cleveland OH 44106

---

**Exhibit H - Part 9**          **Policy LD0048212**          **Page 26**

---

### CHECK REQUISITION FORM
### MLLIC

---

Policy Number: LD0048212                    Date: 04/28/10

Insured: DONALD A. CAMPBELL                 Time: 15:00:36

CMA Link- Policy: N      Transaction: N     Company Code: 3

Suspended: N                                Processed: Y

Transaction Type: Death Benefit Claims      Effective Date: 04/28/10

Requested By: P2358                         Confirm Code: RD11803C

Comments: D20624

---

Accounting Information:

| | Policy | Description | Account# | CN/CY | ST | Amount |
|---|---|---|---|---|---|---|
| 1 | LD0048212 | Death Benefit Claims | 3-957-00 | | | 329,767.00 |
| 2 | LD0048212 | Interest | 3-689-00 | | | 2,421.30 |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |

---

Check Information:

Amount:      332,188.30      Check Date: 04/29/10      Check #: 82589

    Payee    : DONALD A. CAMPBELL TRUST 3/25/93

    Address  : C/O 25000 GREAT NORTHERN CORP CTR 100

    City     : N. OLMSTEAD          ST: OH          Zip Code: 44070

    MAIL INSTRUCTIONS : MAIL CHECK W/LETTER

---

Quality Control-    Processing: P0407          04/29/10
                    Control   : P0877          04/29/10

Authorization MGR:

         VP:

---

Exhibit H - Part 9          Policy LD0048212          Page 27

# EXHIBIT 2

## FULL ACCOUNTING

## MAY 5, 2017

Exhibit I        Exh 2 from Allen Opp to Motion to Remove Him        Page 1

2020ADV251147\Judge:GALLAGHER\THE ADVERSARIAL CASE OF EUGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:49:54\CONF#: 10957\WORKFLOW ID: 1238689

### PROBATE COURT OF CUYAHOGA COUNTY, OHIO
### ANTHONY J. RUSSO, PRESIDING JUDGE
### LAURA J GALLAGER, JUDGE
### TRUST OF  FREDA MARGARET CAMPBELL
### TRUST REPORT

**Accounting Period: 1/1/2017 - 3/31/2017**

| ASSETS AS OF 12/30/2016 | VALUE |
|---|---|
| UBS LD32634 RL - CASH ACCOUNT | $154,872.76 |
| UBS LD32635 RL - RESOURCE MANAGEMENT ACCOUNT | $284,357.65 |
| | **TOTAL: $439,230.41** |

| DATE | RECEIPTS: | VALUE |
|---|---|---|
| 1/4/2017 | UBS LD32634 RL -"deposit" Merrill Lynch | $2,466.40 |
| 1/9/2017 | UBS LD32634 RL - "deposit" Merrill Lynch | $54.79 |
| 1/9/2017 | UBS LD32635 RL - "deposit" Merrill Lynch | $172.90 |
| 1/23/2017 | UBS LD32635 RL - "deposit" Merrill Lynch | $125.69 |
| 1/27/2017 | Ohio Department of Taxation - Refund | $2,100.00 |
| 1/31/2017 | UBS LD32634 RL - January dividends and interest | $215.46 |
| 1/31/2017 | UBS LD32634 RL - January increase in market value | $108.85 |
| 1/31/2017 | UBS LD32635 RL - January dividends and interest | $275.05 |
| 2/28/2017 | UBS LD32634 RL - February dividends and interest | $270.45 |
| 2/28/2017 | UBS LD32635 RL - February dividends and interest | $537.27 |
| 2/28/2017 | UBS LD32635 RL - February increase in market value | $4,032.00 |
| 3/31/2017 | UBS LD32634 RL - March dividends and interest | $270.03 |
| 3/31/2017 | UBS LD32635 RL - March dividends and interest | $988.69 |
| | | **TOTAL: $11,617.58** |

| DATE | DISBURSEMENTS: | VALUE |
|---|---|---|
| 1/31/2017 | UBS LD32635 RL - January foreign Tax Paid | ($75.52) |
| 1/31/2017 | UBS LD32635 RL - January decrease in market value | ($347.26) |
| 2/1/2017 | UBS LD32634 RL - Allen F. Campbell - Reimbursement per attached schedule A (check 1001) | ($33,481.75) |
| 2/28/2017 | UBS LD32634 RL - February decrease in market value | ($16.40) |
| 3/1/2017 | UBS LD32634 RL - Allen·F. Campbell - Reimbursement per attached schedule B (check 1002) | ($102,021.01) |
| 3/10/2017 | UBS LD32634 RL - Leiger - Accounting (check 1003) | ($4,978.75) |
| 3/13/2017 | UBS LD32634 RL - Pedelahore - Accounting (check 1004) | ($2,500.00) |
| 3/13/2017 | UBS LD32634 RL - Markiewich & Martello - Accounting (check 1005) | ($217.50) |
| 3/20/2017 | UBS LD32634 RL - Judson Home Care (check 1006) | ($3,165.90) |
| 3/31/2017 | UBS LD32634 RL - Loan Interest Charged | ($7.83) |
| 3/31/2017 | UBS LD32634 RL - March decrease in market value | ($144.81) |
| 3/31/2017 | UBS LD32635 RL - March decrease in market value | ($201.65) |
| | | **TOTAL: ($147,158.38)** |

2020CV251147\Judge: GALLAGHER\IN THE ADVERSARIAL CASE OF EGREGIUS WAR\GINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:49:54\CONF#: 10957\WORKFLOW ID: 1238689

| RECAPITULATION | |
|---|---|
| Beginning Balance | $439,230.41 |
| Total Receipts | $11,617.58 |
| Total Disbursements | ($147,158.38) |
| Total Remaining | $303,689.61 |

| ITEMIZATION OF ASSETS REMAINING ON 3/31/2017: | |
|---|---|
| UBS LD32634 RL - CASH ACCOUNT | $13,824.79 |
| UBS LD32635 RL - RESOURCE MANAGEMENT ACCOUNT | $289,864.82 |
| | TOTAL: $303,689.61 |

Ohio Revised Code §5810.05(A) "A beneficiary may not commence a proceeding against a trustee for breach of trust more than two years after the date the beneficiary [or his or her representative] is sent a report that adequately discloses the existence of a potential claim for breach of trust and informs the beneficiary [or his or her representative] of the time allowed for commencing a proceeding against a trustee."

Signature: /S/ Allen F. Campbell_____

ALLEN F. CAMPBELL, TRUSTEE

PROBATE COURT OF CUYAHOGA COUNTY, OHIO
ANTHONY J. RUSSO, PRESIDING JUDGE
LAURA J GALLAGER, JUDGE

TRUST OF FREDA MARGARET CAMPBELL

SCHEDULE OF REIMBURSEMENT TO ALLEN F. CAMPBELL

| Date | Name of Provider | Service or Product | Rationale | Actual Cost | Location of Supports |
|---|---|---|---|---|---|
| | | CHECK NO 1001 1/31/2017 - SCHEDULE A | | | |
| 3/6/2015 | Cedar Audiology | Hearing Aids | Needed replacement. Purchased with my credit card | $2,800.00 | April 2015 Folder. In Expanding File-2015 |
| 04/05-08/15 | Travel | Air, Food, Lodging, Trans. Supplies for FMC. | Emergency. Weekend of my mother's passing. | $1,598.38 | " |
| 4/27/2015 | Brown Forward | Funeral Home | Funeral Service Inv. | $7,708.85 | Expanding File-2015 |
| 4/1/2015 | Cleveland Skating Club | Memorial Reception | Memorial Reception | $3,486.68 | Red Folder. Expanding File-2015 |
| 04/13-17/15 | Travel | Air, Food, Lodging, Transp. Announcements, Supplies. | Attendance at Funeral for Family and friends. | $8,303.43 | Red Folder. Expanding File-2015 |
| 04/26-05/05/15 | Travel | Air, Food, Lodging, Transp. Supplies. | Attend to Funeral bill and clear Judson Apt. | $2,622.68 | Folder-April 26,2015-Expanding File-2015 |
| 6/20/2015 | Judson | Add'l Memorial Reception bill | Trans. | $150.00 | Corr. #1 |
| 6/20/2015 | Markiewich | Accounting | Tax-Don Campbell Trust | $1,948.75 | Corr. #2 |
| 6/20/2015 | Markiewich | Accounting | Tax-CFLP | $600.00 | Corr. #3 |
| 10/27/2015 | US Treasury | Taxes | Don Campbell Trust 2014- | $3,144.27 | Corr. #6 |
| 10/27/2015 | Cleveland Skating Club | Add'l Memorial Reception bill | Flowers | $58.27 | Corr. #7 |
| 8/27/2016 | Markiewich | Accounting | Tax-Don Campbell Trust | $540.00 | Corr. #25 |
| | | 1st Interim Reimb. Request | | $32,961.31 | |
| | | 1st Interim Reimb. Amt. | | $33,481.75 | Ck. 1001 |
| | | Overage: Credit Due back to Trust | | -$520.44 | |

Exhibit I

Exh 2 from Allen Opp to Motion to Remove Him

PROBATE COURT OF CUYAHOGA COUNTY, OHIO
ANTHONY J. RUSSO, PRESIDING JUDGE
LAURA J GALLAGHER, JUDGE

TRUST OF FREDA MARGARET CAMPBELL

SCHEDULE OF REIMBURSEMENT TO ALLEN F. CAMPBELL

### CHECK NO 1002 3/1/2017 - SCHEDULE B

| Date | Name of Provider | Service or Product. | Rationale | Actual Cost | Location of Supports |
|---|---|---|---|---|---|
| 4/27/2015 | Reminger | Retainer | Legal Services | $2,500.00 | Expanding File-2015 |
| 5/1/2015 | Travel. NOLA | Gas. Meals. Supplies | Confer-Forensic Accounting Services | $177.20 | Folder-May 2015. Expanding File-2015 |
| 6/1/2015 | Travel. NOLA. | Gas. Meals. Lodging | Conference-Legal and Accounting | $333.10 | Folder-June 2015. Expanding File-2015 |
| 09/30-10/01/15 | Travel. | Meals. Lodging Trans. | Conference-Merrill Lynch (The Failed One.) | $2,093.58 | Folder-Trip CLE 09302015. Expanding File-2015 |
| 09/30-10/01/15 | Travel. | Meals. Lodging Trans. | Conference-Merrill Lynch (The Failed One—Air Cancellation. | $870.20 | Folder-Trip CLE 09302015. Expanding File-2015 |
| 10/6/2015 | Travel | Air. Car. | Report-after Failed ML Conference | $808.20 | Folder-Trip HOU 09302015. Expanding File-2015 |
| 6/20/2015 | Legier | Accounting- | Forensic | $1,901.25 | Corr. #4 |
| 9/20/2015 | Legier | Accounting- | Forensic | $5,132.50 | Corr. #5 |
| 10/26/2015 | Legier | Accounting- | Forensic | $2,392.50 | Corr. #8 |
| 11/10/2016 | AlaFile | Filing Fee | Campbell v. Merrill Lynch | $307.03 | Corr. #9 |
| 12/7/2015 | Legier | Accounting- | Forensic | $2,062.23 | Corr. #10 |
| 12/15/2015 | Travel. COL | Air. Hotel. Cab. | Interview Counsel-Estate and Trust Issues | $1,156.80 | Folder. Trip Columbus 12/15/2015 |
| 2/8/2016 | Legier | Accounting- | Forensic | $495.00 | Corr. #11-(EC2B) |
| 2/8/2016 | Legier | Accounting- | Forensic | $6,238.87 | Corr. #12 |
| 2/8/2016 | Legier | Accounting- | Forensic | $3,786.75 | Corr. #13 |
| 2/8/2016 | Postet | Mail | Delivery | $31.37 | Corr. #14 |
| 2/12/2016 | Staples | Copy. Supp. | Court rec. | $154.82 | Corr. #15 |
| 3/1/2015 | J. Milling | Legal | Estate and Trust | $1,408.60 | Corr. #16 |
| 4/23/2016 | B. Buy | Supplies | Back-up. | $249.53 | Corr. #17 |

# Exhibit 1

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:50:37\CONF#: 10957\WORKFLOW ID: 1238688



**LEGIER & COMPANY**

*apac*

**Forensic CPAs and Business Consultants**

Allen F. Campbell
322 Cumberland Rd.
Fairhope, AL 36532

| | |
|---|---|
| Invoice # | 4109 |
| Invoice Date | 5/31/2015 |

## INVOICE

Matter:   Litigation Matter

| Date | Item | Description | Hours | Amount |
|---|---|---|---|---|
| 5/19/2015 | CMH501 | Litigation Support Services | 2.50 | 412.50 |
| 5/22/2015 | CMH501 | Litigation Support Services | 2.50 | 412.50 |
| 5/27/2015 | GLH501 | Litigation Support Services | 0.75 | 86.25 |
| 5/27/2015 | CMH501 | Litigation Support Services | 2.00 | 330.00 |
| 5/28/2015 | CMH501 | Litigation Support Services | 2.00 | 330.00 |
| 5/29/2015 | CMH501 | Litigation Support Services | 2.00 | 330.00 |

$1,901.25

Allen_Campbell_00164

**Exhibit J      Legier Bills from Havel et al. 5/22/2017 Exh 1      Page 2**



**LEGIER & COMPANY**
apac
Forensic CPAs and Business Consultants

Allen F. Campbell
322 Cumberland Rd.
Fairhope, AL 36532

Invoice #    4140
Invoice Date    6/30/2015

## INVOICE

Matter:    Litigation Matter

| Date | Item | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| 6/1/2015 | CMH501 | Litigation Support Services | 6.00 | 990.00 |
| 6/1/2015 | WRL501 | Litigation Support Services | 3.50 | 1,400.00 |
| 6/2/2015 | GLH501 | Litigation Support Services | 0.75 | 86.25 |
| 6/19/2015 | MED501 | Litigation Support Services | 0.50 | 55.00 |
| 6/29/2015 | CMH501 | Litigation Support Services | 2.00 | 330.00 |
| 6/30/2015 | CMH501 | Litigation Support Services | 5.50 | 907.50 |

ALLEN F CAMPBELL
322 CUMBERLAND RD
FAIRHOPE, AL 36532-0000

1046
81-661/651
784

8 Feb 2016

PAY TO THE
ORDER OF  *Legier & Co*    $ 3786.75

*Thirty-Seven hundred eighty-six and 75/100*    DOLLARS

**Hancock Bank.**
hancockbank.com

FOR

*Allen F Campbell*

⑆065106619⑆ 004801254 7⑈ 1046

$3,768.75

Allen_Campbell_00195

1100 Poydras St 34th Floor    New Orleans, LA 70163    Phone # 504.561.0020

**Exhibit J**    Legier Bills from Havel et al. 5/22/2017 Exh 1    **Page 3**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:50:37\CONF#: 10957\WORKFLOW ID: 1238688



**LEGIER**

**COMPANY**

*apa*

**Forensic CPAs and Business Consultants**

Allen F. Campbell
322 Cumberland Rd.
Fairhope, AL 36532

Invoice #: 4183
Invoice Date: 7/31/2015

## INVOICE

Matter: Litigation Matter

| Date | Item | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| 7/13/2015 | CMH501 | Litigation Support Services | 5.00 | 825.00 |
| 7/14/2015 | CMH501 | Litigation Support Services | 4.00 | 660.00 |
| 7/15/2015 | CMH501 | Litigation Support Services | 7.00 | 1,155.00 |
| 7/16/2015 | CMH501 | Litigation Support Services | 5.50 | 907.50 |
| 7/17/2015 | CMH501 | Litigation Support Services | 6.50 | 1,072.50 |
| 7/17/2015 | WRL501 | Litigation Support Services | 4.00 | 1,600.00 |
| 7/18/2015 | CMH501 | Litigation Support Services | 6.00 | 990.00 |
| 7/20/2015 | CMH501 | Litigation Support Services | 6.00 | 990.00 |
| 7/20/2015 | WRL501 | Litigation Support Services | 3.50 | 1,400.00 |
| 7/21/2015 | WRL501 | Litigation Support Services | 1.50 | 600.00 |
| 7/21/2015 | CMH501 | Litigation Support Services | 5.00 | 825.00 |
| 7/27/2015 | CMH501 | Litigation Support Services | 4.00 | 660.00 |
| 7/27/2015 | WRL501 | Litigation Support Services | 2.50 | 1,000.00 |
| 7/28/2015 | CMH501 | Litigation Support Services | 6.50 | 1,072.50 |
| 7/28/2015 | WRL501 | Litigation Support Services | 4.50 | 1,800.00 |
| 7/30/2015 | CMH501 | Litigation Support Services | 2.00 | 330.00 |
| 7/31/2015 | CMH501 | Litigation Support Services | 2.00 | 330.00 |
| | Reimb.Cost | Total Reimbursable Expenses | | 21.37 |

ALLEN F CAMPBELL
322 CUMBERLAND RD
FAIRHOPE, AL 36532-0000

1048

8 Feb 2016

PAY TO THE
ORDER OF *Legier & Co.* $ 6238.87/100

*Sixty-two hundred thirty-eight and 87/100* DOLLARS

**Hancock Bank.**

$16,238.87

FOR _____ *Allen F Campbell*

⑈065106619⑈ 00480 1254 7⑈ 1048

Allen_Campbell_00193

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:50:37\CONF#: 10957\WORKFLOW ID: 1238688



**LEGIER & COMPANY**

*apac*

**Forensic CPAs and Business Consultants**

Allen F. Campbell
322 Cumberland Rd.
Fairhope, AL 36532

Invoice #          4183
Invoice Date     7/31/2015

## INVOICE

Matter:    Litigation Matter

| Date | Item | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| 7/13/2015 | CMH501 | Litigation Support Services | 5.0 | 825.00 |
| 7/14/2015 | CMH501 | Litigation Support Services | 4.0 | 660.00 |
| 7/15/2015 | CMH501 | Litigation Support Services | 7.0 | 1,155.00 |
| 7/16/2015 | CMH501 | Litigation Support Services | 5.5 | 907.50 |
| 7/17/2015 | CMH501 | Litigation Support Services | 6.5 | 1,072.50 |
| 7/17/2015 | WRL501 | Litigation Support Services | 4.0 | 1,600.00 |
| 7/18/2015 | CMH501 | Litigation Support Services | 6.0 | 990.00 |
| 7/20/2015 | CMH501 | Litigation Support Services | 6.0 | 990.00 |
| 7/20/2015 | WRL501 | Litigation Support Services | 3.5 | 1,400.00 |
| 7/21/2015 | WRL501 | Litigation Support Services | 1.5 | 600.00 |
| 7/21/2015 | CMH501 | Litigation Support Services | 5.0 | 825.00 |
| 7/27/2015 | CMH501 | Litigation Support Services | 4.0 | 660.00 |
| 7/27/2015 | WRL501 | Litigation Support Services | 2.5 | 1,000.00 |
| 7/28/2015 | CMH501 | Litigation Support Services | 6.5 | 1,072.50 |
| 7/28/2015 | WRL501 | Litigation Support Services | 4.5 | 1,800.00 |
| 7/30/2015 | CMH501 | Litigation Support Services | 2.0 | 330.00 |
| 7/31/2015 | CMH501 | Litigation Support Services | 2.0 | 330.00 |
|  | Reimb.Cost | Total Reimbursable Expenses |  | 21.37 |

$16,238.87

- 6,238 87

$ 10,00

1100 Poydras St 34th Floor     New Orleans, LA 70163      Phone # 504-561-0020      Fax # 504-561-0023

Allen_Campbell_00249

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:50:37\CONF#: 10957\WORKFLOW ID: 1238688



**LEGIER & COMPANY**
*apsc*
Forensic CPAs and Business Consultants

Allen F. Campbell
322 Cumberland Rd.
Fairhope, AL 36532

| | |
|---|---|
| Invoice # | 4216 |
| Invoice Date | 8/31/2015 |

## INVOICE

Matter:    Litigation Matter

| Date | Item | Description | Hours | Amount |
|---|---|---|---|---|
| 8/3/2015 | CMH501 | Litigation Support Services | 6.00 | 990.00 |
| 8/3/2015 | WRL501 | Litigation Support Services | 0.25 | 100.00 |
| 8/4/2015 | CMH501 | Litigation Support Services | 1.00 | 165.00 |
| 8/19/2015 | CMH501 | Litigation Support Services | 1.00 | 165.00 |
| 8/20/2015 | CMH501 | Litigation Support Services | 4.50 | 742.50 |
| 8/21/2015 | CMH501 | Litigation Support Services | 3.00 | 495.00 |
| 8/24/2015 | CMH501 | Litigation Support Services | 4.00 | 660.00 |
| 8/25/2015 | CMH501 | Litigation Support Services | 5.00 | 825.00 |
| 8/26/2015 | CMH501 | Litigation Support Services | 6.00 | 990.00 |

$5,132.50

Allen_Campbell_00167

**Exhibit J**          **Legier Bills from Havel et al. 5/22/2017 Exh 1**          **Page 6**



**LEGIER & COMPANY**

*a.p.c.*

**Forensic CPAs and Business Consultants**

Allen F. Campbell
322 Cumberland Rd.
Fairhope, AL 36532

Invoice #          4254
Invoice Date    9/30/2015

## INVOICE

Matter:    Litigation Matter

| Date | Item | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| 9/2/2015 | CMH501 | Litigation Support Services | 1.00 | 165.00 |
| 9/8/2015 | CMH501 | Litigation Support Services | 1.00 | 165.00 |
| 9/15/2015 | CMH501 | Litigation Support Services | 1.50 | 247.50 |
| 9/28/2015 | CMH501 | Litigation Support Services | 2.00 | 330.00 |
| 9/29/2015 | CMH501 | Litigation Support Services | 3.00 | 495.00 |
| 9/30/2015 | CMH501 | Litigation Support Services | 6.00 | 990.00 |



$2,392.50

Allen_Campbell_00180

**Exhibit J**          **Legier Bills from Havel et al. 5/22/2017 Exh 1**          **Page 7**



**LEGIER & COMPANY**

Forensic CPAs and Business Consultants

Allen F. Campbell
322 Cumberland Rd.
Fairhope, AL 36532

| | |
|---|---|
| Invoice # | 4254 |
| Invoice Date | 9/30/2015 |

## INVOICE

Matter:  Litigation Matter

| Date | Item | Description | Hours | Amount |
|---|---|---|---|---|
| 9/2/2015 | CMH501 | Litigation Support Services | 1.00 | 165.00 |
| 9/8/2015 | CMH501 | Litigation Support Services | 1.00 | 165.00 |
| 9/15/2015 | CMH501 | Litigation Support Services | 1.50 | 247.50 |
| 9/28/2015 | CMH501 | Litigation Support Services | 2.00 | 330.00 |
| 9/29/2015 | CMH501 | Litigation Support Services | 3.00 | 495.00 |
| 9/30/2015 | CMH501 | Litigation Support Services | 6.00 | 990.00 |



$2,392.50

Allen_Campbell_00182

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:50:37\CONF#: 10957\WORKFLOW ID: 1238688



**LEGIER & COMPANY**

*apac*

Forensic CPAs and Business Consultants

Allen F. Campbell
322 Cumberland Rd,
Fairhope, AL 36532

| | |
|---|---|
| Invoice # | 4309 |
| Invoice Date | 10/31/2015 |

## INVOICE

Matter: Litigation Matter

| Date | Item | Description | Hours | Amount |
|---|---|---|---|---|
| 10/1/2015 | CMH501 | Litigation Support Services | 3.00 | 495.00 |
| 10/1/2015 | WRL501 | Litigation Support Services | 1.00 | 400.00 |
| 10/13/2015 | CMH501 | Litigation Support Services | 1.50 | 247.50 |
| 10/14/2015 | CMH501 | Litigation Support Services | 0.75 | 123.75 |
| 10/15/2015 | CMH501 | Litigation Support Services | 1.00 | 165.00 |
| 10/16/2015 | CMH501 | Litigation Support Services | 3.00 | 495.00 |
| 10/27/2015 | CMH501 | Litigation Support Services | 0.75 | 123.75 |
| | Reimb.Cost | Total Reimbursable Expenses | | 12.23 |



Allen_Campbell_00189

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:50:37\CONF#: 10957\WORKFLOW ID: 1238688



**Forensic CPAs and Business Consultants**

Allen F. Campbell
322 Cumberland Rd.
Fairhope, AL 36532

| | |
|---|---|
| Invoice # | 4329 |
| Invoice Date | 11/30/2015 |

## INVOICE

Matter: Litigation Matter

| Date | Item | Description | Hours | Amount |
|---|---|---|---|---|
| 11/30/2015 | CMH501 | Litigation Support Services | 1 | 165.00 |

$165.00

1100 Poydras St 34th Floor     New Orleans, LA 70163     Phone # 504-561-0020     Fax # 504-561-0023

Allen_Campbell_00251

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:50:37\CONF#: 10957\WORKFLOW ID: 1238688



**LEGIER & COMPANY**
*apac*
**Forensic CPAs and Business Consultants**

Allen F. Campbell
322 Cumberland Rd.
Fairhope, AL 36532

| | |
|---|---|
| Invoice # | 4396 |
| Invoice Date | 12/31/2015 |

## INVOICE

Matter:     Litigation Matter

| Date | Item | Description | Hours | Amount |
|---|---|---|---|---|
| 12/1/2015 | CMH501 | Litigation Support Services | 3.00 | 495.00 |



Allen_Campbell_00191

**Exhibit J**          **Legier Bills from Havel et al. 5/22/2017 Exh 1**          **Page 11**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:50:37\CONF#: 10957\WORKFLOW ID: 1238688

# LEGIER

# & COMPANY

ejvic

**Forensic CPAs and Business Consultants**

Allen F. Campbell
322 Cumberland Rd.
Fairhope, AL 36532

| Invoice # | 4594 |
|---|---|
| Invoice Date | 7/31/2016 |

## INVOICE

Matter:    Litigation Matter

| Date | Item | Description | Hours | Amount |
|---|---|---|---|---|
| 6/7/2016 | CMH501 | Litigation Support Services | 0.5 | 85.00 |

$85.00

1100 Poydras St 34th Floor    New Orleans, LA 70163    Phone # 504-561-0020    Fax # 504-561-0023

Allen_Campbell_00250

**Exhibit J          Legier Bills from Havel et al. 5/22/2017 Exh 1          Page 12**

# *Last Will and Testament*

## *of*

# *Donald A. Campbell*

*Dated:* ___July 2___ *, 2001*

**Exhibit K**                     **Last Will of Donald A. Campbell**                     **Page 1**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:52:01\CONF#: 10957\WORKFLOW ID: 1238687

*Last Will and Testament*
*of*
*Donald A. Campbell*

### *Table of Contents*

Article I.
    Family . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 1 -

Article II.
    Tangible Personal Property and Specific Bequests . . . . . . . . . . . . . . . . . . . . - Page 1 -
    A.    Margaret . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 1 -
    B.    Descendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 1 -
    C.    Written Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 2 -

Article III.
    Residuary Estate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 2 -
    A.    Disposition of Residuary Estate . . . . . . . . . . . . . . . . . . . . . . . . - Page 2 -
    B.    Conditional Incorporation of Trust by Reference . . . . . . . . . . . . . . . . - Page 2 -
    C.    Direct Distribution to Trust Beneficiaries . . . . . . . . . . . . . . . . . . . - Page 2 -

Article IV.
    Claims, Expenses, Pledges and Taxes . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 3 -
    A.    Claims, Expenses and Pledges . . . . . . . . . . . . . . . . . . . . . . . . . - Page 3 -
    B.    Taxes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 3 -
        1.    General Rule -- Apportionment . . . . . . . . . . . . . . . . . . . . - Page 3 -
        2.    Special Rule -- Reverse QTIP Election . . . . . . . . . . . . . . - Page 3 -
        3.    Interest and Penalties . . . . . . . . . . . . . . . . . . . . . . . . . - Page 3 -
    C.    Waiver of Bond . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 3 -

Article V.
    Executors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 4 -
    A.    Appointment of Executor . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 4 -
    B.    Waiver of Bond . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 4 -
    C.    Appointment of Personal Representative by my Executor . . . . . . . . . . - Page 4 -
    D.    Tax Elections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 4 -
    E.    Joint Tax Returns . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 4 -
        1.    Income Tax Returns . . . . . . . . . . . . . . . . . . . . . . . . . - Page 4 -
        2.    Gift Tax Returns . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 4 -
    F.    Authorization to Furnish Information to the Trustee . . . . . . . . . . . . . - Page 4 -

*- i -*

**Exhibit K**        **Last Will of Donald A. Campbell**        **Page 2**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:52:01\CONF#: 10957\WORKFLOW ID: 1238687

G.    Executor's Rights and Discretions . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 5 -
      1.    Retention of Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 5 -
      2.    Sale of Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 5 -
      3.    Investment of Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 5 -
      4.    Operating Businesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 6 -
      5.    Real Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 6 -
      6.    Natural Resources . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 6 -
      7.    Voting Securities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 6 -
      8.    Foreclosure of Mortgages . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 6 -
      9.    Compromise Debts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 7 -
      10.   Abandonment of Property . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 7 -
      11.   Location of Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 7 -
      12.   Bank Accounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 7 -
      13.   Lending of Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 7 -
      14.   Borrowing of Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 7 -
      15.   Dealing With Trustees of Employee Benefit Trusts . . . . . . . . . - Page 8 -
      16.   Determination of Income and Principal . . . . . . . . . . . . . . . . . - Page 8 -
      17.   Depreciation Reserves . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 8 -
      18.   Accumulation of Income . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 8 -
      19.   Facility of Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 8 -
      20.   Nominees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 9 -
      21.   Agents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 9 -
      22.   Execution and Delivery of Instruments . . . . . . . . . . . . . . . . . - Page 9 -
      23.   All Necessary Acts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 9 -
H.    Exoneration of Executor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 9 -

Article VI.
      Qualified Terminable Interest Election . . . . . . . . . . . . . . . . . . . . . . . - Page 9 -

Article VII.
      Construction Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 10 -
A.    Executor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 10 -
B.    Descendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 10 -
C.    Gender and Number . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 10 -
D.    Internal Revenue Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 10 -
E.    Headings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - Page 10 -

- ii -

**Exhibit K**          **Last Will of Donald A. Campbell**          **Page 3**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:52:01\CONF#: 10957\WORKFLOW ID: 1238687

### Last Will and Testament
### of
### Donald A. Campbell

I, **Donald A. Campbell**, of Shaker Heights, Ohio, declare this to be my Last Will and Testament and revoke all former wills and codicils previously made by me.

### Article I.
### _Family_

I am married to *F. Margaret Campbell (also known as Freda Margaret Campbell)* ("*Margaret*"). The names and dates of birth of my only children who are living at the date of this Will are as follows:

| Name | Date of Birth |
|---|---|
| *Allen F. Campbell ("Allen")* | 9/23/48 |
| *Frederick M. Campbell ("Frederick")* | 9/17/51 |

### Article II.
### _Tangible Personal Property and Specific Bequests_

I bequeath all my tangible personal property (other than tangible personal property which is primarily used in connection with any business or profession in which I may be engaged at the time of my death), together with all insurance on such property, as follows:

A. **Margaret.** I bequeath all such property and insurance to *Margaret*, if she survives me.

B. **Descendants.** If *Margaret* does not survive me, I bequeath all such property and insurance to my son, *Frederick*, if he survives me, otherwise to my granddaughter, *Ava Margaret Campbell ("Ava")* if she survives me. If none of *Margaret*, *Frederick* or *Ava* shall survive me, then this bequest shall lapse and said tangible personal property shall be added to my Residuary Estate.

*- Page 1 -*

**Exhibit K**          **Last Will of Donald A. Campbell**          **Page 4**

**C.   Written Instructions.**  If I leave a signed letter or memorandum requesting that specific articles of tangible personal property be given to named individuals, I ask that my family honor such request.

**D.   Ava Margaret Campbell ("Ava").**  If my spouse predeceases me, I bequeath the sum of Fifty Thousand Dollars ($50,000) to my granddaughter, *Ava*, if she survives me.

**E.   Heather Campbell Bradford Wallace ("Heather").**  If my spouse predeceases me, I bequeath the sum of Fifty Thousand Dollars ($50,000) to my son's daughter, *Heather*, if she survives me.

**F.   Manuela Hernandez ("Manuela").**  If my spouse predeceases me, I bequeath the sum of Fifty Thousand Dollars ($50,000) to my son's step-daughter, *Manuela*, if she survives me.

### Article III.
### Residuary Estate

**A.   Disposition of Residuary Estate.**  I devise and bequeath all my remaining property, including lapsed legacies and devises, (my "*Residuary Estate*") to the trustee (the "*Trustee*") of the *Donald A. Campbell 2001 Trust* dated ___July 2___, 2001, as amended (the "*Trust*"), created by myself, as grantor and trustee. My *Residuary Estate* shall be added to the principal of the *Trust* and shall be administered in all respects as an integral part of the *Trust*.

**B.   Conditional Incorporation of Trust by Reference.**  To the extent the devise and bequest of my *Residuary Estate* to the *Trust* fails for any reason --

- I incorporate the terms of the *Trust* herein by reference; and

- I devise and bequeath my *Residuary Estate* to the *Trustee* -- to be administered as provided in the *Trust*.

**C.   Direct Distribution to Trust Beneficiaries.**  Notwithstanding the above, if the *Trustee* informs my Executor in writing that any portion of my *Residuary Estate* would, upon receipt by the *Trustee*, be immediately distributable to a beneficiary of the *Trust*, my Executor shall distribute such portion directly to such beneficiary.

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:52:01\CONF#: 10957\WORKFLOW ID: 1238687

### Article IV.
### Claims, Expenses, Pledges and Taxes

**A.** **Claims, Expenses and Pledges.** My Executor shall pay (i) all claims allowable against my estate, the expenses of my last illness and funeral, and expenses of administration (including ancillary administration) in such amounts as my Executor considers reasonable without regard to any limitation imposed by law or rule of court, and (ii) any charitable pledge signed by me (unsigned pledges shall not be recognized) unless such pledge by its terms is released by my death or conditioned upon my survival. The reasonable costs of protecting, packing, storing, insuring, shipping and delivering all assets of my estate, including costs incurred before the qualification of my Executor, shall be paid as an expense of administering my estate. All such payments shall be charged against my *Residuary Estate*. Notwithstanding the above, my Executor may request payment of such items by the *Trustee* from assets of the *Trust*.

**B.** **Taxes.**

**1.** **General Rule -- Apportionment.** Except as provided in Clause IVB.2 below, my Executor shall pay all estate, inheritance, legacy, succession or transfer taxes imposed by reason of my death (my "*Death Taxes*"). Such taxes shall be equitably apportioned in accordance with the law of the state in which I am domiciled at my death.

**2.** **Special Rule -- Reverse QTIP Election.** Notwithstanding Clause IVB.1 above, if (i) I survive *Margaret* and (ii) at *Margaret's* death, a portion of her *GST exemption* was allocated to any marital trust created or funded by *Margaret* for my benefit (a "*Reverse QTIP Trust*"), the amount (if any) by which my *Death Taxes* are increased because property comprising such trust is included in my gross estate for tax purposes shall be paid as follows:

- First, by apportionment among the persons holding or receiving property comprising any other marital trust established for my benefit by *Margaret* to which none of her *GST exemption* was allocated;

- Second, out of my *Residuary Estate*, without apportionment or proration and with no right of reimbursement from any recipient of any property; and

- Finally, by apportionment among the persons holding or receiving the property comprising such *Reverse QTIP Trust*.

**3.** **Interest and Penalties.** Interest and penalties concerning my *Death Taxes* shall be paid in the same manner as the tax.

**C.** **Waiver of Bond.** I direct that no bond or security be required of any guardian in any jurisdiction. If a bond should nevertheless be required, I waive surety thereon.

**Exhibit K**   **Last Will of Donald A. Campbell**   **Page 6**

*Article V.*
*Executors*

**A.**    ***Appointment of Executor.***  I appoint the following persons, in the order named, to be the Executor of my estate:  (i) *Margaret*; then (ii) *Frederick.*

**B.**    ***Waiver of Bond.***  I direct that no bond or other security be required of my Executor in any jurisdiction.  If a bond should nevertheless be required, I waive surety thereon.

**C.**    ***Appointment of Personal Representative by my Executor.***  If the appointment of a personal representative of my estate is desirable in any jurisdiction in which my Executor is unable or unwilling to act, I appoint as my personal representative in that jurisdiction such individual (who may be an employee of my Executor) or corporation as is designated by my Executor, to act without bond or without surety on any required bond, and to have all the rights, powers, titles, duties, discretions and immunities with respect to my estate in that jurisdiction during administration that my Executor is given with respect to the balance of my estate, to be exercised without court order.

**D.**    ***Tax Elections.***  My Executor shall make such elections under the tax laws as my Executor determines will be in the best interests of my estate and its beneficiaries, without regard to the relative interests of the beneficiaries.  No adjustment shall be made between income and principal or in the relative interests of the beneficiaries to compensate for the effect of any such election made by my Executor.

**E.**    ***Joint Tax Returns.***

**1.**    ***Income Tax Returns.***  I authorize my Executor to file joint income tax returns with *Margaret* (or, if she is not living, with the executor or administrator of her estate) for any periods for which such a return may be permitted.  I further authorize my Executor to pay from my *Residuary Estate* the full amount of the tax determined to be due on any such joint return.

**2.**    ***Gift Tax Returns.***  I authorize my Executor to consent that any gifts made by *Margaret* or me shall, for gift tax purposes, be considered as having been made one-half (1/2) by *Margaret* and one-half (1/2) by me.  If such consent is given, I further authorize my Executor to pay from my *Residuary Estate* all gift taxes resulting from such gifts.

**F.**    ***Authorization to Furnish Information to the Trustee.***  My Executor shall furnish to the *Trustee* complete information, to the extent known by my Executor and requested by

*- Page 4 -*

**Exhibit K**                **Last Will of Donald A. Campbell**                **Page 7**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:52:01\CONF#: 10957\WORKFLOW ID: 1238687

the *Trustee*, concerning all assets included in my gross estate for tax purposes and concerning all liabilities and claims against my estate or against any item in my estate.

      **G.**     ***Executor's Rights and Discretions.***  I give to my Executor full rights and discretions in the management and control of my entire estate, real and personal (except that my Executor shall not have the management and control of any real property specifically devised herein), including the rights and discretions set forth below:

          **1.**     ***Retention of Assets.***  To retain without liability for depreciation or loss any asset received from me;

          **2.**     ***Sale of Assets.***  To sell, exchange, assign or transfer any asset comprising part or all of my estate upon such terms and conditions and in such manner as my Executor considers best;

          **3.**     ***Investment of Assets.***  To invest and reinvest any money or property of my estate in any property, real or personal, of any kind or nature, including without limitation --

- Any stocks, whether common or preferred, and including stocks of any corporate executor;

- Warrants, participations in discretionary common trust funds, money market funds and mutual funds;

- Government bills, notes and bonds;

- Corporate bonds, whether secured or unsecured, debentures, bankers acceptances, certificates of deposit, mortgages and commercial paper;

- Foreign currencies, gold, silver or other precious metals;

- Commodity and stock options (for the purpose of hedging but not for speculation);

- Real estate, whether improved or unimproved;

- Partnership interests, whether general or limited;

- Life estates or remainder interests following a life estate or a term of years; and

- Interests in any of the foregoing;

even though such investment or purchase (by reason of its character, amount, proportion to the total property of my estate or otherwise) would not be considered appropriate for an executor apart from this provision;

*- Page 5 -*

**Exhibit K**                   **Last Will of Donald A. Campbell**                   **Page 8**

In the making and retention of investments and reinvestments, my Executor shall not be confined to the obligations and securities mentioned in any statute or rule of court for fiduciaries for the investment of funds and shall have no duty to diversify the assets or investments of my estate;

    **4.**    *Operating Businesses.* To initiate and to carry on, as a sole proprietor, general or limited partner, shareholder, joint venturer, or in any other ownership capacity, any new or existing business, enterprise, investment or trade, for such time as my Executor considers advisable, without any duty to comply with Ohio Revised Code § 2113.30 (or any comparable provision of applicable law);

    To serve with compensation as an officer, director, employee, agent or independent contractor of any such business or enterprise without any obligation to account for such compensation;

    **5.**    *Real Property.* With respect to any real property owned by my estate, or in which my estate has an interest --

- To improve or develop such real property;

- To construct, alter or repair buildings or structures;

- To settle boundary lines;

- To grant easements and other rights;

- To partition and to join with co-owners and others in dealing with such real property;

- To lease such real property for such term and upon such provisions as my Executor considers advisable even though the term of the lease may extend beyond the administration of my estate;

    **6.**    *Natural Resources.* To deal with any interest in oil, gas, mineral, timber or farming operations or investments in any form in any manner as I could do if living and the owner of such interest;

    **7.**    *Voting Securities.* To vote by proxy or in person any security comprising a part of my estate; to enter into any kind of pooling agreements and voting trusts, even though such action may involve delegation of authority;

    **8.**    *Foreclosure of Mortgages.* To foreclose, as an incident to the collection of any bond or notes, any deed of trust or mortgage securing such bond or note and to bid in the mortgaged property at such foreclosure sale;

    To acquire property by deed from the mortgagor without foreclosure;

*- Page 6 -*

**Exhibit K**        **Last Will of Donald A. Campbell**        **Page 9**

To retain property bid in at foreclosure or acquired without foreclosure for such time as my Executor considers advisable or to dispose of such property by sale, exchange or otherwise upon such terms as my Executor considers advisable;

**9.    *Compromise Debts*.**  To enforce, abandon, defend or have adjudicated by legal proceedings, arbitration or compromise, any claim or demand of any nature which arises out of or otherwise exists in favor of or against my estate;

**10.    *Abandonment of Property*.**  To abandon any property, real or personal, which my Executor considers to be worthless or not of sufficient value to warrant keeping or protecting;

To abstain from the payment of taxes, liens, water rents, assessments, repairs, maintenance or upkeep of any such property;

To permit any such property to be lost by tax sale or other proceedings;

To convey any such property for a nominal consideration or without consideration;

**11.    *Location of Assets*.**  To keep any property comprising my estate at any place or places in the United States of America (or with the continuing approval of all beneficiaries having an interest in such property, outside the United States of America) or with a depository or custodian at such place or places;

**12.    *Bank Accounts*.**  To open and maintain one or more checking or savings accounts with any bank, trust company, savings and loan or building and loan association, or any other financial institution, wherever located, (even though such financial institution is my Executor or an affiliate of my Executor) and to deposit to the credit of any such account all or part of the funds belonging to my estate, whether or not such funds earn interest;

**13.    *Lending of Funds*.**  To lend money to any beneficiary or to any other person, upon such terms and with such security, if any, as my Executor considers advisable;

**14.    *Borrowing of Funds*.**  To borrow in the name of my estate such sums for such periods and on such terms as my Executor considers advisable (including the right to borrow from any Executor or the banking department or affiliate of a corporate Executor), and to secure any such loan by deed of trust, mortgage or pledge;

No lender shall be bound to see to or be liable for my Executor's application of any loan proceeds;

Unless otherwise expressly agreed, my Executor shall not be personally liable for any such loan, but each such loan shall be payable only out of assets of my estate;

*- Page 7 -*

**Exhibit K**                  **Last Will of Donald A. Campbell**                  **Page 10**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:52:01\CONF#: 10957\WORKFLOW ID: 1238687

**15.** *Dealing With Trustees of Employee Benefit Trusts.* To deal with the trustees of any pension, profit-sharing or other employee benefit trust, plan or account, or the payees of any individual retirement plan or account, under which my Executor or my estate is designated as a beneficiary and to elect optional modes of settlement of proceeds due my Executor or my estate under any such trust, plan or account;

**16.** *Determination of Income and Principal.* To reasonably determine the manner of ascertaining income and principal and the allocation or apportionment of all receipts and disbursements between income and principal as my Executor considers desirable, even though contrary to any statutory or regulatory presumption concerning ascertainment of income and principal, without regard to the relative interests of the beneficiaries of my estate, but with regard to general principles of trust accounting;

Notwithstanding the above, I direct that --

• Periodic cash distributions from any partnership interest be considered net income for accounting but not for income tax purposes and be distributable as such, even though a portion thereof may constitute depreciation or amortization (except to the extent that my Executor considers it advisable to establish all or a portion of such distributions as a reserve for future capital contributions to such partnerships); and

• Upon the sale or other disposition of property which has been unproductive or under productive of income, no part of the proceeds received shall be allocated to income;

**17.** *Depreciation Reserves.* To establish or not to establish out of income, and to credit to principal, reasonable reserves for rehabilitation, major repairs, replacements and losses in value resulting from wear and tear and obsolescence of tangible property;

**18.** *Accumulation of Income.* To exercise all rights, powers and discretions with respect to all accumulations of income held in my estate;

**19.** *Facility of Payment.* During any time that a beneficiary is, in my Executor's judgment, incapable of managing financial affairs on account of age, illness, handicap, unavailability or any other cause, my Executor may distribute any income or principal otherwise distributable to such beneficiary either --

• To the parent or guardian of such beneficiary;

• To the individual with whom or the institution in which such beneficiary resides;

• To the spouse or children of such beneficiary who are legally or in fact dependent upon such beneficiary for their support or education;

*- Page 8 -*

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:52:01\CONF#: 10957\WORKFLOW ID: 1238687

- In the case of a minor beneficiary, to the minor beneficiary or to his or her custodian under any applicable Uniform Transfers (or Uniform Gifts) to Minors Act; or

- By applying the same for the benefit of such beneficiary;

the receipt of such beneficiary, other individual or institution, or evidence that such distribution was applied for the benefit of such beneficiary shall be a full discharge to my Executor for such distribution;

20. **Nominees.** To hold any investment in any form in which title will pass by delivery or in the name of a nominee without indicating that such investment is held in a fiduciary capacity, but my Executor shall be liable for any act of the nominee in connection with the investment so held;

21. **Agents.** To employ accountants, attorneys, brokers, custodians, investment counsel and other agents, even though such agent is my Executor (or is an employee of, or is associated with, my Executor), and to pay them reasonable compensation, whether from income or principal, as my Executor shall determine;

22. **Execution and Delivery of Instruments.** To execute and deliver agreements, assignments, bills of sale, contracts, deeds, notes, powers of attorney, receipts and other instruments which my Executor considers advisable for the advantageous administration of my estate or for the exercise of any right, power or discretion conferred upon my Executor; and

23. **All Necessary Acts.** To perform all other acts which my Executor considers advisable for the advantageous administration of my estate.

H. **Exoneration of Executor.** No Executor acting in good faith shall be liable for any loss, liability, expense or damage to my estate occasioned by my Executor's acts or failures to act in the administration of my estate. My Executor shall be presumed to have acted in good faith if its action or failure to act is in reliance on a written opinion of counsel.

### Article VI.
### Qualified Terminable Interest Election

I intend that the property held in the *Marital Share* created under the *Trust* be *"qualified terminable interest property"*, as defined under section 2056(b)(7) of the *Code*. However, I do not direct my Executor to make any election available under said section, but rather desire that my Executor exercise judgment in determining whether, and the extent to which, such election should be made. For this purpose my Executor shall consider *Margaret's* age and health, the size of her estate, the advice of *Margaret* and my adult children, and all other factors considered relevant by

**Exhibit K**          **Last Will of Donald A. Campbell**          **Page 12**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:52:01\CONF#: 10957\WORKFLOW ID: 1238687

my Executor. The decision of my Executor shall be final and shall not be subject to question or dispute by any person.

## Article VII.
### Construction Provisions

**A.    Executor.**  References to my Executor shall be construed to mean the personal representative of my estate, regardless of how designated.

**B.    Descendants.**  Reference to my descendants means my children and more remote lawful descendants. Such reference includes persons who have been adopted during their minority according to law or under any court proceeding and the descendants of any such adopted person. Such reference does not include a stepchild or foster child (or any of their descendants).

**C.    Gender and Number.**  The masculine, feminine and neuter genders shall be considered to include all genders, and the singular the plural and vice versa, except where such construction would be unreasonable.

**D.    Internal Revenue Code.**  References to the Code are to the Internal Revenue Code of 1986, as amended or superseded, and references to a section of or tax under the *Code* include all amendments and successor provisions corresponding to any such section or tax in force after the date of this Will. References to tax terms which have defined meanings under the *Code* shall have such defined meanings.

**E.    Headings.**  The headings in this Will are inserted solely for convenient reference and shall be ignored in its construction.

**In Witness Whereof,** I have signed this Will on the 2 day of July , 2001.

_Donald A. Campbell_

*- Page 10 -*

**Exhibit K**          **Last Will of Donald A. Campbell**          **Page 13**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:52:01\CONF#: 10957\WORKFLOW ID: 1238687

On the 2 day of _____, 2001, this instrument was signed by *Donald A. Campbell* in our presence and was acknowledged and declared by him to be his Will. Immediately thereafter, at his request, in his presence, and in the presence of each other, we signed this instrument as subscribing witnesses.

_____     residing at   _10295 Uedgefield C4o_
Signature

_Missia H. Vaselaney_                              _Chesterland Ohio 440_
Print Name                                              Print Address

_____     residing at   _3311 WARRANSVILLE CTR. RD._
Signature

_JEFFREY  PERLMUTER_                               _SHAKER  HTS, OH 44122_
Print Name                                              Print Address

*F:\SZD\VASELANIA\CLIENTS\Campbell, Donald\HusbWill.wpd*

*- Page 11 -*

**Exhibit K**            **Last Will of Donald A. Campbell**            **Page 14**

2020ADV251147\Judge: GALLAGHER\ THE ADVERSARIAL CASE OF EGIDIJUS MARCINKEVICIUS, TRUSTEE
Electronically Filed: CWC 03/18/2020 14:52:01\CONF#: 10957\WORKFLOW ID: 1238687

# Campbell Family Estate Plan



**Exhibit L**

| F. Margaret Campbell, dec'd. | Donald A. Campbell, dec'd. |
|---|---|
| Date of Death: April 6, 2015 | Date of Death: February 22, 2010 |
| Children of F. Margaret & Donald A. Campbell | |
| Allen F. Campbell, Son | Frederick M. Campbell, Son, dec'd. |
| Children of Allen | Children of Frederick |
| Heather Wallace, daughter | Ava Havel, daughter |
| Melissa McGee, step-daughter | Manuela Hernandez, step-daughter |
| | Surviving Spouse of Frederick: Jessie Garcia |

DoD November 4, 2013

**Donald A. Campbell 2001 Trust & D.A.C. Descendants' Trust**
F. Margaret Campbell, Trustee now, Ava Havel, Manuela Hernandez, Heather Wallace, Successor Trustees

| Beneficiaries | |
|---|---|
| Ava Havel | 33.33% |
| Manuela Hernandez | 33.33% |
| Heather Wallace | 33.33% |

**F. Margaret Campbell 2011 Trust & F. Margaret Campbell Descendants' Trust**
now, Egidijus Marcinkevicius, Successor Trustee

| Beneficiaries | |
|---|---|
| Allen F. Campbell | 50% |
| Ava Havel | 25% |
| Manuela Hernandez | 25% |
| Heather Wallace | |
| Melissa McGee | |

## Campbell Family Limited Partnership

| General Partners | |
|---|---|
| F. Margaret Campbell 2011 Trust | Donald A. Campbell 2001 Trust |
| Egidijus Marcinkevicius, Successor Trustee | Ava Havel, Manuela Hernandez, Heather Wallace, Successor Trustees |
| Ownership % | Ownership % |
| 1.0% | 1.0% |

| Limited Partners | |
|---|---|
| F. Margaret Campbell 2011 Trust | 43.59% |
| D. A. Campbell 2001 Trust | 43.59% |
| Estate of Frederick Campbell | 10.82% |
| Ownership %'s | 100.0% |

# STAPLES
## IT'S PRO TIME™

# Campbell, Allen
## Order Due: Wednesday, 04/15/20, 5:30 PM

Order Number

2217279056

Rewards Number

2127359814

| | |
|---|---|
| Order Received: | Wednesday, 04/15/20, 11:31 AM |
| Contact Phone: | (251) 210-4052 |
| Contact Email: | ALLENCAMPBELL@LIVE.COM |
| Call When Ready: | Y |

Job 1 of 1 - Custom Jobs

| SKU | Description | Qty | Price |
|---|---|---|---|
| 1980562 | Custom Jobs | 1 | 51.02 |

**Order Summary**

| | |
|---|---|
| Total Price: | $51.02 |

## Your satisfaction is our goal.
If your order doesn't meet your expectations, let us know so we can fix it.